UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Entesar Osman Kashef et al.,

    Plaintiffs,

—v—

BNP Paribas SA et al.,

    Defendants.

16-cv-3228 (AJN)

MEMORANDUM
OPINION AND ORDER

ALISON J. NATHAN, District Judge:

This putative class action case arises out of atrocities committed by the Government of Sudan against its citizens between 1997 and 2009. Victims of the Sudanese government's human rights abuses bring a variety of state law claims against BNP Paribas S.A. and its subsidiaries and branches alleging that the bank funded the Government of Sudan and assisted the government in circumventing U.S. economic sanctions, allowing the Government of Sudan to continue its genocidal campaign against the people of Sudan. The Defendants have moved to dismiss the Plaintiffs' Second Amended Complaint on all claims. For the reasons that follow, the motion to dismiss is granted in its entirety.

I.    **Background**

The Court assumes the parties' familiarity with the facts in this litigation. In short, Plaintiffs were victims of horrific human rights abuses undertaken by the Government of Sudan between 1997 and 2009, including "beatings, maiming, sexual assault, rape, infection with HIV, loss of property, displacement from their homes, and watching family members be killed." Second Amended Complaint ("SAC"), Dkt. No. 49, ¶ 24; *see also* SAC ¶¶ 30-50 (outlining specific abuses suffered by each representative Plaintiff). The Defendants are BNP Paribas S.A.,

1

a French financial institution, as well as several of its branches and subsidiaries, as well as individual defendants working for the bank (collectively "BNPP").

Between 1992 and 1997, in response to the Government of Sudan's human rights abuses against its own people, the United States government took a series of steps aimed at stemming the abuses, including formal condemnation, designation as a state sponsor of terrorism, and eventually economic sanctions. SAC ¶¶ 85-89. In 2002, Congress passed the Sudan Peace Act, again condemning the ongoing atrocities in the Sudan and requiring the President to implement additional sanctions. SAC ¶¶ 90-92. Additional legislation and executive orders implemented further sanctions between 2004 and 2006. SAC ¶¶ 93-97.

Beginning in 1997 and continuing through 2007, BNPP became the primary bank of the Government of Sudan, through which it accessed U.S. financial markets and circumvented U.S. sanctions. SAC ¶¶ 102-14. BNPP created several schemes to avoid the sanctions, including removing information from financial documents identifying that a Sudanese entity was one of the parties involved in the financial transaction, SAC ¶ 111, and using satellite banks in the United States through which to funnel money, SAC ¶¶ 112-13. According to the Second Amended Complaint, Sudan's access to U.S. financial markets was critical to funding the Government, including its continued atrocities against its people. SAC ¶¶ 115-51.

BNPP's actions were investigated by numerous state and federal agencies in the United States, and in 2014, BNPP pled guilty to conspiring to violate the laws of the United States in connection with circumventing U.S. sanctions on behalf of Sudan, Iran, and Cuba. SAC ¶¶ 191-98. BNPP also pled guilty to falsifying business records and conspiracy under New York law. SAC ¶¶ 199-201.

Following the criminal actions against BNPP, the Plaintiffs initiated the present action on

April 29, 2016 by filing its initial complaint. Complaint, Dkt. No. 1. On January 20, 2017, the Plaintiffs filed their Second Amended Complaint. *See* SAC. In it, Plaintiffs bring twenty state-law claims on which they seek to hold BNPP liable. The Plaintiffs allege that BNPP is liable for negligence per se (Counts 1 and 2), conspiracy to commit battery (Count 3), aiding and abetting battery (Count 4), conspiracy to commit battery in performance of a public duty or authority (Count 5), aiding and abetting battery in performance of a public duty or authority (Count 6), conspiracy to commit assault (Count 7), aiding and abetting assault (Count 8), conspiracy to commit false arrest and false imprisonment (Count 9), aiding and abetting false arrest and false imprisonment (Count 10), conspiracy to commit conversion – wrongful taking (Count 11), aiding and abetting conversion – wrongful taking (Count 12), conspiracy to commit conversion – wrongful detention, use, or disposal (Count 13), aiding and abetting conversion – wrongful detention, use, or disposal (Count 14), intentional infliction of emotional distress (Count 15), negligent infliction of emotional distress (Count 16), commercial bad faith (Count 17), unjust enrichment (Count 18), conspiracy to commit wrongful death (Count 19), and aiding and abetting wrongful death (Count 20). On March 21, 2017, the Defendants moved to dismiss the Second Amended Complaint in its entirety. Dkt. No. 65.

## II. Legal Standard

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (second alteration in

3

original). The complaint's factual allegations must be sufficient to "nudge" the plaintiff's claims "from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In ruling on a motion to dismiss, the facts alleged in the operative complaint are to be taken as true and all inferences must be drawn in the plaintiff's favor. *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 151 (2d Cir. 2007).

## III. Threshold Issues

### A. Act of State Doctrine

As a preliminary matter, Defendants argue that the Plaintiffs' claims should be dismissed under the act of state doctrine. The Court concludes that the doctrine mandates dismissal of nearly all of the Plaintiffs' claims.

The act of state doctrine provides that "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964) (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897)). Under the act of state doctrine, claims against private entities may be barred "[w]hen the causal chain between a defendant's alleged conduct and plaintiff's injury cannot be determined without an inquiry into the motives of the foreign government." *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 453 (2d Cir. 1987). "The act of state doctrine is not some vague doctrine of abstention but a '*principle of decision* binding on federal and state courts alike.'" *W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (quoting *Sabbatino*, 376 U.S. at 427). In *Sabbatino*, the Supreme Court established a sliding scale to determine whether a court's intervention in an issue relating to the

4

decision of another sovereign should be dismissed under the act of state doctrine. First, courts consider "the degree of codification or consensus concerning a particular area of international law," with the understanding that "the greater the degree of codification or consensus . . . , the more appropriate it is for the judiciary to render decisions." 376 U.S. at 428. Second, courts consider how sensitive the issue is likely to be for international relations. "It is also evident that some aspects of international law touch much more sharply on national nerves than do others; the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches." *Id.* Finally, "if the government which perpetrated the challenged act of state is no longer in existence," that will favor judicial intervention. *Id.*

"[W]hen it is made to appear that the foreign government has acted in a given way . . . the details of such action or the merit of the result *cannot* be questioned but must be accepted by our courts as a rule for their decision." *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012) (alterations in original) (emphasis added) (quoting *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 309 (1918)). In other words, under the act of state doctrine, "the acts of foreign sovereigns taken within their own jurisdictions *shall be deemed valid.*" *Kirkpatrick*, 493 U.S. at 409 (emphasis added). Under the doctrine, the Supreme Court has held that courts of the United States "will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles." *Sabbatino*, 376 U.S. at 428; *see also Konowaloff*, 702 F.3d at 147 ("[T]he lawfulness of the Soviet government's taking of the Painting is precisely what the act of state doctrine bars the United States courts from determining."). The Supreme Court has also applied the act of state doctrine to claims for

wrongful arrest when "[t]he acts complained of were the acts of a military commander representing the authority of the revolutionary party as a government, which afterwards succeeded, and was recognized by the United States." *Underhill*, 168 U.S. at 254. Defendants bear the burden of justifying application of the act of state doctrine. *Bigio v. Coca–Cola Co.*, 239 F.3d 440, 453 (2d Cir. 2000).

The Court concludes that the act of state doctrine is applicable in this case and bars its consideration of nearly all of Plaintiffs' claims because ruling on them would require the Court to pass judgment on the acts of the Government of Sudan. In Counts 3-14 and 19-20 of the Second Amended Complaint, the Plaintiffs ask the Court to impose secondary liability on BNPP for conspiracy and aiding and abetting of battery, assault, false arrest and false imprisonment, wrongful taking, and wrongful death. *See* SAC. In order to impose such liability, the Court would be obligated to conclude that the actions of the Government of Sudan, occurring within the then-existing territorial borders of Sudan, against the people of Sudan, amounted to state law violations of the law of battery, assault, false arrest and imprisonment, wrongful taking, and wrongful death. The Court is explicitly barred from ruling on some of these claims under binding precedent. *See Sabbatino*, 376 U.S. at 428 (holding that the act of state doctrine bars courts from considering claims alleging wrongful takings by a foreign government on foreign soil); *Underhill*, 168 U.S. at 254 (holding that the act of state doctrine bars courts from considering claims for false arrest when the actions were conducted by military personnel in service to the government). Moreover, to the extent Plaintiffs' claims are predicated on the contention that BNPP facilitated circumvention of U.S. sanctions, those judgments are properly left to the judgment of the Executive Branch rather than the courts. *See Sabbatino*, 376 U.S. at 467 (recognizing that "the Department of our Government primarily responsible for the

6

formulation of foreign policy and settling these matters on a state-to-state basis is more competent than courts to determine" the appropriate course of action in resolving foreign policy disputes); *see also* Exec. Order No. 13,400 § 8, 71 Fed. Reg. 25,483 (Apr. 26, 2006) (stating explicitly that the President's imposition of sanctions against Sudan creates no "right, benefit, or privilege" enforceable "by any party against . . . any other person"); Exec. Order No. 13,412 § 9, 71 Fed. Reg. 61,369 (Oct. 17, 2006) (same). The remaining claims for battery, assault, and wrongful death are barred by the principles arising from these cases because the Court could not rule on the claims without questioning the "details of such action or the merit of the result." *Konowaloff*, 702 F.3d at 146 (quoting *Ricaud*, 246 U.S. at 309).

Plaintiffs argue that the act of state doctrine is inapplicable and the Court can resolve this case without ruling on the acts of the Government of Sudan because the Plaintiffs "are 'not trying to undo or disregard the governmental action, but only to obtain damages from private parties who had procured it.'" Pl. Opp. to MTD ("Opp."), Dkt. No. 80, at 19 (quoting *Kirkpatrick*, 493 U.S. at 407). The Plaintiffs' characterization of this litigation is unpersuasive. In order for the Court to impose liability on the Defendants for conspiring with or aiding and abetting the Government of Sudan in circumventing U.S. sanctions and carrying out the torts alleged, the Court must necessarily conclude that the Government of Sudan's actions amounted to tortious conduct including battery, assault, false arrest and imprisonment, wrongful taking, and wrongful death. *See Sepenuk v. Marshall*, No. 98-cv-1568 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) (articulating that because "New York does not recognize an independent tort of conspiracy," a conspiracy claim can only survive if "an underlying, actionable tort is established"); *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-cv-1376 (PKC), 2014 WL 4393320, at *19 (S.D.N.Y. Sept. 5, 2014) ("To bring a claim for

7

aiding and abetting . . . under New York law, a plaintiff must prove (1) the existence of a violation committed by a primary party . . . ."). As a result, it is impossible for this Court to rule on Plaintiffs' secondary liability claims without improperly questioning the validity of the Government of Sudan's acts taken within its own jurisdiction. *See Kirkpatrick*, 493 U.S. at 409. The act of state doctrine thus precludes the Court's consideration of these claims.

Plaintiffs also argue that the act of state doctrine is inapplicable to their claims because they allege "[h]uman rights abuses like genocide, ethnic cleansing, mass rape, torture, killing, and taking of property" that "do not qualify as public acts of state" and were "condemned" by the United States "during the time of BNPP's conspiracy." Opp. at 20; *see also* SAC ¶ 136 (alleging "widespread human rights abuses . . . in contravention of international law"). However, the Second Amended Complaint does not bring causes of action arising under international law for human rights abuses. Instead, it brings only common law claims under the laws of New York. As a result, the Plaintiffs do not ask the Court to determine whether the Government of Sudan violated international law; they only ask the Court to find that the Government of Sudan's actions amounted to battery, assault, wrongful takings, and other common law claims. This is what the act of state doctrine prohibits the Court from doing. *See, e.g., Sabbatino*, 376 U.S. at 416; *Konowaloff*, 702 F.3d at 146.

The Court further concludes that, although a closer case, the act of state doctrine also bars Plaintiffs' claims for negligence per se, outrageous conduct causing emotional distress, and negligent infliction of emotional distress. To sustain any of these causes of action, the Plaintiffs must prove that they suffered a cognizable injury. *See Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 512 (App. Div. 2013) ("To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate . . . a resulting injury proximately caused by the

8

breach."); *Francis v. Kings Park Manor, Inc.*, 91 F. Supp. 3d 420, 434-35 (E.D.N.Y. 2015) ("Under New York law, the tort of negligent infliction of emotional distress" requires, among other things, "a causal connection between the conduct [alleged] and the injury . . . ." (citation omitted)); *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993) (intentional infliction of emotional distress requires the same). The injuries Plaintiffs allege they suffered in connection with these causes of action are injuries inflicted by the Government of Sudan. SAC ¶¶ 266-67 (identifying as injuries suffered under Plaintiffs' negligence per se claim "the [Government of Sudan's] depraved and deadly internal repression of its own citizens," the Government of Sudan's use of "weapons and . . . militias . . . against its disfavored civilians," and the Government of Sudan's "horrific human rights abuses"); SAC ¶¶ 290-91 (identifying as injuries resulting from negligence per se the Government of Sudan's "atrocities" and Plaintiffs' resulting "harm to their lives, safety, and property"); SAC ¶ 477 (identifying as injuries in connection with Plaintiffs' intentional infliction of emotional distress claim the Government of Sudan's "violence and human rights abuses against i[t]s targeted population" and resulting "physical and psychological injury, loss of property, lost earnings and profits, loss of liberty, and/or severe emotional distress"); SAC ¶ 485 (identifying the same injuries in connection with Plaintiffs' negligent infliction of emotional distress claim). The Court cannot rule on these claims without "sit[ting] in judgment on the acts of the government of another, done within its own territory." *Underhill*, 168 U.S. at 252. As a result, consideration of these claims would be inconsistent with the act of state doctrine, and the Court must dismiss these claims. *Konowaloff*, 702 F.3d at 146.

For the foregoing reasons, the Court concludes that the act of state doctrine bars consideration of the Plaintiffs' claims sounding in secondary liability, negligence per se, intentional infliction of emotional distress, and negligent infliction of emotional distress. As a

result, Claims 1-16 and 19-20 are dismissed as to all Plaintiffs.

B.   **Timeliness**

Defendants also argue that the Plaintiffs' claims – both those dismissed above under the act of state doctrine and those that remain – are untimely except as to those Plaintiffs who were minors when the alleged torts were committed. MTD, Dkt. No. 69, at 6. Specifically, the last injuries alleged by Plaintiffs occurred in 2009, and the Plaintiffs did not file a complaint in this action until April 29, 2016. MTD at 6. The parties agree that New York's statutes of limitations will apply to the causes of action in this case because under New York's borrowing statute, N.Y. C.P.L.R. 202, the Court must apply the shorter statute of limitations period of either New York or the state where the cause of action accrued. MTD at 6 n.4; Opp. at 14 n.72. The parties further agree that the claims of Plaintiffs who were under the age of 18 at the time of injury may bring claims that are timely. Plaintiffs argue in support of their other claims that they are governed by a seven-year statute of limitations that is applicable to the victims of crime under New York law and that they are further entitled to equitable tolling. The Court concludes that the seven-year statute of limitations is inapplicable, but that the Plaintiffs are entitled to equitable tolling. When equitable tolling is applied, all of Plaintiffs' claims are timely except for their claims alleging intentional act torts (Claims 3-10 and 15), all of which are also dismissed because of the act of state doctrine as explained above. Each of these points is explicated below.

1.   **Claims of Plaintiffs Injured as Minors Are Timely**

There is no dispute that the claims of Plaintiffs Abdalla and Ahmed are not time barred because those Plaintiffs were under the age of 18 when they were injured, and in such circumstances, New York law allows claims to be brought within three years after the injured persons turn 18. *See* MTD 6 n.5; Opp. at 13-14; *see also* N.Y. C.P.L.R. 208 ("If a person entitled to commence an action is under a disability because of infancy or insanity at the time the

10

cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . ."). As alleged in the Second Amended Complaint, both Plaintiff Abdalla and Plaintiff Ahmed were 18 when the initial complaint was filed in this action. *See* SAC ¶¶ 31, 50. Their claims were thus filed within three years of attaining the age of majority as provided for in N.Y. C.P.L.R. 208. As a result, their claims – and the claims of the class of similarly situated individuals – are not dismissed on statute of limitations grounds.

### 2. N.Y. C.P.L.R. 213-b Is Inapplicable, and a Seven-Year State of Limitations Does Not Apply

In New York, the intentional tort claims of "assault, battery, false imprisonment, malicious prosecution, libel, slander, [and] false words causing special damages" are governed by a one-year statute of limitations, N.Y. C.P.L.R. 215, negligence actions are governed by a three-year statute of limitations, N.Y. C.P.L.R. 214, and claims based on fraud or bad faith are governed by a six-year statute of limitations, N.Y. C.P.L.R. 213. In this case, Plaintiffs argue that none of these statutes of limitations apply because they are victims of Defendants' crimes, and thus their claims are subject to a seven-year statute of limitations under N.Y. C.P.L.R. 213-b. This argument is unavailing.

Under New York law, crime victims have seven years in which to bring civil actions based on the perpetrator's crimes. Specifically, under New York Civil Practice Law Rule 213-b, a seven-year limitations period applies when "(1) the plaintiff is a crime victim, (2) the defendant has been convicted of a crime, (3) the defendant's crime is the subject of the civil action, and (4) the plaintiff's injury resulted from that crime." *Boice v. Burnett*, 667 N.Y.S.2d 100, 100-01 (App. Div. 1997). "CPLR 213-b was intended to be expansive . . . i.e., to give relief to more,

11

rather than fewer, numbers of crime victims." *Elkin v. Cassarino*, 680 N.Y.S.2d 601, 604 (App. Div. 1998).

However, Rule 213-b is only applicable if the plaintiff is a direct victim of the crime to which the defendant pled guilty. In *Boice*, the court found Rule 213-b inapplicable because the defendant had pled guilty to "intentional misrepresentation of critical facts on his income tax returns," and the plaintiffs "sustained no direct injury to their persons or property as a result of that crime." 667 N.Y.S.2d at 101. Rather, the plaintiffs had been injured by the defendant's creation of fraudulent vouchers. *Id.* While the fraudulent vouchers were related to his tax fraud – he received money via the fraudulent vouchers that he then did not report on his income taxes, *id.* at 100 – the court concluded that the plaintiffs "[could ]not be considered 'victims' of his crime." *Id.* at 101.

Here, the Court concludes that the Plaintiffs have not sufficiently pled that they were victims of the crimes for which Defendants pled guilty. Defendants pled guilty to conspiracy to violate the International Emergency Economic Powers Act and the Trading with the Enemy Act in violation of 18 U.S.C. § 371. As that provision makes clear, an individual who commits an offense under this section commits an "offense against *the United States*." 18 U.S.C. § 371 (emphasis added). Thus, the victim of the crime to which BNPP pled guilty was the United States – not the individual Plaintiffs. For this reason, at BNPP's sentencing, Assistant U.S. Attorney Goldstein represented to the court that individuals "who suffered grievous harm at the direction of the regime[] in Sudan . . . . are not victims of this crime [to which BNPP pled guilty] and cannot show that they were directly harmed by BNPP's conduct." Transcript, Dkt. No. 66-1, at 9:10-21. The court in that action denied restitution to potential claimants raising such claims. *See* Transcript at 9:15-21, 11:2-9.

Plaintiffs do not specifically argue that they were victims of BNPP's crimes, but rather that Rule 213-b should apply because "the guilty pleas anticipate[d] civil proceedings by private parties" and "acknowledged that the Sanctions were to protect human rights victims." Opp. at 17. Even accepting these statements, they do not make the Plaintiffs *victims* of the crimes to which BNPP pled guilty for purposes of Rule 213-b rather than indirectly harmed parties. Plaintiffs provide no case law to suggest that New York intended its law to be so expansive that any person *affected* by a crime could avail herself of a longer statute of limitations. Such a reading would render the statutory word "victim" meaningless. *Cf.* N.Y. Exec. Law § 621(5) (defining "victim" as "a person who suffers . . . as a *direct result* of a crime" (emphasis added)). As a result, the Court concludes that the shorter statutes of limitation provided for in N.Y. C.P.L.R. 213 (six years), 214 (three years), and 215 (one year) will apply.

### 3. Plaintiffs Are Entitled to Equitable Tolling Through June 2014

Under the one-, three-, and six-year statutes of limitations that apply under New York law, all of Plaintiffs' claims would be untimely if the statutes ran from the last injuries suffered in 2009. However, Plaintiffs argue that they are entitled to equitable tolling. The Court agrees that the Plaintiffs are entitled to equitable tolling until June 2014.

"Under the discovery rule, a claim accrues when a plaintiff comes into possession of the 'critical facts that he has been hurt and who inflicted the injury.'" *Singleton v. Clash*, 951 F. Supp. 2d 578, 588 (S.D.N.Y. 2013) (quoting *Rotella v. Wood*, 528 U.S. 549, 556 (2000)). The Second Circuit has held that equitable tolling is available "in circumstances where a defendant was 'actively misled' or 'prevented in some extraordinary way from exercising his rights.'" *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 135 (E.D.N.Y. 2000) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)). "Where defendant is responsible for

13

concealing the existence of plaintiff's cause of action, this Court has held equitable tolling appropriate." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004); *see also id.* ("Equitable tolling has also been held appropriate where plaintiff was somehow prevented from learning of her cause of action within the statutory period."). In such circumstances, the question for determining whether equitable tolling applies is "not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Id.*

In the present case, Plaintiffs have sufficiently alleged that BNPP concealed its actions that aided the Government of Sudan and that, as a result, Plaintiffs did not learn that they had a cause of action against the Defendants until their sentencing for federal crimes on May 1, 2015. *See* SAC ¶¶ 252-55. For example, Plaintiffs allege that BNPP took elaborate steps to prevent those outside the Government of Sudan from knowing that it was aiding the government in violation of U.S. sanctions. SAC ¶¶ 17-18, 111-14, 199, 270. BNPP stipulated to such facts in its related criminal case. Ex. C to SAC, Dkt. No. 49-3, ¶¶ 22-27, 30, 37-41. Indeed, the Defendants pled guilty to felony concealment under New York law. SAC ¶ 199. Based on these allegations, the Plaintiffs have sufficiently pleaded that they are entitled to equitable tolling for some period of time.

However, the Court concludes that the Plaintiffs are only entitled to equitable tolling until June 2014 rather than May 1, 2015. In particular, Plaintiffs do not contest that BNPP's fraud was widely publicized in June 2014. *See* MTD at 10 n.9 (citing public declarations that BNPP had committed sanctions violations, including funding the Government of Sudan). Such publications were sufficient to put a reasonable person in Plaintiffs' position on notice that they may have claims against the Defendants. Plaintiffs respond that they were "traumatized victims"

14

who were "unfamiliar with the legal system." Opp. at 15. While the Court is sympathetic to the experiences the Plaintiffs suffered, this does not eliminate the legal requirement that Plaintiffs demonstrate at least reasonable diligence in pursuing their claims.

Because the applicable statutes of limitations began running in June 2014 for Plaintiffs' claims, all claims with a statute of limitations of two or more years are timely. However, Plaintiffs' intentional torts (Claims 3-10 and 15), are governed by a one-year statute of limitations under N.Y. C.P.L.R. 215. As a result, these claims expired in June 2015, nearly a year before the first complaint was filed in this action. As a result, Plaintiffs' Claims 3-10 and 15 are dismissed, except for Plaintiffs who were minors at the time of their injuries. All remaining claims are not dismissed on the basis of the statutes of limitations.

Based on the Court's rulings on the act of state doctrine and statutes of limitations, Plaintiffs' claims in Counts 1-16 and 19-20 are dismissed based on the act of state doctrine. Plaintiffs' claims contained in Counts 3-10 and 15 are alternatively dismissed as untimely for all Plaintiffs who were 18 or older at the time of their alleged injuries. This leaves Plaintiffs' claims in Counts 17 and 18 to be considered on the merits.

## IV. Remaining Claims

Plaintiffs allege two claims that do not require the Court to consider whether the acts of the Government of Sudan were legitimate in violation of the act of state doctrine and which are timely under the applicable statute of limitation. These remaining causes of action allege that BNPP engaged in commercial bad faith and was unjustly enriched. The Court concludes that the Plaintiffs have failed to state a claim upon which relief can be granted, and will therefore dismiss these remaining claims as to all Plaintiffs.

### A. Plaintiffs Fail to State a Claim of Commercial Bad Faith

Plaintiffs first allege that BNPP committed commercial bad faith in violation of New York law by "complet[ing] thousands of illegal financial transactions that gave the [Government of Sudan] unlawful access to the U.S. financial system." Opp. at 37-38. Defendants move to dismiss Plaintiffs' commercial bad faith claim on two grounds: first, that the claim is governed by the law of either Sudan or Switzerland, which do not recognize a claim for commercial bad faith, MTD at 33; and second, that Plaintiffs have not sufficiently pled a claim upon which relief can be granted, MTD at 33. The Court need not resolve the choice of law question because the Court concludes that the Plaintiffs have failed to state a claim even if New York law applies. The Court agrees with the Defendants' argument that Plaintiffs have not stated a claim upon which relief can be granted and concludes that the commercial bad faith claim created by the state of New York is inapplicable to the facts alleged by the Plaintiffs.

"The New York Court of Appeals fashioned the doctrine of 'commercial bad faith' as an exception to the general rule that a bank is absolved of liability for a check made out to a fictitious payee when the maker knows that the payee is fictitious." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006). Under this doctrine, "a bank may be held liable if it in fact knows of the fraud and participates in it." *Id.* The Second Circuit has cautioned that it has "considerable doubt whether the doctrine has any applicability" to claims that "do not allege fraud in the making and cashing of checks." *Id.*

While the Second Circuit has not held conclusively that a commercial bad faith claim could not apply outside of the fraudulent check context, the Court concludes that the doctrine is not applicable to the facts as alleged. All of the case law on the tort of commercial bad faith involves factual circumstances that are not analogous to the facts at issue here. The cases establishing the commercial bad faith doctrine concerned an individual who was the victim of a

16

fraudulent check scheme seeking to hold the participating bank liable. *See, e.g., Prudential-Bache Sec., Inc. v. Citibank, N.A.*, 536 N.E.2d 1118, 1119 (N.Y. 1989). Even where it has been extended beyond a fraudulent checking scheme to other fraudulent schemes, courts have found a claim of commercial bad faith sufficiently stated only where the plaintiffs were direct victims of the fraudulent scheme or had another sufficiently direct link to the scheme. *See, e.g., Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 384 (S.D.N.Y. 2007) (plaintiffs were victims of an investment scheme run through defendant banks that cost plaintiffs $250 million); *Rossner v. Bank of China*, 2008 WL 5416380, at *1-2 (S.D.N.Y. Dec. 18, 2008) (plaintiff was permanent equity receiver of perpetrators of fraud). As a result, the commercial bad faith doctrine is inapposite to a case such as this where individuals harmed only indirectly by a fraud seek to hold the bank liable. At the very least, in the absence of case law from either the New York Court of Appeals or the Second Circuit Court of Appeals holding that the commercial bad faith cause of action is applicable on these facts, the Court declines to expand the doctrine in such an unprecedented way.

The Plaintiffs' claim of commercial bad faith (Count 19) is therefore dismissed.

### B. Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs next allege that BNPP was unjustly enriched "by fees from billions in transactions at Plaintiff's expense." Opp. at 38. The Court concludes that Plaintiffs have not established a claim upon which relief can be granted.

Defendants move to dismiss Plaintiffs' unjust enrichment claim on two grounds: first, that the claim is governed by the law of either Sudan or Switzerland, which have more stringent requirements than the law of New York, MTD at 32; and second, that Plaintiffs have not sufficiently pled a claim upon which relief can be granted, MTD at 32. The Court need not

resolve the choice of law question because the parties do not dispute that New York law is at least as favorable to the Plaintiffs as the law of any other jurisdiction that might govern the claim, MTD at 32; Opp. at 39, and the Court concludes that the Plaintiffs have failed to state a claim even under New York law.

A claim for unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). "[I]n order to adequately plead such a claim, the plaintiff must allege 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)). "[W]hile 'a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment,' there must exist a relationship or connection between the parties that is not 'too attenuated.'" *Id.* (quoting *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007)). "[T]he plaintiff must have an interest in or right to the benefit thus conferred in order to recover for unjust enrichment." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 260 (S.D.N.Y. 2012). Put another way, "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff." *Id.* (quoting *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004)).

In this case, the Plaintiffs have not sufficiently alleged that they have a right to the benefit conferred on BNPP. In other words, the money that the Defendants allegedly acquired by funding the Government of Sudan did not belong to the Plaintiffs and would not have otherwise

gone to Plaintiffs. Plaintiffs do not contest this point, but instead argue that the unjust enrichment claim is based on "broad considerations of equity and justice." Opp. at 38 (quoting *Philips Int'l Invs., LLC v. Pektor*, 982 N.Y.S.2d 98, 102 (App. Div. 2014)). While the claim is based in equity, New York courts have placed limits on its reach by imposing restrictions including that the plaintiff and defendant must have had a knowledge of each other and a relationship, *see Georgia Malone & Co.*, 973 N.E.2d at 746-47 (collecting cases where relationship was too attenuated), and, as applicable here, that the unjust enrichment must have been a transfer of something that belonged to the plaintiff but wound up in the defendant's possession, *Donziger*, 871 F. Supp. 2d at 260. In this case, Plaintiffs cannot allege facts that would satisfy this cause of action.

The Court thus concludes that Plaintiffs cannot state a claim upon which relief can be granted for unjust enrichment, and the claim (Count 18) is dismissed.

## IV. Conclusion

In sum, the Court concludes that Plaintiffs' claims alleged in Counts 1-16 and 19-20 should be dismissed based on the act of state doctrine. Moreover, the Court concludes that the Plaintiffs' claims contained in Counts 3-10 and 15 would also, alternatively, be dismissed as untimely for all Plaintiffs who were 18 or older at the time of their alleged injuries. Finally, the Court concludes that Claims 17 and 18 are dismissed for failure to state a claim upon which relief can be granted.

The motion to dismiss is therefore granted as to all Plaintiffs on all claims. This resolves Docket Number 65. The Clerk of Court is ordered to close the case and enter judgment.

SO ORDERED.

Dated: March 30, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge