UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ENTESAR OSMAN KASHEF, *et al.*,

                Plaintiffs,

-against-

BNP PARIBAS S.A., BNP PARIBAS S.A. NEW YORK BRANCH, BNP PARIBAS NORTH AMERICA, INC., and DOES 2-10,

                Defendants.

Civil No. 1:16-Civ-03228-AJN

Hon. Alison J. Nathan

---

### SUPPLEMENTAL BRIEF OF DEFENDANTS BNP PARIBAS S.A. AND BNP PARIBAS NORTH AMERICA, INC. IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendants BNP Paribas S.A. and BNP Paribas North America, Inc.

June 28, 2019

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    NEW YORK STATE LACKS A STRONG INTEREST IN ADJUDICATING ALLEGED *JUS COGENS* VIOLATIONS .......................................................................... 3

II.    PLAINTIFFS FAIL TO STATE ANY CLAIMS UNDER FEDERAL COMMON LAW ................................................................................................................................... 6

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1350 .................................................................................................................. 6

**Cases**

*Am. Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003) ............................................................................................................ 5

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964) ............................................................................................................ 6

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ............................................................................................................ 8-9

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) .............................................................................................................. 3-4

*Hines v. Davidowitz*,
312 U.S. 52 (1941) .............................................................................................................. 5-6

*Jesner v. Arab Bank PLC*,
138 S. Ct. 1386 (2018) ........................................................................................ 2, 4-5, 6, 7

*Kashef v. BNP Paribas S.A.*,
925 F.3d 53 (2d Cir. May 22, 2019) ................................................................................ passim

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013) ............................................................................................................ 4, 6

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) .............................................................................................. 8

*O'Sullivan v. Deutsche Bank, AG*,
No. 17 CV 8709-LTS-GWG, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ..................... 8

*Ofisi v. BNP Paribas, S.A.*,
278 F. Supp. 3d 84 (D.D.C. 2017) ..................................................................................... 8

|  | **Page(s)** |
|---|---|
| *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009) | 2, 7-8 |
| *Republic of Iraq v. ABB AG*, 768 F.3d 145 (2d Cir. 2014) | 4 |
| *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986) | 4, 5 |
| *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009) | 5 |
| *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189 (1985) | 3 |
| *Tex. Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) | 3-4, 5 |
| *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004) | 4 |

Pursuant to this Court's Orders, dated June 14, 2019 and June 17, 2019, the "BNPP Defendants"[1] respectfully submit this supplemental memorandum of law to address how the Second Circuit's May 22, 2019 ruling, *Kashef v. BNP Paribas S.A.*, 925 F.3d 53 (2d Cir. 2019), bears on the grounds for dismissal previously raised by the BNPP Defendants in their motion to dismiss the Second Amended Complaint ("Complaint" or "SAC").[2]

## PRELIMINARY STATEMENT

The Second Circuit's ruling provides further support for dismissing the SAC. In reversing this Court's application of the act of state doctrine to this case, the Second Circuit agreed with plaintiffs' characterization on appeal that their claims are grounded in international law *jus cogens* violations, holding that "[a]ll of Plaintiffs' claims are premised on . . . violations of *jus cogens* norms." *Kashef*, 925 F.3d at 61; *see also id.* at 60 (proof of plaintiffs' claims "as the SAC suggests, will be based on the widespread and widely known genocide perpetrated in Sudan"). That holding supports the BNPP Defendants' showing that plaintiffs' claims are not governed by New York law, as plaintiffs contend. As the BNPP Defendants have shown in their motion to dismiss, of the three jurisdictions whose law the parties have addressed to date— Sudan, Switzerland and New York—New York has weakest interest of the three. That conclusion is further bolstered by the Second Circuit's conclusion that plaintiffs' claims are

---

[1] Capitalized terms not otherwise defined have the definitions given in the Mem. of Law in Support of Defs.' Mot. to Dismiss the Second Am. Compl. (Mar. 21, 2017), ECF No. 69 ("BNPP Br.") or Reply Mem. of Law in Further Support of Defs.' Mot. to Dismiss the Second Am. Compl. (July 6, 2017), ECF No. 85 ("Reply"). Pls.' Opp. to Defs.' Mot. to Dismiss the Second Am. Compl. (May 22, 2017), ECF No. 80 is cited as "Pl. Br."

[2] Plaintiffs have also named as a defendant "BNP Paribas S.A. New York Branch" (the "Branch"), which is not a separate legal entity. The Court should dismiss plaintiffs' claims against the Branch for the reasons shown in the BNPP Defendants' prior dismissal briefing. BNPP Br. at 34; Reply at 15.

premised on international law violations, because a state such as New York, as opposed to the federal government, has a limited interest in applying its law to such disputes.

At bottom, and as demonstrated in the BNPP Defendants' pending motion, the SAC fails to state a claim under any of the "local" laws potentially applicable to it, including New York. This result is the same if, adhering to the Second Circuit's conclusion that plaintiffs' claims are based on violations of international law, this Court applies federal common law. As the BNPP Defendants noted in their motion, plaintiffs themselves tacitly recognize that their claims would fail under federal law. Indeed, plaintiffs sought to avoid the characterization of their claims as being based on federal law governing international law violations because they know that controlling Second Circuit precedent requires such claims to be dismissed. *See* BNPP Br. at 12 n.11 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013); *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 158 (2d Cir. 2015), *as amended* (Dec. 17, 2015); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 262 (2d Cir. 2009)). The Supreme Court's decision in *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), decided less than a month after this Court's dismissal of the SAC, further confirms that plaintiffs' claims are not viable under federal common law. The SAC accordingly should be dismissed for failure to state a claim regardless of which law the Court applies.

## ARGUMENT

As explained in the motion to dismiss, New York's "greatest interest" choice of law analysis requires application of Sudanese or Swiss law to this case, as both those jurisdictions have a greater connection to, and interest in, the facts of this dispute, which involves wholly foreign parties, injured in Sudan, by misconduct that occurred there. The Second Circuit's holding that "[a]ll of Plaintiffs' claims are premised on . . . violations of *jus cogens* norms," *Kashef*, 925 F.3d at 61, further subordinates New York substantive law within the choice of law

2

analysis, and implicates a fourth interested jurisdiction and body of law—the United States, and federal common law. Application of *that* law further confirms that plaintiffs fail to state a claim.

## I.  NEW YORK STATE LACKS A STRONG INTEREST IN ADJUDICATING ALLEGED *JUS COGENS* VIOLATIONS

As noted in the BNPP Defendants' dismissal briefing, U.S. courts "ordinarily 'apply *foreign* law to determine the tortfeasor's liability' to 'a plaintiff injured in a foreign country.'" BNPP Br. at 14 (quoting *RJR Nabisco, Inc., v. European Cmty.*, 136 S. Ct. 2090, 2109 (quoting *Sosa v. Alvarez–Machain,* 542 U.S. 692, 706 (2004))). New York choice of law principles are consistent with that rule, requiring that when a conflict of laws exists, the "law of the jurisdiction having the greatest interest in the litigation will be applied." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985) (citation omitted); *see* BNPP Br. at 14-17; Reply at 6. As the BNPP Defendants have previously articulated, New York has very little nexus to this case. *See* BNPP Br. at 17-19; Reply at 5-6.

Plaintiffs took the position before this Court that they "have not brought" claims for "international law violations." Pl. Br. at 4 n.19. But on appeal, in seeking to avoid application of the act of state doctrine, plaintiffs repeatedly emphasized that their claims were predicated on violations of *jus cogens* norms. *See* Brief of Plaintiffs-Appellants at 25-42, *Kashef v. BNP Paribas S.A.*, 925 F.3d 53 (2d Cir. May 22, 2019). The Second Circuit agreed with plaintiffs' theory and held that "[a]ll of Plaintiffs' claims are premised on . . . violations of *jus cogens* norms." *Kashef*, 925 F.3d at 61. As plaintiffs correctly predicted, a consequence of this alternative holding, now law of the case, is that their claims are not viable under the applicable federal law. Pl. Br. at 4 n.19.

The Second Circuit's holding strengthens the federal interest in this litigation. Even after *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), directed federal courts in diversity actions to

3

apply state substantive law, the Supreme Court recognized that there is still a narrow role for federal common law where "a federal rule of decision is 'necessary to protect uniquely federal interests.'" *Tex. Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (citation omitted). U.S. courts apply federal common law in "actions having important foreign policy implications." *Republic of Philippines v. Marcos*, 806 F.2d 344, 353-54 (2d Cir. 1986) (asserting federal question jurisdiction over controversy involving property owned by former president of Republic of Philippines because, although claim was pled "under a theory more nearly akin to a state cause of action," the case posed "a federal question to be decided with uniformity as a matter of federal law, and not separately in each state"); *see also Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004) (federal common law governed claims asserted under Florida state law stemming from injuries occurring during the Nazi era).[3]

The Supreme Court has stated on multiple occasions that claims premised on *jus cogens* violations, like those asserted by plaintiffs here, implicate uniquely federal interests and accordingly fall within the scope of federal common law. *See e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (recognizing federal common law claims for violations of "sufficiently definite norms of international law"). Indeed, in a decision issued after the original dismissal ruling in this case, the Supreme Court reiterated the "significant foreign-policy implications" inherent in adjudicating claims premised on international law violations in *Jesner* because such claims "implicate[] serious separation-of-powers and foreign-relations concerns"

---

[3] In *Republic of Iraq v. ABB AG*, 768 F.3d 145, 172 (2d Cir. 2014), the Second Circuit accepted the proposition that federal common law could "displace state law in a few 'narrow areas' involving uniquely federal interests," but concluded that because the plaintiff only asserted "traditional types of torts" like fraud, those claims did not trigger the application of federal common law. Here, by contrast, the Second Circuit has characterized plaintiffs' claims as premised on *jus cogens* violations, which "enjoy the highest status within international law." *Kashef*, 925 F.3d at 61 (citing *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 715 (9th Cir. 1992)).

4

and "must be 'subject to vigilant doorkeeping,'" *Jesner*, 138 S. Ct. at 1398 (citation omitted); *see also id.* at 1399 (recognizing federal common law claims for violations of "specific, universal, and obligatory" international law norms).

By contrast, New York, like any other U.S. state, has a relatively weak interest in adjudicating claims premised on violations of international law by foreign actors against foreign plaintiffs in foreign territory. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 425-26 (2003) (denying "[s]tate's claim to apply its forum law" based on the "weakness of the State's interest" in "regulating . . . European Holocaust-era insurance policies"). It is axiomatic that in such a case the most significant contacts will always take place outside the territory of any U.S. state. Any "postoccurence change of residence"[4] by the plaintiffs "to the forum State" does not increase the state's interest in applying its law to such an international controversy. *Id.* at 426 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 311 (1981)); *see also Saleh v. Titan Corp.*, 580 F.3d 1, 12 (D.C. Cir. 2009) (state tort law claims preempted because "the interests of any U.S. state . . . are *de minimis*" in adjudicating claims predicated on alleged abuse carried out by U.S. servicemembers "in Iraq against Iraqi citizens").

Accordingly, where, as here, important federal interests are at stake, the "international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus. Inc.*, 451 U.S. at 641; *see also Marcos*, 806 F.2d at 354 ("[F]ederal common law in the area of foreign affairs" can probably be "so powerful, or important, as to displace a purely state cause of action") (internal quotations omitted). The federal government has a greater interest in adjudicating and regulating claims of international character with heavy foreign policy

---

[4] Even after the alleged change of residence, only two of the 21 named plaintiffs purporting to represent the prospective class are alleged to reside in New York, further demonstrating the weakness of New York's interest in this litigation. *See* SAC ¶¶ 30-50.

5

implications than any particular U.S. state. *See Hines v. Davidowitz*, 312 U.S. 52, 63 (1941) ("Our system of government is such that the interest of the cities, counties and states, no less than the interest of the people of the whole nation, imperatively requires that federal power in the field affecting foreign relations be left entirely free from local interference."). This interest is particularly high in the context of ensuring there is a consistent application of international law across all U.S. jurisdictions. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 424 (1964) (even after *Erie*, "rules of international law should not be left to divergent and perhaps parochial state interpretations."); *Kashef*, 925 F.3d at 61 ("no derogation is permitted" from *jus cogens* norms) (citing *Carpenter v. Republic of Chile*, 610 F.3d 776, 780 n.4 (2d Cir. 2010)).

Furthermore, it is appropriate to apply federal common law to adjudicate plaintiffs' claims if the Court declines to apply Sudanese or Swiss law, because federal common law poses a clear conflict with New York law. While, as described in the BNPP Defendants' prior dismissal briefing, plaintiffs fail to state any claims under New York law, BNPP. Br. at 21-31; Reply at 8-14, the same claims face an even higher bar under federal common law.

## II. PLAINTIFFS FAIL TO STATE ANY CLAIMS UNDER FEDERAL COMMON LAW

As the BNPP Defendants noted in their initial dismissal briefing, there are "many bars to this suit" under U.S. federal law. BNPP Br. at 12 n.11. While *jus cogens* claims are typically adjudicated in the context of litigation brought under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), the statute was "enacted . . . against the backdrop of the general common law," *Jesner*, 138 S. Ct. at 1397, and the Court's articulation of the types of claims that are cognizable under the ATS reflects the federal common law on *jus cogens* violations, *see Kiobel*, 569 U.S. at 116 (recognizing federal common law claims for violations of "sufficiently definite norms of international law").

6

Plaintiffs' *jus cogens* claims fail under federal common law because (among other reasons), the Court in *Jesner* explicitly rejected the proposition that federal common law can provide relief for "large groups of foreign plaintiffs suing foreign corporations in the United States for alleged human-rights violations in other nations" *Jesner*, 138 S. Ct. at 1398, and ruled instead that international law claims cannot be asserted in U.S. courts against foreign corporate defendants. As the Court explained, not only did international law not provide for corporate liability at the time of the enactment of the ATS, but also there is no "specific, universal, and obligatory norm of corporate liability under currently prevailing international law." *Id.* at 1401. The Court also looked to the complex regulatory scheme that Congress has established for adjudicating a limited set of international law violations, and concluded that it was up to "the political branches [to] determine, referring to international law to the extent they deem proper, whether to impose liability for human-rights violations upon foreign corporations in this Nation's courts[.]" *Id.* at 1407.[5] As described above, even before *Jesner*, plaintiffs conceded that their claims are not viable under federal law. Pl. Br. at 4 n.19.

Even if the Court disregards the clear bars to this suit under federal law, *see also* BNPP Br. at 12 & n.11, the *jus cogens* claims would fail to state a claim. Both the conspiracy and aiding and abetting claims asserted under international law against the BNPP Defendants in this case require, *inter alia*, non-conclusory allegations that the BNPP Defendants "acted with the *purpose* that the . . . payments [they made to Sudanese entities] be used for human rights abuses." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 262 (2d Cir.

---

[5] *See also id.* at 1412 ("A group of foreign plaintiffs wants a federal court to invent a new cause of action so they can sue another foreigner for allegedly breaching international norms. In any other context, a federal judge faced with a request like that would know exactly what to do with it: dismiss it out of hand. Not because the defendant happens to be a corporation instead of a human being. But because the job of creating new causes of action and navigating foreign policy disputes belongs to the political branches.") (Gorsuch, J., concurring).

2009) (dismissing ATS claims against Canadian oil corporation operating in Sudan based on lack of evidence that the company acted with purpose of aiding and abetting the Sudanese government's human rights violations). The Complaint here alleges that the BNPP Defendants had a "desire for profits," *not* a purpose of aiding any human rights abuses. *See, e.g.*, SAC ¶ 101; *see also O'Sullivan v. Deutsche Bank, AG*, No. 17 CV 8709-LTS-GWG, 2019 WL 1409446, at *9-10 (S.D.N.Y. Mar. 28, 2019) (dismissing conspiracy and aiding and abetting claims under Anti-Terrorism Act against BNPP and other financial institutions predicated on violations of U.S. economic sanctions on Iran because "even accepting that Defendants knew generally about the purpose of U.S. sanctions" against Iran, the court could not infer "that Defendants shared a common purpose or plan" to commit terrorist attacks or were even "generally aware that [Defendants] had taken a role in the attacks"); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 390, 394 (7th Cir. 2018) (affirming dismissal of Anti-Terrorism Act claims for failure to plead the requisite intent since bank defendant's actions "were motivated by economics" and "designed to increase its profits"). Moreover, the SAC fails to satisfy the *actus reus* requirement for these claims for the same reasons it fails to allege causation under New York law. *See* BNPP Br. at 24-27; Reply at 9-12; *see also Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 109 (D.D.C. 2017) (dismissing ATS aiding and abetting claims concerning the same underlying conduct by the BNPP Defendants for failure to allege substantial assistance).

In sum, both Supreme Court precedent and the Second Circuit's ruling in this case teach that, if the Court declines to apply Sudanese or Swiss law, not only should federal law govern plaintiffs' claims, but federal law also requires dismissal of the same claims. If the Court were to conclude that New York law provides a remedy for international human rights violations where federal law unquestionably does not, such a decision would "conflict[] with federal law at a

8

number of points by penalizing individuals and conduct that Congress has explicitly exempted or excluded" from the scope of the relevant federal statutes. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 378 (2000).

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: New York, New York
       June 28, 2019

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
   Carmine D. Boccuzzi, Jr.
   Jonathan I. Blackman
   One Liberty Plaza
   New York, New York 10006
   (212) 225-2000
   cboccuzzi@cgsh.com
   jblackman@cgsh.com

*Counsel for Defendants BNP Paribas S.A. and BNP Paribas North America, Inc.*