UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, et al.,<br><br>                              Plaintiffs,<br><br>     v.<br><br>BNP PARIBAS S.A., BNP PARIBAS S.A. NEW YORK BRANCH, BNP PARIBAS NORTH AMERICA, INC., and DOES 2-10.<br><br>                              Defendants. | Civil No. 1:16-Civ-03228-AJN |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Pierce Bainbridge Beck Price & Hecht LLP
355 S. Grand Ave., 44th Floor
Los Angeles, California 90071
Phone: (213) 262-9333

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

I. New York Law Applies To Plaintiffs' Claims ................................................................ 3

II. The Second Circuit's Decision Confirms That Plaintiffs Sufficiently Pleaded Their Causes Of Action Under State Law ................................................................ 5

III. BNPP's Arguments Are Barred By This Court's Order And Meritless ............................ 6

　A. BNPP Misrepresents the Second Circuit's Holding ............................................ 6

　B. BNPP's New-Found Preemption Argument Lacks Merit .................................... 7

　C. Whether Plaintiff Can Plead So-Called *Jus Cogens* Claims is Irrelevant ........................ 9

CONCLUSION ............................................................................................................................. 10

i

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*,
  661 F. App'x 2 (2d Cir. 2016) ...................................................................................................3

*Am. Ins. Ass'n v. Garamendi*,
  539 U.S. 396 (2003) ...................................................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................5

*Brown v. City of Syracuse*,
  673 F.3d 141 (2d Cir. 2012) .......................................................................................................5

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ...................................................................................................................8

*Hain v. Jamison*,
  28 N.Y.3d 524 (N.Y. 2016) ........................................................................................................6

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) .....................................................................................................................8

*Jesner v. Arab Bank, PLC*,
  138 S. Ct. 1386 (2018) ..........................................................................................................9, 10

*Kashef v. BNP Paribas S.A.*,
  925 F.3d 53 (2d Cir. 2019) ................................................................................................ passim

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018) ....................................................................................................10

*Kiobel v. Royal Dutch Petroleum Co.*,
  569 U.S. 108 (2013) ...................................................................................................................9

*Licci v. Lebanese Canadian Bank SAL*,
  672 F.3d 155 (2d Cir. 2012) ...................................................................................................1, 4

*Licci v. Lebanese Canadian Bank, SAL*,
  739 F.3d 45 (2d Cir. 2013) .........................................................................................................4

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  725 F.3d 65 (2d Cir. 2013) .........................................................................................................8

*O'Sullivan v. Deutsche Bank AG*,
  No. 17-CV-8709-LTS-GWG, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) .........................10

*Ofisi v. BNP Paribas, S.A.*,
   278 F. Supp. 3d 84 (D.D.C. 2017), *vacated in part on other grounds by Ofisi v. BNP Paribas, S.A.*, 285 F. Supp. 3d 240 (D.D.C. 2018)..............................2, 9, 10

*Padula v. Lilarn Props. Corp.*,
   84 N.Y.2d 519 (N.Y. 1994) ...............................................................................................3

*Philipp v. Fed. Republic of Germany*,
   894 F.3d 406 (D.C. Cir. 2018) ..........................................................................................7

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
   582 F.3d 244 (2d Cir. 2009) ............................................................................................10

*Republic of Iraq v. ABB AG*,
   768 F.3d 145 (2d Cir. 2014) ..........................................................................................8, 9

*Republic of Philippines v. Marcos*,
   806 F.2d 344 (2d Cir. 1986) ..............................................................................................8

*Saleh v. Bush*,
   848 F.3d 880 (9th Cir. 2017) ............................................................................................9

*Saleh v. Titan Corp.*,
   580 F.3d 1 (D.C. Cir. 2009) ..............................................................................................8

*Schultz v. Boy Scouts of Am., Inc.*,
   65 N.Y.2d 189 (N.Y. 1985) ...............................................................................................3

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
   451 U.S. 630 (1981)..........................................................................................................8

*Tutrani v. Cty. of Suffolk*,
   10 N.Y.3d 906 (N.Y. 2008) ..............................................................................................6

*Ungaro-Benages v. Dresdner Bank AG*,
   379 F.3d 1227 (11th Cir. 2004) ........................................................................................8

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*,
   493 U.S. 400 (1990).....................................................................................................2, 7

*Wiercinski v. Mangia 57, Inc.*,
   698 F. App'x 8 (2d Cir. 2017) ..........................................................................................1

*Yick Man Mui v. United States*,
   614 F.3d 50 (2d Cir. 2010)................................................................................................6

**Statutes**

New York C.P.L.R. § 215(8)(a).................................................................................1, 4, 6

**PRELIMINARY STATEMENT**

The Second Circuit reversed the dismissal of Plaintiffs' claims on act of state and statute of limitations grounds, holding that the act of state doctrine did not apply and that Plaintiffs were victims of BNPP's crimes within the meaning of New York C.P.L.R. § 215(8)(a).[1] *See Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 62-63 (2d Cir. 2019) ("[T]he Plaintiffs' causes of action arise out of the same occurrence as the criminal prosecution: BNPP's conspiracy with Sudan to violate U.S. sanctions.").

Only two issues remain open after the Second Circuit's decision—(*i*) whether New York, Sudanese, or Swiss law applies to Plaintiffs' claims, and (*ii*) whether causation is established. The Second Circuit's decision makes clear that each issue should be resolved in Plaintiffs' favor. As to choice of law, the Second Circuit held that New York's crime victims statute of limitations applies to Plaintiffs when it found that Plaintiffs are the direct victims of BNPP's crimes, and it is from those New York and U.S. crimes that Plaintiffs' claims arise. Under New York choice of law rules applicable here, New York's conduct regulation interest outweighs that of any other jurisdiction and warrants the application of New York law to Plaintiffs' claims. *See Licci v. Lebanese Canadian Bank SAL*, 672 F.3d 155, 158 (2d Cir. 2012).

As to causation, the Second Circuit confirmed that BNPP caused Plaintiffs' injuries by holding that they were victims of BNPP's crimes under § 215(8)(a). Further, the Second Circuit accepted Plaintiffs' allegations as plausible and explained how BNPP's felonious conduct harmed Plaintiffs. This holding may not be revisited on remand. *See Wiercinski v. Mangia 57, Inc.*, 698 F. App'x 8, 9 (2d Cir. 2017) (stating that the "mandate rule prevents re-litigation in the district

---

[1] Capitalized terms not otherwise defined herein have the definitions given to them in Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 80).

1

court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate" (quotation and citation omitted)).

In an effort to snatch victory from the jaws of defeat, BNPP now tortuously argues that the Second Circuit impliedly held that Plaintiffs' claims involve "*jus cogens*" norms (fundamental, overriding principles of international law) to which federal common law applies, and that Plaintiffs' New York tort claims are therefore preempted. This argument is premised on a misreading of the Second Circuit's decision and is unsupported by the law.

First, nowhere in the Second Circuit's decision did the Court find, either expressly or impliedly, that Plaintiffs' claims arose under federal law. Instead, it held that BNPP did not establish its act of state defense because it did not satisfy *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400 (1990). *See Kashef*, 925 F.3d at 60 (stating that the "inquiry [at issue here] is precisely what the Supreme Court in *Kirkpatrick* held was not precluded by the act of state doctrine"). Only as an additional justification for rejecting BNPP's defense, did the Second Circuit observe that the conduct of Sudan, BNPP's co-conspirator, violated the most basic norms of decency.

Second, BNPP's new-found preemption argument is equally flawed. Preemption is unwarranted because there is no conflict arising between the application of state law and foreign policy, especially given that federal and state authorities cooperated to prosecute BNPP for its violations of federal and New York laws. And, BNPP has conceded that state tort law applied to its own criminal conduct at issue here. *See Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 110-11 (D.D.C. 2017), *vacated in part on other grounds by Ofisi v. BNP Paribas, S.A.*, 285 F. Supp. 3d 240 (D.D.C. 2018) (stating that the parties "agree" that D.C. law applies to Ofisi's state common law conspiracy, aiding and abetting, and fraudulent conveyance claims).

2

Third, BNPP did not raise its preemption argument in its motion to dismiss briefing, raising it for the first time on remand. Not only does making this argument now violate this Court's orders that the parties not assert new arguments, *see* ECF Nos. 112 and 115, but also it reflects BNPP's own recognition that this argument is specious.

## ARGUMENT

### I. NEW YORK LAW APPLIES TO PLAINTIFFS' CLAIMS

When confronted with a choice of law question, New York courts "give controlling effect to the law of the jurisdiction [that has] the greatest concern with the specific issue raised in the litigation." *AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*, 661 F. App'x 2, 4 (2d Cir. 2016) (quotation, citation, and alteration omitted). This determination depends on whether the law at issue is conduct-regulating, meaning that the law has "the prophylactic effect of governing conduct to prevent injuries from occurring." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (N.Y. 1994). Though choice of law was not before the Second Circuit, the Court nevertheless made clear that Plaintiffs' claims arise out of BNPP's criminal violation of conduct-regulating rules. It explained, for example, that the "purpose of the sanctions was to prevent Sudan from acquiring funds with which to carry out [various] atrocities." *Kashef*, 925 F.3d at 57; *see also id.* at 55 (stating that the "U.S. Government imposed sanctions on Sudan aimed at halting the genocide"); *id.* at 63 ("Plaintiffs' theory is that BNPP was illegally funding Sudan's commission of atrocities by avoiding U.S. sanctions put in place to protect the Plaintiffs and the purported class, knowing that the funds would be used by Sudan to continue the perpetration of atrocities." (citation omitted)).

Because Plaintiffs' claims are based on conduct-regulating rules, "the law of the place of the tort [has] a predominant, if not exclusive, concern." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198 (N.Y. 1985) (quotation and citations omitted). The facts that the Second Circuit

accepted as true show why New York has the predominant interest in applying its law here, and nothing in its opinion suggests otherwise. *See Kashef*, 925 F.3d at 62 ("Additionally, the Plaintiffs' causes of action arise out of the same occurrence as the criminal prosecution . . . ."). BNPP's criminal misconduct included deliberately modifying transaction messages and using a web of satellite banks, all to evade regulators. *Id*. at 56. Many of those regulators are based in New York and investigated BNPP. *See* SAC (ECF No. 49) ¶ 16. As a result of this malfeasance, Sudan accessed New York's financial markets, which it used to finance its attacks on its citizens.

The Second Circuit further affirmed New York's compelling interest in providing a remedy for victims of New York and federal crimes that occurred in New York when it found that Plaintiffs qualify as victims under § 215(8)(a), which explicitly provides for a civil action when it arises out of the same occurrence as a criminal prosecution. *See Kashef*, 925 F.3d at 62.

The Second Circuit has held that New York law applies in similar circumstances. In *Licci*, it applied New York law to negligence claims asserted by Israeli citizens against American Express Bank, alleging harms suffered by those Israeli citizens in Israel. The Second Circuit held that "New York has the greatest interest" in such a case because "the challenged conduct undertaken by [the bank] occurred in New York," where the bank was headquartered and "administer[ed] its correspondent banking services." *Licci*, 672 F.3d at 158. The facts that "the plaintiffs' injuries occurred in Israel" and that Israel was "also the plaintiffs' domicile" did not control because "the conflict pertains to a conduct-regulating rule." *Id*. As the Second Circuit reaffirmed on rehearing in the same case, if "conflicting conduct-regulating laws are at issue, . . . New York, not [the foreign place of injury], has the stronger interest in regulating the conduct of New York-based banks operating in New York." *Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 49 (2d Cir. 2013).

4

Thus, the Second Circuit's opinion identifies the compelling interests that New York has to apply its law to this suit. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) ("This mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." (quotation omitted)).

### II.  THE SECOND CIRCUIT'S DECISION CONFIRMS THAT PLAINTIFFS SUFFICIENTLY PLEADED THEIR CAUSES OF ACTION UNDER STATE LAW

Plaintiffs pleaded twenty New York law causes of action. The Second Circuit stated the following about the factual allegations underpinning these claims:

> [Plaintiffs] allege, and we must accept as true, that BNPP circumvented U.S. sanctions and provided Sudan with financial resources knowing that Sudan was committing atrocities, knowing that the purpose of the sanctions was to prevent Sudan from acquiring funds with which to carry out those atrocities, and knowing that Sudan's likely purpose in using the U.S financial markets for illegal oil sales was to acquire billions of U.S. dollars to purchase the weapons and materials used by militia forces. *Kashef*, 925 F.3d at 57.

In holding that it "must accept as true" these allegations, the Second Circuit recognized that the allegations are factual and not conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that it is only allegations of fact that federal courts must "accept as true").

The Second Circuit also emphasized the causal link between Plaintiffs' allegations of fact, BNPP's admissions in the Stipulated Statement of Facts, and Plaintiffs' injuries:

> BNPP also conceded that it had knowledge of the atrocities being committed in Sudan and of the consequences of providing Sudan access to U.S. financial markets. Specifically, BNPP admitted that its "central role in providing Sudanese financial institutions access to the U.S. financial system, despite the Government of Sudan's role in supporting terrorism and committing human rights abuses, was recognized by BNPP employees." [Statement of Facts] ¶ 20. . . . The [Statement of Facts] makes clear that despite BNPP's understanding of the likely consequences of its involvement with Sudan, it persisted in illegal conduct on a wide scale because its "business [with Sudan] was profitable." *Id.* ¶ 37. *Kashef*, 925 F.3d at 56.

The Second Circuit also showed that BNPP's criminal conduct caused Plaintiffs' injuries when it

held that they were victims within the meaning of § 215(8)(a).

The causal relationship between BNPP's crimes and Plaintiffs' injuries was This causal relationship satisfies New York law, which permits recovery when plaintiffs' injuries were the "normal or foreseeable consequence" of defendants' misconduct, *Hain v. Jamison*, 28 N.Y.3d 524, 530 (N.Y. 2016), or defendants' illegal activity was a "substantial factor" in causing plaintiffs' harm, *Tutrani v. Cty. of Suffolk*, 10 N.Y.3d 906, 907-08 (N.Y. 2008), and would satisfy the causal standard of any other law that could conceivably apply here.  The Second Circuit's holding that Plaintiffs' injuries were "the likely consequences of [BNPP's] involvement with Sudan" forecloses BNPP's causation argument.  *See Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (explaining that the mandate rule "bars re-litigation of issues already decided on direct appeal" and "issues impliedly resolved by the appellate court's mandate").

### III. BNPP'S ARGUMENTS ARE BARRED BY THIS COURT'S ORDER AND MERITLESS

Perhaps recognizing the inadequacy of its new arguments, BNPP never argued in the initial Motion to Dismiss that federal law governs this suit and that Plaintiffs cannot state a claim under that law.  This fact alone bars BNPP from raising these arguments now.  *See* ECF Nos. 112, 115. Moreover, these arguments are incorrect, as they are based on a misreading of the Second Circuit's opinion and a misunderstanding of choice of law and preemption doctrine.

#### A. BNPP Misrepresents the Second Circuit's Holding

BNPP claims that the Second Circuit "*held* that all of Plaintiffs' claims are premised on violations of *jus cogens* norms" and that such claims "implicate uniquely federal interests" rather than New York law.  *See* Suppl. Br. of Defs. BNP Paribas S.A. and BNP Paribas North America, Inc. in Further Supp. of Their Mot. to Dismiss the Second Am. Compl., ECF No. 117 ("Supp. Br."), at 3, 4 (emphasis added) (citations and alterations omitted).  There was no such holding. The Second Circuit ruled that BNPP's act of state defense was barred by *Kirkpatrick*, which held

6

that the defense is implicated only when a U.S. court must "declare invalid the official act of a foreign sovereign performed within its own territory," 493 U.S. at 405, and not when "the inquiry is simply whether the conduct in question occurred." *Kashef*, 925 F.3d at 59 (citing *Kirkpatrick*, 493 U.S. at 405). Here, the Second Circuit found that the inquiry "is simply whether the atrocities [alleged by Plaintiffs] occurred" and not whether Sudan's actions were valid. *Id*. at 60. Thus, the doctrine did not apply. *Id*.

The fact that Sudan's actions also happened to be *jus cogens* violations was merely an additional justification for rejecting BNPP's affirmative defense. *See id*. at 61-62. This finding was not necessary to the Second Circuit's decision. Moreover, as Judge Chin explained at oral argument, the Second Circuit only considered *jus cogens* norms because BNPP asserted this defense. *See* Oral Arg. Tr. at 24 ("[T]he bank is bringing international law into the picture by invoking the defense. The defense is, act of state doctrine, because these are official acts and now suddenly we have to look at those acts and look at them in the context of international law."). It would be perverse to allow BNPP to turn the Second Circuit's clear denial of an affirmative defense *that BNPP raised* to bar Plaintiffs' claims.

      **B.**    **BNPP's New-Found Preemption Argument Lacks Merit**

Nothing in the Second Circuit's decision supports BNPP's contention that federal common law supplies the sole rule of decision whenever a case has foreign policy implications. *See* Supp. Br. at 3-4. Further, this position, which is a thinly veiled preemption defense, is not supported by the case law. Even in cases that touch on foreign policy, state law can be preempted only if there is "direct conflict" between the application of state law and federal law or foreign policy. *Philipp v. Fed. Republic of Germany*, 894 F.3d 406, 418 (D.C. Cir. 2018). No such conflict exists here.

The cases on which BNPP relies hold that state regulatory schemes can be preempted only when they are incompatible with specific federal statutes and executive agreements that provide

7

an alternative remedy for a plaintiff's claims. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 422-23 (2003) (finding that a federal executive agreement preempted California law where that agreement provided a remedy for the plaintiffs' claims); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373-74 (2000) (finding that federal law preempted a state law that prohibited transactions that federal law specifically allowed).[2]

BNPP has not identified any such incompatibility, nor can it.[3] Federal and state authorities worked together to prosecute BNPP for its criminal violations of U.S. sanctions and N.Y. banking laws. The resulting guilty pleas expressly contemplate civil liability against BNPP flowing from those wrongful criminal acts. *See* Federal Plea Agreement (ECF No. 49-2) at 8; New York Plea Agreement (ECF No. 49-4) ¶ 22. And, Plaintiffs' claims seek compensation for injuries they suffered as a result of the very acts BNPP has pleaded guilty to committing in violation of both New York and U.S. law. There is nothing incompatible with federal law here, and the cases BNPP cites do not support field preemption. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 172 (2d Cir. 2014) (declining to preempt state tort law when the party asserting preemption "identifie[d] no uniquely federal interest in the rules of decision . . . , nor any conflict between a federal policy or

---

[2] *See also Hines v. Davidowitz*, 312 U.S. 52, 59-61 (1941) (explaining why the state and federal laws were incompatible); *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1233 (11th Cir. 2004) (preempting state law after finding that federal law provided a conflicting, alternative remedy for the plaintiffs). BNPP's other cases are similarly inapposite. In *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986), the Second Circuit preempted state law because "a necessary element [of the plaintiff's claim is] whether to honor the request of a foreign government that the American courts enforce the foreign government's directives to freeze property in the United States subject to future process in the foreign state." *Id*. at 354. Similarly, the claims in *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), pertained to the United States' "federal wartime policy-making." *Id*. at 11. BNPP points to no similar foreign or wartime policies that must be addressed here. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981), is completely off-point as it concerns "whether the federal antitrust laws allow a defendant . . . a right to contribution from other participants in the unlawful conspiracy on which recovery was based." *Id*. at 632.
[3] This fact alone is fatal to BNPP's claims. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (stating that "the party asserting that federal law preempts state law bears the burden of establishing preemption").

8

interest and the use of state law").[4]

BNPP cites no New York case, and Plaintiffs found none, for the proposition that New York lacks any interest in applying its law to claims that may also be *jus cogens* violations. Indeed, the cases BNPP cited in support of this claim, *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), and *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), *see* Supp. Br. at 4-5, do not even mention the phrase "*jus cogens*."[5] This makes sense given that *jus cogens* norms govern state action, *see Saleh v. Bush*, 848 F.3d 880, 892-93 (9th Cir. 2017), and BNPP offers no support for the premise that New York lacks an interest in applying its law to provide civil remedies to U.S. citizens and residents suing in diversity against corporations for crimes committed in New York.

### C. Whether Plaintiff Can Plead So-Called *Jus Cogens* Claims is Irrelevant

Once again, BNPP attempts to claim that Plaintiffs have not met causes of action that they have not pleaded. Here, BNPP asserts that Plaintiffs fail to state any claims under federal common law or *jus cogens*. *See* Supp. Br. at 6-9. This is a straw man. Plaintiffs only assert New York state tort claims. They do not assert any federal statutory, federal common law, or so-called *jus cogens* claims, and none of the cases BNPP cited stand for the proposition that Plaintiffs were required to do so. In fact, in *Ofisi*, one of the cases BNPP relied on to support this contention, *see id*. at 8, not only did the District Court consider the plaintiffs' federal claims as distinct from the state common law torts, *compare Ofisi*, 278 F. Supp. 3d at 96-110 (discussing federal statutory claims), *with id*. at 110-12 (discussing state common law claims), *BNPP agreed* that D.C. law applied to Ofisi's state common law claims. *See id*. at 110-11 (stating that the parties "agree" that

---

[4] BNPP's attempt to distinguish *ABB AG* is unpersuasive. BNPP asserts that *ABB AG* is inapplicable because here "the Second Circuit has characterized plaintiffs' claims as premised on *jus cogens* violations." Supp. Br. at 4 n.3. Plaintiffs' claims are not premised on such violations. The Second Circuit did not find otherwise.
[5] Other than the Second Circuit's opinion in this case, *none* of the cases BNPP cites uses the phrase "*jus cogens*."

9

D.C. law applies to Ofisi's common law conspiracy, aiding and abetting, and fraudulent conveyance causes of action).[6]

Moreover, BNPP does not establish that the federal common law or so-called *jus cogens* claims that Plaintiffs supposedly fail to plead even exist in the first place. *Jesner* did not speak to state law claims asserted against a corporation in a diversity suit. Nor does it follow from *Jesner*'s limited holding—which involved claims made by foreign nationals, not, as here, U.S. citizens and permanent residents—that state law claims against such defendants are foreclosed. The only issue in *Jesner* was whether foreign corporations were subject to Alien Tort Statute jurisdiction, which is not at issue here. *See Jesner*, 138 S. Ct. at 1394.[7] Similarly, there is no discussion in any of the four other cases on which BNPP relies—*Kemper v. Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018), *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009), *Ofisi*, or *O'Sullivan v. Deutsche Bank AG*, No. 17-CV-8709-LTS-GWG, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)—about federal common law claims or "*jus cogens* claims." In fact, the words "*jus cogens*" do not even appear in any of these cases.

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 80), Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss. Plaintiffs also renew their request, per Rule 3(E) of the Court's Individual Practices in Civil Cases, that this Court schedule an oral argument on the Motion to Dismiss. *See* ECF No. 91.

---

[6] *Ofisi* does not warrant dismissal here because the causal chain in *Ofisi* is far more attenuated than the one alleged by Plaintiffs. *See Ofisi*, 278 F. Supp. 3d at 91-92 (explaining the causal chain alleged by the plaintiffs).
[7] The Supplemental Brief is not the first time that BNPP misuses *Jesner* to construct a categorical obstacle to Plaintiffs' common law claims. BNPP made the same argument in its Second Circuit brief and at oral argument. *See* Appellee's Br. at 37-38; Oral Arg. Tr. at 15-16. The Second Circuit rejected BNPP's position.

Dated: July 26, 2019                    Respectfully submitted,

By:  */s/ K. Lee Crawford*

K. Lee Crawford
Matthew P. Rand
Pierce Bainbridge Beck Price & Hecht LLP
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071
(213) 262-9333
lboyd@piercebainbridge.com
mrand@piercebainbridge.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to registered participants identified on the Notice of Electronic Filing, and paper or electronic copies will be delivered to those indicated as non-registered participants on July 26, 2019.

/s/ *Herbert Nacion*
Herbert Nacion