# Exhibit 37

# TRANSLATION CERTIFICATION

Date: August 13, 2020

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the document received by this office. The translation was completed from:

- French (France)

To:

- English (USA)

The document is designated as:
- Werro_La responsabilité civile_2017_paras. 1696-1754

Sanam Bibi, Project Coordinator in this company, attests to the following:

"To the best of my knowledge, the aforementioned document is a true, full and accurate translation of the specified document."

_____
Signature of Sanam Bibi

### B. *Perfect joint and several liability*

1696. According to the approach of the Federal Tribunal, joint and several liability is "perfect" when it is prescribed by law, according to the rule in Art. 143 CO (Code des obligations [Swiss Code of Obligations])[2404]. In the application of this rule, joint and several liability is perfect when the debtors accept a common commitment with regard to the creditor (conventional joint and several liability, cf. Art. 143 Para. 1 CO) and when the law prescribes (expressly) joint and several liability (legal joint and several liability, cf. Art. 143 Para. 2 CO). Thus, under civil liability, perfect joint and several liability exists not only when those liable respond to the same damage based on a common wrongdoing (Art. 50 CO) but also, in a more general manner, in the application of every legal disposition that prescribes "joint and several liability"[2405]. This also includes Art. 759 CO, 60 LCR and 7 LRFP. However, the Federal Tribunal retains "imperfect" joint and several liability, or a simple concurrence of claims, when the law has not prescribed any special rules that institute joint and several liability, which is the case of Art. 51 CO, which governs the recourse of the person who paid the creditor vis-à-vis the other responsible parties, in the hypothesis that the latter acted independently of each other[2406].

1697. This approach does not carry any conviction. Talking of perfect joint and several liability where the damage did not result from a common wrongdoing – or a common commitment – is contrary to the reasoning behind the distinction between perfect joint and several liability and imperfect joint and several liability and the implications of this distinction (n. 1721 and n. 1841 et seq.) In the approach defended here, the criterion permitting the retention of perfect joint and several liability should be the existence of common wrongdoing between the co-liable parties or a common commitment between the debtors; in the matter of liability, this hypothesis is realized uniquely

---

[2404] KRAUSKOPF, ad Art. 143, n. 136
[2405] On the traditional approach, cf. C. MÜLLER, Solidarité parfaite, 32 et seq. and 48; DESCHENAUX/TERCIER, § 34 n. 12 et seq.
[2406] TERCIER, 12.

in Art. 50 CO[2407]. In this case, in effect, the different parties who are liable are linked together in a similar manner to those who accept a common commitment, which justifies the application of the rules prescribed by Art. 143 to 149 CO[2408].

1698. It will be noted that certain authors propose doing away with any distinction altogether and extending to all the cases of joint and several liability the application of Art. 144 to 149 CO[2409]. Even though this approach offers the advantage of simplicity (cf. also Art. 421 et seq. BGB (Bürgerliches Gesetzbuch [German Civil Code])), it does not allow for any differentiation to be made between situations that justify a different treatment.

1699. Art. 50 CO prescribes that those who caused the total of the damage through their common wrongdoing are jointly and severally liable to repair the damage. This is a return to the rules of passive joint and several liability (cf. Art. 143 to 149 CO): the authors of the damage are liable for the same debt, in such a way that each of them is liable with regard to the creditor to pay that debt in full, thereby releasing the others from any liability[2410].

1700. According to Art. 144 Para. 1 CO, the injured party may, according to his wishes, impute all the authors or just one of them, making them liable for the full amount or for the amount that the injured party decides to demand. All the debtors remain liable up until the complete exhaustion of the interest of the injured party (cf. Art. 144 Para. 2 CO). It is up to the imputed debtor to assert any possible means of common defense amongst all the debtors (n. 1735). If he does not do this, he shall answer for this vis-à-vis the co-liable parties (cf. Art. 145 Para. 2 CO).

1701. Art. 50 CO deals with the case where several persons collectively cause harm through a common fault[2411]. The common fault presupposes "an association in the harmful activity, the consciousness of collaborating in the result"[2412]. There may be intention or negligence[2413], without any prior agreement being necessary[2414].

1702. **Illustrations**: All those who participate in a fight are liable for the wound that one of the participants receives[2415].

1703. Three children aged nine years old are playing with a bow and arrow. Their game consists of shooting an arrow at one of the participants, who, once hit, then has his turn to shoot. One of the children is struck in the eye and he loses the use of the eye completely. The Federal Tribunal judges that by playing together as they

were, the children committed a common wrongdoing that implicates their joint and several liability within the meaning of Art. 50 Para. I CO. It is of little import that the arrow that struck the eye of the injured party was shot by one of the children alone (ATF 104 II 184).

---

[2407] Cf. WERRO, Quelques Principes, 15; Id., Pluralité des responsables, 30; apparently of the same opinion, PICHONNAZ, Prescription, 157 and PROBST, 55 and 66.
[2408] BREHM, ad Art. 50 n. 30; TERCIER, 126; REY, n.1418.
[2409] Cf. SCHWENZER, n. 88.11 et seq.; HONSELL/ISENRING/KESSLER, § 11 n. 13.
[2410] Cf. ROMY, ad Art. 143 n. 1.
[2411] TERCIER, 126; KELLER II, 169.
[2412] DESCHENAUX/TERCIER, § 35 n. 4; MAZAN, ad Art.50 N. 8 et seq.; BREHM, ad Art.50 n. 7 et seq.; ATF 127 III 257, c. 6a.
[2413] OFTINGER/STARK II/I, § 16, n.324 et seq.
[2414] AFT 115 II 42, JdT 1989 I 531; ATF 104 II225, JdT 1979 I 546; TERCIER, 126
[2415] Cf. BREHM, ad Art.50 n. 10a

1704. Art. 50 Para. I CO also assumes a causal link between the damage and the common wrongdoing. Thus, when several persons participate in a dangerous activity, it is of little importance to know whose behavior is the direct cause of the damage[2416]. In this respect, the separate actions of the different authors do not have a determining quality, but simply the common will (whether conscious or not) of the latter to realize the damage[2417].

1705. The question of knowing whether, in an independent manner, Art. 50 Para. 1 CO bases the liability of the authors involved in the occurrence of the damage, has received a negative response for a long time. In this concept, the application of Art. 50 Para. 1 CO assumes that each participant fulfils the conditions of Art. 41 CO[2418]. Recent literature, in contrast, sees a norm in Art. 50 CO that creates, in contrast to Art. 41 CO (or Art. 97 CO), the implied liability of the wrongdoers ("*Haftungsbegründende Norm*" [justificatory norm]), without it being necessary that the act of each person should be the cause of the damage suffered in an unlawful manner[2419]. This opinion is compelling. Effectively, it must be accepted that once a causal link has been established between *the common wrongdoing* and the damage, Art. 50 CO extends liability to all the participants, including those whose action does not have a direct link to the damage (for example, the instigator[2420] or the accomplice[2421]). In the case of a common wrongdoing within the meaning of Art. 50 Para. I CO, the illegal action – beside that of the principal author – lies in the fact of participation (intentionally or through negligence) in the occurrence of the damage. If the Federal Tribunal has not expressly voiced an opinion in the controversy, that is because the approach defended here has always found clear support in its jurisprudence. The solution regarding imperfect joint and several liability is a different matter, in which no perpetrator is deemed liable to pay compensation for the damage that he did not cause (cf. ATF 127 III 257, JtD 2002 I 249; n. 725).

1706. Turning to the external aspect, the level of participation of the different tortfeasors has no influence. The injured party may claim compensation for the whole of the damage suffered from the instigator, the principal author or the accomplice, since they are jointly and severally responsible for it[2422]. However, the intermediary is excluded from this joint and several liability: he is not liable for the damage unless he received some of the gains or unless he caused the damage through the fact of his collaboration (cf. Art. 50 Para. 3 CO).

    C.    *Imperfect joint and several liability*

1707. In this solution that has been established, imperfect joint and several liability remains reserved for Art. 51 CO, since this disposition does not expressly prescribe the joint and several liability of those responsible (cf. with Art. 50 Para. 1 CO; Art. 143 Para. 2 CO)[2423]. Nevertheless, in this case, the

---

[2416] ATF 104 II 184, c. 2.

[2417] BREHM, ad Art.50 n. 7 et seq.

[2418] OFTINGER/STARK II/I, § 16 n. 318; CASANOVA, 31 and 40 s.

[2419] FELLMANN/KOTTMANN, n. 2873; MÜLLER, RC, n. 835 and 837 et seq., which is based on the opinion of BRUNNER, n. 312; and WEBER, Solidarität und Kausalität, 123, who were the first to articulate this new approach.

[2420] ATF 57 II 417, JtD 1932 I 345.

[2421] ATF 71 II 107.

[2422] BREHM, ad Art.50 n. 23; KRAUSKOPF, ad Art. 143 n. 172.

[2423] KRAUSKOPF, ad Art. 143, n. 112 and 136; DESCHENAUX/TERCIER, § 34 n. 15; KELLER II, 170.

Federal Tribunal applies the rules of joint and several liability by analogy (cf. Art. 143 et seq. CO), with the exclusion of Art. 136 and 149 CO[2424].

1708. In the approach defended here, imperfect joint and several liability must include all the cases that are based on a number of responsible parties who are not linked by a common wrongdoing (n. 1697), in other words all those cases where there is not a pre-existing link, or any conscious collaboration, whether voluntary or not (cf. e.g. Art. 759 CO and 7 LRFP)[2425] between those responsible. Accordingly, the following analysis is based not only on Art. 51 CO, but also on the joint and several liability prescribed by the LCR (Art. 60 Para. 1 and 61 Para. 3 LCR) since in this matter the persons sharing liability no longer answer (in principle) for a common wrongdoing.

    1.       Joint and several liability based on Art. 51 CO

1709. Art. 51 CO does not deal with anything apart from internal relationships since it governs the remedy between co-obligated persons who respond to the same damage on the basis of legally distinct causes[2426]. The existence of this remedy presupposes, however, a concurrence of claims in favor of the injured party (external relationships), which the law does not, however, mention expressly[2427].

1710. **Illustrations**: A cyclist knocks over a pedestrian following an awkward maneuver, caused by the equally awkward behavior of another cyclist. Each of the cyclists did something wrong, but in an independent fashion[2428].

1711. A tenant vouches for a matter vis-à-vis the landlord together with a sub-tenant or the insurer of the object[2429].

1712. In the matter of the construction of the villa, client B. entrusts the work to Z. and the supervision of the work to architect D. As a result of problems with the waterproofing the parties consult engineer T. With the agreement of the architect, the engineer prescribes some consolidation measures that turn out to be insufficient. The building is damaged. If it were to be admitted that the engineer, the architect and the …

[…]

1753. Logically, and when applying the law (Art. 149 CO) which provides for this (Art. 143 Para. 2 CO), the creditor claiming recourse should therefore benefit from the joint and several liability that existed in the relationships (external) between the principal creditor and his debtors who are jointly and severally liable. Contrary to what was held by the Federal Tribunal and in the legal literature (including what was being defended in the previous edition), the creditor claiming recourse should, as a consequence, be able to claim from each of the debtors who are jointly and severally liable, the reimbursement in full of the excess part that he paid[2430].

---

[2424] ATF 133 III 6, c. 5.3.4.; TF, 4C.27/2003, c.3.4, SJ 2003 I 597; TERCIER, 129 s.; PICHON-NAZ, ad Art. 136 n. 4. In a different opinion, GAUCH/SCHLUEP/SCHMID/EMMENEGGER, n. 3752, 3754; cf. e.g. GAUCH, 246; PROBST, 56 s.
[2425] TERCIER, 127.
[2426] ATF 130 III 362, c. 5.2; ATF 115 II 42, c. 1b, JdT,1989 I 531.
[2427] Cf. BREHM, ad Art. 50 n. 6; ZAHND, 27 s.
[2428] DESCHENAUX/TERCIER, § 35 n. 12 et seq.
[2429] DESCHENAUX/TERCIER, § 35 n. 13 s.
[2430] WERRO/PERRITAZ, Recourse de l'associé, 47.

1754. To affirm the contrary would mean to privilege, wrongly, the other joint and several debtors who have not paid, to the detriment of the one who has overpaid. Nothing justifies that. On the contrary, the one who pays the main creditor takes upon himself a part of the debt of the others. In so doing, he deserves in return that said others should assume the consequences of joint and several liability by each of them remaining a debtor to the whole of the remaining part[2431].

---

[2431] WERRO/PERRITAZ, Recourse de l'associé, 47.

1695  Malgré les critiques[2325], le Tribunal fédéral a confirmé de manière constante la distinction entre la solidarité parfaite et la solidarité imparfaite[2326]. Les développements qui suivent démontreront que la distinction trouve sa justification, même si, dans la conception ici défendue, elle devrait reposer sur un autre critère que celui retenu par le Tribunal fédéral. Les implications pratiques de la distinction feront en outre l'objet d'une analyse plus loin (n. 1722 ss et n. 1841 ss).

### B. La solidarité parfaite

1696  Dans l'approche du Tribunal fédéral, la solidarité est « parfaite » lorsqu'elle est prévue par la loi, conformément à la règle de l'art. 143 CO[2327]. En application de cette règle, la solidarité est parfaite lorsque les débiteurs prennent un engagement commun à l'égard du créancier (solidarité conventionelle, cf. art. 143 al. 1 CO) et lorsque la loi prévoit (expressément) la solidarité (solidarité légale, cf. art. 143 al. 2 CO). Ainsi, en droit de la responsabilité civile, il y a solidarité parfaite non seulement lorsque les responsables répondent d'un même dommage en raison d'une faute commune (art. 50 CO), mais aussi, de manière plus générale, en application de toute disposition légale prévoyant la « solidarité »[2328]. On y inclut notamment les art. 759 CO, 60 LCR et 7 LRFP. A l'inverse, le Tribunal fédéral retient la solidarité « imparfaite » ou simple concours d'actions lorsque la loi n'a pas prévu de règles spéciales instituant la solidarité : c'est le cas de l'art. 51 CO, qui règle le recours de celui qui a payé le créancier contre les autres responsables dans l'hypothèse dans laquelle ces derniers ont agi indépendamment l'un de l'autre[2329].

1697  Cette approche n'emporte pas la conviction. Parler de solidarité parfaite là où le préjudice ne résulte pas d'une faute commune – ou d'un engagement commun – est contraire à la raison d'être de la distinction entre la solidarité parfaite et la solidarité imparfaite et aux implications de cette distinction (n. 1721 et n. 1841 ss). Dans la conception ici défendue, le critère permettant de retenir une solidarité parfaite devrait être l'existence d'une faute commune entre les coresponsables ou d'un engagement commun entre les débiteurs ; en matière de responsabilité, cette hypothèse est réalisée uniquement à l'art. 50 CO[2330]. Dans ce cas en effet, les différents responsables sont liés entre eux de manière semblable à ceux qui prennent un engagement commun, ce qui justifie l'application des règles prévues par les art. 143 à 149 CO[2331].

1698  On notera que certains auteurs proposent de renoncer à toute distinction et d'étendre à tous les cas de solidarité l'application des art. 144 à 149 CO[2332]. Si cette approche présente peut-être l'avantage de la simplicité (cf. aussi art. 421 ss BGB), elle ne permet pas de distinguer des situations qui justifient un traitement différent.

1699  L'art. 50 CO prévoit que ceux qui ont causé ensemble un dommage par leur faute commune sont tenus de réparer solidairement ce dommage. Il s'agit d'un renvoi aux règles de la solidarité passive (cf. art. 143 à 149 CO) : les auteurs du dommage sont tenus d'une même dette, de telle sorte que chacun d'eux est tenu à l'égard du créancier de payer cette dette intégralement avec effet libératoire pour les autres[2333].

1700  Selon l'art. 144 al. 1 CO, le lésé peut, à son choix, rechercher tous les auteurs ou l'un d'eux, pour le tout ou pour le montant qu'il décide de réclamer. Tous les débiteurs restent obligés jusqu'au désintéressement complet du lésé (cf. art. 144 al. 2 CO). Il appartient au débiteur recherché de faire valoir d'éventuels moyens de défense communs à tous les débiteurs (n. 1735) ; s'il ne le fait pas, il en répond vis-à-vis de ses coobligés (cf. art. 145 al. 2 CO).

1701  L'art. 50 CO vise l'hypothèse où plusieurs personnes causent ensemble un préjudice par une faute commune[2334]. Cette faute suppose « une association dans l'activité dommageable, la conscience de collaborer au résultat »[2335]. Il peut s'agir d'une faute intentionnelle ou d'une négligence[2336], sans qu'une véritable concertation préalable soit nécessaire[2337].

**Illustrations** : Tous ceux qui participent à une bagarre répondent de la blessure que subit un des participants[2338].

1702

1703  Trois enfants âgés de neuf ans jouent avec un arc et une flèche. Le jeu consiste à atteindre avec la flèche l'un des participants qui, une fois touché, tire à son tour. L'un des enfants est atteint à l'œil ; il en perd totalement l'usage. Le TF juge qu'en jouant

---

[2325] Pour une critique fondamentale de cette distinction, cf. CORBOZ, Distinction, 113 ss ; cf. ég. BREHM, ad art. 51 n. 55 ; KRAUSKOPF, ad art. 143, n. 154 ss ; DESCHENAUX/TERCIER, § 36 n. 18 ; OFTINGER/STARK I, § 10 n. 14 ; ZAHND, 49 s. L'AP RC propose de supprimer cette distinction en faveur d'un régime unique : cf. WIDMER/WESSNER, 167.
[2326] ATF 133 III 6, c. 5.3.1.
[2327] KRAUSKOPF, ad art. 143, n. 136.
[2328] Sur l'approche traditionnelle, cf. C. MÜLLER, Solidarité parfaite, 32 ss et 48 ; DESCHENAUX/TERCIER, § 34 n. 12 ss.
[2329] TERCIER, 12.
[2330] Cf. WERRO, Quelques principes, 15 ; Id., Pluralité des responsables, 30 ; apparemment du même avis, PICHONNAZ, Prescription, 157 et PROBST, 55 et 66.
[2331] BREHM, ad art. 50 n. 30 ; TERCIER, 126 ; REY, n. 1418.
[2332] Cf. SCHWENZER, n. 88.11 ss ; HONSELL/ISENRING/KESSLER, § 11 n. 13.
[2333] Cf. ROMY, ad art. 143 n. 1.
[2334] TERCIER, 126 ; KELLER II, 169.
[2335] DESCHENAUX/TERCIER, § 35 n. 4 ; MAZAN, ad art. 50 N. 8 ss ; BREHM, ad art. 50 n. 7 ss ; ATF 127 III 257, c. 6a.
[2336] OFTINGER/STARK II/1, § 16, n. 324 ss.
[2337] ATF 115 II 42, JdT 1989 I 531 ; ATF 104 II 225, JdT 1979 I 546 ; TERCIER, 126.
[2338] Cf. BREHM, ad art. 50 n. 10a.

ensemble comme ils l'ont fait, les enfants ont commis une faute commune qui engage leur responsabilité solidaire au sens de l'art. 50 al. 1 CO. Peu importe que la flèche qui a atteint l'œil du lésé ait été tirée par un seul des enfants (ATF 104 II 184).

1704   L'art. 50 al. 1 CO suppose aussi un lien de causalité entre le dommage et la faute commune. Ainsi, lorsque plusieurs personnes participent ensemble à une activité dangereuse, il importe peu de savoir quel comportement est la cause directe du dommage[2339] : à cet égard, les actions séparées des différents auteurs ne sont pas déterminantes, mais uniquement la volonté commune (consciente ou non) de ces derniers de réaliser le dommage[2340].

1705   La question de savoir si, de manière indépendante, l'art. 50 al. 1 CO fonde la responsabilité des auteurs impliqués dans la survenance du dommage a longtemps trouvé une réponse négative. Dans cette conception, l'application de l'art. 50 al. 1 CO supposait que chaque participant remplisse les conditions de l'art. 41 CO[2341]. La doctrine récente voit en revanche dans l'art. 50 CO une norme qui crée, autrement que l'art. 41 CO (ou l'art. 97 CO), la responsabilité des auteurs du dommage impliqués (« Haftungsbegründende Norm »), sans qu'il soit nécessaire que l'acte de chacun soit la cause du dommage subi de manière illicite[2342]. Cet avis emporte la conviction. En effet, il faut accepter qu'une fois qu'on a établi le lien de causalité entre *la faute commune* et le dommage, l'art. 50 CO étend la responsabilité à tous les participants, y compris à ceux dont l'acte n'est pas en lien de causalité directe avec le dommage (p. ex. l'instigateur[2343] ou le complice[2344]). En cas de faute commune au sens de l'art. 50 al. 1 CO, l'acte illicite – en dehors de celui de l'auteur principal - réside dans le fait de participer (intentionnellement ou par négligence) à la survenance du dommage. Si le TF ne s'est pas expressément prononcé sur la controverse, c'est parce que l'approche ici défendue a toujours trouvé un clair appui dans sa jurisprudence. Autre est la solution en matière de solidarité imparfaite, où aucun auteur ne peut devoir réparer un dommage qu'il n'a pas causé (cf. ATF 127 III 257, JdT 2002 I 249 ; n. 725).

1706   Sur le plan externe, l'intensité de la participation des différents auteurs n'a pas d'influence. Le lésé peut réclamer la réparation de l'entier de son dommage à l'instigateur, l'auteur principal ou le complice puisqu'ils en répondent solidairement[2345]. En revanche, le receleur est exclu de la solidarité : il n'est tenu du dommage que s'il a reçu une part du gain ou s'il a causé un préjudice du fait de sa collaboration (cf. art. 50 al. 3 CO).

### C. La solidarité imparfaite

1707   Dans la solution consacrée, la solidarité imparfaite est réservée à l'art. 51 CO puisque cette disposition ne prévoit pas expressément la solidarité des responsables (comp. avec l'art. 50 al. 1 CO ; art. 143 al. 2 CO)[2346]. Dans ce cas néanmoins, le Tribunal fédéral applique par analogie les règles de la solidarité (cf. art. 143 ss CO), à l'exception des art. 136 et 149 CO[2347].

1708   Dans la conception ici défendue, on doit comprendre dans la solidarité imparfaite tous les cas qui relèvent d'une pluralité de responsables qui ne sont pas liés par une faute commune (n. 1697), à savoir tous ceux dans lesquels il n'y a entre les responsables ni lien préalable, ni collaboration consciente, voulue ou non (cf. p. ex. art. 759 CO et 7 LRFP)[2348]. L'analyse qui suit porte dès lors non seulement sur l'art. 51 CO, mais également sur la solidarité prévue par la LCR (art. 60 al. 1 et 61 al. 3 LCR) puisqu'en cette matière les coresponsables ne répondent (en principe) pas non plus d'une faute commune.

#### 1.   La solidarité fondée sur l'art. 51 CO

1709   L'art. 51 CO ne traite que des rapports internes puisqu'il régit le recours entre coobligés qui répondent d'un même dommage sur la base de causes juridiques distinctes[2349]. L'existence de ce recours présuppose toutefois celle d'un concours d'actions en faveur du lésé (rapports externes), que la loi ne mentionne toutefois pas expressément[2350].

1710   **Illustrations** : Un cycliste renverse un piéton suite à une manœuvre maladroite, occasionnée par le comportement tout aussi maladroit d'un autre cycliste. Chacun des deux cyclistes a commis une faute, mais à titre indépendant[2351].

1711   Un locataire répond d'une chose envers le bailleur aux côtés d'un sous-locataire ou de l'assureur de la chose[2352].

1712   En vue de la construction d'une villa, le maître d'ouvrage B. confie des travaux d'entreprise à Z. et la direction des travaux à l'architecte D. Suite à des problèmes d'étanchéité, les parties consultent l'ingénieur T. D'entente avec l'architecte, l'ingénieur prescrit des mesures de consolidation qui se révèlent insuffisantes. La construction est endommagée. Si on admet que l'entrepreneur, l'architecte et l'in-

---

[2339]   ATF 104 II 184, c. 2.
[2340]   BREHM, ad art. 50 n. 7 ss.
[2341]   OFTINGER/STARK II/1, § 16 n. 318 ; CASANOVA, 31 et 40 s.
[2342]   FELLMANN/KOTTMANN, n. 2873 ; MÜLLER, RC, n. 835 et 837 ss, qui se fondent sur les avis de BRUNNER, n. 312 ; et WEBER, Solidarität und Kausalität, 123, qui, les premiers, ont articulé cette nouvelle approche.
[2343]   ATF 57 II 417, JdT 1932 I 345.
[2344]   ATF 71 II 107.
[2345]   BREHM, ad art. 50 n. 23 ; KRAUSKOPF, ad art. 143 n. 172.

[2346]   KRAUSKOPF, ad art. 143, n. 112 et 136 ; DESCHENAUX/TERCIER, § 34 n. 15 ; KELLER II, 170.
[2347]   ATF 133 III 6, c. 5.3.4 ; TF, 4C.27/2003, c. 3.4, SJ 2003 I 597 ; TERCIER, 129 s. ; PICHONNAZ, ad art. 136 n. 4. D'un avis différent, GAUCH/SCHLUEP/SCHMID/EMMENEGGER, n. 3752, 3754 ; cf. ég. GAUCH, 246 ; PROBST, 56 s.
[2348]   TERCIER, 127.
[2349]   ATF 130 III 362, c. 5.2 ; ATF 115 II 42, c. 1b, JdT 1989 I 531.
[2350]   Cf. BREHM, ad art. 50 n. 6 ; ZAHND, 27 s.
[2351]   DESCHENAUX/TERCIER, § 35 n. 12 ss.
[2352]   DESCHENAUX/TERCIER, § 35 n. 13 s.

1753    Très logiquement, et en application de la loi (art. 149 CO) qui le prévoit (art. 143 al. 2 CO), le créancier récursoire devrait donc bénéficier de la solidarité qui existait dans les rapports (externes) entre le créancier principal et ses débiteurs solidaires. Contrairement à ce que retiennent le Tribunal fédéral et la doctrine (y compris celle défendue dans la précédente édition), le créancier récursoire devrait en conséquence pouvoir réclamer à chacun des débiteurs solidaires le remboursement de l'entier de la part qu'il a payée en trop[2402].

1754    Affirmer le contraire reviendrait à privilégier, à tort, les autres débiteurs solidaires qui n'ont pas payé au détriment de celui qui a trop payé. Rien ne le justifie. Au contraire, celui qui paie le créancier principal prend sur lui en partie la dette des autres. De ce fait, il mérite en contrepartie de ces derniers qu'ils assument les conséquences de la solidarité en restant chacun débiteur de l'entier de la part résiduelle[2403].

### B. La solidarité parfaite

#### 1. Le droit de recours selon l'art. 50 CO

1755    Dans l'approche du Tribunal fédéral, l'art. 50 CO prévoit une solidarité parfaite puisque la loi la mentionne expressément (cf. al. 1), conformément à la règle de l'art. 143 al. 2 CO[2404]. Il en résulte que, dans les rapports internes, les art. 148 et 149 CO sont directement applicables[2405].

1756    Dans la conception ici défendue, cette solution se justifie mais pour des raisons différentes. On doit en effet rapprocher l'association délictuelle (art. 50 CO) de l'engagement commun (art. 143 al. 1 CO). Dans les deux cas, les débiteurs sont liés entre eux, ce qui justifie l'application directe des règles de la solidarité (n. 1697).

1757    La doctrine dominante admet que l'action récursoire du débiteur qui a payé le créancier au-delà de sa part a deux fondements cumulatifs possibles, à savoir un droit de recours indépendant fondé sur l'art. 148 al. 2 CO et un recours découlant de la subrogation prévue à l'art. 149 CO[2406]. Dans cette approche, le créancier récursoire disposerait ainsi de deux prétentions parallèles[2407].

1758    Ce double fondement de l'action récursoire semble reposer sur l'idée selon laquelle le demandeur, limité par les effets de la subrogation, notamment en relation avec la prescription de l'action principale, doit pouvoir disposer d'une action propre, soumise à un délai de prescription différent et, par définition, plus favorable (n. 1766)[2408].

1759    Dans la conception ici défendue, reconnaître un droit de recours fondé sur la subrogation et, en plus, un droit de recours indépendant est contradictoire. Cette approche revient en effet à traiter le créancier récursoire comme s'il n'y avait pas de subrogation. Il faut donc retenir que le droit de recours du créancier récursoire est dans tous les cas modalisé par les règles de la subrogation[2409].

1760    La subrogation trouve sa justification dans la spécificité de la solidarité parfaite. Bien comprise, celle-ci résulte de la situation dans laquelle plusieurs personnes ont causé ensemble un même dommage ou ont pris un engagement commun (n. 1697). A l'évidence, cette situation se caractérise par le fait qu'il existe une relation entre ces personnes qui précède celle qui se crée avec le créancier principal. Or c'est bien cette relation qui justifie la subrogation et ainsi l'opposition à celui qui a payé le créancier principal du rapport que ce dernier avait avec les autres responsables. Le responsable qui paie le créancier principal connaît ses coobligés et doit se laisser opposer le fait qu'il a agi ou qu'il s'est engagé avec eux[2410].

1761    La subrogation est une cession légale, en ce sens que les droits de la victime sont transférés à celui qui exerce le recours par le seul effet de la loi[2411]. Cela signifie que le créancier récursoire peut réclamer des autres responsables ce que la victime principale pouvait exiger d'eux : ni plus, ni moins.

1762    Conscient qu'il est impossible d'établir abstraitement un classement des responsables ou un ordre de priorité des facteurs justifiant le recours[2412], le législateur a confié au juge le soin de décider si la personne qui a payé a un droit de recours et, le cas échéant, quelle en est l'étendue (art. 50 al. 2 CO). C'est donc à lui de décider de la répartition du poids de la réparation entre les divers responsables[2413]. Pour ce faire, le juge doit tenir compte de toutes les circonstances[2414]. Sa décision dépendra avant tout de la gravité des fautes de chacun des coresponsables[2415]. L'auteur immédiat et l'instigateur doivent par conséquent supporter une plus grande part de responsabilité que le complice[2416]. Le juge doit également retenir d'autres circonstances relevantes du cas, en examinant par exemple dans l'intérêt de qui l'acte dommageable a été commis[2417]. Il doit aussi prendre en considération les excep-

---

[2402]    WERRO/PERRITAZ, Recours de l'associé, 47.
[2403]    WERRO/PERRITAZ, Recours de l'associé, 47.
[2404]    KRAUSKOPF, ad art. 143, n. 136.
[2405]    BREHM, ad art. 50 n. 30 ; DESCHENAUX/TERCIER, § 34 n. 14 ; C. MÜLLER, Solidarité parfaite, 39.
[2406]    Cf. BREHM, ad art. 50 n. 56 ; FELLMANN/KOTTMANN, n. 2918 ; GAUCH/SCHLUEP/SCHMID/ EMMENEGGER, n. 3746 ; C. MÜLLER, n. 787 ; ROMY, ad art. 149 n. 1 ; SCHWENZER, n. 88.40.
[2407]    Pour tous, cf. BREHM, ad art. 50 n. 56.
[2408]    WERRO/PERRITAZ, Recours de l'associé, 44 ss.
[2409]    WERRO/PERRITAZ, Recours de l'associé, 44 ss.
[2410]    WERRO, Quelques principes, 24 ss.
[2411]    GAUCH/SCHLUEP/TERCIER, n. 1232 ; CORBOZ, Distinction, 67.
[2412]    BUGNON, 63.
[2413]    BUGNON, 63 ; KELLER II, 186.
[2414]    DESCHENAUX/TERCIER, § 36 n. 20 ; REY, n. 1504.
[2415]    REY, n. 1504.
[2416]    OFTINGER/STARK II/1, § 16 n. 339 ; GRABER, ad art. 50 n. 25 ; BREHM, ad art. 50 n. 58.
[2417]    REY, n. 1504.