**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*,<br><br>      *Plaintiffs*,<br><br>      v.<br><br>BNP PARIBAS S.A., BNP PARIBAS S.A. NEW YORK BRANCH, and BNP PARIBAS US WHOLESALE HOLDINGS, CORP. (f/k/a/ BNP PARIBAS NORTH AMERICA, INC.),<br><br>      *Defendants*. | No. 1:16-cv-03228-AJN |

**DECLARATION OF FRANZ WERRO,**

**PROFESSOR OF LAW AT THE UNIVERSITY OF FRIBOURG AND GEORGETOWN UNIVERSITY LAW CENTER AND PRESIDENT OF THE COUNCIL OF THE SWISS INSTITUTE OF COMPARATIVE LAW**

I, Franz Werro, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. As stated in my previous declaration in this matter,[1] I am a tenured Professor of Law at Fribourg University Law School in Switzerland, where I have held the Chair of the Law of Obligations and European Private Law since 1994. I am also a tenured Professor of Law at Georgetown University Law Center, where I have taught International Sales Law, Privacy Law, and Comparative Law since 2001. The Swiss Government has appointed me as the President of the Council of the Swiss Institute of Comparative Law.

2. I was previously asked by the plaintiffs to address whether the plaintiffs have stated an actionable claim against the BNPP defendants for accomplice liability under Article 50, paragraph 1 of the Swiss Code of Obligations ("CO"). As the Court observed in its February 16, 2021 Opinion ("Opinion"), I have "written extensively on Article 50.1" and have "been cited by the Swiss Supreme Court on this precise provision."[2] The Court's Opinion adopted my expert views on the interpretation and application of Article 50 CO and held that the plaintiffs' allegations state a claim for relief under Article 50 CO:

> The Court therefore finds Professor Werro's descriptions of Article 50.1 and the surrounding case law to be coherent, credible, and supported by Swiss case law. In contrast, Professor Roberto's interpretation is unsupported by, and at times inconsistent with, those cases. The Court adopts Professor Werro's view that Article 50.1 allows liability if an accomplice "intentionally or unintentionally assists the illicit act of the perpetrator who himself is also at fault." Werro Dec. ¶ 33. And the Court agrees that, as applied to this case, Plaintiffs must "allege, at a minimum, that BNPP consciously cooperated with the Sudanese government by providing financial support and that it knew or should have known, had it exercised due care, that its support would contribute to the Sudanese government's violation of human rights." Werro Dec. ¶ 35.[3]

---

[1] Supp. Decl. of Franz Werro, *Kashef v. BNP Paribas SA*, No. 16-cv-3228 (AJN), ECF 174.
[2] *Kashef v. BNP Paribas SA*, No. 16-cv-3228 (AJN), 2021 WL 603290, at *3 (S.D.N.Y. Feb. 16, 2021).
[3] *Id.* at *4.

1

3. I have reviewed the Court's Opinion and agree with its reasoning and conclusions. The Court's examination of the relevant jurisprudence and scholarly works was thorough, well-founded, and methodologically sound from a Swiss law perspective.

4. I have been asked by counsel for the plaintiffs to address whether there has been any change or development in Swiss law that would warrant reconsideration of the Court's Opinion.

5. My answer is no. Since February 2021, there has been no change in the statute, no new Swiss court decision, and no new doctrinal work that would warrant re-examining the Court's Opinion or lead to a different outcome.

6. There has been a change, however, in BNPP's expert on Swiss law. BNPP has now retained Professor Isabelle Romy. *See* Decl. of Prof. Isabelle Romy (ECF 264) ("Romy Decl."). Professor Romy has had a distinguished career. But respectfully, she has even less expertise on Article 50 CO than BNPP's previous expert, Professor Vito Roberto. Professor Romy has never published any scholarly work on Article 50 CO that I am aware of. Nor, as far as I know, has she been cited as an authority by any court on Article 50 CO, which, given the significance of scholarly work to the legal doctrine set forth by the Swiss Federal Supreme Court, undermines her authority on the subject.[4]

7. Further, Professor Romy does not point to any Swiss case that the Court did not consider in its Opinion. She does not cite any cases, at all. She makes no argument not already raised by Professor Roberto. She does not even attempt to point out an error in the Court's Opinion.

8. The sum of Professor Romy's opinion appears to be that Article 50 CO is too "controversial" to be applied in this case. Romy Decl. ¶ 41. Once again, the BNPP defendants are

---

[4] Supp. Decl. of Franz Werro ¶¶ 17-19.

attempting to convince the Court that there is a muddle of confusion, doubt, and unsettled issues as to the application of Article 50 CO, when the reality is that the Swiss Federal Supreme Court's jurisprudence on Article 50 CO is consistent with itself and with this Court's Opinion. The Swiss Federal Supreme Court has not considered Article 50 CO a controversial and unsettled area of the law. If it had, Professor Romy no doubt would have cited such a case—but there is none for her to cite for this point.

9. Professor Romy first claims there is no "clear analogy in existing Swiss case law." Romy Decl. ¶ 39. But this is clearly wrong: the Swiss Federal Supreme Court's jurisprudence on Article 50 CO features cases where defendants who provided otherwise innocuous business services were held liable as accomplices in torts, including: an innkeeper serving alcohol to soldiers who held a shooting contest;[5] an accounts manager providing financial assistance to a locksmith who violated a competitor's trademark;[6] and an antenna operator providing routine broadcast infrastructure to a cable company who distributed copyright-infringing content.[7] In 1981, the Swiss Federal Supreme Court had not previously decided a case accusing an antenna operator of complicity in the broadcast of infringing cable programs, but that did not prevent it from applying Article 50 CO to a novel set of facts. These analogies were considered by this Court in this matter and accepted as well.[8]

10. As the Court understood it, Article 50 CO is a statutory provision of general applicability. It governs any subject matter and any normative category of defendant or conduct. There is no statutory exemption for financial service providers that limits their liability for harms

---

[5] Ex. 1, *Shooting Contest Case*, BGE 71 II 107.
[6] Ex. 2, *Locksmith Case*, 4A_185/2007.
[7] Ex. 3, *Rediffusion Case*, BGE 107 II 82.
[8] *Kashef*, 2021 WL 603290, at *4.

3

inflicted by their clients with their assistance. Moreover, an exemption to a statute cannot be inferred from the absence of a prior judicial precedent on the identical fact pattern. There was no innkeeper's exemption from Article 50 CO liability simply because the Swiss Federal Supreme Court had not addressed it prior to the *Shooting Contest Case*.

11.     Professor Romy also asserts that the scope of liability under Article 50, paragraph 1 CO "remains the topic of extensive debates among legal scholars." Romy Decl. ¶ 40. Yet, of the four scholarly works she claims are engaged in this ongoing debate, one is a decades-old work by the eminent scholars Karl Oftinger, who passed away in 1977, and Emil Stark, who passed away in 2006. Another two are recent works by myself and Dr. Vincent Perritaz, which are in complete accord with the reasoning of the Court's Opinion and contemporary jurisprudence of the Swiss Federal Supreme Court as well as other scholarly works discussed in my previous declaration. One can hardly say this remains an extensive debate.[9] Article 50 CO, or the application of Swiss law to cases such as this, is hardly a controversy.

12.     Professor Romy claims that this case will "receive special attention by Swiss scholars." Romy Decl. ¶ 41. As one of the principal scholars in this area, I have not seen such special attention in the Swiss legal academy yet. While this case may generate comments, including positive ones, I am not aware of any colloquia, conferences, or special journal issues dedicated to it so far. Aside from myself and the scholars hired by BNPP, the only recent commentary has been two case notes in 2020 and 2021 published by Professor Widmer Lüchinger. Prior to these, Professor Widmer Lüchinger had never published anything on Article 50 CO. Professor Romy cites these case notes as her sole examples of a controversy. In my opinion, I do

---

[9] Should the Court be interested in a deeper examination of Swiss legal scholarship, I address scholarly writings in my previous declaration.

not believe that the publication of a single scholar's case notes should impede this case from proceeding.

13. In conclusion, there has been no change in Swiss law that would warrant re-examining the Court's Opinion or lead to a different outcome. The Court's February 16, 2021 Opinion was correctly decided.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of February, 2022.

_____
Franz Werro

5