# Exhibit K

Urteilskopf

133 III 6

2. Extrait de l'arrêt de la Ire Cour civile dans la cause X. contre Y. SA et dans la cause Y. SA contre X. et Z. SA (recours en réforme)
4C.368/2005 / 4C.370/2005 du 26 septembre 2006

Regeste

Haftpflicht; unechte Solidarität; Verjährung der Regressforderung zwischen mehreren Haftpflichtigen (**Art. 51 und 143 ff. OR**).
Die Verjährung der Forderung des Geschädigten gegen einen von mehreren Haftpflichtigen hindert den Haftpflichtigen, der dem Geschädigten Ersatz geleistet hat, nicht daran, seine Regressforderung gegen diesen Mithaftpflichtigen geltend zu machen, sofern er ihm so bald wie möglich angezeigt hat, dass er ihn für mithaftpflichtig hält. Die Forderung verjährt grundsätzlich ein Jahr ab dem Tag, an dem der Geschädigte den Schadenersatz erhalten hat und der andere Haftpflichtige bekannt wurde; sie verjährt in jedem Fall mit Ablauf von zehn Jahren ab dem Tag, an dem die Schädigung eingetreten ist oder ein Ende gefunden hat (E. 5).
Anwendung dieser Grundsätze auf den vorliegenden Fall (E. 6).

Sachverhalt ab Seite 7

BGE 133 III 6 S. 7

**A.**

**A.a** La Fondation A. (ci-après: la Fondation ou la demanderesse) gère plusieurs établissements médico-sociaux (EMS) dans le canton de Vaud. En 1987, elle a confié à l'architecte X. (ci-après: l'architecte ou le défendeur) la conception et la direction de travaux de rénovation et de transformation de l'intérieur d'un immeuble abritant l'un de ceux-ci. Les travaux de maçonnerie ont été adjugés à Z. SA (ci-après: l'entreprise ou la défenderesse). Les transformations prévues comportaient notamment l'installation d'un office dans une ancienne buanderie; elles nécessitaient l'ouverture d'une tranchée dans la dalle de ce local pour y enterrer des canalisations ainsi que la démolition partielle de cette dalle sous laquelle se trouvait un tuyau de gaz.
Le 5 octobre 1988, alors qu'il était en train d'exécuter ce travail de démolition au marteau-piqueur, un manoeuvre de l'entreprise a percé la conduite de gaz avec son appareil. Quelques instants plus tard, une très violente explosion s'est produite, ravageant une partie de l'immeuble et causant des dégâts aux immeubles voisins. La réceptionniste de l'EMS, B., et un ouvrier, C., ont été blessés. Les pensionnaires présents dans l'immeuble n'ont pas subi de lésions corporelles car ils venaient de regagner les étages après avoir achevé leur repas.

BGE 133 III 6 S. 8

En octobre 1995, l'assurance de l'architecte à indemnisé B. et remboursé à la Caisse nationale suisse d'assurance en cas d'accidents (CNA) les montants des frais de traitement payés par celle-ci pour C. et des indemnités journalières versées à ce dernier. Le 7 septembre 1999, elle a cédé à l'assuré sa créance de ce chef contre les tiers.

**A.b** Une instruction pénale a été ouverte à la suite de l'explosion du 5 octobre 1988. Elle a abouti à la condamnation, par jugement du 28 février 1994, de l'architecte, du chef de chantier et de deux employés de la société Y. SA (ci-après: Y. ou l'appelée en cause). Cette société, au bénéfice d'un monopole d'intervention sur les conduites d'amenée de gaz, avait procédé, par le passé, à des travaux à l'intérieur de l'immeuble de la Fondation en vue de mettre hors service l'installation de gaz; suivant sa pratique usuelle lorsque le client ne renonce pas définitivement à cette source d'énergie, elle avait cependant laissé sous pression la conduite de branchement. Les deux employés de Y. ont été acquittés par jugement de la Cour de cassation pénale du Tribunal cantonal vaudois du 31 octobre 1994.

**A.c** Depuis les 21 et 22 septembre 1989, l'architecte et l'entreprise ont renoncé à se prévaloir de la prescription à l'égard de la Fondation pour toutes les prétentions que celle-ci pourrait élever contre eux en rapport avec l'explosion du 5 octobre 1988. Y. n'a pas effectué de déclaration de ce genre et ne s'est vu signifier aucun commandement de payer par la Fondation en rapport avec cette explosion. Elle n'a pas non

plus été recherchée en responsabilité par l'assurance de l'architecte, laquelle n'a pas participé à la procédure civile.

**B.**

**B.a** Par demande du 2 juillet 1996, la Fondation a assigné l'architecte et l'entreprise, en qualité de débiteurs solidaires, afin d'obtenir réparation de son dommage.

L'architecte a conclu au rejet de la demande. Le 14 août 1996, il a appelé en cause Y. pour que celle-ci le relève de tout montant qui pourrait être mis à sa charge en rapport avec le dommage subi par la Fondation et pour qu'elle lui verse l'équivalent des indemnités payées aux deux personnes physiques lésées.

Répondant le 4 mai 1998, l'entreprise, qui n'a pas formé d'appel en cause, a conclu, principalement, au rejet de la demande et, reconventionnellement, au paiement du solde de ses factures. A titre

BGE 133 III 6 S. 9

subsidiaire, elle a demandé que l'appelée en cause et l'architecte soient tenus de la relever de tout montant qui pourrait être mis à sa charge.

Dans leurs dernières écritures, les parties défenderesses ont conclu au rejet de la demande; subsidiairement, chacune d'elles a demandé que l'appelée en cause et l'autre partie coresponsable la relèvent de tout montant qui pourrait être mis à sa charge.

De son côté, l'appelée en cause a conclu au rejet des conclusions prises contre elle et a soulevé l'exception de prescription des prétentions des défendeurs.

**B.b** Par jugement du 9 mai 2005, la Cour civile du Tribunal cantonal vaudois a condamné les défendeurs X. et Z. SA à indemniser la demanderesse. Elle a simultanément réglé la question des rapports internes entre ces deux codébiteurs, d'une part, de même qu'entre ceux-ci et Y., l'appelée en cause, d'autre part. Cette dernière a été condamnée à relever la défenderesse et le défendeur à concurrence des montants payés par eux au-delà du quart, respectivement de la moitié, des montants alloués à la demanderesse, mais au maximum à concurrence du quart de ceux-ci (ch. III et IV du dispositif). En outre, elle a été condamnée à payer au défendeur une somme correspondant au quart des indemnités versées à B. et à la CNA pour C. (ch. V du dispositif).

En résumé, la cour cantonale a retenu que la responsabilité de l'architecte était engagée tant sur le plan délictuel que contractuel. Il en allait de même de celle de l'entreprise, pour le fait de ses employés (**art. 55 CO**) et de ses auxiliaires (**art. 101 CO**). En ce qui concerne Y., la Cour civile a jugé que l'appelée en cause avait créé un état de fait dangereux en maintenant sous pression une conduite de gaz, enterrée à quelques centimètres de profondeur et passant à l'intérieur d'un bâtiment sur une distance d'un peu plus de quatre mètres, alors qu'il n'était pas improbable que des travaux soient entrepris dans l'immeuble et alors qu'il n'existait pas de robinet d'arrêt accessible en tout temps, placé immédiatement après l'entrée de la conduite dans le bâtiment. Considérant que l'action récursoire des défendeurs contre l'appelée en cause n'était pas prescrite, les premiers juges ont appliqué les règles de la solidarité imparfaite et partagé les responsabilités entre les auteurs du dommage à raison de 50 % pour l'architecte, 25 % pour l'entreprise et 25 % pour Y.

BGE 133 III 6 S. 10

**C.** L'appelée en cause et le défendeur ont interjeté un recours en réforme au Tribunal fédéral contre le jugement précité. A l'occasion du recours exercé par l'appelée en cause, la défenderesse a formé un recours joint.

Le Tribunal fédéral a admis partiellement le recours de l'appelée en cause. Le recours du défendeur et le recours joint de la défenderesse ont été rejetés dans la mesure où ils étaient recevables.

Erwägungen

Extrait des considérants:

**5.** L'appelée en cause reproche aux juges précédents d'avoir violé les règles sur la solidarité imparfaite en écartant l'exception de prescription soulevée par elle à l'encontre des prétentions récursoires de l'architecte et de l'entreprise. Elle leur fait grief d'avoir opté pour une solution qui revient à étendre à une situation de solidarité imparfaite le mécanisme d'interruption de la prescription applicable exclusivement à la solidarité parfaite.

**5.1** La responsabilité civile de l'appelée en cause à l'égard de la demanderesse est engagée, sur la base de l'**art. 41 CO**, en raison de la création d'un état de fait dangereux (violation du principe *neminem* laedere). L'action en dommages-intérêts, fondée sur ce chef de responsabilité, se prescrivait par un an à compter du jour où la partie lésée avait eu connaissance du dommage ainsi que de la personne qui en était l'auteur et, dans tous les cas, par dix ans dès le jour où le fait dommageable s'était produit (**art. 60 al. 1 CO**). L'explosion litigieuse est survenue le 5 octobre 1988. Il n'est pas contesté, ni contestable du reste, que la prescription absolue de la créance de la Fondation à l'égard de l'appelée en cause est survenue *pendente lite* (le 5 octobre 1998), soit avant le prononcé du jugement cantonal faisant droit aux prétentions récursoires

élevées contre cette partie, et ce sans qu'elle ait jamais été interrompue. Encore qu'il soit plus difficile de déterminer l'échéance du délai de prescription annal, faute de constatations claires à ce propos, il est probable que ce délai ait expiré avant l'introduction de la procédure close par le jugement déféré, bien que la défenderesse soutienne le contraire (voir, à ce sujet, le consid. 6.2.2.2). Au demeurant, la prescription de plus longue durée du droit pénal, réservée par l'**art. 60 al. 2 CO**, n'entre pas en ligne de compte dans le cas particulier. Supposé, en effet, que des actes objectivement punissables aient été commis en l'espèce, ils ont été le fait de deux employés de l'appelée en cause

BGE 133 III 6 S. 11

n'ayant pas la qualité d'organes de celle-ci. Or, selon la jurisprudence, la prescription de plus longue durée du droit pénal ne trouve aucune application dans la responsabilité de l'employeur pour ses auxiliaires (**ATF 122 II 225** consid. 5, auquel un *obiter dictum* d'un arrêt publié ultérieurement in **ATF 125 III 339** consid. 3b in fine donne, à tort, un sens contraire à celui qui y est exprimé). Par ailleurs, si la prescription de la créance de la lésée a certes été interrompue contre les autres responsables du dommage par le fait que ceux-ci ont renoncé expressément à l'invoquer (**ATF 112 II 231** consid. 3e/bb p. 233), cette circonstance n'influe pas sur la prescription de la créance de cette partie envers l'appelée en cause. Aussi bien, l'interruption de la prescription contre l'un des débiteurs n'est valable contre tous les autres, en vertu de l'**art. 136 al. 1 CO**, qu'en cas de solidarité parfaite. Dans l'hypothèse, qui se vérifie en l'espèce, où il n'existe qu'une solidarité imparfaite entre les divers responsables du dommage, le lésé doit bien plutôt interrompre la prescription contre chacun des responsables (**ATF 127 III 257** consid. 6a p. 264 et arrêts cités).

Les droits de la personne morale lésée envers l'un des coresponsables du dommage étaient ainsi prescrits, à tout le moins au moment de l'admission des prétentions récursoires élevées par deux autres responsables contre ce responsable-là. Aussi convient-il d'examiner l'incidence de cet état de choses sur ces prétentions récursoires. En d'autres termes, le responsable qui n'a pas été recherché par le lésé peut-il opposer la prescription des droits de celui-ci à son égard à l'un des coresponsables qui lui intente une action récursoire? La réponse à cette question nécessite le rappel préalable de l'état de la jurisprudence (consid. 5.2.1) et des opinions doctrinales (consid. 5.2.2) en la matière, de même qu'un survol des solutions qui ont été adoptées dans d'autres ordres juridiques (consid. 5.2.3) et de celles qui sont proposées en Suisse *de lege ferenda* (consid. 5.2.4). Il y aura lieu, ensuite, de régler le problème litigieux en prenant en considération ses divers aspects (consid. 5.3), puis, cela fait, d'appliquer aux circonstances du cas concret les principes que cette analyse aura permis de poser (consid. 6).

**5.2** La question de la relation entre l'action principale du lésé dirigée contre les coresponsables du dommage (rapports externes) et l'action récursoire de l'un de ceux-ci contre l'un ou plusieurs d'entre eux (rapports internes) est multiforme. Elle fait appel à des notions cardinales du droit de la responsabilité civile, telles la

BGE 133 III 6 S. 12

solidarité - parfaite ou imparfaite - et la prescription, et touche au fondement juridique de la prétention récursoire, de même qu'au point de départ et à la durée du délai de prescription de l'action en dérivant. La diversité des avis exprimés sur ces différentes questions, aussi bien dans la jurisprudence que dans la doctrine, en Suisse comme à l'étranger, et des propositions faites en droit désirable révèle assurément la complexité du problème.

**5.2.1** Dans un ancien arrêt (**ATF 55 II 118** consid. 3), le Tribunal fédéral a fait coïncider le *dies a quo* du délai de prescription de l'action récursoire avec celui de l'action directe du lésé en réparation de son dommage; il a fixé ce délai à un an, conformément à l'**art. 60 CO**, s'agissant d'un recours exercé par celui qui répondait du dommage en vertu d'un contrat à l'encontre de celui qui en répondait en raison d'un acte illicite. Pareille opinion, sans rapport avec une éventuelle subrogation du demandeur dans les droits du lésé contre l'auteur du dommage, repose sur l'idée que le droit de recours n'est que la conséquence de la responsabilité pour acte illicite du défendeur à l'action récursoire; il s'ensuit que ce recours ne peut pas être plus rigoureux pour le défendeur que la responsabilité elle-même.

Sans le dire expressément, le Tribunal fédéral, dans un *obiter dictum* d'un arrêt ultérieur, met en doute cette opinion lorsqu'il indique, à propos de l'action récursoire, en faisant référence à l'**art. 130 al. 1 CO**, qu'il "conviendrait d'examiner sérieusement si le délai ne court pas dès le paiement de l'indemnité seulement" (**ATF 89 II 118** consid. 5b p. 123).

Un arrêt rendu en 1989 apporte de nouveaux éléments au débat (**ATF 115 II 42** consid. 2). Le Tribunal fédéral y souligne que la prétention récursoire ne prend naissance qu'à partir du moment où le responsable a indemnisé le lésé, tout en précisant que le délai de prescription relatif commence à courir dès que le responsable connaît son droit de recours. Cette solution implique donc une dissociation entre le moment de la naissance de la créance récursoire et le moment où la prescription de l'action y relative commence à courir. Il en résulte que la prescription pourrait intervenir avant même que la créance soit née. D'autre part, l'arrêt examiné subordonne l'admissibilité de l'action récursoire à la condition que les prétentions concurrentes du lésé contre un autre responsable ne soient pas déjà prescrites ou périmées. Quant au délai de prescription de cette

BGE 133 III 6 S. 13

action, il est d'un an, selon cet arrêt, que l'on applique l'**art. 60 al. 1 CO** ou que l'on recherche le fondement juridique de la prétention récursoire dans les dispositions sur l'enrichissement illégitime ou celles sur la gestion d'affaires sans mandat, justifiant l'application directe ou par analogie de l'**art. 67 al. 1 CO**. Le Tribunal fédéral précise encore que l'action récursoire est soumise à la prescription absolue de dix ans courant dès le jour où le fait dommageable s'est produit (art. 60 al. 1 in fine CO).

En 1989 toujours, dans un arrêt concernant la prescription des droits du maître en raison des défauts d'une construction immobilière (**ATF 115 II 456** consid. 2), le Tribunal fédéral a indiqué que la *ratio legis* de l'**art. 371 al. 2 CO**, qui fixe le même délai (quinquennal) au maître de l'ouvrage pour faire valoir ses prétentions de ce chef contre l'entrepreneur, l'architecte ou l'ingénieur, était d'éviter que l'architecte ou l'ingénieur, à supposer qu'il ait pu être recherché par le maître dans le délai de prescription ordinaire de dix ans (**art. 127 CO**), n'eût plus été en mesure de se retourner contre l'entrepreneur répondant du défaut, les droits du maître à l'égard de ce dernier étant déjà prescrits. Selon PETER GAUCH (Le contrat d'entreprise, n. 2297 et 2757), dans la conception du législateur suisse, consacrée à l'**art. 371 al. 2 CO** tel qu'interprété par la jurisprudence fédérale, l'entrepreneur dont la dette du chef de la garantie pour les défauts est prescrite à l'égard du maître peut également opposer cette prescription à l'architecte ou à l'ingénieur. En effet, s'il ne le pouvait pas, la règle de l'**art. 371 al. 2 CO** ne serait pas nécessaire pour garantir le droit de recours de ceux-ci contre lui.

L'arrêt publié aux **ATF 116 II 645** consid. 7b/bb p. 650 confirme la jurisprudence établie par les deux arrêts de 1989 précités. Référence y est faite à l'**art. 83 al. 3 LCR**, aux termes duquel les recours que peuvent exercer entre elles les personnes civilement responsables d'un accident de véhicules automobiles ou de cycles, ainsi que les autres droits de recours prévus par la présente loi, se prescrivent par deux ans à partir du jour où la prestation a été complètement effectuée et le responsable connu. D'après le Tribunal fédéral, "il s'agit là d'une disposition spéciale qui déroge à la règle jurisprudentielle, selon laquelle l'action récursoire en cas de solidarité imparfaite prend certes naissance quand l'ayant droit paie son dû, mais ne peut plus être exercée si les prétentions concurrentes du lésé contre un codébiteur sont déjà prescrites ou périmées (**ATF 115 II 48** ss consid. 2)".

BGE 133 III 6 S. 14

Appliquant de manière stricte les principes posés dans le dernier arrêt cité, le Tribunal fédéral a jugé, en 1996, que l'inaction du demandeur à l'action récursoire, après qu'il avait eu connaissance de son droit de recours, interdisait à l'intéressé de se prévaloir du fait que les droits du lésé envers le défendeur à cette action n'étaient eux-mêmes pas encore prescrits (arrêt 2A.24/1994 du 31 janvier 1996, consid. 2c).

A l'inverse, que de tels droits soient prescrits n'exclut pas nécessairement la possibilité d'intenter une action récursoire, lors même que le défendeur à cette action pourrait exciper de la prescription de la prétention du lésé à son encontre. Ainsi en allait-il dans une cause jugée en 1997 où un entrepreneur avait opposé sans succès l'exception de prescription à l'action récursoire du maître qui entendait se faire rembourser les sommes qu'il avait dû verser à des voisins ayant subi des dommages en raison de la mauvaise exécution des travaux confiés à cet entrepreneur (hypothèse dite de la *Drittschadensliquidation* ). Le Tribunal fédéral, soulignant que l'action récursoire trouvait son fondement juridique dans la violation par l'entrepreneur de ses obligations contractuelles, a écarté cette exception sans attacher d'importance à l'argument tiré de la prescription des droits des voisins lésés à l'égard de l'entrepreneur fautif (arrêt 4C.3/1995 du 27 mai 1997, consid. 4c).

Dans un arrêt de 2001, publié aux **ATF 127 III 257** et traduit in SJ 2002 I p. 113 ss, le Tribunal fédéral a jugé à tout le moins discutable la conclusion, tirée par la cour cantonale de l'**ATF 115 II 42** consid. 2, voulant que l'extinction par prescription des prétentions concurrentes du lésé exclue dans tous les cas l'exercice de l'action récursoire contre les codébiteurs (consid. 6a p. 265). Il a certes confirmé, en faisant appel à l'**art. 2 al. 2 CC**, que, si le titulaire du droit de recours affaiblit sans raison la position d'un coresponsable, notamment en ne lui dénonçant pas le litige qui l'oppose au lésé, il ne mérite aucune protection, si bien qu'il y a lieu de lui refuser le droit de faire valoir en justice sa créance récursoire sans égard au fait qu'elle n'est pas encore prescrite. Cependant, l'arrêt ajoute, de manière tout à fait claire, que la jurisprudence n'a pas encore tranché la question de savoir comment il convient de traiter les cas où le titulaire du droit de recours n'a pas eu de raison, avant la prescription des créances concurrentes du lésé contre d'autres coresponsables, de faire valoir sa créance récursoire ou n'a pas pu le faire du tout parce qu'il n'a pas pris connaissance à temps de la

BGE 133 III 6 S. 15

possibilité du recours. Et le Tribunal fédéral de souligner, tout en s'abstenant de prendre position de manière définitive sur la question soulevée: "Es kann ihm [i.e. au titulaire du droit de recours] dann unter solchen Umständen kein treuwidriges Verhalten vorgehalten werden, wenn er erst nach Verjährung der anderen Ersatzforderungen seinen Ausgleichsanspruch anmeldet" (consid. 6c p. 267). Un auteur s'est demandé, sur le vu de cette affirmation, si l'on pouvait vraiment en déduire que le Tribunal fédéral écarterait, en pareille hypothèse, l'exception de prescription soulevée par le défendeur à l'action récursoire (ALEXANDER MÜLLER, Regress im Schadensausgleichsrecht unter besonderer Berücksichtigung des Privatversicherers, thèse St-Gall 2006, p. 151). ==Pourtant, la plupart des auteurs qui se sont penchés sur la question n'ont pas hésité à franchir le pas (ISABELLE ROMY, in Commentaire romand, n. 17 ad **art. 148 CO**; FRANZ WERRO, La responsabilité civile, n. 1628;== FRÉDÉRIC KRAUSKOPF, Zivilrechtliche Verjährung und Strassenverkehrsunfall: Darstellung des geltenden Rechts und ausgewählte Fragen, in

Strassenverkehrsrechtstagung 16.-17. März 2006, Hubert Stöckli/Franz Werro [éd.], p. 119 ss, 136 note 103; WALTER FELLMANN, Solidarische Haftung und Verjährung des Ausgleichsanspruches bei unechter Solidarität, in Responsabilité et assurance [REAS] 2002 p. 113 ss, 119 in fine). Dans l'arrêt considéré, le Tribunal fédéral souligne, en outre, que la créance récursoire prend naissance quand le coresponsable indemnise le lésé, raison pour laquelle c'est aussi ce moment-là qui marque le début du délai de prescription de l'action récursoire, car une créance ne saurait se prescrire avant d'exister (consid. 6c p. 267).

A l'occasion d'un arrêt rendu en 2003 sur un recours de droit public, le Tribunal fédéral a rappelé que la règle selon laquelle la créance récursoire de l'**art. 148 al. 2 CO** ne naît en principe qu'avec le paiement effectif par le débiteur de son dû n'est remise en question ni dans la jurisprudence ni dans la doctrine (arrêt 4P.155/2003 du 19 décembre 2003, consid. 8 et les références).

Le 23 février 2004 enfin, le Tribunal fédéral a rendu un arrêt important sur des questions ayant un lien avec le problème présentement envisagé (**ATF 130 III 362**). On y trouve, clairement exprimés, les principes directeurs qui contribueront à la solution de celui-ci. Il en est ainsi de l'idée, déjà émise quelques mois plus tôt (arrêt 4C.27/2003 du 26 mai 2003, consid. 3.4, publié in SJ 2003 I p. 597 ss), voulant que l'**art. 51 CO**, consacré aux seuls rapports

BGE 133 III 6 S. 16

internes entre les différents responsables, institue un recours fondé *ex jure proprio*, c'est-à-dire qui naît dans la personne de celui qui a indemnisé le lésé. L'arrêt rappelle aussi que la solidarité imparfaite n'entraîne pas de subrogation du responsable dans les droits du créancier, au sens de l'**art. 149 al. 1 CO**, mais lui confère le droit de faire valoir, contre les autres débiteurs, une prétention récursoire qui prend naissance au moment du paiement fait au lésé. Il ajoute - précision utile - que le droit de faire valoir cette prétention est subordonné à la condition qu'un autre coresponsable existe. En effet, celui qui ne répond pas d'un dommage ne saurait en répondre solidairement. Par conséquent, si les droits du lésé envers la personne qu'un autre responsable du dommage entendait assigner en justice étaient déjà périmés au moment de la naissance de la prétention récursoire, comme c'était le cas dans l'affaire ayant donné lieu au prononcé de cet arrêt, la possibilité d'ouvrir action pour faire valoir cette prétention n'entrait plus en ligne de compte, faute de coresponsable (consid. 5.2 p. 369). Le Tribunal fédéral a cependant tenu à préciser que cette hypothèse se distinguait des situations plus délicates dans lesquelles les conditions permettant d'engager la responsabilité du défendeur à l'action récursoire envers le lésé auraient pu être réalisées à un moment donné, mais ne le sont plus lorsque la prétention récursoire prend naissance. Il en va notamment ainsi, a-t-il ajouté, lorsque les prétentions du lésé envers le coresponsable sont prescrites (consid. 5.3 p. 370, où sont évoqués d'autres cas de figure comparables, tels que la remise de dette ou la conclusion d'une convention exclusive de responsabilité).

Cet aperçu de la jurisprudence fédérale touchant le problème controversé démontre que celui-ci demeure entier. Il n'empêche que les arrêts rapportés ci-dessus contiennent un certain nombre d'éléments intéressants sur lesquels il sera possible de faire fond pour donner à ce problème une solution qui réponde, autant que faire se peut, aux attentes difficilement conciliables des parties concernées.

**5.2.2** C'est peu dire que la question de la prescription de l'action récursoire est controversée dans la doctrine, qu'il s'agisse du point de départ ou de la durée du délai. Comme le soulignent les auteurs de l'avant-projet de loi fédérale sur la révision et l'unification du droit de la responsabilité civile (ci-après: l'Avant-projet ou AP), les opinions émises à ce sujet "expriment une diversité déroutante" (PIERRE WIDMER/PIERRE WESSNER, Révision et unification du droit

BGE 133 III 6 S. 17

de la responsabilité civile, Rapport explicatif, p. 223, n. 2.8.7). On renoncera donc à les recenser ici, d'autant plus que ce travail a déjà été fait consciencieusement par des juristes familiarisés avec les problèmes touchant la responsabilité civile (voir notamment: WIDMER/WESSNER, op. cit., p. 224; WERRO, op. cit., n. 1575 ss et 1623 ss; *le même*, in Commentaire romand [ci-après cité: WERRO, CR], n. 9 à 16 ad **art. 50 CO** et n. 33 à 37 ad **art. 51 CO**; HUBERT BUGNON, L'action récursoire en matière de concours de responsabilités civiles, thèse Fribourg 1982, p. 137 ss). Seules seront dès lors exposées brièvement ci-après, sans que l'on puisse prétendre à l'exhaustivité d'ailleurs, les réponses qu'ont apportées les auteurs qui s'y sont intéressés à la question de savoir si la prescription de la créance du lésé contre l'un des coresponsables du dommage est opposable ou non au responsable qui a indemnisé le lésé et qui entend faire valoir une prétention récursoire contre ce coresponsable-là.

Une partie de la doctrine considère, pour des motifs divers, que le codébiteur défendeur à l'action récursoire peut s'opposer à celle-ci en soutenant que sa propre dette envers le créancier commun est prescrite. Tel est, en particulier, l'avis exprimé par KARL SPIRO (Die Begrenzung privater Rechte durch Verjährungs-, Verwirkungs- und Fatalfristen, vol. I, p. 492 ss). Selon cet auteur, la prétention du demandeur à l'action récursoire découlerait de la responsabilité du défendeur à cette action à l'égard du lésé; dès lors, le sort de cette prétention serait lié à celui de la créance principale du lésé envers ce défendeur, l'extinction de celle-ci excluant la possibilité de faire valoir celle-là. Au demeurant, pour SPIRO, ne pas admettre la solution qu'il propose conduirait à des résultats inéquitables car l'**art. 146 CO**, en vertu duquel l'un des débiteurs solidaires ne peut aggraver par son fait personnel la position des autres, ne serait pas respecté suivant les circonstances (pour une tentative de réfutation de cette argumentation, cf. BUGNON, op. cit., p.

149 s.). D'autres auteurs pensent pouvoir tirer la même conclusion de l'arrêt publié aux **ATF 115 II 42** consid. 2 (HEINZ REY, Ausservertragliches Haftpflichtrecht, 3$^e$ éd., n. 1724; PETER GAUCH/WALTER R. SCHLUEP/JÖRG SCHMID/HEINZ REY, Schweizerisches Obligationenrecht, Allgemeiner Teil, vol. II, 8$^e$ éd., n. 3960; ANTON K. SCHNYDER, Commentaire bâlois, Obligationenrecht I, 3$^e$ éd., n. 10 ad **art. 51 CO**). PETER GAUCH, on l'a déjà vu, en fait de même en fondant son opinion sur la *ratio legis* de l'**art. 371 al. 2 CO** (op. cit., n. 2297; cf. consid. 5.2.1

BGE 133 III 6 S. 18

cidessus). Quant à BERNARD CORBOZ (La responsabilité des organes en droit des sociétés [ci-après: La responsabilité des organes], n. 32 s. ad **art. 759 CO**), il qualifie d'intéressante l'opinion, professée par un courant doctrinal, selon laquelle le droit de recours trouverait sa justification dans une sorte de gestion d'affaires sans mandat, l'action y relative s'apparentant à l'action pour enrichissement illégitime (cf. HENRI DESCHENAUX/PIERRE TERCIER, La responsabilité civile, 2$^e$ éd., § 36, n. 56). Comme le droit de recours naît au moment où le responsable qui entend l'exercer (i.e. le gérant) donne satisfaction au lésé, cette opinion impliquerait, selon l'auteur, que la coresponsabilité du défendeur potentiel à l'action récursoire (i.e. le maître) envers le lésé existât encore à ce moment-là pour que se produise l'effet extinctif du paiement sur la dette de ce coresponsable à l'égard du lésé, autrement dit pour que le sujet du recours se trouve d'une certaine manière enrichi illégitimement du fait que la part de la dette externe qu'il aurait dû payer lui-même a été éteinte par le paiement du gérant. La jurisprudence, ajoute l'auteur précité, n'a cependant pas adopté cette théorie, en ce sens qu'elle n'exclut pas qu'un recours soit possible dès que la coresponsabilité a existé, même si elle n'existe plus au moment du paiement, notamment parce que l'autre dette externe est déjà prescrite.

Pour une autre partie de la doctrine, en revanche, la prescription de la créance du lésé contre l'un des coresponsables n'est pas opposable au titulaire du droit de recours. Ainsi, selon BUGNON (op. cit., p. 149 s.), s'il est vrai que la responsabilité du sujet au recours est une condition du droit de recours, la créance récursoire, en tant qu'elle relève des rapports internes gouvernés par des règles spécifiques, n'en est pas moins indépendante et distincte de la créance du lésé, ce qui est conforme à la notion de concours d'actions existant en cas de pluralité de responsables. Il ne se justifie donc pas, sous l'angle de la prescription notamment, de lier le sort du droit de recours du coresponsable à celui du droit d'action du lésé, ces droits ne s'exerçant pas sur le même plan. L'auteur considère, au demeurant, que le défendeur à l'action récursoire est suffisamment protégé par le délai subsidiaire de dix ans de l'**art. 60 al. 1 CO**, courant dès l'événement dommageable, auquel il propose de soumettre cette action. D'autres auteurs arrivent à la même conclusion que BUGNON, certains en fondant leur opinion sur l'interprétation *a* contrario de l'arrêt publié aux **ATF 127 III 257** consid. 6c (ROLAND BREHM, Commentaire bernois, 3$^e$ éd., n. 142 in fine ad **art. 51 CO**; ROMY, ibid.; WERRO, ibid.; FELLMANN, ibid.; KRAUSKOPF, ibid.).

BGE 133 III 6 S. 19

**5.2.3** En droit allemand, la jurisprudence et la doctrine apparemment majoritaire considèrent que la prescription intervenue dans les rapports externes ne doit pas pouvoir interférer dans les rapports internes, de sorte que le défendeur à l'action récursoire ne saurait en exciper (voir, p. ex., les arrêts rendus le 21 novembre 1953 et le 9 mars 1972 par le Bundesgerichtshof, publiés in Entscheidungen des Bundesgerichtshofes in Zivilsachen [BGHZ], vol. 11, n. 20, p. 170 ss, consid. 3 et vol. 58, n. 34, p. 216 ss, consid. 2; cf., parmi d'autres: MünchKommBGB/PETER BYDLINSKI, vol. 2a, 4$^e$ éd., n. 9 à § 426 BGB et STAUDINGER/NOACK [2005], n. 9 ad § 426 BGB, chacun avec des références). Selon SPIRO, ce serait aussi la solution retenue par les droits autrichien et italien, alors que le droit français aurait opté pour la solution inverse en faisant de la prescription une exception valable *erga omnes* (op. cit., § 208, p. 489 et les références).

**5.2.4** La révision du droit de la responsabilité civile a été mise en chantier en 1988. Elle en est actuellement au stade de l'Avant-projet (pour plus de détails, voir le site internet du Département fédéral de justice et police, www.ejpd.admin.ch, sous la rubrique "Thèmes" ainsi que les sous-rubriques en cascade "Economie", "Législation" et "Responsabilité civile").

Les auteurs de l'Avant-projet ont mis en évidence l'absence, dans le droit actuel, d'une réglementation spécifique du problème de la prescription de l'action récursoire, le manque de fermeté de la jurisprudence en la matière et la diversité peu commune des opinions doctrinales émises à ce sujet. Partant de ce constat et se rangeant à l'opinion de la Commission d'étude, ils ont acquis la conviction de la nécessité d'une réglementation spécifique en ce domaine. Selon eux, cette réglementation devrait se fonder sur le principe que le titulaire de la prétention récursoire agit en vertu d'un droit propre, de sorte que le régime de la prescription de l'action récursoire devrait obéir à des règles spéciales. Aussi, *de lege ferenda*, proposent-ils de généraliser la règle posée à l'**art. 83 al. 3 LCR**, déjà cité (cf. consid. 5.2.1), et reprise à l'art. 39 al. 3 de la loi fédérale du 4 octobre 1963 sur les installations de transport par conduites (LITC; RS 746.1), car il s'agit là d'une règle claire et éprouvée. Toutefois, pour tenir compte des intérêts des personnes susceptibles d'être l'objet d'un recours, ils suggèrent, d'une part, de soumettre l'action récursoire à la prescription absolue, qui devrait courir comme celle de la créance du lésé, et, d'autre part, d'obliger la personne

BGE 133 III 6 S. 20

recherchée par celui-ci à aviser celles qu'elle tient pour coresponsables (WIDMER/WESSNER, op. cit., p. 225 ss; voir aussi: PIERRE WESSNER, La prescription des actions réparatoires et récursoires au regard de la révision totale du droit de la responsabilité, in Haftpflicht- und Versicherungsrechtstagung 1997, St-Gall, p. 143 ss, 154 à 156). Forts de ces considérations, les auteurs de l'Avant-projet ont rédigé un art. 55c dont la teneur est la suivante:

"IV. Action récursoire

1. L'action récursoire (...) se prescrit par trois ans à compter du jour où la réparation a été complètement exécutée et où la personne coresponsable est connue; elle se prescrit dans tous les cas par 20 ans à compter du jour où le fait dommageable s'est produit ou a cessé de se produire.

2. Lorsqu'une personne est recherchée en réparation, elle en avisera les personnes qu'elle tient pour coresponsables; à défaut, la prescription court à compter du jour où elle aurait dû donner cet avis conformément aux règles de la bonne foi."

Sans doute les auteurs de l'Avant-projet n'évoquent-ils pas expressément la question de l'incidence de la prescription de la créance du lésé sur le sort de l'action récursoire. Il ressort toutefois clairement de leur argumentation, fût-ce de manière implicite, qu'ils excluent la possibilité pour le défendeur à cette action d'invoquer la prescription de sa propre dette à l'égard du lésé. Semblable conclusion s'inscrit d'ailleurs dans la logique du système qu'ils ont élaboré, lequel prévoit la suppression de la distinction entre la solidarité parfaite et la solidarité imparfaite, accompagnée du maintien de l'**art. 136 al. 1 CO** (WIDMER/WESSNER, op. cit., p. 166 s.).

**5.3**

**5.3.1** L'exposé des solutions esquissées par la jurisprudence et la doctrine pour résoudre la question litigieuse, ainsi que des propositions faites *de lege ferenda* dans le même but, suffit à démontrer la complexité du problème. Cette complexité tient à la nature même du concours de responsabilités et au caractère tripartite des rapports obligationnels qui en découlent du point de vue de la personne sujette au recours. En effet, considérée sous cet angle, la prétention récursoire associe deux créances visant la même personne, quoiqu'à des niveaux différents: sur le plan des rapports externes, celle du lésé contre la personne en question, laquelle créance coexiste avec une autre créance du lésé contre un coresponsable au moins, à défaut de quoi il n'y aurait pas de concours d'actions ni, partant, de solidarité passive; sur le plan des rapports internes, la créance dont est

BGE 133 III 6 S. 21

titulaire à l'endroit de ladite personne le responsable qui a indemnisé le lésé au-delà de sa part. La difficulté consiste à déterminer l'incidence des rapports externes sur les rapports internes pour savoir si et, le cas échéant, dans quelle mesure les modalités de la créance issue de ceux-là interfèrent sur la prétention découlant de ceux-ci.

Par ailleurs, il serait illusoire d'espérer trouver une solution qui, tout en ne s'écartant pas de l'orthodoxie juridique, répondît aux attentes difficilement conciliables des sujets actif et passif de la prétention récursoire. Exclure toute possibilité de faire valoir une telle prétention, motif pris de la prescription de la créance du lésé contre le coresponsable défendeur à l'action récursoire, reviendrait à faire supporter au demandeur à cette action une part du dommage qu'il incomberait normalement à un autre responsable d'assumer. Dans l'hypothèse d'un dommage résultant à la fois de la violation d'un contrat et de la commission d'un acte illicite, le responsable aquilien serait généralement avantagé par rapport au responsable contractuel, en dérogation à la règle de l'**art. 51 al. 2 CO**, étant donné que le lésé, pour bénéficier du délai de prescription décennal (**art. 127 CO**) et du renversement du fardeau de la preuve (**art. 97 al. 1 CO**), serait le plus souvent enclin à actionner le second et qu'il pourrait le faire bien après l'expiration du délai de prescription annal applicable à la prétention concurrente (**art. 60 al. 1 CO**), sans être tenu du reste à entreprendre quoi que ce soit pour interrompre le cours de ce délai. A l'inverse, admettre la recevabilité de l'action récursoire, en dépit de la prescription des droits du lésé à l'égard de la personne recherchée, irait à l'encontre des intérêts du défendeur à cette action. Dans ce cas, en effet, une circonstance purement fortuite - la présence, à ses côtés, d'un responsable contractuel - priverait celui-ci du bénéfice du court délai de prescription valable dans ses rapports avec le lésé et ferait qu'il pourrait être actionné par un coresponsable des années plus tard, alors qu'il ne s'y attendait pas et qu'il n'avait, de ce fait, pas conservé les preuves lui permettant de se défendre correctement.

Force est, dès lors, de trancher la question délicate qui se pose ici en accordant la préférence à l'un des deux sujets de la prétention récursoire, tout en essayant de sauvegarder au mieux les intérêts de l'autre. On le fera en ayant égard au but de la solidarité passive, à la nature de la créance récursoire, de même qu'à l'effet de la prescription extinctive et à la finalité de cette institution.

BGE 133 III 6 S. 22

**5.3.2** La solidarité passive vient en aide au lésé qui demande réparation de son préjudice imputable à une pluralité de responsables. Elle lui permet d'agir contre chacun de ceux-ci pour la totalité du dommage aussi

longtemps qu'il n'a pas été entièrement désintéressé (**ATF 114 II 342** consid. 2b p. 344; **ATF 112 II 138** consid. 4a p. 143), à la seule condition que le comportement de la personne recherchée soit en relation de causalité adéquate avec l'intégralité du dommage (**ATF 127 III 257** consid. 5a). Le rapport interne entre les coresponsables ne le concernant pas, le lésé peut choisir la partie adverse à son gré; il lui est donc loisible de n'actionner qu'un seul des débiteurs responsables (voir les deux arrêts précités, ibid.). Dans une conception classique de la solidarité passive - cette conception, objet de critiques (voir les auteurs et la jurisprudence mentionnés par WIDMER/WESSNER, op. cit., p. 169 s., note 835), a déjà été remplacée dans le droit de la société actuelle (**art. 759 al. 1 CO**) et pourrait l'être de manière générale *de lege ferenda* (art. 53b al. 2 AP) par une solidarité ate différenciée (sur cette notion, cf. **ATF 127 III 453** consid. 5d; **ATF 122 III 324** consid. 7b) -, les exceptions personnelles ne doivent être prises en considération qu'au moment du partage interne; à ce défaut, la notion de solidarité serait vidée de son contenu s'il fallait apprécier, de manière individualisée, dans chaque cas, la responsabilité de la personne recherchée.

Comme ne le peut, en principe, obtenir qu'une fois la réparation de son dommage, le paiement effectué par l'un des obligés libère les autres dans les rapports externes (**ATF 89 II 118** consid. 5a p. 122). A ne considérer que l'intérêt du lésé, l'effet qu'emporte la solidarité passive apparaît nécessaire et suffisant. Tout autre est la situation, si l'on se met à la place de celui qui a dédommagé le lésé. Il se peut fort bien que ce codébiteur ait été amené, ce faisant, à consentir un sacrifice financier qui est hors de proportion avec la mesure dans laquelle il a contribué à la survenance du dommage. Que l'équité ne puisse s'en accommoder, cela va sans dire. Il se justifie, au contraire, de faire en sorte que l'équilibre, volontairement sacrifié sur le plan externe au profit du lésé, soit rétabli sur le plan interne afin que chacun des coresponsables supporte, au final, le poids de la dette en fonction de sa part de responsabilité. La loi y pourvoit en disposant que celui qui paie au-delà de sa part a, pour l'excédent, un recours contre les autres (**art. 148 al. 2 CO**). Pour ce qui est du concours entre responsabilités de natures différentes, elle instaure elle-même, à l'**art. 51 al. 2 CO**, une hiérarchie entre

BGE 133 III 6 S. 23

trois groupes de responsables, qui privilégie le responsable contractuel par rapport au responsable aquilien, mais dont il est possible de s'écarter suivant les circonstances (cf. **ATF 116 II 645** consid. 3b).

En vertu de l'**art. 50 al. 2 CO**, applicable par analogie au concours de diverses causes du dommage (**art. 51 al. 1 CO**), c'est au juge qu'il appartient de faire usage de son pouvoir d'appréciation pour déterminer qui doit, en définitive, supporter le poids de la réparation dans les rapports internes. Conformément à la jurisprudence et à la doctrine, le lésé ne peut pas s'immiscer dans ce processus, notamment en dérogeant, par le biais d'une cession de ses droits à un responsable, à l'ordre des recours prévu par l'**art. 51 al. 2 CO** (**ATF 115 II 24** consid. 2b p. 27; cf., parmi d'autres: BREHM, op. cit., n. 16 et 45 ad **art. 51 CO**). En d'autres termes, comme le souligne un auteur, le choix arbitraire du créancier ne saurait déterminer qui supportera le fardeau de la prestation (BERNARD CORBOZ, La distinction entre solidarité parfaite et solidarité imparfaite, thèse Genève 1974, p. 68). C'est pourtant à ce résultat que l'on aboutirait en excluant la possibilité d'une action récursoire du seul fait que le lésé n'a pas interrompu la prescription de sa créance à l'égard du coresponsable contre lequel celui qui estime avoir payé au-delà de sa part entend ouvrir une telle action. Ce résultat serait d'autant plus choquant que la personne recherchée par le lésé n'a pas les moyens d'interrompre elle-même la prescription de ladite créance (voir toutefois SPIRO, op. cit., § 210, p. 495, pour qui la personne recherchée par le lésé pourrait demander à celui-ci d'interrompre la prescription contre les autres responsables afin de sauvegarder ses futurs droits de recours). Dans ce cas, la directive de l'**art. 51 al. 2 CO** resterait souvent lettre morte dès lors que, pour les motifs sus-indiqués (durée du délai de prescription et fardeau de la preuve), tout porte le lésé à s'en prendre en premier lieu à la personne qui répond en vertu d'une obligation contractuelle. Même si cette directive n'a pas un caractère absolu, il serait néanmoins contraire à son esprit que le fardeau de la réparation pesât en fin de compte sur les épaules du responsable contractuel, en particulier dans l'hypothèse où celui-ci n'aurait commis qu'une faute bénigne en lien de causalité avec la totalité du dommage, pour le seul motif que le lésé n'a pas interrompu la prescription de sa créance envers la personne dont l'acte illicite est la cause principale de ce même dommage. Sauf à rendre illusoire le rétablissement, voulu par le législateur, d'un certain équilibre, sur le plan interne, entre la part de responsabilité et

BGE 133 III 6 S. 24

le fardeau de la réparation, corollaire du choix laissé au lésé, sur le plan externe, quant au débiteur qui devra l'indemniser, il convient donc de bien dissocier ces deux plans sous le rapport de la prescription également.

Sans doute cette solution a-t-elle pour conséquence que la personne répondant d'un acte illicite pourra être recherchée par un coresponsable bien après la prescription des droits du lésé à son égard. Il faut pourtant s'en accommoder. D'abord, il n'y a rien d'inéquitable à maintenir en principe la responsabilité plus avancée de celui qui a commis une faute délictuelle (arrêt 4C.27/2003 du 25 mai 2003, consid. 3.6, publié in SJ 2003 I p. 597 ss). De ce point de vue, dans la mise en balance des intérêts respectifs des codébiteurs, celui du responsable contractuel à ne pas devoir supporter, au final, une part du dommage qui ne corresponde pas à sa part de responsabilité pèse plus lourd que celui du responsable aquilien à pouvoir échapper, du fait de la prescription des droits du lésé envers lui, à l'obligation d'assumer une part du dommage correspondant à sa part de responsabilité. Il faut ensuite relativiser la portée de l'objection voulant qu'il n'y ait pas de raison de désavantager le responsable aquilien parce qu'il a la malchance d'avoir, à ses

côtés, un responsable contractuel soumis à une prescription plus longue. On imagine mal, en effet, que, si ce responsable aquilien était seul à répondre du dommage, le lésé ne l'actionnerait pas en temps utile ni n'interromprait la prescription de ses droits contre lui avant l'expiration du délai annal. La jurisprudence, enfin, a pris en compte les intérêts de la personne sujette au recours, d'une part, en obligeant celui qui est recherché en réparation à informer cette personne qu'il pourrait se retourner contre elle, ce qui permet à cette dernière d'agir en temps utile pour la défense de ses droits (conservation des preuves, consultation d'un homme de loi, annonce du cas à l'assureur, participation à une transaction, voire au procès principal, etc.), d'autre part en soumettant l'action récursoire à une prescription relative de courte durée et à la prescription absolue de dix ans courant dès le jour où le fait dommageable s'est produit.

**5.3.3** Le principal objectif de la solidarité passive, en tant qu'elle s'applique au domaine de la responsabilité civile, est d'assurer au lésé la réparation du préjudice qu'il a subi. Le second est de faire en sorte que chaque responsable supporte, en définitive, la part de responsabilité correspondant à l'intensité de l'adéquation qui le relie au préjudice (BUGNON, op. cit., p. 88). Concrétisant ce second

BGE 133 III 6 S. 25

objectif, la loi dispose, d'une manière générale, que celui qui paie au-delà de sa part a, pour l'excédent, un recours contre les autres (**art. 148 al. 2 CO**). La répartition interne de la dette solidaire peut être fixée par des règles conventionnelles préalables, par des dispositions légales régissant le rapport contractuel qui unit les codébiteurs, voire, en l'absence d'un tel rapport, par des normes légales spéciales ou, à ce défaut, par la mise en oeuvre des dispositions relatives à l'enrichissement illégitime et à la gestion d'affaires sans mandat (sur ces questions, cf., parmi d'autres: ROMY, op. cit., n. 2 ss ad **art. 148 CO**).

L'**art. 51 CO**, applicable au concours entre responsabilités de natures différentes, est l'une de ces dispositions spéciales. Selon le dernier état de la jurisprudence, il institue un recours fondé *ex jure proprio*, c'est-à-dire qui naît dans la personne de celui qui paie l'indemnité. Ainsi, la solidarité imparfaite n'entraîne pas de subrogation du coresponsable dans les droits du créancier, au sens de l'**art. 149 al. 1 CO**, mais seulement une action récursoire de ce responsable contre les autres coresponsables, action qui prend naissance au moment du paiement au lésé (**ATF 130 III 362** consid. 5.2). C'est aussi ce moment qui marque le point de départ du délai de prescription relatif de cette action, fixé par voie prétorienne à un an (**ATF 115 II 42** consid. 2a p. 49), car le délai de prescription ne peut pas commencer à courir avant même que la créance ne soit devenue exigible (**art. 130 al. 1 CO**), ce qui présuppose l'existence de celle-ci (**ATF 127 III 257** consid. 6c).

Il est conforme au caractère autonome de la prétention récursoire, ainsi reconnu, que le sort de cette dernière ne soit pas lié à celui de la créance dont le lésé est titulaire envers le sujet passif de ladite prétention. Par conséquent, la prescription des droits du lésé à l'égard de l'un des responsables du préjudice ne doit pas pouvoir empêcher le coresponsable qui a dédommagé le lésé de faire valoir sa créance récursoire contre ce responsable-là.

**5.3.4** Le droit de recours est subordonné à la condition qu'un coresponsable existe. En l'absence de responsabilité plurale, il ne saurait y avoir d'action récursoire. Celui qui ne répond pas d'un dommage ne peut pas en répondre solidairement. C'est la raison pour laquelle le droit de recours découlant de la solidarité imparfaite ne permet pas de rechercher une personne qui ne pouvait en aucune façon être tenue pour responsable à l'égard du lésé parce que les droits de celui-ci envers elle étaient périmés (**ATF 130 III 362** consid. 5.2 p. 370).

BGE 133 III 6 S. 26

Ce cas de figure se distingue d'autres hypothèses, en particulier de celle où la créance du lésé envers le coresponsable, défendeur potentiel à l'action récursoire, est prescrite (même arrêt, consid. 5.3 p. 370). D'un point de vue théorique, pareille distinction est conforme au droit fédéral. En effet, contrairement à la péremption (*Verwirkung, perenzione*), qui entraîne l'extinction totale du droit subjectif suite à l'expiration du délai dans lequel le titulaire devait l'exercer ou accomplir un acte nécessaire à son exercice (PASCAL PICHONNAZ, Commentaire romand, n. 7 ad **art. 127 CO**), la prescription extinctive ou libératoire (*Verjährung, prescrizione*), une fois acquise, ne fait que paralyser le droit d'action lié à la créance qu'elle atteint, laquelle n'en subsiste pas moins en tant qu'obligation naturelle ou imparfaite (**ATF 99 II 185** consid. 2b p. 189 et les références). Autrement dit, la prescription libératoire n'éteint pas le droit d'une manière radicale (PIERRE ENGEL, Traité des obligations en droit suisse, 2e éd., p. 798 let. D). Il peut y être renoncé (**art. 141 al. 1 CO**; **ATF 132 III 226** consid. 3.3) et le juge ne peut suppléer d'office le moyen en résultant (**art. 142 CO**). La prescription n'empêche pas le créancier de faire valoir le gage mobilier constitué pour garantir la créance (**art. 140 CO**). Il est possible d'invoquer la compensation d'une créance prescrite, si la condition posée à l'**art. 120 al. 3 CO** est réalisée. Au demeurant, la dette prescrite reste ce qu'elle est, c'est-à-dire une obligation, fût-elle affaiblie (ENGEL, ibid.); d'où il suit que ce qui a été payé pour acquitter une dette prescrite ne peut être répété, parce qu'il ne s'agit pas du paiement d'un indu (**art. 63 al. 2 CO**). Cela étant, force est d'admettre que l'effet libératoire qu'emporte l'exécution de l'obligation par l'un des débiteurs solidaires (**art. 147 al. 1 CO**) se produit aussi à l'égard du codébiteur dont la dette est prescrite. Du fait de l'extinction de sa dette, qui entraîne une diminution de son passif, l'intéressé se trouve enrichi aux dépens du coresponsable qui a éteint cette dette, tel un gérant d'affaires sans mandat. Aussi n'y a-t-il aucune raison

d'exclure ce codébiteur du processus de répartition interne de la dette solidaire, ni, partant, de le soustraire à l'action récursoire de celui qui a payé au-delà de sa part.

Un autre argument vient étayer cette conclusion. A cet égard, il convient de rappeler, au préalable, que, selon une jurisprudence bien établie et la doctrine moderne, si l'on excepte les **art. 136 et 149 al. 1 CO**, les règles régissant la solidarité passive parfaite, et singulièrement l'**art. 147 CO**, sont applicables par analogie à la

BGE 133 III 6 S. 27

solidarité imparfaite (arrêt 4C.27/2003, précité, consid. 3.4 avec de nombreuses références). Or, le principe posé par l'**art. 147 al. 2 CO** veut que la libération de l'un des débiteurs envers le créancier sans que la dette ait été payée, notamment lorsque celle-ci a été remise par le créancier (pour d'autres cas, cf. ROMY, op. cit., n. 3 ad **art. 147 CO**), soit personnelle, de sorte qu'elle n'éteint pas les obligations des autres débiteurs solidaires si ce n'est dans la mesure indiquée par les circonstances ou la nature de l'obligation (pour une exception au principe, cf., p. ex., le dernier arrêt cité, consid. 3.5.4.2). Ce caractère personnel a aussi pour conséquence que le débiteur libéré par le créancier reste tenu, dans les rapports avec ses codébiteurs, du montant de sa quote-part, sauf accord interne contraire. A plus forte raison doit-il en aller de même lorsque la dette de l'un des codébiteurs est prescrite, du moment que la prescription n'éteint pas la dette mais paralyse l'action, qu'elle ne profite qu'au débiteur qui s'en prévaut et qu'elle est indépendante pour chaque débiteur, qui doit l'invoquer lui-même (ROMY, op. cit., n. 3 à 6 ad **art. 147 CO**, n. 17 ad **art. 148 CO** et note 27, p. 818). Ces considérations démontrent, *a contrario*, qu'il n'est pas nécessaire que la coresponsabilité existe encore au moment où la créance récursoire prend naissance - à savoir, lorsque le débiteur recherché désintéresse le créancier - pour que le titulaire de cette créance puisse la faire valoir en justice, ni, *a majore minus*, que la créance du lésé découlant de cette coresponsabilité ne soit point encore prescrite à ce moment-là. Il suffit que la coresponsabilité ait existé, même si elle n'existe plus au moment du paiement, parce que la personne sujette au recours a vu sa dette remise par le lésé, ou qu'elle ne puisse plus donner lieu à une action judiciaire, parce que ce dernier a laissé prescrire ses droits contre cette personne. A l'inverse et par identité de motifs, le fait que la créance du lésé envers le responsable sujet au recours existe toujours et ne soit pas prescrite au moment où le lésé est désintéressé par un autre responsable - ce qui sera généralement le cas en matière de solidarité parfaite, puisque l'interruption de la prescription contre l'un des débiteurs déploie ses effets contre tous (**art. 136 al. 1 CO**) - ne saurait profiter au titulaire du droit de recours et n'empêchera pas la créance récursoire de se prescrire, étant donné qu'elle obéit à ses propres règles.

En définitive, la prescription, resp. l'absence de prescription, de la créance du lésé contre le responsable sujet au recours ne doit pas pouvoir être opposée au titulaire de la prétention récursoire, resp. bénéficier à celui-ci.

BGE 133 III 6 S. 28

**5.3.5** La prescription est une institution qui vise avant tout à protéger efficacement les intérêts privés du débiteur (PICHONNAZ, op. cit., n. 2 ad **art. 127 CO**): au terme d'une période facilement déterminable, la personne impliquée dans la survenance d'un événement dommageable ou ses héritiers doivent pouvoir se sentir à l'abri de prétentions juridiques (WIDMER/WESSNER, op. cit., p. 226). S'agissant de l'action récursoire, ladite période débute à partir du moment où le demandeur a cette action a indemnisé le lésé. On peut d'ailleurs ajouter - précision utile, qui figure notamment à l'**art. 83 al. 3 LCR** et à l'art. 55c al. 1 AP - que la partie demanderesse à l'action récursoire doit avoir connaissance de la partie défenderesse, cette condition cumulative signifiant que le *dies a quo* peut être différent s'il y a plusieurs coresponsables impliqués (WIDMER/WESSNER, ibid.). On a toutefois affaire à un délai relatif, lequel, étant donné ce caractère, ne permet pas de satisfaire totalement le besoin de sécurité juridique du défendeur potentiel à l'action récursoire (WERRO, CR, n. 21 ad **art. 60 CO**). Tel est, en particulier, le cas lorsque le désintéressement du lésé a lieu tardivement parce que le codébiteur qui a payé avait renoncé à se prévaloir de la prescription, pour une raison valable (p. ex. pour éviter la notification d'un commandement de payer ou l'ouverture d'une action judiciaire), ou l'avait interrompue, conformément à l'**art. 135 ch. 1 CO**, en reconnaissant - à juste titre - sa dette (cf. BUGNON, op. cit., p. 150). Aussi, pour protéger convenablement le codébiteur sujet au recours, la jurisprudence applique-t-elle à l'action récursoire un délai absolu courant à compter d'une date certaine. Ce délai, qui part du jour où le fait dommageable s'est produit (ou a cessé de se produire), a été fixé à dix ans, par analogie avec celui que prévoit l'**art. 60 al. 1 CO**, dans l'idée d'harmoniser les régimes de prescription des créances principale et récursoire dans le domaine de la responsabilité civile. Il reste dans les limites raisonnables et est inférieur de moitié à celui que prévoit l'Avant-projet (20 ans, selon l'art. 55c al. 1; BENOÎT CHAPPUIS [Quelques réflexions d'un praticien sur l'avant-projet de loi fédérale sur la révision et l'unification du droit de la responsabilité civile, in La réforme du droit de la responsabilité civile, éd. par Bénédict Foëx et Franz Werro, 2004, p. 123 ss, 138] se demande s'il est vraiment opportun de prévoir un délai de prescription qui soit le double de celui durant lequel les livres, les pièces comptables et la correspondance doivent être conservés, en vertu de l'**art. 962 al. 1 CO**).

BGE 133 III 6 S. 29

L'institution de la prescription ne suffit cependant pas toujours à protéger la personne sujette au recours. En effet, lorsque celle-ci apprend tardivement, mais avant l'expiration du délai de prescription de l'action

récursoire, qu'elle devra résister à une telle action, elle peut être placée dans une situation difficile en ce qui concerne la sauvegarde de ses droits: non seulement, elle n'aura pas pu intervenir dans le procès principal pour y faire valoir son point de vue, si la loi de procédure civile applicable lui permettait de le faire, mais encore se pourrait-il qu'elle ait perdu entre-temps des moyens de preuve propres à l'exonérer, soit qu'elle n'ait pas jugé utile de conserver des pièces probantes, parce qu'elle se croyait à l'abri d'une poursuite judiciaire, soit qu'elle doive déplorer la disparition de témoins capitaux. Pour parer à ces inconvénients, la jurisprudence, partant de la prémisse selon laquelle le créancier récursoire qui entend s'en prendre à un coresponsable déjà libéré à l'égard du lésé par la prescription doit lui donner un avis dès qu'on peut l'exiger de lui en appliquant les règles de la bonne foi, fait appel au correctif de l'**art. 2 al. 2 CC** et refuse au titulaire de la créance récursoire non prescrite l'exercice de son droit s'il a omis de procéder en temps utile à un tel avis (**ATF 127 III 257** consid. 6c). L'Avant-projet prend, lui aussi, en considération les intérêts légitimes du sujet au recours, mais il attache une sanction moins drastique que la déchéance des droits du créancier récursoire à l'inobservation du devoir d'avis imposé à cette partie, puisque le non-respect de cette "incombance" ne devrait avoir pour conséquence que de faire courir le délai de prescription de l'action récursoire à compter du jour où cet avis aurait dû être donné conformément aux règles de la bonne foi (art. 55c al. 2 AP). La solution jurisprudentielle paraît un peu floue à certains auteurs (voir, parmi d'autres: CORBOZ, La responsabilité des organes, n. 33 ad **art. 759 CO**) et les auteurs de l'Avant-projet concèdent que la disposition proposée par eux peut le paraître aussi (WIDMER/WESSNER, op. cit., p. 227). Il n'en demeure pas moins, comme le souligne un auteur, que c'est là le prix à payer pour la prise en compte des intérêts légitimes des coresponsables (CHAPPUIS, ibid.).

La loi offre, enfin, de quoi remédier aux résultats inéquitables qu'entraînerait, selon SPIRO (op. cit., § 209, p. 492 s.), l'inopposabilité dans les rapports internes de la prescription acquise face au lésé. L'auteur cite l'hypothèse dans laquelle, les prétentions de celui-ci envers deux codébiteurs étant prescrites, l'un d'entre eux

BGE 133 III 6 S. 30

désintéresserait néanmoins le lésé pour intenter ensuite une action récursoire à l'autre. A son avis, le caractère personnel de l'exception de prescription, combiné avec la théorie de l'indépendance de la prétention récursoire, permettrait, dans ce cas, au demandeur à l'action récursoire de faire supporter par le défendeur à cette action tout ou partie de la dette externe qu'il a lui-même éteinte volontairement, bien qu'elle fût prescrite, ce qui serait choquant (dans ce sens aussi: BUGNON, op. cit., p. 151). Il est vrai que, dans une telle hypothèse, on ne saurait reprocher au responsable qui a payé de ne pas avoir invoqué la prescription, puisqu'il n'était pas tenu de le faire en raison du caractère personnel de l'exception y relative (cf. **art. 145 al. 2 CO** a contrario). En revanche, l'intéressé devrait être sanctionné par la perte de son droit de recours pour avoir aggravé, par son fait personnel (i.e. la renonciation, par acte concluant, à la prescription acquise), la position de l'autre codébiteur, contrairement à l'interdiction faite à tout codébiteur par l'**art. 146 CO**. Qu'il y ait aggravation de cette position et qu'elle lui soit imputable n'est pas contestable: en éteignant volontairement la dette externe qu'il sait être prescrite, le débiteur du lésé fait naître sa créance récursoire à l'égard du codébiteur, à concurrence du montant qui excède sa propre part de responsabilité, laquelle créance n'existerait pas à ce défaut. Par son paiement, il éteint certes, dans cette mesure, la créance prescrite du lésé envers le codébiteur, tel un gérant d'affaires; mais il ne le fait pas dans l'intérêt de ce codébiteur, c'est-à-dire le maître, car il sait qu'il ne pourrait pas recourir contre ce dernier s'il ne désintéressait pas lui-même le lésé en acquittant volontairement la dette externe prescrite. Sans doute ne s'est-il pas enrichi, ce faisant, puisqu'il a désintéressé le lésé de ses propres deniers. Il n'en demeure pas moins qu'il a entrepris une gestion qui n'était pas dans l'intérêt du maître (cf. **art. 423 CO**). Celui-ci (i.e. le codébiteur sujet au recours) est, dès lors, titulaire d'une créance en réparation du dommage causé par cette ingérence (cf. **art. 420 CO**), laquelle créance correspond au montant que le gérant a payé pour lui en indemnisant le lésé, et il peut opposer cette créance en compensation à la créance récursoire du gérant, d'un montant équivalent, qui a pris naissance avec ce paiement (**art. 120 al. 1 CO**). Pour le surplus, on ne voit pas en quoi - autre hypothèse évoquée par SPIRO (ibid.) - l'un des débiteurs solidaires aggraverait la position du codébiteur dont la dette externe est prescrite par le seul fait d'interrompre la prescription de sa propre dette à l'égard du lésé en

BGE 133 III 6 S. 31

reconnaissant celle-ci, fût-ce de manière injustifiée. Contrairement à ce qu'écrit cet auteur (op. cit., p. 493, n. 10), ce n'est pas, en effet, la reconnaissance de dette, interruptive de prescription, qui constitue, dans ce cas, le fondement juridique de la prétention récursoire du débiteur ayant reconnu sa dette, mais le désintéressement subséquent du lésé par ce même débiteur. Et l'on retombe alors dans l'hypothèse envisagée plus haut, à savoir celle où le titulaire du droit de recours acquitte la dette externe alors qu'il aurait pu s'en dispenser (ici en n'interrompant pas la prescription). Au demeurant, si le demandeur à l'action récursoire a désintéressé le lésé après avoir reconnu une dette qui n'existait pas, le défendeur à cette action pourra s'en prévaloir pour s'opposer à l'admission de la demande. C'est le lieu d'observer, à ce propos, qu'un éventuel jugement condamnatoire fondé sur cette reconnaissance de dette ne lierait pas le juge appelé à connaître ultérieurement de l'action récursoire (cf. BREHM, op. cit., n. 10 ad **art. 51 CO**; BUGNON, op. cit., p. 127).

**5.4** Cela étant, les explications qui précèdent permettent de répondre à la question laissée ouverte par la jurisprudence fédérale en posant les principes suivants: la prescription de la créance du lésé contre l'un des coresponsables n'empêche pas le responsable qui a désintéressé le lésé de faire valoir sa créance récursoire contre ce coresponsable, pour autant qu'il l'ait avisé qu'il le tenait pour coresponsable dès qu'il était en mesure de le faire. A moins qu'une autre solution ne découle de la relation contractuelle pouvant exister entre les responsables solidaires concernés par l'action récursoire, cette action se prescrit par un an à compter du jour où le lésé a été désintéressé et le coresponsable connu, conformément au régime ordinaire applicable en matière de responsabilité extracontractuelle; elle se prescrit dans tous les cas par dix ans à partir du jour où le fait dommageable s'est produit ou a cessé de se produire.

La solution retenue s'inscrit dans le droit fil de la jurisprudence récente; prenant en considération, dans la mesure du possible, les intérêts opposés des sujets actif et passif de la prétention récursoire, elle correspond à l'opinion de la doctrine majoritaire, rejoint celle adoptée par d'autres ordres juridiques proches du droit suisse et préfigure, à peu de choses près, la manière dont la question litigieuse pourrait être réglementée à l'occasion de la révision du droit de la responsabilité civile.

BGE 133 III 6 S. 32

Il reste à appliquer les principes juridiques ainsi posés aux faits constatés dans le jugement déféré pour savoir si la cour cantonale a violé ou non le droit fédéral.

**6.**

**6.1** Pour rejeter l'exception de prescription soulevée par l'appelée en cause, la cour cantonale a tenu le raisonnement suivant.

L'architecte a appelé en cause Y. par une requête déposée le 14 août 1996. A cette date, le délai de prescription absolu de dix ans n'était pas échu puisque l'explosion dommageable s'était produite le 5 octobre 1988. Par cette démarche procédurale, l'intéressé a donc interrompu le délai en question. Quant au délai de prescription relatif, qui était d'un an dès le désintéressement des lésés, il a également été respecté dans la présente espèce. En effet, l'assurance de l'architecte a indemnisé B. et C., les victimes de l'explosion, en versant, en octobre 1995, 140'000 fr. à la première et 13'797 fr. 50 à la CNA pour le second. Or, l'appel en cause est intervenu moins d'une année après ces paiements. S'agissant des autres prétentions élevées par la demanderesse, elles n'ont pas encore donné lieu à des paiements de la part de l'architecte et de l'entreprise, si bien que la prescription n'a pas commencé à courir à leur égard. Au demeurant, on ne saurait reprocher aux défendeurs d'avoir tardé à faire valoir leurs droits à l'encontre de l'appelée en cause, car ils devaient d'abord savoir, d'une part, qu'une demande allait être introduite contre eux et, d'autre part, que l'appelée en cause n'en ferait pas l'objet avant d'envisager de se retourner contre celle-ci; comme ces éléments n'ont été connus que le 2 juillet 1996, date d'introduction de la demande principale, l'appel en cause, déposé le mois suivant, n'était pas tardif.

**6.2**

**6.2.1** L'appelée en cause prétend que le résultat auquel est parvenue la cour cantonale contrevient aux **art. 136 et 146 CO**. A la suivre, en permettant aux défendeurs de se retourner contre elle, bien que la prescription la mît à l'abri d'une demande de la Fondation lésée, les premiers juges auraient étendu à une situation de solidarité imparfaite le mécanisme institué spécialement par l'**art. 136 CO** pour la solidarité parfaite. Ils auraient, en outre, méconnu l'**art. 146 CO** en ne sanctionnant pas le comportement des défendeurs, lesquels auraient aggravé sa position en interrompant la prescription de la créance de la demanderesse à leur égard par la délivrance de déclarations de renonciation à la prescription.

BGE 133 III 6 S. 33

Pareille argumentation tombe à faux. En effet, pour les motifs sus-indiqués, le fait que la demanderesse n'a pas recherché l'appelée en cause avant l'échéance du délai de prescription de sa créance n'empêchait nullement les défendeurs de faire valoir leurs prétentions récursoires à l'encontre de l'appelée en cause. La référence faite par celle-ci à l'**art. 136 CO** n'a donc rien de topique. D'ailleurs, la cour cantonale, à juste titre, n'a pas appliqué cette disposition.

De la même manière, si l'application des principes énoncés plus haut entraîne *de facto* une aggravation de la situation de l'appelée en cause, puisque cette dernière doit résister à une action récursoire alors qu'elle ne peut plus être recherchée par la lésée, il ne s'ensuit pas pour autant que la Cour civile ait méconnu l'**art. 146 CO**. De fait, semblable aggravation est sans rapport avec un comportement qui pourrait être reproché aux défendeurs. Ceux-ci n'ont pas renoncé à se prévaloir d'une prescription des droits de la demanderesse à leur égard, qui aurait déjà été acquise. Comme le constate la cour cantonale, ils ont, au contraire, subordonné leurs renonciations successives à se prévaloir de la prescription à la condition que les droits de cette partie ne fussent point déjà prescrits. Ce n'était du reste pas le cas, non seulement lors de la délivrance des déclarations de renonciation, mais encore au moment de l'ouverture de l'action principale, attendu que les créances de la Fondation à l'endroit de l'architecte et de l'entreprise découlaient de la violation d'obligations contractuelles commise par ceux-ci avant la livraison de l'ouvrage et qu'elles se prescrivaient, en conséquence, par dix ans (**art. 127 CO**; cf. **ATF 111 II 170** consid. 2 p. 172; GAUCH, op. cit., n. 2301; PIERRE TERCIER, Les contrats spéciaux, 3ᵉ éd., n. 4737).

**6.2.2** L'appelée en cause soutient, par ailleurs, que l'entreprise défenderesse a tardé à lui dénoncer le litige, de sorte que la prétention récursoire de cette partie serait aujourd'hui périmée.

**6.2.2.1** La cour cantonale a admis avec raison que l'architecte - pour avoir formé sa requête d'appel en cause le mois suivant l'introduction de la demande en paiement par la Fondation - avait agi conformément à la jurisprudence relative à l'abus de droit.

**6.2.2.2** Pour des motifs qui ne ressortent pas de la décision attaquée, les juges cantonaux n'ont pas procédé au même examen en ce qui concerne l'entreprise. Or, celle-ci n'a pas dénoncé à Y. le procès que la Fondation lui avait intenté et elle a attendu le 4 mai 1998 pour inviter le juge, au moyen d'une conclusion subsidiaire

BGE 133 III 6 S. 34

prise dans son mémoire de réponse à la demande de la Fondation, à ordonner à Y. de la relever de tout montant qui pourrait être mis à sa charge. En d'autres termes, la défenderesse a laissé s'écouler 22 mois sans rien entreprendre contre Y. Dans sa réponse au recours de l'appelée en cause, l'entreprise conteste que l'on puisse lui en faire grief: d'une part, parce que la Fondation ignorait alors que Y. était en partie responsable de son dommage, ne l'ayant appris qu'à la lecture des expertises ordonnées en cours d'instruction; d'autre part, parce qu'elle-même avait présenté ses conclusions visant Y. avant le 5 octobre 1998, respectant ainsi le délai de prescription absolu de sa créance récursoire.
   Il ressort de la décision attaquée qu'une instruction pénale a été ouverte immédiatement après les faits, notamment à l'encontre de deux employés de l'appelée en cause. Cette circonstance était connue de l'entreprise, puisqu'elle était également partie à la procédure pénale. Pour la même raison, la défenderesse a également eu connaissance de la condamnation pénale de ces deux employés par le Tribunal correctionnel, le 28 février 1994. Certes, ceux-ci ont ensuite été acquittés par l'instance supérieure, le 31 octobre 1994. Il n'empêche que l'entreprise ne pouvait qu'avoir conscience de l'éventuelle implication de Y. dans l'explosion et de la possibilité que cette société soit amenée ultérieurement à rendre des comptes sur le plan civil. La cour cantonale a d'ailleurs implicitement admis la chose en faisant partir le délai dans lequel l'architecte et l'entreprise devaient informer Y. de leur intention de se retourner contre elle de la connaissance par eux du fait que cet autre corresponsable (Y.) n'était pas recherché par la Fondation lésée. A ce propos, la jurisprudence exige uniquement que le titulaire du droit de recours ait pris connaissance de la possibilité (*Möglichkeit*) de se retourner contre un autre responsable (**ATF 127 III 257** consid. 6 p. 266 in fine). Comme l'a retenu à juste titre la cour cantonale, mais sans en tirer les conséquences qui s'imposaient pour l'entreprise, cette dernière a donc eu connaissance de la possibilité de dénoncer le litige à Y. dès le dépôt de l'action en paiement dirigée contre elle et contre l'architecte. On ne discerne d'ailleurs pas pour quel motif l'entreprise aurait dû attendre 22 mois pour le faire, alors que l'architecte avait été en mesure d'appeler en cause Y. moins de deux mois après avoir été assigné en justice par la demanderesse. De surcroît, et contrairement à ce que soutient la défenderesse, le moment où la Fondation a eu connaissance du fait que la

BGE 133 III 6 S. 35

responsabilité civile de Y. pourrait être engagée n'est pas déterminant pour fixer celui où elle-même a acquis une telle connaissance et à partir duquel elle aurait dû donner l'avis prescrit à l'appelée en cause. L'entreprise ne fait du reste que soutenir, sans plus ample démonstration, que la connaissance du fait en question par la Fondation aurait été postérieure à la sienne. Enfin, étant donné l'absence de solidarité dans les rapports internes et l'indépendance des prétentions récursoires, la dénonciation du litige à l'appelée en cause effectuée par l'architecte ne pouvait pas profiter à l'entreprise (cf. BREHM, op. cit., n. 89 ad **art. 51 CO**).
   Par conséquent, pour avoir attendu 22 mois avant de demander au juge d'ordonner à Y. de la relever d'une éventuelle condamnation pécuniaire qui pourrait être prononcée à la requête de la demanderesse, la défenderesse est déchue de ses droits de recours envers l'appelée en cause. En admettant la conclusion récursoire prise par elle contre cette partie, les juges précédents ont donc violé le droit fédéral.

**6.2.3** L'appelée en cause se plaint encore de ce que l'action récursoire de l'architecte dirigée contre elle ait été admise par la cour cantonale en rapport avec les indemnités versées en octobre 1995 à une employée de la Fondation et, via la CNA, à un ouvrier, blessés tous deux lors de l'explosion. A son avis, la prétention récursoire y relative serait prescrite au motif que la dénonciation du litige à son égard n'aurait pas concerné ces indemnités. De plus, lorsqu'il a dénoncé le litige, l'architecte n'aurait pas été titulaire de la créance récursoire en rapport avec les indemnités en question et son assurance responsabilité civile n'aurait rien entrepris pour interrompre la prescription à l'égard de Y.
   Contrairement aux situations qui viennent d'être examinées, l'action récursoire du défendeur contre l'appelée en cause n'a pas ici pour origine le dommage encouru par la Fondation à la suite de l'explosion, mais le préjudice subi, à raison du même événement, par deux personnes physiques qui n'ont jamais participé à la procédure civile et que l'architecte - par le biais de son assurance - a décidé d'indemniser directement. Selon les principes énoncés précédemment, l'action récursoire de celui qui a indemnisé le lésé

et qui n'est pas en relation contractuelle avec le coresponsable recherché se prescrit par un an à compter du moment où le lésé a été désintéressé. Ainsi, l'action récursoire de l'architecte contre Y. en rapport

BGE 133 III 6 S. 36

avec le dédommagement de l'employée de la Fondation et de l'ouvrier du chantier se prescrivait à la fin du mois d'octobre 1996. Or, dans son appel en cause du 14 août 1996, soit avant l'expiration du délai de prescription, le défendeur avait dénoncé le litige à Y. tant en ce qui concerne le dommage subi par la Fondation que pour celui encouru par les particuliers. Le moyen tiré de la prescription n'est donc pas fondé, mais par autant - second grief articulé par l'appelée en cause et qui reste à examiner - que l'architecte ait été titulaire en août 1996 d'une prétention récursoire contre Y. relativement aux indemnités litigieuses.

Il ressort du jugement attaqué que ces indemnités ont été payées en octobre 1995 par l'assurance responsabilité civile de l'architecte. Ce faisant, celle-ci a été subrogée aux droits de son assuré en vertu de l'**art. 72 LCA** appliqué par analogie (**ATF 130 III 362** consid. 5.1) et s'est ainsi substituée au défendeur (ROLAND BREHM, Le contrat d'assurance RC, Bâle 1997, n. 686). Depuis ce moment, il lui appartenait d'exercer l'action récursoire contre Y. Or, l'assurance n'a rien entrepris elle-même à l'égard de l'appelée en cause et n'a en particulier pas interrompu la prescription de la créance récursoire. Quant à la dénonciation du litige par l'architecte en août 1996, elle n'a eu aucun effet sur la créance récursoire de l'assurance qui en était alors la seule titulaire. Sur ce point, la cession de créance opérée le 7 septembre 1999 par l'assurance en faveur de l'architecte est restée sans effet, car la créance cédée était prescrite depuis octobre 1996 déjà.

Par conséquent, en admettant l'action récursoire du défendeur contre l'appelée en cause du chef des indemnités versées en rapport avec le préjudice subi par l'employée de la Fondation et l'ouvrier blessés dans l'explosion, la cour cantonale a violé le droit fédéral.

**6.3** Les considérations qui précèdent imposent de réformer le jugement entrepris sur les deux points suivants: d'abord, l'action récursoire de la défenderesse contre l'appelée en cause doit être entièrement rejetée, ce qui entraîne la modification du chiffre III du dispositif de ce jugement; ensuite, l'action récursoire du défendeur contre l'appelée en cause doit être rejetée dans la mesure où elle concerne les indemnités versées à l'une des deux personnes physiques blessées lors de l'explosion et à la CNA pour l'autre, ce qui entraîne la modification du chiffre V de ce dispositif.

# Certified English Translation

*[Page 4 source PDF]*

However, most authors who have studied the question have not hesitated to take the step (ISABELLE ROMY, in Commentaire romand [French-Speaking Commentary], no. 17 to **Article 148 CO** (Code of Obligations); FRANZ WERRO, La responsabilité civile [Civil Liability], no. 1628;

*[Page 6 source PDF]*

Other authors reach the same conclusion as BUGNON, some basing their opinion on the *a contrario* interpretation of the judgment published in **<u>ATF (Federal Supreme Court Judgment) 127 III 257</u>** recital 6c (ROLAND BREHM, Commentaire bernois [Bern Commentary], 3rd ed., no. 142 in fine to **Article 51 CO**; ROMY, ibid.; WERRO, ibid.; FELLMANN, ibid.; KRAUSKOPF, ibid.).

*[Page 9 source PDF]*

**5.3.3.** The main objective of passive joint liability, insofar as it applies to the field of civil liability, is to ensure that the injured party is compensated for the damage he has suffered. The second is to ensure that each party responsible bears, ultimately, the share of liability corresponding to the intensity of the adequacy which links him to the injury (BUGNON, op. cit., p. 88). Concretizing this second

BGE (Federal Supreme Court Decision) 133 III 6 p. 25

objective, the law provides, in general, that whoever pays more than his share has, for the excess, a recourse against the others (**Article 148(2) CO**). The internal distribution of the joint debt may be determined by prior treaty rules, by legal provisions governing the contractual relationship between the co-debtors, or even, in the absence of such a relationship, by special legal norms or, failing that, by the implementation of the provisions relating to illegitimate enrichment and the management of business without a mandate (on these issues, cf., inter alia: ROMY, op. cit., no. 2 et seq. to **Article 148 CO**).

*[Page 10 source PDF]*

This personal nature also means that the debtor discharged by the creditor remains liable, in relations with his co-debtors, for the amount of his share, unless there is internal agreement to the contrary. All the more so when the debt of one of the co-debtors is time-barred, provided that the statute of limitations does not extinguish the debt but paralyzes the action, that it benefits only the debtor who avails himself of it and that it is independent for each debtor, who must invoke it himself (ROMY, op. cit., no. 3 to 6 to **Article 147 CO**, no. 17 to **Article 148 CO** and note 27, p. 818). These considerations demonstrate, *a contrario*, that it is not necessary that co-liability still exists at the time when the claim arises – namely, when the debtor sought pays off the creditor – for the holder of that claim to be able to assert it in court, nor, *a majore minus*, that the claim of the injured party resulting from this co-liability is not yet time-barred at that time.



# TRANSLATION CERTIFICATION

Date: March 10, 2022

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- German (Germany), French (France)

To:

- English (USA)

The documents are designated as:
- ATF 133 III 6 (excerpt).pdf
- Heierli, Zivilrechtliche Haftung für Geldwäscherei (excerpt).pdf
- I ATF 116 II 480.pdf
- Rey, Wilhaber, Ausservertragliches Haftpflichtrecht (excerpt).pdf
- 4A_619_2016.pdf
- ATF 132 III 661 (excerpt).pdf
- Commentaire Romand, Thevenoz and Werro, eds. (excerpt).pdf
- Perritaz, L_art. 50 al. 1 CO_une norme qui fonde la responsabilité.pdf

Leslie Yale, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

*Leslie Yale*
Signature of Leslie Yale