UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
ENTESAR OSMAN KASHEF et al., :
 :
                Plaintiffs, : **SCHEDULING ORDER**
 :
   -against- : 16 Civ. 3228 (AKH)
 :
BNP PARIBAS SA, et al., :
 :
                Defendants. :
------------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      This putative class action[1] is brought by and on behalf of now-U.S. resident victims of the Sudanese government's campaign of human rights abuses from 1997 to 2009 against Defendants BNP Paribas S.A., a French financial institution, its U.S.-based subsidiary BNP Paribas North America, Inc., and its New York branch (collectively "BNPP" or "Defendants"). Between 1992 and 1997, the United States government took a series of steps aimed at stemming the abuses, including formal condemnation, designation as a state sponsor of terrorism, and eventually economic sanctions. Starting in 1997, BNPP became the primary bank for the Government of Sudan, through which it accessed U.S. financial markets. BNPP also created schemes to help Sudan circumvent the sanctions, including removing information from financial documents identifying a Sudanese entity as a party to the transaction, and using satellite banks in the United States to funnel money. Sudan's access to the U.S. financial markets was critical to funding the government and its continued atrocities against its people.

      In 2014, following numerous investigations by state and federal agencies in the United States, BNPP France pleaded guilty to conspiring to violate the laws of the United States

---

[1] This case was originally assigned to Judge Alison Nathan but was reassigned to this Court on April 6, 2022, after Judge Nathan was appointed and confirmed to the Court of Appeals for the Second Circuit.

in connection with circumventing U.S. sanctions on behalf of Sudan, Iran, and Cuba; and to falsifying business records and conspiracy under New York law.

In 2016, Plaintiffs instituted this suit, seeking to impose secondary tort liability on BNPP France for its role in the conspiracy, and the U.S. entities, through which laundered transactions were cleared. Defendants have done their best to avoid litigating this matter but have been unsuccessful in those efforts, failing to obtain dismissal based on the act of state doctrine and timeliness[2] or failure to state a claim.[3]

Defendants again move to dismiss, this time for *forum non conveniens* (ECF No. 261). They argue that Plaintiffs' choice of forum is not owed substantial deference, and that this suit lacks a substantial connection to New York. *See* Memorandum in Support of Motion to Dismiss for *Forum Non Conveniens* ("Mot."), ECF No. 262. They argue that the suit should be litigated in Switzerland, where Defendants are now willing to consent to jurisdiction, and whose law Judge Nathan previously found applicable (ECF No. 151). *See* Mot.

Plaintiffs respond that their choice of forum is entitled to deference because it is their home forum; their choice was motivated by legitimate reasons; and, the suit has strong connections to New York and the United States. *See* Pl. Memorandum in Opposition ("Opp."), ECF No. 278. To wit, Plaintiffs note that the lead plaintiffs and class (estimated at 15,000 people) are all Sudanese-Americans, many of whom reside in New York, and that BNPP pleaded guilty to federal and state crimes in New York, placing critical evidence in the forum. *See id.* Plaintiffs further contend that Defendants cannot establish an adequate and available forum in Switzerland, or that the private and public interest factors weigh heavily in favor of dismissal. *See id.*

---

[2] Judge Nathan initially granted the motion to dismiss in light of the act of state doctrine and timeliness (ECF No. 101), but that decision was reversed by the Second Circuit. (ECF No. 106).
[3] Following the Second Circuit's remand, Defendants renewed their motion to dismiss the operative Second Amended Complaint, which Judge Nathan granted in part and denied in part. (ECF No. 193).

I agree with Plaintiffs. Their choice of forum is entitled to substantial deference. In addition, Defendants have not met their burden of showing that Switzerland is an available, let alone preferable, alternate forum, nor that Switzerland is the most appropriate forum for litigation. For this and other reasons provided below, the motion to dismiss for *forum non conveniens* is denied.

## DISCUSSION

I. Legal Standard

"*Forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (quotation omitted). Courts may decline to exercise jurisdiction under this doctrine when it is determined that, weighing "relative advantages and obstacles to fair trial" in the alternative fora, and practical considerations of which forum will "make trial of a case [more] easy, expeditious and inexpensive," "the balance is strongly in favor" of the defendant's request for dismissal in favor of a more convenient forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 503 (1947).

"[D]istrict courts enjoy broad discretion in" determining how to rule on a *forum non conveniens* motion. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 153 (2d Cir. 2005), *cert. denied*, 547 U.S. 1175 (2006). In deciding whether to dismiss on this ground, courts in this Circuit undertake a three-step analysis. First, courts determine the degree of deference due the plaintiff's choice of forum. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc). Second, courts examine whether there is an adequate alternative forum for the dispute. *See id.* Third, courts balance the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration. *See id.* at 73–74. The defendant bears the burden of showing that each stage of the analysis "tilt[s] strongly in favor of trial in the foreign forum." *Wiwa*, 226 F.3d at 108; *see also P.T. United Can*

*Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). "The central purpose of a forum non conveniens inquiry is to determine where trial will be most convenient and will serve the ends of justice . . . ." *R. Maganlal & Co. v. M.G. Chemical Co.*, 942 F.2d 164, 167 (2d Cir. 1991); *see also Gilbert*, 330 U.S. at 508–09. "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri*, 274 F.3d at 74–75.

II. Analysis

  A. Degree of Deference Owed to Plaintiffs' Choice of Forum

    "The greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that consideration of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens* . . . ." *Iragorri*, 274 F.3d at 72; *cf id.* (noting that plaintiff's choice of forum is due lesser deference the more it appears that the choice was motivated by forum-shopping and efforts to win a tactical advantage in the chosen forum). Ordinarily, a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant demonstrates that the choice deserves lesser deference. *Dirienzo v. Philip Servs. Crop.*, 294 F.3d 21, 28 (2d Cir. 2002).

    Here, Plaintiffs' choice of forum deserves substantial deference. The 19 named plaintiffs and entire putative class are lawful U.S.-residents. They have chosen to bring suit in a United States court, rather than a Swiss court. Because a United States court is their home forum, this choice creates a presumption of convenience. Not only is this a convenient home forum, but much of the relevant evidence, drawn from the documents associated with BNPP's guilty plea, also is located here. In addition, BNPP's New York branch, a named Defendant, was also implicated in BNPP's guilty plea, as the entity through which BNPP France laundered billions in illicit transactions for Sudan, indicating that more evidence and at least some of the

relevant witnesses also are present here. Thus, both Plaintiffs and their lawsuit have bona fide connections to the United States and New York. *Cf. Aenergy, S.A. v. Republic of Angola*, No. 21-CV-1510, 2022 U.S. App. LEXIS 9922, at *4 (2d Cir. Apr. 13, 2022) (affirming dismissal where district court found no bona fide connections to the United States or New York because the foreign plaintiffs failed to show that the New York forum was convenient for them or that any relevant conduct occurred in New York).

Defendants dispute that Plaintiffs' choice of forum is entitled to deference. However, they have not offered any evidence that suggests that Plaintiffs' choice was motivated by illegitimate concerns or forum-shopping. Rather, at least one motivating factor seems to be that New York was the place where Plaintiffs could obtain jurisdiction over all of the Defendants. *Cf. Aenergy*, 2022 U.S. App. LEXIS 9922, at *5 (affirming dismissal where district court found that the foreign plaintiffs' choice to bring suit "smack[ed] of forum shopping" because they brought suit in New York only after efforts to proceed against the defendants in Angola were unsuccessful). Although Defendants now claim that Switzerland is an available and preferable forum, this is only because they have offered to consent to jurisdiction, possibly for the benefits of obtaining dismissal. Whatever the motivations, Defendants' recent (and belated) change-of-heart cannot apply retroactively to delegitimize Plaintiffs' initial choice.

Defendants also endeavor to undermine Plaintiffs' connections to New York and the United States by characterizing them as Sudanese refugees, seemingly to suggest that I should treat them differently based on their national origin. Defendants cite no case law supporting the proposition that a present U.S.-resident's birthplace enhances or diminishes that resident's connection to the United States or the forum. Permanent residents are treated as citizens of the state in which they reside for the purposes of determining diversity jurisdiction and removability, which implicate the critical issue of subject-matter jurisdiction. Defendants fail to explain why such residents should be treated differently in the context of a discretionary

decision to dismiss for *forum non conveniens*. They also fail to explain how such a theory, adopted and enforced by me, would be constitutional. *See Hernandez v. State of Texas*, 347 U.S. 475, 482 (1954) (holding that people of Mexican descent are a protected class in jury exclusion); *Shelley v. Kraemer*, 334 U.S. 1, 18–23 (1948) (holding that judicial enforcement of racially restrictive covenants violates the Fourteenth Amendment).

Defendants fail to establish that Plaintiffs' choice of forum was motivated by anything other than legitimate concerns of convenience and the connections to the United States and New York. Thus, there is "no reason to make an exception to the presumption that 'a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'" *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947), and *Gilbert*, 330 U.S. at 508). Accordingly, Plaintiffs' choice of forum is owed substantial deference.

B. Availability of Alternate and Adequate Forum

A party seeking dismissal for *forum non conveniens* bears the burden of establishing that a presently available and adequate alternative forum exists. *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 169, 189 (2d Cir. 2009).

The parties (and their experts) dispute whether a Swiss court could have, and would exercise, jurisdiction over the instant dispute. Defendants' expert, Professor Isabelle Romy, states that a Swiss court could exercise jurisdiction based on Defendants' consent, or based on its jurisdiction over non-party BNPP Suisse. *See* Romy Decl., ECF No. 297. Plaintiffs' expert, Professor Ramon Mabillard disagrees and states that a Swiss court can only exercise jurisdiction by consent if one of the parties is a Swiss domiciliary, or if Swiss law applies to the dispute. *See* Mabillard Decl., ECF No. 279. Professor Mabillard notes that quite obviously the first condition is unavailable, and as to the latter, under Swiss choice-of-law rules,

Sudanese law would apply. Professor Romy disagrees and contends that the parties could, as provided under Swiss law, agree that Swiss law applies, thereby preventing a Swiss court from exercising jurisdiction. *See* Romy Decl.

In light of this dispute, and on the record before me, I cannot state definitively that Switzerland is an available forum. Because Defendants have the burden of showing that an adequate alternative forum presently exists[4] and have failed to do so, this alone would justify denying the motion. However, I need not do so on this ground alone because, as discussed below, even assuming an adequate alternative forum exists in Switzerland, Defendants have not shown also that the relevant private and public interest factors tilt heavily in favor of that forum.

C. Balancing Private and Public Interests

Courts must consider both the private and public interest factors and make an ultimate determination as to convenience. Defendants have the burden of establishing that Plaintiffs' chosen forum is not convenient; their burden here is particularly heavy because Plaintiffs' choice is owed substantial deference. *See Guidi*, 224 F.3d at 147; *see also Iragorri*, 274 F.3d at 71–72 ("[T]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."). Defendants have failed to meet their burden because neither the private nor public interest factors "tip[] strongly in [their] favor." *Guidi*, 224 F.3d at 147; *see also DiRienzo*, 294 F.3d at 29.

1. Private Interest Factors

The private interest factors include "(1) ease of access to evidence; (2) the

---

[4] In their reply brief, Defendants argue that even if a Swiss court could decline jurisdiction, Plaintiffs only speculate that a Swiss court would be likely to do so, and on this basis, argue that "Plaintiffs failed to establish that Switzerland is an inadequate form." *See* Reply, at 4, ECF No. 295. This argument misses the mark. It is Defendants' burden to establish the existence of an adequate alternative forum; Plaintiffs have no burden in opposing this motion, and certainly no burden to prove in the negative.

availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witnesses' attendance; (4) if relevant, the possibility of a view of premises; and (5) all other factors that might make the trial quicker or less expensive." *DiRienzo*, 294 F.3d at 29–30; *accord. Iragorri*, 274 F.3d at 73–74. A court must "engage[] in a comparison between the hardships [a] defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." *Id.* at 74.

The private interest factors do not strongly favor Switzerland as a more convenient forum. Switzerland will not provide greater or easier access to necessary evidence. Plaintiffs contend that much of the documentary evidence are either already in the U.S. (in Plaintiffs' possession), in the process of being produced to Plaintiffs (documents at the heart of the U.S. government's criminal case), or in the hands of third parties in the United States. *Cf. Aenergy*, 2022 U.S. App. LEXIS 9922, at *7 (affirming dismissal where all of the key events and sources of proof existed in the foreign forum). Defendants contend that Swiss privacy laws prohibit production of evidence for use in U.S. litigation unless conducted in accordance with the Hague Convention, and therefore, these matters must, as a matter of convenience, be litigated in Switzerland. However, Plaintiffs state that they do not seek any evidence or discovery from BNPP Suisse, or from any other location in Switzerland, rendering Defendants' argument moot. To the extent that additional sources of proof lie outside of the United States or Switzerland, this does not render Switzerland a more convenient forum.

Defendants also argue that the vast majority of relevant witnesses are located in Switzerland.[5] However, Defendants fail to name a single witness or describe their general

---

[5] As is true with respect to necessary evidence, to the extent that additional witnesses reside in neither the United States or Switzerland, those witnesses would have to travel regardless of whether the suit proceeds here or in Switzerland. Therefore, as to those witnesses, Switzerland offers no advantages.

testimony. *Cf. Aenergy*, 2022 U.S. App. LEXIS 9922, at *8 (affirming dismissal where district court evaluated the potential testimony of specific witnesses and their potential availability). Defendants do cite six pseudonyms and presume that they reside in Switzerland. However, these vague assertions and assumptions are insufficient to establish that the location of witnesses makes Switzerland a more convenient forum. This is particularly so in light of Plaintiffs' assertion that out of the 94 potential witnesses identified in discovery, only 2 are located in Switzerland. But even assuming Plaintiffs' calculations are incorrect, and that more witnesses are located in Switzerland, Defendants still do not explain why those witnesses could not be brought to New York or compelled to appear. As the seventh largest multinational bank, it is incredible to think that Defendants could not cover the costs of transportation. Even if Defendants were unable or unwilling to do so, however, this factor still would not favor dismissal because, as the Second Circuit has recognized, "any difficulties . . . regarding witnesses whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory." *Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt*, 684 F.3d 232, 235 (2d Cir. 1982); *cf. Aenergy*, 2022 U.S. App. LEXIS 9922, at *8 (affirming dismissal where district court found it "far from certain" that two witnesses, deemed essential by all parties, would be subject to a subpoena).

Finally, as to factors that might make the trial quicker or easier, dismissing this case will not serve any of those interests. This case has been ongoing for six years now, with Defendants making every effort to avoid actually litigating and resolving the dispute. Despite having had ample opportunity to make this motion, Defendants have done so only after failing to obtain dismissal on various other grounds. Although the bad faith of defendants is not a per se factor in the private interest analysis, I find it relevant to determining whether forcing them to litigate here would be vexatious and oppressive.

Defendants contend that they have always reserved the right to seek dismissal for *forum non conveniens* if the relevant factors warranted such relief. That may be so, but the timing is particularly curious here. Indeed, this is the only motion pre-trial motion left to make, short of summary judgment. They claim that the "progression of this action, including the initial stages of discovery, has crystallized that this action belongs in Switzerland." *See* Mot. at 18. In support of this conclusory assertion, however, Defendants do not state what new facts have been unearthed nor explain how those facts lead to their recent epiphany. Whereas earlier in my analysis I considered whether Plaintiffs' choice of forum was motivated by forum shopping, here I consider and find that the converse is true—that Defendants appear to be seeking to avoid the jurisdiction of this Court, perhaps in favor of another more favorable forum.

Ultimately, I find that Defendants have not shown that Switzerland is a more convenient forum for them. Thus, there is simply no reason to impose a disproportionate (or any) burden on Plaintiffs—forcing them to start anew in Switzerland; to bear the costs of travel, local counsel, and transportation of documents; and, to delay any recovery to which they may be entitled—by granting the motion to dismiss. *See, e.g.*, *Guidi*, 224 F.3d at 145 (finding abuse of discretion where district court relied too heavily on *existing* parallel proceedings) (emphasis added).

2. Public Interest Factors

The public interest factors consider the burdens and interests of the relevant fora in exercising jurisdiction over the dispute. These include (1) administrative difficulties relating to court congestion; (2) the potential burden of jury duty on a community that has no relation to the litigation or parties; (3) the interest in having local disputes settled locally; and, (4) avoiding problems associated with applying foreign law. *See Iragorri*, 274 F.3d at 74.

Here again, Defendants fail to show that the public interest factors weigh heavily in favor of dismissal. According to Plaintiffs' expert, unlike in the United States, Swiss courts

do not have class action or complex litigation case-management mechanisms. However, Defendants' expert posits that there are several substitute mechanisms, including the joinder or assignment of claims, that would allow for a non-burdensome procedure in Switzerland. Whether a substitute procedure exists or not in Switzerland is seemingly beside the point, given the existing suit and the efficient procedures available in this forum. At best, this factor is a wash and certainly does not weigh in favor of dismissal.[6]

The remaining public interest factors also weigh against dismissal. As to imposing the burden of jury duty, none of the parties here are Swiss; the atrocities occurred in Sudan; and, the named Defendants contributed to the tortious scheme from their respective locations in France and the United States. The only connection to Switzerland is the conduct of compliance officers at BNPP Suisse. It hardly seems fair to ask Swiss citizens to devote their time to a trial between wholly foreign parties based on conduct and injuries that occurred wholly outside Switzerland. For similar reasons, this is not a local matter best resolved locally. *Cf. Gilbert*, 330 U.S. at 508–09 (noting that in "cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only"); *cf. also Aenergy*, 2022 U.S. App. LEXIS 9922, at *9 (affirming dismissal where district court found that Angola had a "significantly stronger interest in addressing disputes related to its government contracts"). Finally, I do not foresee any issues with applying foreign law. Indeed, Judge Nathan has done so ably. *See* ECF No. 151 (determining the Swiss law should apply); 193 (applying Swiss law and granting in part and denying in part Defendants' motion to dismiss the second amended complaint). Given the willingness of the parties' experts to provide voluminous reports, expounding on the

---

[6] To the extent that Defendants are concerned about burdens on this Court, these concerns cannot be credited. One need only consult the docket to see that Defendants have no issue with inundating me or the magistrate with filings, documentation, and supplemental information.

interpretation and application of Swiss law, I do not foresee that I will have any difficulty in doing the same.

Accordingly, I find that the public interest factors do not indicate that Switzerland is a more convenient or appropriate forum for this litigation. Once again, Defendants fail to meet their burden of showing that dismissal is warranted.

\* \* \*

In conclusion, I find that Plaintiffs' choice of forum is owed substantial deference. Although Defendants have shown that Switzerland may provide an alternate forum, they have fallen short of establishing that the forum is definitively presently available. But even assuming a Swiss forum does presently exist, Defendants have not shown also that Switzerland is a more convenient, and therefore, preferable forum. Defendants have failed to show that this is one of the rare cases in which plaintiffs' choice of home forum should be disturbed. *See Guidi*, 224 F.3d at 146. Accordingly, the motion is denied.

## CONCLUSION

For reasons provided above, the motion is denied. Oral argument scheduled for June 14, 2022 is canceled. The Clerk of the Court shall terminate the motion (ECF No. 261), and the parties shall continue with discovery under the existing case management plan (ECF No. 229, as modified by ECF No. 276). The parties shall appear for a case management conference on Friday August 26, 2022, at 10:00 a.m.

SO ORDERED.

Dated:   May 3, 2022
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge