UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
ENTESAR OSMAN KASHEF et al.,            :
                                                                      :
                   Plaintiffs,            :   **ORDER AND OPINION**
                                                                      :   **DENYING IN PART AND**
    -against-                                       :   **GRANTING IN PART**
                                                                      :   **DEFENDANTS' MOTION FOR**
BNP PARIBAS SA, a French corporation; BNP  :   **SUMMARY JUDGMENT**
Paribas, S.A. New York Branch, a foreign branch;  :
and B.N.P. Paribas US Wholesale Holdings, Corp.  :   16 Civ. 3228 (AKH)
(f/k/a BNP Paribas North America, Inc.), a       :
Delaware corporation,                             :
                                                                      :
                 Defendants.           :
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiffs, lawful residents of the United States who fled Sudan because of genocidal acts committed by the Government of Sudan ("Sudan") against them and the class they seek to represent, filed this lawsuit April 29, 2016 against defendants BNP Paribas SA and affiliated companies ("BNPP"). Plaintiffs allege that defendants unlawfully aided and abetted the Government of Sudan in committing acts of genocide between 1997 and 2011 and are liable under Article 50 of the Switzerland Code of Obligations ("SCO").

       The record contains decisions and rulings by Hon. Alison J. Nathan, who presided over the case until she was appointed a Circuit Judge of the U.S. Court of Appeals,[1] the Second Circuit Court of Appeals[2], and myself after the case was transferred to me.[3] Discovery has been completed. I now rule on defendants' motion for summary judgment. Plaintiffs' motion for

---

[1] *See Kashef v. BNP Paribas S.A.*, 316 F. Supp. 3d 770 (S.D.N.Y. 2018) ("*Kashef I*"); *Kashef v. BNP Paribas S.A.*, 442 F. Supp. 3d 809 (S.D.N.Y. 2020) ("*Kashef III*") and *Kashef v. BNP Paribas S.A.*, 16 Civ. 3228 (AJN), 2021 WL 603290 (S.D.N.Y. Feb. 16, 2021) ("*Kashef IV*").
[2] *See Kashef v. BNP Paribas S.A.*, 925 F.3d 53 (2d Cir. 2019) ("*Kashef II*").
[3] *See* ECF No. 338 ("*Kashef V*")

1


class certification also is pending, awaiting argument and decision.[4]  The underlying facts have been sufficiently described in these earlier decisions, and need not be repeated.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

A court should grant summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must "view the evidence in the light most favorable to the party opposing summary judgment . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments."  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).  However, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treat[] the fact as established in the case."  Fed. R. Civ. P. 56(g).

## THE LAW OF SWITZERLAND IS THE GOVERNING LAW

Judge Nathan determined that Swiss law is the law governing BNPP's liability, and I adopt that ruling as the law of the case and my own determination.  *Kashef III*, 442 F. Supp. 3d at 818–25;  *Kashef IV*, 2021 WL 603290, at *4–5; *see also Waverly Props., LLC v. KMG Waverly*, No. 09 Civ. 3940 (PAE), 2011 WL 13322667, at *1 (S.D.N.Y. Dec. 19, 2011) ("upon reassignment, the new judge is well advised to pay particular heed to the doctrine of law

---

[4] Three related cases – 23cv4986, 23cv5552, and 23cv7468 – containing hundreds of plaintiffs, have been stayed pending resolution of Plaintiffs' class certification motion.  This case is brought by approximately 20 named plaintiffs.

of the case, and not attempt a de novo of . . . decisions made over a lengthy period by diligent and experienced judicial officers who have handled the case previously.") (quotations omitted). Article 50(1) of the SCO is the governing section of the Swiss Code of Law.

Resolving a dispute between Swiss experts presented by plaintiffs and by defendants, Judge Nathan held the plaintiffs had to prove three elements for BNPP's secondary liability under Article 50(1): "(1) a main perpetrator committed an illicit act, (2) the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to an illicit act, and (3) their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." *Kashef IV*, 2021 WL 603290, at *2.  Plaintiffs have the burden to prove that the Government of Sudan committed illicit acts, that BNPP consciously assisted Sudan and knew or should have known that it was contributing to Sudan's illicit acts, and that their culpable cooperation was the natural and adequate cause of the injury suffered by plaintiffs.

**PROCEDURAL HISTORY**

Judge Nathan initially dismissed the case based on U.S. law, holding that Sudan, as the alleged primary tortfeasor, could not be held liable because of the "Acts of State" doctrine, and that the action was time-barred under N.Y. C.P.L.R. § 215.  The Second Circuit reversed and remanded, holding that the Sudanese government's actions violated *jus cogens* and was not immune from suit, and that N.Y. C.P.L.R. § 215(8), providing a one-year period from the termination of a criminal action against the defendant within which to file suit, was the applicable statute of limitations, and made the lawsuit timely.  Plaintiffs' claims, having been filed within a year of BNPP's guilty plea and judgment of conviction by this court, are timely.

Following remand, Judge Nathan carefully considered the reports of Sudanese and Swiss law experts and applied them to the facts of this case. She held that Swiss law governs BNPP's conduct, and that plaintiffs were seeking recovery from BNPP under SCO Article 50(1), providing for secondary liability of an accomplice, and not Article 41, for tortfeasor's direct acts. She dismissed the counts of the Second Amended Complaint ("SAC") alleging BNPP's direct liability, and upheld the claims alleging BNPP's secondary liability.

Subsequently, defendants moved to dismiss for *forum non conveniens*. I denied that motion, holding that plaintiffs were entitled to substantial deference in their choice of forum, and that defendants did not show that Switzerland was an available nor appropriate forum.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Article 50(1) Liability

#### a. BNPP's Secondary Liability

Defendants argue that plaintiffs cannot prove that the Government of Sudan committed unlawful acts because Swiss law would consider acts of a government as immune from suit under the doctrine of *jure impeii*, and that BNPP cannot be culpable as an accomplice if the primary actor cannot be held as a tortfeasor. The argument is without merit. The Second Circuit ruled in this case that Sudan violated *jus cogens* by its genocidal acts, and that BNPP can be sued for aiding and abetting Sudan. As the Second Circuit held, the illicit acts in question – "genocide, mass rape, and ethnic cleansing" – violated *jus cogens* norms, which are "peremptory norm[s] of international law . . . accepted and recognized by the international community of states as a whole . . . from which no derogation is permitted." *Kashef II*, 925 F.3d at 60. The holding of the Court of Appeals is the law of the case.

4

Next, defendants argue that that plaintiffs have not offered proof that BNPP committed unlawful acts or consciously performed acts that harmed plaintiffs. As defendants put it, "Plaintiffs do not allege that the BNPP Defendants violated Swiss sanctions on Sudan, that the BNPP Defendants engaged in any violent acts that injured them, nor have they alleged that the BNPP Defendants engaged in any unlawful conduct that in itself resulted in an attack on any Plaintiff." Defts' Memo, ECF No. 484 at 28. But defendants' argument misstates the standard. SOC Article 50(1) provides the standard of secondary liability. As Judge Nathan held, plaintiffs have to prove, not that BNPP itself committed unlawful acts, but that BNPP consciously assisted Sudan and knew or should have known that it was contributing to Sudan' illicit acts. And plaintiffs point to a multitude of proofs to show BNPP's "conscious assistance" and knowledge of Sudan' genocidal acts, none of which defendants conclusively challenge. Indeed, BNPP admitted its conscious cooperation. In a stipulated statement of facts supporting its plea of guilty to a U.S. federal prosecution, BNPP admitted that its own employees recognized BNPP's "central role in providing Sudanese financial institutions access to the U.S. financial system, despite the Government of Sudan's role in supporting terrorism and committing human rights abuses . . . ." *United States v. BNP Paribas, S.A.*, No. 14-cr-00460-LGS (S.D.N.Y. 2015), ECF 13, Ex. 2 ¶20 (Stipulated Statement of Facts between BNPP and the United States, and plea and judgment of guilt for conspiring to violate the International Emergency Economic Powers Act and the Trading with the Enemy Act). As the Second Circuit held, BNPP "conceded that it had knowledge of the atrocities being committed in Sudan and of the consequences of providing Sudan access to U.S financial markets." *Kashef II*, 925 F.3d at 56.

Clearly, there are, at least, material issues of fact to be tried. Indeed, BNPP cannot now argue the issue that it already has admitted, that it knowingly and consciously

assisted the Government of Sudan in its commission of unlawful acts and knew or should have known that it was enabling these illicit acts.

### b. Natural and Adequate Causation

BNPP argues in its motion that plaintiffs cannot prove that its assistance was the natural and adequate cause of the injuries about which plaintiffs complain, that is, that plaintiffs' injuries "would not have occurred at the same time or in the same way or magnitude" except for BNPP's assistance. *Kashef IV*, 2021 WL 603290, at *12. Again, BNPP's motion is denied, for the issues of causation present material issues for the jury to decide.

Plaintiffs are black-Africans who come from non-Arab indigenous black African communities in South Sudan, Darfur, and the Nuba Mountains in Central Sudan. TAC ¶12, ECF 241. They are able to prove, largely from publicly available information, the following. The genocidal acts of the Sudanese Bashir regime against the black, non-Islamist population had become notorious by 1997. On November 3, 1997, the U.S. imposed a trade embargo on Sudan "to deny the Bashir Regime access to the U.S. financial system and deprive it of U.S. dollars as a means to defund its support for terrorism and human rights violations." Exec. Order. No. 13,067, 62 Fed. Reg. 59989 (Nov. 3, 1997). The Sudanese economy, already in turmoil, soon faced an external debt of over $15 billion and a weakening Sudanese pound as countries closed their doors to commerce with Sudan. The country lacked the capital to exploit its rich oil reserves.

BNPP came to its rescue. Using its banking network, it set up an infrastructure to evade U.S. sanctions and finance Sudan with U.S. dollars. BNPP engaged in a practice of "wire stripping," that is, "deliberately modifying and omitting references to Sudan in the payment

6

messages accompanying these transactions." ECF No. 435-1, SSOF ¶¶ 18, 22. BNPP's financing enabled Sudan's oil infrastructure to become operative by 1999 and, with increasing oil revenues, Sudan was able to "increase the tempo and lethality of the war" against the Black-African people. Sudan Peace Act of 2002, Pub. L. 107-245, 116 Stat. 1505. The oil funds created a "macabre-feedback loop" of committing human rights abuses, chasing Black-Africans from their villages in the oil areas to extract more oil, and using oil revenues to commit further human rights abuses. *Kashef III*, 442 F. Supp. 3d at 815–16. Plaintiffs' evidence provides graphic accounts of killing, sexual violence, and property damage. A Sudanese militia group, the "Janjaweed" attacked the Black-African communities to destroy their communities and drive them away from oil-rich regions. They burned their villages, covered by helicopter gunships, engaged in frequent aerial bombing and kidnappings, raped mothers (including some of the plaintiffs) in front of their children, and tortured and endlessly questioned captives in clandestine detention centers ("ghost houses"). *See* ECF No. 465, Annex A and accompanying citations; TAC ¶¶30–50e.

In 2004, the United States recognized the Sudanese conflict as a genocide. Pub L. 108-497 § 3(6). In 2015, BNPP Paribas pleaded guilty to conspiring with the Sudanese government to break U.S. sanctions. As part of its guilty plea, BNPP admitted that it knew that its assistance enabled the GOS to perform a genocide against its black population, and paid fines and forfeitures reflecting its culpability of almost nine billion dollars, the "largest financial penalty ever imposed in a criminal case." *Kashef II*, 925 F.3d at 56. Plaintiffs, those who managed to escape and gain asylum in the United States, brought this lawsuit to seek financial recovery for their injuries arising out of BNPP's conduct.

7

Judge Nathan held that Plaintiffs could establish a presumptive causal link between the financial assistance given by BNPP to Sudan and the atrocities about which plaintiffs complain, and that Plaintiffs can invoke the presumption by showing that 1) " the revenue generated for the Sudanese government through BNPP's assistance exceeded the Sudanese government's entire military budget, leading to a massive increase in military expenditure," and that 2) "[t]he government of Sudan used its newfound access to U.S. financial markets provided by BNPP to import sophisticated weapons from major arms suppliers in China, Russia, Ukraine, Iran and Belarus." *Kashef IV*, 2021 WL 603290, at *8.

Plaintiffs present proofs that BNPP, using clandestine techniques to evade U.S. sanctions, funneled 22.2 billion in U.S. dollars to Sudan, an amount exceeding and increasing its military budget by 3,000 percent. The U.S. dollars enabled the GOS to exploit its oil reserves to gain more revenue, and to increase its military operations to terrorize, kill and chase the Black populations from the oil lands on which they lived, and to destroy the lives and property of plaintiffs and of the black population of Sudan.

Whether the abuses by the GOS would have occurred in the same way and magnitude without BNPP's financing and access to western market presents material issues of fact. BNPP argues that discovery showed that most Plaintiffs did not live on oil-rich lands, that some Plaintiffs were harmed by simple and not sophisticated weaponry, and that the GOS had non-oil forms of revenue on which to draw, but such facts, even if proved, are not determinative on summary judgment. There are too many facts showing a relationship between the dollar financing provided by BNPP, and the atrocities perpetrated by the GOS. Causation cannot be decided in defendants' favor by summary judgment.

Causation also must be "adequate," that is, as Judge Nathan articulated the standard, "whether it would be 'reasonable' to hold BNPP responsible for causing at least some of the human rights abuses in Sudan," and "whether those atrocities were foreseeable to BNPP at the time." *Kashef IV*, 2021 WL 603290, at *7. This reasonableness determination is to be made based on examining the quality of the casual links: namely, Defendants' knowledge that Sudan was committing human rights abuses, "that those abuses were committed with weapons and soldiers that were bought with funds generated by its relationship to BNPP," and that Sudan would not have been able to obtain those funds absent Defendants' skirting of U.S. sanctions. Judge Nathan added another consideration, whether BNPP was motivated to *increase* and *continue* its profitable business relationship with Sudan and thus was indifferent to the human rights violations that BNPP's financing enabled Sudan to commit. *Id.* at 17.

Whether or there was adequate, as well as proximate, causation, presents material issues of fact. Again, Defendants' motion for summary judgment is denied.

## II.  Statute of Limitations

Defendants argue that Plaintiffs' actions are untimely, and that they are entitled to summary judgment[5]. Defendants' motion is denied.

The right to sue is governed by the law of the forum. *Kashef III*, 442 F. Supp. 3d at 817 (applying *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). The Second Circuit, reviewing various sections of the CPLR dealing with applicable statutes of limitations argued by the parties, held that Plaintiffs had standing to sue and brought timely claims under

---

[5] Defendants do not move against two of the plaintiffs, Sara Noureldirz and Amir Ahmed, both minors entitled to tolling until they reached majority. *See* NY CPLR §208.

9

§215(8)(a). *Kashef II*, 925 F.3d at 63. New York CPLR § 215(8)(a) provides that victims of a crime, as Plaintiffs surely were, have one year from sentencing to file a civil action arising out of the same event or transaction. The judgment of conviction was entered on May 1, 2015. These lawsuits were filed on April 29, 2016, within one year from BNPP's sentencing. The Second Circuit's holding establishes the law of the case, and I follow it.

Notwithstanding the Second Circuit's holding, Defendants argue that NY CPLR § 202 should apply, not § 215(8)(a). CPLR § 202 provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

CPLR § 215(8)(a) provides:

> Whenever it is shown that a criminal action against the same defendant has been commenced with respect to the event or occurrence from which a claim governed by this section arises, the plaintiff shall have at least one year from the termination of the criminal action as defined in section 1.20 of the criminal procedure law in which to commence the civil action notwithstanding that the time in which to commence such action has already expired or has less than a year remaining.

Defendants argue in favor of the 15-year period of limitations provided by Sudanese law, without equitable tolling. ECF 444, Ex. 100 ¶12 ("Hassabo Opening Report"). If adopted, according to Defendants' calculation, all claims for injuries that occurred before April 29, 2001, fifteen years before this action was filed, are time-barred.[6]

---

[6] Defendants' argument is premised on the proposition that the injuries incurred before April 29, 2001 are not part of continuing violations. Plaintiffs claim that there were continuing violations throughout the class period, from 1997 to 2011.

10

I hold that the Second Circuit's holding, that § 215(8) is the law of the case, is the law that I hold to be applicable. Its one-year statute also is shorter than the 15-year statute of Sudanese law, thus complying with § 202. And, in terms of public policy, it would be arbitrary to apply Sudanese law when the courts of Sudan were not open to the Plaintiffs and lacked the capacity to control a genocidal government. Defendants' motion is denied.

### III.    BNPP NY & BNPP US Wholesale Holdings, Corp

The parties agree that the BNPP subsidiary in New York, BNP Paribas S.A. New York Branch, should be dismissed, as it had no role in the matters alleged in the FAC. *See* ECF No. 482 at 120 n.481. I so order. All the other BNPP entities will remain. The issues of fact related to the inter-corporate movement of funds and tactics of evasion make all of them proper defendants, jointly and severally.

### IV.    Punitive Damages

Defendants move to dismiss Plaintiffs' claims for punitive damages as unavailable under Swiss law. Punitive damages are conduct-regulating and, therefore, as Judge Nathan held, are governed by Swiss law. The experts presented by both sides agree that punitive damages are unavailable under Swiss law, and I so hold. Plaintiffs' claims for such are stricken.

### V.    Property Damages

Defendants argue that Plaintiffs' claims of property damage are not supported by proofs and move to strike those allegations. However, Plaintiffs have described the personal and real properties that they lost —their lands, homes, mills, livestock, vehicles, and personal items destroyed, and their use, size, and approximate values. *See* ECF No. 444, Ex. 16, Pls.'s Suppl. Initial Disclosures (Dec. 21, 2022), at 6–7. Plaintiffs have provided sufficient alternative

11

methods of establishing their damages. *Cheng v. Guo*, 20 Civ. 5678 (KPF), 2022 WL 4237079, at * 8 (S.D.N.Y. Sept. 13, 2022) (disclosures sufficient for Fed. R. Civ. P. 26(a) where Plaintiff "disclosed the nature of his claimed damages in his initial disclosures and in his deposition" absent evidentiary materials). Defendants' motion is denied.

## CONCLUSION

For the reasons discussed above, Defendants' motion is denied except as to dismissing BNPP NY from the lawsuit, and striking plaintiffs' claim for punitive damages. Various motions to seal remain open. *See* ECF Nos. 416, 417, 432, 445, 455, 468. The parties shall meet and confer, and advise the Court by joint letter which portions of which documents remain in dispute. Plaintiffs' motions at ECF Nos. 489 and 490 are denied as academic in light of the pending sealing motions. The joint letter shall be filed by plaintiffs by May 1, 2024.

Plaintiffs' motion for class certification and any remaining sealing issues shall be argued May 7, 2024 at 2:30 p.m. in Courtroom 14D. The parties shall submit joint appearances to the Chambers email by May 3, 2024 at 12 p.m. The Clerk shall terminate the open motions at ECF No. 433, 489, and 490.

SO ORDERED.

Dated: April 18, 2024
New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge