# CLEARY GOTTLIEB STEEN & HAMILTON LLP

AMERICAS
NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.
ASIA
BEIJING
HONG KONG
SEOUL

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

D: +1 (212) 225-2508
cboccuzzi@cgsh.com

EUROPE & MIDDLE EAST
ABU DHABI
BRUSSELS
COLOGNE
FRANKFURT
LONDON
MILAN
PARIS
ROME

August 1, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street, Room 1050
New York, New York 10007

Re:   *Kashef* v. *BNP Paribas S.A.*, No. 16-cv-3228 (AKH)(JW)

Dear Judge Hellerstein:

This firm and Sullivan & Cromwell LLP represent defendants BNP Paribas S.A. ("BNPP") and BNP Paribas U.S. Wholesale Holdings, Corp. (the "BNPP Defendants") in the above-referenced action. We write in connection with the June 24 Conference as well as this Court's June 26 Order stating that it "reserves determination as to whether the final order provides for a monetary judgment" following the "trial of class issues." ECF No. 544 at 1. As explained by the BNPP Defendants at the June 24 Conference, and in their May 23 and June 11 submissions, ECF. Nos. 516, 537, Plaintiffs' proposed aggregate damages for "forced displacement" are not provided for, or supported by, this Court's Order granting class certification, and would be contrary to Swiss law. Moreover, an aggregate damages award here would result in impermissible claims splitting and would undermine Defendants' substantive right to inquire into the circumstances of each class member's alleged displacement.

*First*, and as recognized by the Court, the Order Granting Plaintiffs' Motion for Class Certification, ECF No. 505 (the "Class Certification Order"), does *not* contemplate an aggregate damages award following the class trial. June 24, 2024 Conference Tr. at 4:17-21 ("Conference Tr."). Damages are *not* identified as a "common question[] for trial," Class Certification Order ¶ 2, or included among the issues that "predominate over questions affecting individual members." *Id.* ¶ 4. To the contrary, the Class Certification Order expressly notes that "each individual member has an interest in prosecuting their own damages claims." *Id.* As the Court noted at the June 24 Conference, jurors will need to look at the actual, individual circumstances of each Plaintiff to determine any damages to be awarded. *See* Conference Tr. at 32:7-18 (Court expressing concern over "letting a jury come to a monetary sum in the abstract"); *Id.* (Court

The Honorable Alvin K. Hellerstein, p. 2

noting that for "these noneconomic damages, there will be different values on the homestead, different values on the personal possessions, different values according to the injuries, personal injuries, suffered by people.").

*Second*, Plaintiffs' proposal to have a class trial on the claims of the 19 class representatives, with an aggregate damages award for their and the class's "forced displacement" damages, followed by individual trials for additional damages based on the same circumstances, is impermissible claim splitting. As Plaintiffs themselves have argued (successfully on class certification and in opposition to summary judgment), "[*f*]*or all class members, there is just one cause of action*" under Swiss law, Pls.' Class Certification Mem. Law. (ECF No. 421) at 4, 67, 78 (emphasis added)—*i.e.*, Plaintiffs' claim against the BNPP Defendants for violation of Article 50(1) of the Swiss Code of Obligations. *See also id.* at 82 ("Here, each Class member's claim arises from the same course of events . . . and each Class member asserts the identical claim under Article 50."), 96 (distinguishing *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456 (S.D.N.Y. 2005) because, "unlike in *Talisman*, the class here has just one cause of action, Article 50 CO, with just three elements."). But it is fundamental that "a given issue"—here, the amount of damages owed to Plaintiffs on their claim—"may not be tried by different, successive juries." *Blyden v. Mancusi*, 186. F.3d 252, 268 (2d Cir. 1999) (trial procedures "clearly violated the Seventh Amendment" due to possibility that "damages juries" would revisit findings by "liability jury"). That is exactly what Plaintiffs propose in demanding two rounds of damages determinations. The jury adjudicating individual damages claims could not possibly determine the amount of non-pecuniary harm suffered by individual class members without factoring in the same alleged harm to human dignity that forms the basis of Plaintiffs' proposed class-wide damages award.

*Third*, contrary to Plaintiffs' counsel's arguments at the June 24 Conference, Swiss law is clear—and both parties' Swiss law experts are in agreement—that damages are not determined collectively, but based on the individual facts and circumstances of an individual plaintiff. Plaintiffs' Swiss law expert, Franz Werro, explained that the Swiss Federal Supreme Court "has 'rejected the idea that the assessment of satisfaction [*i.e.*, "moral"/non-pecuniary damages] should be based on schematic standards,'" and accordingly "the amount of satisfaction must not be determined according to fixed tariffs [*i.e.*, rates], but must be adjusted to the individual case." Expert Report of Franz Werro dated Mar. 2, 2023 (ECF No. 422-1) ¶ 159 ("Werro Report"); *see also* Second Expert Report of Christoph Muller dated Jan. 6, 2023 (ECF 435-99) ¶ 60 ("I do not dispute" as "Prof. Werro states that the victim must substantiate the moral harm suffered . . . ."). This undisputed principle of Swiss law cannot be squared with Plaintiffs' proposal that the jury determine a fixed amount of moral damages that each class member is entitled to, without taking any individualized factors into account.

Tellingly, Plaintiffs have not identified a single Swiss precedent supporting their claim that moral damages can be awarded on an aggregate basis. And for good reason: under Swiss law, moral damages are tethered to the underlying injury suffered by the plaintiff, which is why Professor Werro invokes Articles 47 (death or physical injury) and 49 (injury to personality) of the Swiss Code of Obligations in his discussion of moral damages. Werro Report ¶¶ 147, 156. Under the conception of forced displacement advanced by Professor Werro, various individualized factors are relevant to considering the extent of injury and damage suffered by a

The Honorable Alvin K. Hellerstein, p. 3

Plaintiff for alleged forced displacement, including the extent to which a given class member was forced to abandon (or was able to maintain) the "social ties, family relations, and professional relationships" they had in Sudan. *See* Werro Report ¶ 70. Other factors may include the length of time a Plaintiff may have resided in Sudan before leaving, and whether a Plaintiff or class member has gone back to Sudan after obtaining citizenship or residency in the United States.

Unable to find any support in Swiss case law or statutes, Plaintiffs argued at the Conference and in their briefs that an aggregate damages award is warranted because each class member's displacement from Sudan resulted in an equivalent loss of human dignity that merits some fixed amount of "general damages" under the caselaw of the European Court of Human Rights ("ECtHR"). Conference Tr. at 6:11-14. This argument by analogy falters at every step:

- The ECtHR is not, as Plaintiffs' counsel asserted, Switzerland's "court of highest appeal." *See id.* at 8:18-21. As explained by Defendants' expert Professor Keller—a former ECtHR judge and the only international law expert in this case—the ECtHR is a specialized court for adjudicating human rights cases against *signatory sovereigns* (which means claims *against* Switzerland, but not individual or corporate defendants, who are not covered by the ECtHR charter). *See* Expert Report of Helen Keller, ECF No. 435-97 ("Keller Report") at ¶¶ 4, 29.

- Article 8 of the European Convention of Human Rights ("ECHR"), which Plaintiffs invoke as the basis for their forced displacement theory, likewise does not apply to corporate defendants. Moreover, Article 8 does not provide a generalized claim for loss of human dignity as Plaintiffs argue,[1] but instead a right against physical expulsion from one's home. *See* Keller Report ¶¶ 8-22; *Burlya and Others v. Ukraine*, Case No. 3289/10, Judgment, ECtHR (Nov. 6, 2018) at ¶ 166.

- Plaintiffs have cited no authority showing that Swiss courts would apply the ECtHR's process for awarding damages, ECHR Art. 41, in a case applying Swiss civil tort law. To the contrary, both Plaintiffs' and Defendants' Swiss experts rely solely, and correctly, on the damages provisions of the Swiss Code of Obligations, which analyze injuries based on individual circumstances.

- Even in the context of the ECHR (which, as noted, does not apply here), the ECtHR evaluates *the individual circumstances of each Article 8 violation* in assessing liability and awarding damages. Plaintiffs themselves acknowledged at the Conference that the ECtHR awards a "range" of damages "[d]epending upon the circumstances of the forcible displacement." Conference Tr. at 11:1-8.[2]

---

[1] Plaintiffs cite to only one case from the ECtHR (and no cases from any Swiss court)—*Burlya and Others v. Ukraine*—in support of their argument that the jury can award aggregate damages for the loss of human dignity as a result of forced displacement. But the ECtHR in *Burlya* only mentions the concept of human dignity in analyzing individual torture claims brought under Article 3 of the ECHR, not forced displacement. *See Burlya* at ¶ 121.

[2] During the Conference, Plaintiffs' counsel asserted that damages for forcible displacement under the ECHR range from 50,000 to 150,000 euros, Conference Tr. at 11:5, although the cases Plaintiffs rely on provide no support for these numbers. Further, in *Burlya* the ECtHR awarded different non-pecuniary

The Honorable Alvin K. Hellerstein, p. 4

*Fourth*, the above demonstrates that the imposition of an aggregate damages award would deprive the BNPP Defendants of the right to inquire into the circumstances of class members' alleged displacement. This in turn would deprive BNPP of its right to defend against an oversized damages determination, "offend[ing] both the Rules Enabling Act and the Due Process Clause." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (rejecting the approach of "[r]oughly estimating the gross damages to the class as a whole and only subsequently allowing for the processing of individual claims," because such an approach "would inevitably alter defendants' substantive right to pay damages reflective of their actual liability"), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Hickory Sec. Ltd. v. Republic of Arg.*, 493 F. App'x 156, 160 (2d Cir. 2012) ("[I]f an aggregate approach cannot produce a reasonable approximation of the actual loss, the district court must adopt an individualized approach."); ECF No. 537 at 10-11.

For the foregoing reasons, a class-wide damages award here is both legally impermissible and practically untenable. To the extent helpful for the Court, Defendants respectfully request the opportunity to brief these issues in a more fulsome manner.

Respectfully submitted,

Carmine D. Boccuzzi, Jr.

cc: Counsel of record

---

damages depending on the *specific* circumstances of the applicants. Specifically, the ECtHR awarded lower damages to applicants who "were away from their homes at the time of the events in question" and therefore "had no knowledge of the imminent attack, having only learned about the damage done to them afterwards" than the applicants who were "present in the village in the run-up to the attack" and had to "flee their homes in the village under the threat of that attack." *Burlya*, ¶¶ 94, 189.