**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 1:16-cv-03228-AKH-JW |
| BNP PARIBAS S.A. and BNP PARIBAS US WHOLESALE HOLDINGS, CORP. (f/k/a BNP PARIBAS NORTH AMERICA, INC.), | Hon. Alvin K. Hellerstein |
| *Defendants*. | |

**PLAINTIFFS' STATUS REPORT AND**
**FED. R. CIV. P. 16 PROPOSED CASE MANAGEMENT PLAN**

## Introduction

For the Court's consideration in advance of the October 23, 2024 status conference, Class Counsel, Hausfeld LLP and Hecht Partners LLP, respectfully submit this status report and propose a comprehensive plan to manage this bifurcated class action.

As proposed below, Class Counsel present a plan that resolves common class issues and all damages of the nineteen (or as many as the Court deems appropriate) Class Representatives through a trial in early to mid-2025. Additionally, on a parallel track, inspired by this Court's management of the 9-11 litigation as well as other more recent mass tort MDL practices, the plan creates a sound management process for gathering and registering core data for all Class Members by a date certain, subsequent to the notice period. This parallel track data-gathering and registration process will provide insight into the damages profile of all Class Members seeking compensation, so to permit the most efficient approach for however the case may proceed, be it bellwether selections and further trials as necessary, or global resolution of this

case. This approach is designed with a goal of resolving this litigation as soon as the next two years, a timeline befitting the mature age of this case.

| Phase | Approx. Timing |
|---|---|
| 1) Class Notice | Q4 2024 |
| 2) Trial on Common Questions and All Class Representatives' Damages | Q2 2025 |
| 3) Registration of Class Member Damages[1] | Ongoing to end of Q3, early Q4 2025 |
| 4) Bellwether Damages Trial(s) for Class Members | Beginning Q1 2026 |

Details of this or any plan would need to be developed after further discussion between the Court and the parties, through entry of specific case management orders as appropriate.

## Status Report

Pursuant to the Court's June 26, 2024 Order (ECF No. 544), Class Counsel provide the following updates:

**Class Member Identification.** On July 29, 2024, Class Counsel served *Touhy* Requests and subpoenas *duces tecum* for data sufficient to identify Class Members and distribute notice to the Office of the Legal Adviser at the U.S. Department of State under 22 C.F.R. §§ 172.5 et seq., and the Chief Counsel for the U.S. Citizenship & Immigration Services and the Office of the General Counsel for the U.S. Department of Homeland Security under 6 C.F.R. §§ 5.41 et seq.

---

[1] Including absent Class Members and Class Members with claims filed in *Sherf, et al. v. BNP Paribas S.A.*, No. 1:23-cv-04986-AKH ("*Sherf*"); *Ring, et al. v. BNP Paribas S.A.*, No. 1:23-cv-5552-AKH ("*Ring*"); *Deng, et al. v. BNP Paribas S.A.*, No. 1:23-cv-07468 ("*Deng*"); *Adam, et al. v. BNP Paribas S.A.*, Corp., No. 1:24-cv-3639 ("*Adam*"); *Khamis, et al. v. BNP Paribas S.A.*, No. 1:24-cv-03640 ("*Khamis*"); and *Lako, et al. v. BNP Paribas S.A.*, No. 1:24-cv-03641 ("*Lako*"). In a concurrent filing, Class Counsel submits to the Court an update on the immigration status of the 522 plaintiffs in these individual actions.

Defendants were notified of the forthcoming requests on July 24, 2024. Service of such requests followed Class Counsel's investigation and engagement with various stakeholders within federal agencies to confirm the existence and availability of relevant data. On September 4, 2024, the agencies requested the opportunity to meet and confer with Plaintiffs and sought a further extension (or stay) of the previously extended deadline for compliance with Plaintiffs' Touhy requests (*see* ECF No. 554; ECF No. 556). Plaintiffs and the agencies agreed to meet and confer on September 12, 2024, followed by additional discussions if necessary, and to extend the deadline until September 19, 2024. (*see* ECF No. 556). Plaintiffs and the agencies met and conferred on September 12, 2024. The agencies' representative also informed Plaintiffs that the representative will attend the October 23, 2024, status conference hearing.

*Notice Plan*. Subject to the Court's approval, Class Counsel has filed a motion to appoint Epiq as the notice administrator, which in the near future will submit a formal notice plan, consistent with the notice procedures identified in the approved preliminary notice plan, to the Court and to BNPP.

*Notice Language.* Plaintiffs shared a draft of their proposed short form notice with Defendants on August 16, 2024, and Plaintiffs shared a draft of their proposed long form notice with Defendants on September 10, 2024. Plaintiffs invited feedback and proposed to meet and confer about the proposed forms of notice. As of the date of this filing, Defendants have not provided any proposed changes or otherwise commented on these forms of notice.

**Fed. R. Civ. P. Rule 16 Proposed Case Management Plan**

I.  **Overview of the Bifurcated Class Action**

In its ruling on May 9, 2024, the Court certified the following common questions:

1. Whether the Government of Sudan ("GOS") persecuted Class Members, or caused them to have reasonable fear of persecution, because of their race, religion, or ethnicity between November 1997 and December 2011.

2. Whether BNPP consciously aided, abetted and enabled the Government of Sudan to carry out such acts.

3. Whether BNPP knew or should have known that its aiding, abetting and enabling would contribute to the Sudanese government's campaign of persecution.

4. Whether such acts of BNPP proximately caused the forcible displacement of members of the class from their homes and property, and other injuries to be tried in individual cases.

5. Other issues ancillary to the issues above.

The Court bifurcated this class action, severing certain damages issues from common questions of liability, causation, and classwide injury as a result of persecution or fear of persecution forming the basis of their status as refugees or asylees. As explained in Judge Weinstein's magisterial opinion in *Simon v. Philip Morris Inc.*, trial judges have "routinely and properly severed issues" in this manner. 200 F.R.D. 21, 38 (E.D.N.Y. 2001). Indeed, "the Second Circuit has supported the trial judge's power to sever issues for trial before separate juries in class action lawsuits…" *Id.* (citing *Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999)); *accord Olden v. LaFarge Corp.*, 383 F.3d 495, 509 (6th Cir. 2004) (affirming certification of bifurcated Rule 23(b)(3) class action).

Class Counsel therefore propose a phased case management plan that takes advantage of class action and mass tort frameworks to craft a timely and cost-efficient path forward in this matter. This proposal aims to manage the adjudication of the common questions of liability, the gathering of core information about each Class Member seeking compensation for all injuries, and the utilization of the same core information to assist with determining whether remaining

litigation would utilize a bellwether process or some evidence-based approach best designed to resolve all meritorious damages claims.

The proposed steps are:

(1) *Notice:* the current *Touhy* discovery and distribution of class notice;

(2) *Class Representatives' Trial:* trial on the certified questions as well as all injuries experienced by the Class Representatives as a result of BNPP's conscious assistance of the Government of Sudan's campaign of persecution;

(3) *Class Member Registration in Administrative Docket and Damages Matrix:* registration of all Class Members who notify Class Counsel they seek to pursue additional damages arising out of the GOS campaign of persecution on an administrative docket and damages matrix by injury category and severity (with disclosure to Defendants); and

(4) *Damages Bellwether Discovery and Trial(s):as appropriate,* limited discovery and trial for selected bellwether Class Members on all types of injury for those selected Class Members', on a rolling basis.

PHASE 1: NOTICE DISTRIBUTION

As discussed above, Class Counsel have sought *Touhy* discovery from relevant federal agencies to obtain data sufficient to identify and directly contact Class Members, and anticipates implementing a multi-prong notice plan as outlined in its May 23, 2024 Preliminary Assessment of Notice Program (ECF No. 514) of direct notice (via mail and community meetings); third-party intermediary notice (through resettlement agencies and community organizations); and notice by publication (via media outlets). In addition to facilitating notice distribution, additional facts on class size will give the Court and the parties information on the nature of the claims and "size of the recovery that" Defendants "might face." *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003).

PHASE 2: CLASS REPRESENTATIVES' TRIAL

After the close of the opt-out period (four months from the start of notice distribution), Class Counsel propose holding an initial, consolidated class trial for the nineteen Class Representatives to resolve (1) the common questions identified by the Court, and (2) all damages for the Class Representatives arising out of their persecution or fear of persecution—which will provide meaningful benchmarks for similar injuries as to other Class Members. This trial will be efficient and just for three reasons.

*First*, although the Representatives' trial will not fully resolve all damages for the class as a whole, it will provide early benchmarks on categories of damages for subsequent phases. A verdict on all damages suffered by these representative parties—when coupled with further data on the class size and composition—would naturally provide guidance for the Court and parties on the scope of the class's eventual recovery. Where, as here, "the parties have excellent information about the likelihood of success on the issue of liability and the real sticking points [to resolution] are the individual issues of . . . damages," an early verdict on damages is "useful" to facilitate resolution. *Simon*, 200 F.R.D. at 32.

*Second*, the Court ruled, and BNPP conceded, that the Representatives' damages claims are typical of the class. Order at 2; Class Cert. Tr. at 15:3-5.[2] The Class Representatives—like all Class Members—bring a single tort claim against Defendants under Article 50 of the Swiss Code of Obligations, seeking to hold Defendants civilly liable for consciously assisting the

---

[2] Specifically, the evidence of the Government of Sudan's campaign of persecution is common to every Class Member, as is their evidence of BNPP's conscious assistance and general causal contribution to that campaign. Moreover, all nineteen experienced an injury common to the class: each was persecuted or suffered fear of persecution in Sudan between November 1997 and December 2011 based on their race, religion, ethnicity, or other protected ground. As refugees or asylees, each was granted entry to the U.S. by reason of meeting the eligibility criteria for refugee/asylee status, i.e., persecution or fear of persecution by the Government of Sudan.

6

Government of Sudan's targeted campaign of persecution which caused them injury. All Class Representatives—like all Class Members—are seeking, *inter alia*, non-economic, pain-and-suffering damages for personal injuries (*e.g.*, torture, rape, murder of loved ones) under Article 47 and for violations of other "personality rights" under Article 49 (*e.g.*, arbitrary detention and arrest; fear of persecution or threats of harm; "humiliation and insults to honor"; "[f]orced displacement resulting in the loss of home, family, social, and professional ties.").[3]

*Second*, the Class Representatives' injuries are also typical of the class, as explained by Plaintiffs' experts. For example, Plaintiffs' expert Dr. Jok Maduk Jok describes the forced displacement experienced by all Class Members, and the Government of Sudan agents' common use of arbitrary detention, ghost houses, torture, sexual violence, killing or disappearing of family members, and property theft and destruction. *See* Report of Dr. Jok Madut Jok, ECF No. 536-6 at ¶¶ 46, 72, 75, 78, 81. Each Class Representative experienced at least one (forced displacement) or more of these injuries. Additionally, Dr. Barry Rosenfeld of Fordham University and Dr. Allen Keller of the NYU School of Medicine and Bellevue/NYU Program for Survivors of Torture, detail the psychological and physical nature of trauma in the Representatives, and how it reflects patterns common to the population of Sudanese persons displaced by the Government of Sudan's campaign of persecution. *See generally* Expert Report of Drs. Rosenfeld and Keller, ECF No. 536-15 at 8-10, 14, 19. Accordingly, the Class Representatives claims are the appropriate vehicles through which to try all of these representative questions.

---

[3] Declaration of Franz Werro, ECF No. 528-104 at ¶ 154. Articles 47 and 49 provide for compensation for "moral harm", an "involuntary reduction of well-being, i.e., pain and suffering," for claims under Article 50. *Id.* ¶ 143

*Finally*, trial could be held in Spring 2025. All Representatives have completed intensive fact discovery, including depositions. The parties have disclosed Fed. R. Civ. P. Rule 26 experts who all have been deposed. And Plaintiffs have defeated the Defendants' Rule 56 motion and Fed. R. Evid. Rule 702 motion. All that is left to complete before these cases are trial ready are:

- The Court's consideration of motions to limit issues for trial (for example, whether there is a disputed jury issue as to Class Members' refugee or asylee status); and
- The filing and resolution of standard pre-trial events (witness and exhibit lists and objections, proposed jury instructions, motions *in limine*, etc.).

Class Counsel propose that a trial date be set, and deadlines set for these and any other matters which need to be resolved prior to trial readiness.

PHASE 3: REGISTRATION OF CLASS MEMBERS ON ADMINISTRATIVE DOCKET AND DAMAGES MATRIX

Before unnamed Class Members' individual damages can be tried as bellwethers in the bifurcated *Kashef* class action, core data on the nature and severity of their injuries need to be gathered and shared with the Court and Defendants. This process will enable subsequent phased trials for damages and provide a meaningful foundation for settlement efforts informed by the gathered data.

As suggested by the Court, there are judicial management tools which would facilitate the efficient prosecution of the claims of all Class Members in the *Kashef* action while ensuring the due process rights of the parties. Class Counsel are familiar with and have studied this Court's approach to management of the 9-11 litigation. We have also considered the most successful mass tort case management tools in recent years to maximize the likelihood of bringing this case

8

to a close under the overarching dictates of Federal Rule of Civil Procedure 1: just, speedy and cost-efficient.

Class Counsel propose the following:

(1) An administrative docket to register Class Members who effectively "opt-in" to seek such individual damages; and

(2) At the appropriate time, the appointment of a special master to oversee the selection of bellwether plaintiffs from the database and damages matrix for all such Class Members.

See, e.g., Pretrial Order No. 22, *In Re: 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-md-2885 (N.D. Fla. Jan. 7, 2020), appended here as Exhibit A, (adopting an administrative docket as a management tool in a mass tort MDL).

Under the concept of an "administrative docket":

- In lieu of individual case dockets, a single docket is created solely for administrative purposes to manage the gathering of and disclosure of Class Members' individual specific damages-related data;

- Each such Class Member's upload is given a unique identifying number, essentially a docket number;

- Each such Class Member will utilize a technology platform to upload something akin to an MDL "fact sheet," which could be signed under penalty of perjury, and with data points to be approved by the Court, after the parties meet and confer to reach consensus or present competing proposals;

- These data uploads provide the Court and parties with the identities of each Class Member seeking compensation for their individual specific injuries, and information reasonably necessary to permit a sufficiently robust understanding of such asserted damages;

- As explained further below, if any of these cases subsequently need to be tried, there is an ability to identify and transfer bellwether plaintiffs from the administrative docket to the active *Kashef* class action docket, or alternatively to another active docket.

As to a proposed timeline for employing this case-management tool for the class:

1. *Initial Tranche*: Starting as soon as the Court approves this case management method, Class Counsel will assist in the creation of an administrative docket, and by a date certain, unnamed Class Members currently directly represented by Class Counsel will begin uploading their data. This data will be available to the Defendants as soon as it is uploaded.

2. *Remaining Tranche*: Once the class notice is disseminated, all other unnamed Class Members (who currently are indirectly represented by Class Counsel) who wish to seek compensation may begin to contact Class Counsel and register on the administrative docket (by uploading their data) until a fixed deadline. Class Counsel propose six to nine months after the close of the opt-out period.

Assuming the end of the opt-out period is in or near the first quarter of 2025, the deadline for registering on the administrative docket will be Q3 of 2025.

Class Counsel propose that the parties engage in meet and confer to reach consensus on the development of the administrative docket process and the data points to be proposed to be included in an MDL-like "fact sheet" or questionnaire to be uploaded by claimants (which we expect to be signed and verified by the claimant pursuant to Fed. R. Civ. P. 11), to the technology to be used and to the ongoing monitoring of the process. The parties' consensus—or their competing proposals—can be presented to the Court.

By the time that all data has been uploaded onto the administrative docket, an adjudication of both the common class issues and the nineteen Class Representative's damages should have been resolved by the Class trial. In the event the jury finds BNPP liable and awards damages, the parties and Court will be ready to proceed either towards resolution of the litigation

10

or, as needed, preparing further bellwether damages trials. A special master couldn't further assist at this stage, to provide reporting to the Court and parties with summaries of the damages dataset from the administrative docket, as will assist the Court in selecting bellwether plaintiffs and fashioning an appropriate b process as needed and/or assist the parties with evidence-based settlement efforts (a special master could be available to assist alone or in concert with a mediator).

### PHASE 4: BELLWETHER DAMAGES TRIALS

If further damages-only bellwether litigation is appropriate, the selected unnamed Class Members would transfer their damages claim from the administrative docket to the active *Kashef* class action docket, becoming named parties. The *Kashef* docket then can be used for all case-specific filings through resolution, in the event a record is needed for appeals. Bellwether proceedings can be tried by separate juries on a rolling basis, until no longer necessary. There is no need to wait until the close of the administrative docket filing-period to select bellwethers, take any limited needed discovery, and conduct their damages-phase trials.

This case management approach has the benefits of simplicity, efficiency, and fairness. *First*, the bifurcated structure "protects, rather than detracts from, the parties' right to a civil jury trial" by "making the issues the jury must consider less complex." *Simon*, 200 F.R.D. at 38. Bifurcating Class Members' claims into liability and damages phases poses no Seventh Amendment problems that cannot be solved through trial management. As Judge Weinstein explained, "trial judges enjoy broad power to employ procedural devices such as the special verdict to ensure that when issues are severed for separate trial the respective juries comprehend the proper scope of their inquiry." *Id.* at 24–25.

*Second*, there is no risk of impermissible claim-splitting. Claims splitting is where a plaintiff tries to "avoid the effect of res judicata by splitting his claim into various suits, based on different legal theories." *Waldman v. Village of Kiryas Joel*, 207 F. 3d 105, 110 (2d Cir. 2000); *Santander Bank, N.A. v. Contreras*, 414 F. Supp. 3d 650, 653 (S.D.N.Y. 2019) (Rakoff, J.). This doctrine is "based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times." *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 73 (2d Cir. 2003).

Here, Class Members are *not* prosecuting separate suits and separate legal theories based on the same set of facts. To the contrary, each is bringing a single claim, in a single suit—the *Kashef* class action—under a single legal theory: complicity in a violation of their rights under Article 50 of the Swiss Code of Obligations. This is all one single class action, with certain issues bifurcated and tried to different juries. Far from enabling Class Members to circumvent *res judicata*, this structure will bind Class Members to a verdict on all common questions and facilitate damage judgments reflecting individual specific injuries arising out of the common issues of liability.

*Finally*, because these procedures will furnish additional data on classwide injuries, Class Counsel propose that the Court continue to reserve determination as to whether a final judgment should provide for an aggregate monetary award for forced displacement to the class as a whole. Class Counsel maintain that under Swiss law each Class Member has experienced a common compensable injury for their loss of home, family and social ties which would result in a common damages amount for the common violation to human dignity, in addition to other

physical and psychological injuries.[4] At present, Class Counsel believe the Court's decision on this issue will benefit most from facts developed through the *Touhy* discovery on the class composition and size,[5] through fact and expert witness testimony regarding displacement at the Class Representatives' trial.

## Management of Non-Class Member Claims

Finally, Class Counsel propose that the above process for Class Members equally provides the best framework for resolution of the individual claims filed by Class Counsel on behalf of former putative Class Members who were not admitted to the United States as refugees or asylees and are therefore outside of the certified class definition. The only meaningful difference between these plaintiffs and the Class Members is that the former do not benefit from the presumption of forced displacement injury that flows from the refugee/asylee status shared by the latter. Because the non-Class Members also have injuries arising out of the GOS campaign of persecution, that distinction may result in different level of damages between the two groups. Otherwise, both enjoy the same litigation strategy and goals, just as do all claimants in a traditional mass tort. For example, favorable rulings on the class-wide common issues are equally likely to favorably impact the non-Class Members' cases. In any event, the prosecution of the non-Class Members' cases will necessarily lag behind those of the class representatives who are close to ready for trial, so actual differences between the two groups will be placed in clearer context after the Class Representatives' trial.

---

[4] Previous briefing and expert testimony on class forced displacement damages includes: Decl. of Prof. Franz Werro, dated March 2, 2023, ECF No. 528-104 at ¶¶ 12, 145-47, 154-61; Pls' Mtn. for Class Cert., ECF No. 480 at 102-06; Pls' Reply in Support of Class Cert., ECF No. 480 at 30-37; Pls' Suppl. Br. Re Exec. Branch Ref. and Asyl. Determ., ECF No. 512 at 10; Pls' Opp. Re Exec. Branch Ref. and Asyl. Determ. at 4, ECF. No. 523; Pls' Ntc. Pgm. Reply at 10, ECF No. 538.

[5] *See Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) (observing that in a potentially enormous class action, information on class size would enable a court to craft a mechanism to mitigate any due process concerns).

For now, Class Counsel recommend that the non-Class Member lawsuits be partially stayed, except to allow those claimants to follow the same process as Class Members, in the registration of their claims onto the administrative docket. In the event that bellwether cases are selected in Phase III of the management plan, then one or more non-Class Members' cases could be selected as bellwethers for the guidance brought by an adjudication of their damages. If, ultimately, there is a settlement program to resolve the damages claims of the Class Members, that same program should be capable of also resolving the claims of the non-Class Members.

## Conclusion

Class Counsel look forward to discussing during the October 23, 2024 status conference these proposed case management concepts.

Class Counsel certify that a draft of this Proposed Case Management Plan was sent to Defendants on August 16, 2024. Prior to the filing of this Proposed Case Management Plan, Class Counsel sought to, and did, meet and confer with counsel for Defendants. Counsel for Defendants represented that they would circulate any objections or counterproposals to this Proposed Case Management Plan on September 17, 2024. However, counsel for Defendants did not provide such materials on that date. Defendants have represented to Class Counsel that they still intend to share a counter proposal and still intend to schedule an additional meet and confer. An update will be provided to the Court after that time.

Dated: September 18, 2024                                        Respectfully submitted,

| | |
|---|---|
| *Kathryn Lee Boyd* | *Michael D. Hausfeld* |
| Kathryn Lee Boyd | Michael D. Hausfeld |
| Theodor Bruening | Scott A. Gilmore |
| Michael Eggenberger | Amanda E. Lee-DasGupta |
| HECHT PARTNERS LLP | Claire A. Rosset |
| 125 Park Avenue, 25th Floor | Mary S. Van Houten Harper |
| New York, NY 10017 | HAUSFELD LLP |
| (646) 502-9515 | 888 16th Street NW, Suite 300 |
| (646) 396-6452 | Washington, DC 20006 |
| (646) 777-2489 | (202) 540-7200 |
| lboyd@hechtpartners.com | mhausfeld@hausfeld.com |
| tbruening@hechtpartners.com | sgilmore@hausfeld.com |
| meggenberger@hechtpartners.com | alee@hausfeld.com |
| | crosset@hausfeld.com |
| Kristen Nelson | mvanhouten@hausfeld.com |
| HECHT PARTNERS LLP | |
| 6420 Wilshire Boulevard, 17th Floor | James D. Gotz |
| Los Angeles, CA 90048 | HAUSFELD LLP |
| (646) 490-2408 | One Marina Park Drive, Suite 1410 |
| knelson@hechtpartners.com | Boston, MA 02210 |
| | (617) 207-0660 |
| | jgotz@hausfeld.com |
| | |
| | *Counsel for Plaintiffs* |