UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x
:
ENTESAR OSMAN KASHEF et al., :   **OPINION AND ORDER**
:   **REGULATING**
Plaintiffs, :   **PROCEEDINGS**
:
-against- :
:   16 Civ. 3228 (AKH)
BNP PARIBAS SA, et al., :
:
Defendants. :
:
--------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

A status conference was held on April 9, 2025 to discuss issues pertaining to the questionnaire, to the plaintiffs to be selected for trial, and to hear argument on the parties' cross-motions *in limine* regarding the admissibility and preclusive effect of BNP Paribas' ("BNPP") guilty pleas in state and federal court, and the associated facts and documents related thereto.

1. **Trial Date and Pre-trial Briefing**

Defendants' motion to adjourn the trial date was denied. Jury selection will begin, as previously scheduled, on September 8, 2025, at 10:00 a.m. *See* ECF Nos. 581, 614, 632. The final pre-trial conference will be held on September 3, 2025, at 11:00 a.m.

The parties shall meet and confer, and propose a pre-trial briefing schedule for *Daubert* and other trial matters. The proposed schedule shall be filed on ECF for my review.

2. **Plaintiffs for Trial**

The September 8, 2025 trial will consist of the cases of three plaintiffs: (1) Abulgasim Abdalla, with alternates Hamdan Abakar and Ambrose Martin Ulau; (2) Entesar Osman Kashef, with alternates Esalmeldin Abdelaziz and Fatima Abdelrahman; and (3) Turjuman Adam, with alternate Isaac Ali.

1

If one of the above-mentioned plaintiffs selected for trial settles, one of that plaintiff's designated alternates will take their place.

**3.    Questionnaire**

Answers to questionnaires by class members do not have evidentiary value, even if answered under oath, and no docket numbers will be assigned to them, since the class members do not have the status of parties. The failure to complete a questionnaire by July 1, 2025, the bar date for completion, may affect a class member's share in a settlement, but if a class member has not opted out pursuant to the class notice, that person remains a member of the class for settlement and trial. The questionnaire was designed to assist counsel in negotiating settlements, but not to affect class status. Answers also may have the status of admissions.

**4.    Motions *in Limine* Concerning BNP Paribas' Guilty Pleas**

Plaintiffs move *in limine* to collaterally estop Defendants from introducing any evidence, testimony, or argument contradicting or inconsistent with BNPP's guilty plea, conviction, and associated documents in *United States v. BNP Paribas, S.A.*, 14 Cr. 460 (LGS) (S.D.N.Y.) and *People v. BNP Paribas, S.A.* (N.Y. Cnty. Sup. Ct., Crim. Term). Defendants move *in limine* to exclude this evidence from trial as irrelevant under Fed. R. Evid. 402 and unduly prejudicial under Fed. R. Evid. 403. I hold that, theoretically, these materials are relevant, more probative than unfairly prejudicial, and would bear preclusive effect under the doctrine of collateral estoppel as to this trial. But my final decision awaits Plaintiffs' submission of the precise evidence that they intend to offer as evidence at trial.

**Choice of law.**  Although Swiss law governs Defendants' liability in tort, *see Kashef v. BNP Paribas, S.A.*, 16 Civ. 3228 (AKH), 2024 U.S. Dist. LEXIS 72098, at *7-*8 (S.D.N.Y. April 18, 2024), it does not govern the preclusive effect of BNPP's criminal convictions in

federal and state courts. Federal preclusion law governs the collateral estoppel of BNPP's federal criminal conviction for Conspiracy to Violate the International Emergency Economic Powers Act and Trading with the Enemy Act, 18 U.S.C. § 371. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986) ("[F]ederal law governs the collateral estoppel effect of a federal criminal conviction in a subsequent diversity action."). BNPP also pleaded guilty in the New York Supreme Court for state crimes of Falsifying Business Records in the First Degree, N.Y. Penal Law § 175.10, and Conspiracy in the Fifth Degree, N.Y. Penal Law § 105.05. New York preclusion law governs the collateral estoppel effect of those state convictions since they occurred in New York state court. *See Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984); *Golino v. New Haven*, 950 F.2d 864, 869 (2d Cir. 1991). To the same extent as I discussed above, I reserve my final decision until Plaintiffs make their offer of proof.

**Admissibility.** To prove secondary liability in tort under the applicable Swiss law, Swiss Code of Obligations, Article 50(1), "Plaintiffs have the burden to prove that the Government of Sudan committed illicit acts, that BNPP consciously assisted Sudan and knew or should have known that it was contributing to Sudan's illicit acts, and that their culpable cooperation was the natural and adequate cause of the injury suffered by plaintiffs." *Kashef v. BNP Paribas, S.A.*, 16 Civ. 3228 (AKH), 2024 U.S. Dist. LEXIS 72098, at *8 (S.D.N.Y. April 18, 2024). Plaintiffs argue that the evidence as to which they seek collateral estoppel is relevant to satisfy their burden, and since they were not parties to the criminal cases in which BNPP pleaded guilty, they contend that they may use collateral estoppel as an offensive, nonmutual tool. I agree. The elements for offensive, nonmutual collateral estoppel are:

1. The issues in both proceedings must be identical;
2. The issue in the prior proceeding must have been actually litigated and decided;

3. There must have been a full and fair opportunity for litigation in the prior case; *and*

4. The issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79–80 (2d Cir. 2019); *accord Gilberg v. Barbieri*, 53 N.Y.2d 285, 291 (N.Y. 1981). Finally, "district courts must ensure that application of the doctrine is not unfair." *Id.* at 80; *accord Jeffreys v. Griffin*, 1 N.Y.2d 24, 41 (N.Y. 2003) ("Further, whether to apply collateral estoppel in a particular case depends upon general notions of fairness involving a practical inquiry into the realities of the litigation." (internal citation omitted)).

Plaintiffs have to prove, *inter alia*, that BNPP consciously assisted Sudan, and that the bank knew, or should have known, that it was contributing to Sudan's illicit acts. The Second Circuit held that "Plaintiffs' causes of action arise out of the same occurrence as the criminal prosecution: BNPP's conspiracy with Sudan to violate U.S. sanctions." *Kashef v. BNP Paribas, S.A.*, 925 F.3d 53, 62-63 (2d Cir. 2019); *see also Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014) (cases "need only deal with the same past events to be considered identical."). Depending on the actual proofs Plaintiffs offer from the record of the criminal proceedings in which BNPP pleaded guilty, the issues likely are identical.

The other criteria for collateral estoppel also are likely satisfied. Under Second Circuit precedent, a guilty plea in a criminal case may be used to collaterally estop a party from litigating those facts in a subsequent criminal case, *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978), and a party other than the Government may assert collateral estoppel on the basis of a federal criminal conviction, *Gelb*, 798 F.2d at 43 (2d Cir. 1986). The same is true under New York law. *Aya R. v. Elbaz*, 212 A.D.3d 669, 669-70 (N.Y. App. Div. 2d Dep't 2023). And here,

the issues were actually litigated under New York and federal preclusion laws; BNPP had a full and fair opportunity to litigate its criminal cases, and the matters stipulated to in the plea agreements, statements of facts, and the on-the-record proceedings were necessary to its judgments and convictions.

Finally, applying the fairness factors enumerated in the Supreme Court's opinion in *Parklane Hosiery Co, Inc. v. Shore*, 439 U.S. 322, 332-33 (1979), I find that it would not be unfair to apply the doctrine of collateral estoppel to this suit predicated on BNPP's guilty pleas in the criminal cases. Indeed, akin to *Parklane Hosiery*, Plaintiffs could not have intervened in the criminal prosecutions brought by the state and federal governments, the defendants had every incentive to fully litigate the criminal cases given the $9 billion penalty imposed, and there are no inconsistent judgments here, nor are there any new procedural opportunities available to Defendants in this suit that were not applicable in the criminal matters. To be sure, the admissibility of specific items of evidence depends on the offer of proof made by Plaintiffs.

As to relevance and unfair prejudice, evidence is relevant if "it has *any tendency* to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). Irrelevant evidence is inadmissible. Fed. R. Evid. 402. A "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Since "[b]y definition, evidence admitted against a party tends to be prejudicial," *United States v. Kourani*, 17 Cr. 417 (AKH), 2025 U.S. Dist. LEXIS 33325, at *6 (S.D.N.Y. Feb. 24, 2025), the fact that an item of evidence against a party is damning does not constitute, by itself, unfair prejudice.

Here, despite Defendants' contentions to the contrary, the facts, admissions and rulings that plaintiffs propose to offer to satisfy Swiss Code 50(1) are admissible under Fed. R. Evid. 401. And the U.S. sanctions law which defendants violated was "aimed at halting the genocide" in Sudan. *Kashef v. BNP Paribas, S.A.*, 925 F.3d 53, 55 (2d Cir. 2019); Fed. R. Evid. 801(d)(2) (party-opponent admissions). Indeed, by admitting guilt in the criminal case, Defendants affirmatively acknowledged their role in consciously assisting Sudan in the midst of its genocide by providing banking services, contrary to U.S. law, which BNPP knew, or should have known, would enable Sudan's campaign of genocide and human rights violations against Plaintiffs. *See* ECF No. 671-3, -5, -7. In a similar vein, Defendants' sanctions evasion, at issue in the criminal matters, is relevant to causation, since the Sudanese government could not have carried out its human rights violations but-for BNPP's assistance. And the strong probative value of this evidence outweighs its potential for unfair prejudice. *See* Fed. R. Evid. 403.

Defendants separately argue, and Plaintiffs do not object, that evidence of BNPP's civil regulatory settlements should be excluded under Fed. R. Evid. 408. I agree, and I grant this branch of Defendants' motion. *See, e.g., United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981); *BDG Gotham Residential, LLC v. Western Waterproofing Co.*, 631 F. Supp. 3d 76, 82 (S.D.N.Y. 2022).

There also is the question whether collateral estoppel should be limited to facts, admissions and rulings, and not to the plea itself. I reserve decision on this issue. And as to the entire discussion above, my rulings are tentative. They will be made definitively in light of the actual offers of proof by plaintiffs.

5. The next status conference will be held on June 26, 2025, at 2:30 p.m. in Courtroom 14D. By June 18, 2025, the parties shall submit to the Court (via the email address

HellersteinNYSDChambers@nysd.uscourts.gov) a joint list of attorneys expected to appear on the record, and a joint agenda of points that either party wishes to discuss at the status conference.

    The Clerk of Court shall terminate ECF Nos. 635, 638, 658, 659, and 673.

    SO ORDERED.

Dated:    April 11, 2025                     /s/ Alvin K. Hellerstein
           New York, New York           ALVIN K. HELLERSTEIN
                                           United States District Judge