UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*,<br><br>                Plaintiffs<br><br>                v.<br><br>BNP PARIBAS S.A. and BNP PARIBAS US WHOLESALE HOLDINGS, CORP.,<br><br>                Defendants. | Case No. 1:16-cv-03228-AKH-JW<br><br>**PLAINTIFFS' OFFER OF PROOF REGARDING THE BANK'S GUILTY PLEAS** |

Pursuant to this Court's Order Regulating Proceedings, ECF 675, Plaintiffs submit this Offer of Proof regarding the items of evidence for which they seek admission, and the matters on which they seek collateral estoppel, arising from the documents included in ECF 671 and the 1997 and 2006 Executive Orders (the "Guilty Plea Materials").

### I. MATTERS FOR COLLATERAL ESTOPPEL

Based on the Guilty Plea Materials, Plaintiffs request a ruling that Defendants (the "Bank") are collaterally estopped as to the following matters:

1. The second element of liability under Swiss Code of Obligations, Article 50(1), namely that the Bank "consciously assisted Sudan and knew or should have known that it was contributing to Sudan's illicit acts." (ECF 675, Opinion and Order Regulating Proceedings, at 5). The Bank did so by "providing banking services, contrary to U.S. law, which BNPP knew, or should have known, would enable Sudan's campaign of genocide and human rights violations against Plaintiffs." (*Id.* at 6.) *See also* ECF 499, Summary Judgment Order and Opinion ("SJ Order") at 5 ("BNPP cannot now argue the issue that it already has admitted, that it knowingly and consciously assisted the

Government of Sudan in its commission of unlawful acts and knew or should have known that it was enabling these illicit acts.").

    a. As a consequence of this ruling, the jury should be instructed that this second element of Article 50(1) has been conclusively established as to both Defendants, and they need not consider it further in their deliberations.

2. Each fact set forth in the Guilty Plea Materials and/or identified in the decisions of the Second Circuit, *Kashef v. BNP Paribas*, 925 F.3d 53 (2d Cir. 2019) (the "Second Circuit Ruling"), and this Court in the SJ Order, which fall into the following general categories:

    a. The United States imposed sanctions on Sudan in 1997, and then additional sanctions in 2006. Those sanctions prohibited virtually all trade and investment activities involving the U.S. financial system, including the processing of U.S. dollar transactions through the United States. (ECF 671, Exh. C, ¶ 5; Second Circuit Ruling, 925 F.3d at 55.)

    b. These U.S. sanctions were "aimed at halting the genocide" in Sudan. (Second Circuit Ruling, 925 F.3d at 55, quoted in ECF 675; *see also* ECF 671, Exh. C, ¶¶ 3-4 (Bank admitting that U.S. sanctions addressed Sudan's policies of violating human rights); Exec. Order No. 13,067, 62 Fed. Reg. 59989 (Nov. 3, 1997)).

    c. Beginning in 1997, shortly after the U.S. sanctions were imposed, the Bank conspired with the Government of Sudan and others to play a central role in managing Sudan's banking system and foreign commerce market. (ECF 671, Exh. C, ¶¶ 19-20, 23; Exh. E at 18; Second Circuit Ruling, 925 F.3d at 55.)

d. In 1997, the Bank became the sole European correspondent bank for the Sudanese government and the primary correspondent bank for all or nearly all major Sudanese banks. (ECF 671, Exh. C, ¶ 19.)

e. From at least 2002 through and including 2007, the Bank, predominantly through its Swiss subsidiary BNPP Geneva, conspired with numerous Sudanese banks and entities as well as financial institutions outside of Sudan to violate the U.S. embargo by providing Sudanese banks and entities access to the U.S. financial system. (ECF 671, Exh. C, ¶ 17; Second Circuit Ruling, 925 F.3d at 55.)

f. In 1997, shortly after the imposition of the U.S. embargo, the Bank created a "structure" with so-called "satellite banks" that "enabled" U.S. dollar transactions with sanctioned Sudanese entities "to go undetected." (ECF 671, Exh. C, ¶ 23; and Exh. E, p. 32; Second Circuit Ruling, 925 F.3d at 56.)

g. In addition to the satellite bank structure, the Bank intentionally used a complex system of payment messages, called cover payments, to conceal the involvement of sanctioned Sudanese entities in U.S. dollar transactions. (ECF 671, Exh. C, ¶ 16.a.)

h. The Bank also instructed other co-conspirator financial institutions not to mention the names of sanctioned Sudanese entities in U.S. dollar payment messages sent to the Bank in the United States. (ECF 671, Exh. C, ¶ 16.c.)

i. Similarly, the Bank followed instructions from its own co-conspirators not to mention the names of sanctioned Sudanese entities in U.S. dollar payment messages sent to the Bank in the United States. (ECF 671, Exh. C, ¶ 16.d.)

j.  The Bank also removed information identifying sanctioned Sudanese entities from U.S. dollar payment messages to conceal the involvement of these entities from U.S. financial institutions. (ECF 671, Exh. C, ¶ 16.e.; Second Circuit Ruling, 925 F.3d at 56.) This scheme was known as "wire-stripping." (SJ Order at 6-7.)

k.  The Bank's methods of evading U.S. Sanctions against Sudan — including the omission of references to Sudan from wire messages involving sanctioned Sudanese entities — were known to and condoned by senior compliance and business managers at the Bank. (ECF 671, Exh. C, ¶ 27; Exh. E, p. 19.)

l.  From 2002 through 2007, the Bank processed thousands of U.S., dollar-denominated transactions with sanctioned Sudanese entities, with a total value well in excess of $6 billion. (ECF 671, Exh. C, ¶ 17.)

m.  The Bank committed these violations of law despite its knowledge of the Government of Sudan's role in supporting international terrorism and committing human rights abuses and its awareness of the consequences of providing Sudan access to U.S. financial markets. (ECF 671, Exh. C, ¶¶ 17, 20; Second Circuit Ruling, 925 F.3d at 56.)

n.  The Bank's central role in providing Sudanese financial institutions access to the U.S. financial system, despite the Government of Sudan's role in supporting terrorism and committing human rights abuses, was recognized by Bank employees, who called the Sudan situation a "humanitarian catastrophe" and observed that the bank's support of Sudanese entities "play[s] a pivotal role in support of the Sudanese government" which "has hosted Osama Bin Laden and

refuses United Nations intervention in Darfur." (ECF 671, Exh. C, ¶ 20; Exh. E, p. 18; Second Circuit Ruling, 925 F.3d at 56.)

o.  The Bank financed Sudan's export of oil despite its awareness that '[t]he growth of revenue from oil" made it "probable that Sudan will remain torn up" by the Government of Sudan's "repressive measures for a long time." (ECF 671, Exh. C, ¶¶ 19-20.)

p.  The Bank continued to process transactions involving sanctioned Sudanese entities — despite being aware that it violated U.S. law — because the business was profitable, "the commercial stakes [were] significant," and because the Bank did not want to risk its longstanding relationships with Sudanese clients. (ECF 671, Exh. C, ¶ 37; Second Circuit Ruling, 925 F.3d at 56.)

q.  The Bank's violations of the law were knowing and willful. (ECF 671, Exh. E, p. 22.)

r.  From time to time senior compliance and legal personnel at the Bank expressed concern about the Bank's continued business with Sudanese entities, but each time they were rebuffed. (ECF 671, Exh. C, ¶¶ 32-33.)

s.  Defendant BNP Paribas SA was at the center of this conspiracy, which enabled sanctioned entities access to the U.S. dollar system that those entities otherwise would not have had. (ECF 671, Exh. E, p. 32:2-5.) Without BNP Paribas SA "acting effectively as its US central banker," the Government of Sudan would not have been able to "do transactions in US dollars." (ECF 671-5, Exh. E, p. 32:6-9.)

t.  These actions significantly undermined the U.S. embargo and gave the Government of Sudan and Sudanese banks access to the U.S. financial system that

    they otherwise would not have had.  They provided support to the Sudanese government which has committed flagrant human rights abuses.  (ECF 671, Exh. C, ¶¶ 18, 41, Exh. E, p. 34.)

u. On June 27, 2014 the Bank agreed to plead guilty, and on July 9, 2014 that plea was accepted, to the felony of conspiring to violate the U.S. embargo against doing business with Sudan.  (ECF 671, Exhs. B and E; Second Circuit Ruling, 925 F.3d at 56.)

v. As part of its guilty plea to this felony, the Bank admitted that the United States could have proved its violation of law beyond a reasonable doubt.  (ECF 671, Exhs. B and E.)

w. As part of its guilty plea to this felony, the Bank agreed that the items contained in the Statement of Facts were true, and could also have been proved beyond a reasonable doubt.  (ECF 671, Exhs. B and E; Second Circuit Ruling, 925 F.3d at 55.)

x. As part of its guilty plea to this felony, the Bank agreed it would not contradict either its admission of guilt or the items set forth in the Statement of Facts.  (ECF 671, Exh. B, p. 8.)

y. In pleading guilty, BNP Paribas SA, the parent corporation of the BNP Paribas group, accepted responsibility for the actions of its subsidiaries, branches, and employees, including BNPP Geneva. (ECF 671, Exh. C, ¶ 14; ECF 671-5, Exh. E, p. 21:15-14:11.)

z. The Bank's plea of guilty and its admissions were and are binding not just on BNPP, but on its subsidiaries, affiliates and assignees.  (ECF 671, Exh. B, p. 9.)

II. **MATTERS FOR ADMISSION AS EVIDENCE**

   a. Plaintiffs offer the following Guilty Plea Materials, subject to noted redactions shown on the attached Exhs. 1-4,[1] for admission in their case in chief: ECF 671-Exhs. B, C, D, and E, as well as the 1997 and 2006 Executive Orders.

      i. The documents in ECF 671 are admissible as either non-hearsay or exceptions to the rule against hearsay because they are statements by a party-opponent; admissions against interest; present-sense impressions; records of a regularly-conducted activity; or other non-hearsay materials or exceptions to the rule against hearsay. The two Executive Orders are admissible because they are public records.

      ii. These documents are relevant evidence on causation (the third element of the claim), showing that (1) BNPP assisted the GOS on a pervasive and systemic scale, facilitating the campaign of genocide, and (2) it was foreseeable that doing so would contribute to the forcible displacement of the class and the illicit acts of persecution suffered by the Plaintiffs.

      iii. These documents are also relevant evidence on Sudan's commission of the genocide as the primary actor (the first element of the claim), showing the nature and extent of the Government's campaign.

   b. Plaintiffs reserve the right to offer or use the Guilty Plea Materials for other purposes, including impeachment (both generally and under FRE 609); for cross-examination of the Bank's witnesses; and as reliance materials for Plaintiffs' experts.

---

[1] In Exhs. 1-4, the noted redactions are highlighted in yellow.

    c. Plaintiffs reserve the right to offer or use other matters addressed in the Guilty Plea Materials (e.g., the Cuba and Iran portions) for impeachment or in their affirmative or rebuttal case, depending on developments at trial.

Dated: May 9, 2025

[*Signature blocks on following page*]

| | |
|---|---|
| */s/Kathryn Lee Boyd* | */s/Michael D. Hausfeld* |
| Kathryn Lee Boyd | Michael D. Hausfeld |
| Theodor Bruening | Scott A. Gilmore |
| Michael Eggenberger | Amanda E. Lee-DasGupta |
| HECHT PARTNERS LLP | Claire A. Rosset |
| 125 Park Avenue, 25th Floor | Mary S. Van Houten Harper |
| New York, NY 10017 | Percy Metcalfe |
| (646) 502-9515 | HAUSFELD LLP |
| (646) 396-6452 | 1200 17th Street, NW, Suite 600 |
| (646) 777-2489 | Washington, DC 20036 |
| lboyd@hechtpartners.com | (202) 540-7200 |
| tbruening@hechtpartners.com | mhausfeld@hausfeld.com |
| meggenberger@hechtpartners.com | sgilmore@hausfeld.com |
| | alee@hausfeld.com |
| Kristen Nelson | crosset@hausfeld.com |
| HECHT PARTNERS LLP | mvanhouten@hausfeld.com |
| 6420 Wilshire Boulevard, 17th Floor | pmetcalfe@hausfeld.com |
| Los Angeles, CA 90048 | |
| (646) 490-2408 | James D. Gotz |
| knelson@hechtpartners.com | HAUSFELD LLP |
| | One Marina Park Drive, Suite 1410 |
| Cyril V. Smith | Boston, MA 02210 |
| ZUCKERMAN SPAEDER LLP (Baltimore) | (617) 207-0660 |
| 100 East Pratt Street, Suite 2440 | jgotz@hausfeld.com |
| Baltimore, MD 21202 | |
| (410) 332-0444 | E. Danya Perry |
| csmith@zuckerman.com | PERRY LAW |
| | 445 Park Avenue, 7th Floor |
| Aitan D. Goelman | New York, NY 10022 |
| ZUCKERMAN SPAEDER LLP (DC) | (212) 840-7939 |
| 1800 M Street, Suite 1000 | dperry@danyaperrylaw.com |
| Washington, DC 20036 | |
| (202) 778-1996 | Joshua Perry |
| agoelman@zuckerman.com | PERRY LAW |
| | 445 Park Avenue, 7th Floor |
| | New York, NY 10022 |
| | (212) 251-2619 |
| | jperry@danyaperrylaw.com |
| | |
| | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I hereby certify that on May 9, 2025, a true and correct copy of the foregoing Offer of Proof Regarding the Bank's Guilty Pleas was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record.

Dated: May 9, 2025                               By:  */s/ Michael D. Hausfeld*
                                                                 Michael D. Hausfeld