UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                           :

ENTESAR OSMAN KASHEF et al.,       :    **<u>ORDER</u>**

                   Plaintiffs,  :

    -against-             :    16 Civ. 3228 (AKH)

                           :

BNP PARIBAS SA, et al.,          :

                   Defendants.  :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       I previously held that Defendants' plea of guilty in *United States v. BNP Paribas*, 14 Cr.
460 (S.D.N.Y.), and its admissions are generally admissible, subject to agreement, or further
order, as to the precise statements that could be read to the jury. *See* ECF No. 701; *see also*
*Kashef v. BNP Paribas, S.A.*, 16 Civ. 3228 (AKH), 2025 U.S. Dist. LEXIS 69747 (S.D.N.Y.
Apr. 11, 2025), at \*23-28. I ordered the parties to submit a table describing each such statement,
and the parties' respective positions. They have done so. *See* ECF No. 715.

       My rulings resolving their disagreements are shown by cross-outs and redactions on the
table they submitted, and are attached as part of this Order.

       Plaintiffs, by June 24, 2025, shall file a single document reciting, passage by passage, the
statements eligible to be read to the jury, according to my rulings. The next step is to eliminate
redundancies and cumulative admissions. Again, the parties shall prepare a table showing their
agreement and disagreements, eliminating redundancies and cumulative statements, and reducing
the admissions to just those that will be admissible and readable to the jury. The parties shall file
this revised table, via ECF, by July 8, 2025.

As additional explanation: Defendants' plea agreement, ECF No. 715-1, is not a statement of facts, and is itself irrelevant and cumulative. *See* Fed. R. Evid. 401, 403. And the sentencing hearing transcripts, ECF No. 715-3, -4, are a long colloquy, repetitive of the Statement of Facts, and cumulative and confusing to the jury. *See* Fed. R. Evid. 403.

Defendants seek to admit paragraphs 30, 34 and 35 of the Statement of Facts, describing certain conduct on the advice of counsel. They are not admissible. They are neither party-opponent admissions under Fed. R. Evid. 801(d)(2), nor statements against interest under Fed. R. Evid. 804(b)(3), since they are offered in the declarant's favor as relevant to Defendants' case. Defendants' argument that the Rule of Completeness, Fed. R. Evid. 106, supports their admission, *see* ECF No. 713, is not meritorious. Rule 106 requires courts to admit the entirety of a statement only "where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." *United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019) (quoting *United States v. Benitez*, 920 F.2d 1080, 1086-87 (2d Cir. 1990)). But here, that is not the case, since the paragraphs offered by Plaintiffs are fully understandable. Admitting extra paragraphs favored by Defendants would serve only to confuse and mislead the jury. Accordingly, I exclude these items from evidence in their entirety.

SO ORDERED.

Dated:      June 18, 2025
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| Stipulated Statement of Facts Text | Plaintiffs' Position and Reasoning | Defendants' Position and Reasoning |
| --- | --- | --- |
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>UNITED STATES OF AMERICA<br><br>— V. —<br><br>BNP PARIBAS, S.A.<br><br>Defendant. | Admit the text in full. It provides context and background for the following stipulated facts. | Redact this text in full. This case caption and heading refers to a criminal proceeding resulting in a plea. It is not relevant to the Swiss tort in this case, may confuse the jury as to the applicable law, and would unfairly prejudice BNPP. |
| STATEMENT OF FACTS<br><br>The parties stipulate that the allegations in Count One of the Federal Information, ~~the allegations in Court One of the State Law Charge,~~ and the following facts are true and correct, and that had the matter gone to trial, the United States and New York State would have proved them beyond a reasonable doubt: | Admit the paragraph in full. It is relevant and informs the jury that the Bank stipulated to these facts. | Redact the paragraph in full. It is not relevant to the Swiss tort in this case and may confuse the jury as to the applicable law. |

1

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 1. BNP Paribas S.A. ("BNPP"), the defendant, is the largest bank in France and one of the five largest banks in the world in terms of total assets. It has approximately 190,000 employees and more than 34 million customers around the world. BNPP's headquarters are located in Paris, France ("BNPP Paris"), and BNPP has subsidiaries, affiliates and branches in many countries throughout the world, including branch offices in the United States headquartered in New York, New York ("BNPP New York"), and a subsidiary based in Geneva, Switzerland, incorporated as BNPP Paribas (Suisse) S.A. ("BNPP Geneva"). One of BNPP's core businesses is its Corporate and Investment Bank ("CIB"). Among other activities, CIB provides clients with financing in the form of letters of credit and syndicated loans. A significant part of this financing occurs within a CIB business line formerly called Energy Commodities Export Project ("ECEP") that focuses on, among other things, providing financing related to oil, petroleum gas and other commodities. | Admit the paragraph in full. The Bank agrees that the paragraph should be generally admitted with some redactions and modifications to language, for causing juror confusion about what considerations are permissible. Further, the description of BNPP Geneva's corporate structure is no longer accurate: BNPP Geneva is now a branch of BNP Paribas S.A., not a subsidiary. | Admit the paragraph, subject to the below redactions and revision. The size of the bank is not relevant to this case and risks causing juror confusion and there is any basis.

Redact: "In terms of total assets. It has approximately 190,000 employees and more than 34 million customers around the world."

Redact: "incorporated as BNPP Paribas (Suisse) S.A."

Revise: the phrase "including branch offices in the United States headquartered in New York, New York ("BNPP New York"), and a subsidiary based in Geneva, Switzerland, incorporated as BNPP Paribas (Suisse) S.A. ("BNPP Geneva")" should be redacted and replaced as follows: "including branch offices in the United States |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| **U.S. Sanctions Laws**<br><br>2. Pursuant to U.S. law, financial institutions, including BNPP, are prohibited from participating in certain financial transactions involving persons, entities and countries subject to U.S. economic sanctions. The United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") promulgates regulations to administer and enforce U.S. laws governing economic sanctions, including regulations for sanctions related to specific countries, as well as sanctions related to Specially Designated Nationals ("SDNs"). SDNs are individuals and companies specifically designated as having their assets blocked from the U.S. financial system by virtue of being owned or controlled by, or acting for or on behalf of, targeted countries, as well as individuals, groups, and entities, such as terrorists and narcotics traffickers, designated under sanctions programs that are not country-specific. | Admit the paragraph in full. The paragraph provides context and background for the sanctions that the following paragraphs rely on. With regards to the Bank's comment about "selective descriptions," the Bank stipulated to the Stipulated Statement of Facts and agreed to the inclusion of language and descriptions in every instance. | headquarted in New York, New York ("BNPP New York"). In May 2025, BNPP Paribas (Suisse) S.A. ("BNPP Geneva") became a branch of BNP Paribas S.A."<br><br>Redact the paragraph in full, including the section header.<br><br>The paragraph describes U.S. government enforcement agencies and procedures that are not probative of any element of the Swiss tort at issue and risk juror confusion regarding what law applies. Even if the Court finds that the fact of BNP's sanctions violation is probative of the Swiss law tort, collateral details regarding the specifics of the United States sanction regime and enforcement mechanisms are insufficiently probative to outweigh the risk of confusing the jury.<br><br>The paragraph also includes selective descriptions or characterizations that are unduly prejudicial. |

*Kashef et al v. BNP Paribas SA et al*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

*Sudan Sanctions*

| | | |
|---|---|---|
| 3. In November 1997, President Clinton, invoking the authority, *inter alia*, of the International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Section 1701 et seq., issued Executive Order 13067, which declared a national emergency with respect to the policies and actions of the Government of Sudan, "including ~~continued support for international terrorism; ongoing efforts to destabilize neighboring governments; and~~ the prevalence of human rights violations, including slavery and the denial of religious freedom." Exec. Order No. 13067 (Nov. 3, 1997). Executive Order 13067 imposed trade sanctions with respect to Sudan and blocked all property, and interests in property, of the Government of Sudan in the United States or within the possession or control of U.S. persons.[1] The international community also recognized the threat posed by the policies and actions of the Government of Sudan. In 2005, the United Nations Security Council recognized "the dire consequences of the prolonged conflict for the civilian population in the Darfur region as well as throughout Sudan," the "violations of human rights and international humanitarian law in the Darfur region," and the "failure of the Government of Sudan to disarm Janjaweed militiamen and apprehend and bring to justice Janjaweed leaders and their associates who have carried out human rights and international humanitarian law violations and other atrocities." U.N. Security Council Resolution 1591 (Mar. 29, 2005). | Admit the paragraph, including the footnote, with the exception of the description of the terrorism and efforts to destabilize neighboring countries. The paragraph is a relevant admission that "show[s] the purpose of the sanctions," Tr. 30:11-14 (Paragraph 20 Illustration), and shows the human rights violations in Sudan. Tr. 29:19-30:4 (Paragraph 17 Illustration).[1] With regards to the Bank's comment about "selective descriptions," the Bank stipulated to the Stipulated Statement of Facts and agreed to the inclusion of language and descriptions in every instance. <br><br> Redact: "continued support for international terrorism; ongoing efforts to destabilize neighboring governments; and" | Redact the paragraph in full, including the section header. <br><br> The paragraph describes U.S. government policies that are not probative of any element of the Swiss tort at issue and risk juror confusion regarding what law applies. Even if the Court finds that the fact of BNP's sanctions violation is probative of the Swiss law tort, collateral details regarding the specifics of the United States sanction regime and enforcement mechanisms are insufficiently probative to outweigh the risk of confusing the jury. <br><br> The paragraph also includes selective descriptions or characterizations that are unduly prejudicial. |

---

[1] All citations to "Tr." refer to the transcript of the motions hearing before the Court on May 20, 2025.

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 4. In October 2006, President Bush, also pursuant to IEEPA, issued Executive Order 13412, which further strengthened the sanctions against Sudan. Executive Order 13412 cited the "continuation of the threat to the national security and foreign policy of the United States created by certain policies and actions of the Government of Sudan that violate human rights, in particular with respect to the conflict in Darfur, where the Government of Sudan exercises administrative and legal authority and pervasive practical influence, and due to the threat to the national security and foreign policy of the United States posed by the pervasive role played by the Government of Sudan in the petroleum and petrochemical industries in Sudan ...." Exec. Order No. 13412 (Oct. 13, 2006). | Admit the paragraph in full. The paragraph is a relevant admission that "show[s] the purpose of the sanctions," Tr. 30:11-14 (Paragraph 20 Illustration). | Redact the paragraph in full. The paragraph describes U.S. government policies that are not probative of any element of the Swiss tort at issue and risk juror confusion regarding what law applies. Even if the Court finds that the fact of BNP's sanctions violation is probative of the Swiss law tort, collateral details regarding the specifics of the United States sanction regime and enforcement mechanisms are insufficiently probative to outweigh the risk of confusing the jury. |
| 5. Under Executive Orders 13067 and 13412 and related regulations promulgated by OFAC pursuant to IEEPA, it is unlawful to export goods and services from the United States, including U.S. financial services, to Sudan without a license from OFAC. Under these Executive Orders and regulations, virtually all trade and investment activities involving the U.S. financial system, including the processing of U.S. dollar transactions through the United States, were prohibited. | Admit the paragraph in full. The paragraph provides context and background for the sanctions that the following paragraphs rely on. | Redact the paragraph in full. The paragraph describes IEEPA and its elements, which are not relevant to the Swiss tort at issue and risks juror confusion regarding what law applies. Even if the Court finds that the fact of BNP's sanctions violation is probative of the Swiss law tort, collateral details regarding the specifics of the United States sanction regime and enforcement mechanisms are insufficiently probative to outweigh the risk of confusing the jury. |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 6. Pursuant to Title 50, United States Code, Section 1705, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of regulations issued pursuant to IEEPA, including the U.S. sanctions against Sudan. | Admit the paragraph in full. The paragraph provides context and background for the sanctions that the following paragraphs rely on. | Redact the paragraph in full. The paragraph describes U.S. law and its elements, which are not relevant to the Swiss tort at issue and risks juror confusion regarding what law applies. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details regarding the specifics of the United States sanction regime and enforcement mechanisms are insufficiently probative to outweigh the risk of confusing the jury. |
| 7. Pursuant to New York State Penal Law Section 175.10, it is a felony to Falsify Business Records, pursuant to New York State Penal Law section 175.05, when it is done with the intent to commit another crime or to aid or conceal the commission of a crime. | Redact the paragraph in full. | Redact the paragraph in full. The paragraph describes New York law and its elements, which are not relevant to the Swiss tort at issue and risks juror confusion regarding what law applies. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details regarding New York State Penal Law are insufficiently probative to outweigh the risk of confusing the jury. |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

### Overview of the Conspiracy

14. From at least 2004 up through and including 2012, BNPP, the defendant, conspired with banks and other entities located in or controlled by countries subject to U.S. sanctions, including Sudan, ~~Iran and Cuba~~ ("Sanctioned Entities"), other financial institutions located in countries not subject to U.S. sanctions, and others known and unknown, to knowingly, intentionally and willfully move ~~at least $30,523,000,000~~ through the U.S. financial system on behalf of Sanctioned Entities in violation of U.S. sanctions laws, ~~including transactions totaling at least $4.3 billion that involved SDNs~~:

*[handwritten annotation: "billions of dollars" with arrow]*

| | |
|---|---|
| Admit the paragraph subject to the redactions identified below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration). To the extent U.S. criminal law imposes a different scienter requirement than Swiss Article 50(1), the U.S. requirement of "knowing and willful" conduct exceeds the burden under Swiss law.<br><br>Redact:<br><br>• "Iran and Cuba"<br>• "at least $8,833,600,000" and replace with "billions of dollars" (to account for Iran and Cuba deletions)<br>• "including transactions totaling at least $4.3 billion that involved SDNs" (to | Redact the paragraph in full, including the section header. The "conspiracy" described refers to a specific offense with a particular knowledge requirement under U.S. criminal law, which is distinct from accomplice liability with a different knowledge requirement under Swiss law. It is not relevant to any of the elements of Swiss tort law, would unfairly prejudice BNPP, and risks causing juror confusion.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>The scienter requirements of U.S. criminal law and Swiss Article 50(1) are distinct. Conflating inapposite U.S. and Swiss legal standards will inevitably confuse the jury. |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | account for Iran and Cuba deletions) | |
|---|---|---|
| 15. In carrying out these illicit transactions, BNPP's agents and employees were acting within the scope of their duties which were intended, at least in part, to benefit BNPP. | Admit the paragraph in full. The paragraph is a relevant admission relating to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration). The Bank's redaction of "In carrying out these illicit transactions" makes no sense in light of the Court's ruling admitting the guilty plea.<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Admit the paragraph, subject to the below redactions. This clause risks juror confusion regarding what law applies because these transactions were not "illicit" under Swiss law, the only relevant legal standard in this case, which uses the same term to refer to a different legal concept.<br><br>Redact: "In carrying out these illicit transactions," |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

## Means and Methods of the Conspiracy

| | | |
|---|---|---|
| 16. Among the means and methods by which BNPP and its co-conspirators carried out the conspiracy were the following: a. BNPP intentionally used a non-transparent method of payment messages, known as cover payments, to conceal the involvement of Sanctioned Entities in U.S. dollar transactions processed through BNPP New York and other financial institutions in the United States. b. BNPP worked with other financial institutions to structure payments in highly complicated ways, with no legitimate business purpose, to conceal the involvement of Sanctioned Entities in order to prevent the illicit transactions from being blocked when transmitted through the United States. c. BNPP instructed other co-conspirator financial institutions not to mention the names of Sanctioned Entities in U.S. dollar payment messages sent to BNPP New York and other financial institutions in the United States. d. BNPP followed instructions from co-conspirator Sanctioned Entities not to mention their names in U.S. dollar payment messages sent to BNPP New York and other financial institutions in the United States. BNPP removed information identifying Sanctioned Entities from U.S. dollar payment messages in order to conceal the involvement of Sanctioned Entities from BNPP New York and other financial institutions in the United States. | Admit paragraph in full. The Court has already identified Paragraph 16 as an illustrative example of a relevant admission relating to the "methods used by the bank to try to circumvent the sanctions and that [are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7.<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Redact the paragraph in full, including the section header. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the Government of Sudan ("GOS") and its affiliates. These are not probative of any element of the Swiss tort at issue. In addition, the use of terms such as "illicit" and "conspiracy" risk juror confusion as to the applicable law. The transactions were not "illicit" under Swiss law and use of the term may cause confusion regarding the "illicit act" component of the Swiss tort. The "conspiracy" described refers to a specific offense with a particular knowledge requirement under U.S. criminal law, which is distinct from accomplice liability with a different knowledge requirement under Swiss law.<br><br>It is not relevant to any of the elements of Swiss tort law. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| | probative to outweigh the risks of unfair prejudice and jury confusion. |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

## Violations of the Sudanese Sanctions

*Overview*

| | | |
|---|---|---|
| 17. From 2002 up through and including 2007, BNPP, predominantly through its Swiss-based subsidiary, BNP Geneva, conspired with numerous Sudanese banks and entities as well as financial institutions outside of Sudan to violate the U.S. embargo by providing Sudanese banks and entities access to the U.S. financial system. During the course of its illicit conduct, BNPP processed thousands of U.S. dollar denominated financial transactions with Sudan ~~specialized entities~~, with a total value well in excess of $6 billion, including transactions involving 18 Sudanese SDNs, six of which were BNPP clients. The Sudanese SDN transactions processed by BNPP had a value of approximately $4 billion, and the vast majority of these SDN transactions involved a financial institution owned by the Government of Sudan ("Sudanese Government Bank I"), despite the Government of Sudan's role in ~~supporting international terrorism~~ committing human rights abuses during this time period. | Admit paragraph subject to the redactions below. The Court has already identified Paragraph 17 as an illustrative example of a relevant admission relating to "the human rights violations [in Sudan] and show[s] that the bank knew that the government of Sudan was committing human rights violations when it was extending financing." Tr. 29:19-30:4. Given this ruling, the Bank's other redactions make no sense.<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.<br><br>[Continued on next page] | Admit paragraph subject to the redactions and revisions below. The paragraph includes general characterizations of the GOS as having committed human rights abuses unrelated to the individual plaintiffs that are not relevant to the Swiss tort and unfairly prejudice the question of BNPP's knowledge. This risks juror confusion as it implies knowledge of the illicit acts that injured Plaintiffs—in the sense required by Swiss tort law—where none exists. These statements also have no connection to causation of Plaintiffs' injuries.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Redact:<br><br>"Violations of the Sudanese Sanctions" |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| Redact:<br><br>"supporting international terrorism and" | ", conspired with numerous Sudanese banks and entities as well as financial institutions outside of Sudan to violate the U.S. embargo by" |
| The Plaintiffs agree that the words "Sanctioned Entities" should be redacted and replaced with the word "Sudan." | "During the course of its illicit conduct," |
| | "with a total value well in excess of $6 billion, including 18 transactions involving 18 Sudanese SDNs, six of which were BNPP clients. The Sudanese SDN transactions processed by BNPP had a value of approximately $4 billion," |
| | ", despite the Government of Sudan's role in supporting international terrorism and committing human rights abuses during this time period." |
| | Revise:<br><br>The word "providing" should be redacted and replaced with the word "provided." |
| | The words "Sanctioned Entities" should be redacted and replaced with the word "Sudan." |

12

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | | |
|---|---|---|---|
| 18. BNPP carried out transactions with Sanctioned Entities and evaded the U.S. embargo through several means. One such method, which enabled BNPP to manage or finance billions of dollars' worth of U.S. dollar denominated letters of credit for Sudanese entities, involved deliberately modifying and omitting references to Sudan in the payment messages accompanying these transactions to prevent the transactions from being blocked when they entered the United States. Another method, described more fully below, entailed moving illicit transactions through unaffiliated "satellite banks" in a way that enabled BNPP to disguise the involvement of Sanctioned Entities in U.S. dollar transactions. As a result of BNPP's conduct, the Government of Sudan and numerous banks connected to the Government of Sudan, including SDNs, were able to access the U.S. financial system and engage in billions of dollars' worth of U.S. dollar-based financial transactions, significantly undermining the U.S. embargo | | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | The phrase "and the vast majority of these SDN" should be replaced with the phrase "Many of these"<br><br>Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the Government of Sudan ("GOS") and its affiliates. These are not probative of any element of the Swiss tort at issue.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. |

Case 1:16-cv-03228-AKH-JW   Document 715-2   Filed 06/09/25   Page 15 of 52

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| *BNPP's Critical Role in the Sudanese Economy and in Providing Sudan Access to the U.S. Financial System* 19. In 1997, shortly after the imposition of U.S. sanctions against Sudan, BNPP Geneva agreed to become the sole correspondent bank in Europe for Sudanese Government Bank 1, which, as noted above, was designated by OFAC as an SDN. Sudanese Government Bank 1 then directed all major commercial banks located in Sudan to use BNPP Geneva as their primary correspondent bank in Europe. As a result, all or nearly all major Sudanese banks had U.S. dollar accounts with BNPP Geneva. In addition to processing U.S. dollar transactions, in 2000, BNPP Geneva also developed a business in letters of credit for the Sudanese banks. Due to its role in financing Sudan's export of oil, BNPP Geneva took on a central role in Sudan's foreign commerce market. By 2006, letters of credit managed by BNPP Geneva represented approximately a quarter of all exports and a fifth of all imports for Sudan. Over 90% of these letters of credit were denominated in U.S. dollars. In addition, the deposits of Sudanese Government Bank 1 at BNPP Geneva represented about 50% of Sudan's foreign currency assets during this time period. | Admit the paragraph in full. The paragraph in paragraph is a relevant admission relating to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration). The paragraph is also relevant to show "conscious assistance" under Swiss Article 50. The Bank's redactions ignore this Court's ruling that U.S. sanctions are at issue and seek to delete key details about the scope of the Bank's support of the Government of Sudan. The scope of that assistance is relevant to both "conscious assistance" and causation under Swiss Article 50. Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between | Admit paragraph, subject to the below redactions. The paragraph contains statements describing economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. Redact: "BNPP's Critical Role in the Sudanese Economy and in Providing Sudan Access to the U.S. Financial System" ", which, as noted above, was designated by OFAC as an SDN." ", shortly after the imposition of U.S. sanctions against Sudan," "As a result, all or nearly all major Sudanese banks had U.S. dollar accounts with BNPP Geneva. In addition to processing U.S. dollar transactions," "Over 90% of these letters of credit were denominated in U.S. dollars." |

14

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

the Government of Sudan's illicit
acts and its own through proposed
jury instructions.

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 20. BNPP's central role in providing Sudanese financial institutions access to the U.S. financial system, despite the Government of Sudan's role in committing human rights abuses, was recognized by BNPP employees. For example, in 2004, a manager at BNPP Geneva described in an email the political environment in Sudan as "dominated by the Darfur crisis" and called it a "humanitarian catastrophe." In April 2006, a senior BNPP Paris compliance officer stated in a memorandum that "[t]he growth of revenue from oil is unlikely to help end the conflict [in Darfur], and it is probable that Sudan will remain torn up by insurrections and resulting repressive measures for a long time." In March 2007, another senior BNPP Paris compliance officer reminded other high-level BNPP compliance and legal employees that certain Sudanese banks with which BNPP dealt "play a pivotal part in the support of the Sudanese government which ... has hosted Osama Bin Laden and refuses the United Nations intervention in Darfur." A few months later, in May 2007, a BNPP Paris executive with responsibilities for compliance across all BNPP branches warned in a memorandum that: "In a context where the International Community puts pressure to bring an end to the dramatic situation in Darfur, no one would understand why BNP Paribas persists [in Sudan] which could be interpreted as supporting the leaders in place." | Admit paragraph with the redactions identified below. The Court has already identified Paragraph 20 as an illustrative example of a relevant admission that "show[s] the purpose of the Plaintiffs and are unfairly prejudicial. The paragraph includes general characterizations of the GOS as having committed human rights abuses unrelated to the individual plaintiffs that are not relevant to the Swiss tort and unfairly prejudice the question of BNPP's knowledge. This risks juror confusion as it implies knowledge of the illicit acts that injured Plaintiffs—in the sense required by Swiss tort law—where none exists.

Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements.

Redact:
"BNPP's central role in providing Sudanese financial institutions | Given this ruling, the Bank's other redactions make no sense.

Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.

Redact:
"supporting terrorism and"

"has hosted Osama Bin Laden and" |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| | access to the U.S. financial system, despite the Government of Sudan's role in supporting terrorism and committing human rights abuses, was recognized by BNPP employees. For example," |
| | "has hosted Osama Bin Laden and" |

17

*Kashef et al. v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| *BNPP's Methods of Evading US Sanctions Against Sudan* | | |
| 21. Financial institutions in the United States that process U.S. dollar transactions from overseas, including BNPP New York, utilize sophisticated filters designed to identify and block any transactions involving Sanctioned Entities. The filters generally work by screening wire transfer messages for any reference to (a) countries under U.S. embargo such as Sudan, ~~Iran and Cuba~~; (b) all entities and individuals identified by OFAC as SDNs; and (c) any words or numbers in wire messages that would indicate that the transaction being processed through the United States involved Sanctioned Entities. | Admit the paragraph subject to the redactions identified below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration). Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. Redact: <br> • "~~, Iran and Cuba~~" | Redact the paragraph in full, including the section header. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. |

18

*Kashef et al. v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 22. In order to avoid having transactions identified and blocked by filters at banks in the United States, beginning at least as early as 2002 and continuing through 2007, BNPP agreed with Sanctioned Entities in Sudan not to mention their names in U.S. dollar transactions processed through the United States. For example, when conducting U.S. dollar business with BNPP, the Sanctioned Entities frequently instructed BNPP not to mention the names of the Sanctioned Entities in wire transfer messages, which BNPP then agreed to do. In many instances, the instructions specifically referenced the U.S. embargo. For example: "due to the US embargo on Sudan, please [debit our U.S. dollar account] without mentioning our name in your payment order" and "transfer the sum of USD 900,000 ... without mentioning our name -repeat without mentioning our name under swift confirmation to US." "Such payment messages frequently bore stamps from BNPP employees stating: "ATTENTION: US EMBARGO." At times, BNPP front office employees directed BNPP back office employees processing transactions with Sudanese Sanctioned Entities to omit any reference to Sudan: "! Payment in $ to [French Bank ] without mentioning Sudan to N.Y.!!!" Indeed, until 2004, BNPP's internally published policy for processing U.S. dollar payments involving Sudan stated: "Do not list in any case the name of Sudanese entities on messages transmitted to American banks or to foreign banks installed in the U.S." | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the alleged illicit acts by the GOS sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al. v. BNP Paribas SA et al.,* No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 23. In addition to omitting references to Sudan in U.S. dollar payment messages, another method used by BNPP Geneva to evade the U.S. embargo against Sudan involved, as noted above, the use of unaffiliated, non-Sudanese, non-U.S. banks (referred to internally at BNPP Geneva as "satellite banks") to help disguise the true nature of transactions with sanctioned Sudanese banks. BNPP Geneva began its relationship with many of these satellite banks shortly after the imposition of U.S. sanctions against Sudan in 1997, and the vast majority of the satellite banks' business with BNPP Geneva involved facilitating U.S. dollar payments for sanctioned Sudanese banks. | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. |

| | | |
|---|---|---|
| 24. Specifically, BNPP Geneva utilized the satellite banks in a two-step process designed to enable BNPP Geneva's Sudanese clients to evade U.S. sanctions. In the first step, a Sudanese bank seeking to move U.S. dollars out of Sudan transferred funds internally within BNPP Geneva to a BNPP Geneva account specifically maintained by a satellite bank to facilitate U.S. dollar transfers from Sudan. In the second step, the satellite bank transferred the money to the Sudanese bank's intended beneficiary through a U.S. bank without reference to the Sudanese bank. As a result, to the U.S. bank, it appeared that the transaction was coming from the satellite bank rather than a Sudanese bank. A similar process enabled sanctioned Sudanese banks to receive U.S. dollars without being detected: the originator of the transaction sent a wire transfer through the United States to the satellite bank's account at BNPP Geneva without reference to Sudan, and the satellite bank then transferred the money to the Sudanese bank via internal transfer at BNPP Geneva. Moreover, in order to further disguise the true nature of the satellite bank transactions, employees at BNPP Geneva frequently worked with the satellite banks to wait between one and two days after the internal transfer before making a dollar-for-dollar, transaction-by-transaction clear of funds through the United States, artificially delinking the U.S. transfer of funds from the prior transfer involving the satellite banks so that financial institutions in the United States and U.S. authorities would be unable to link the payments to the involved Sanctioned Entity. In fact, BNPP employees internally proposed getting the satellite banks "accustom[ed] ... to spacing out the gap between covers they execute with their U.S. correspondents to the extent possible." Ultimately, 13NPP Geneva successfully used the | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration). With regards to the Bank's comment about "selective descriptions," the Bank stipulated to the Stipulated Statement of Facts and agreed to the inclusion of language and descriptions in every instance.<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>The paragraph also includes selective descriptions or characterizations that are unduly prejudicial.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. |

*Kashef et al. v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| satellite bank structure - which had no business purpose other than to help BNPP's Sudanese clients evade the U.S. embargo - to process thousands of U.S. dollar transactions, worth billions of dollars in total, for Sudanese Sanctioned Entities without having the transactions identified and blocked in the United States. | The originals documents are available and provide necessary context for the quoted statements. |

22

Case 1:16-cv-03228-AKH-JW    Document 715-2    Filed 06/09/25    Page 24 of 52

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 25. The use of satellite banks to facilitate U.S. dollar transactions with Sudanese Sanctioned Entities was widely known within BNPP Geneva. ~~[redacted text] ... employee of satellite bank requested "to open an account at BNP Paribas Geneva[a] to be used mainly for the USD Transfers to and from Sudanese Banks." This e-mail was forwarded to another BNPP Geneva employee who commented that "we have agreed this satellite bank[] for a long time to open a VOSTRO account to facilitate the transactions which the institution has with countries with which we are not active."~~ | Admit the paragraph subject to the redactions below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).

Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.

Redact:
For example, in a 2004 email to a BNPP Geneva employee, a satellite bank requested "to open an account at BNP Paribas Geneva[a] to be used mainly for the USD Transfers to and from Sudanese Banks." This e-mail | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.

Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

was forwarded to another BNPP
Geneva employee who
recommended opening the
account, as "the opening of this
account fits in the framework of
our activity in Sudan."
Referencing this exchange,
another BNPP Geneva employee
commented that: "we have
advised [this satellite bank] for a
long time to open a VOSTRO
account to facilitate the
transactions which this institution
has with countries with which we
are also active."

24

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 26. BNPP's compliance personnel were also aware of BNPP's use of satellite banks to process transactions with Sanctioned Entities. ~~For example, a 2005 compliance report described the scheme as follows: The main activity of certain BNPP customers is to domicile cash flows in USD on our books on behalf of Sudanese banks. These arrangements were put in place in the context of the US embargo against Sudan. The accounts of these banks were therefore opened with a view to ... facilitating transfers of funds in USD for Sudanese banks. This consists ... forms of these banks. The funds in question are either transferred, on the same day, or at a later D... to the [satellite banks] (or [US correspondent banks])~~ | Admit the paragraph subject to the redactions below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).

Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.

Redact:
For example, a 2005 compliance report described the scheme as follows: The main activity of certain BNPP customers is to domicile cash flows in USD on our books on behalf of Sudanese banks. These arrangements were | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.

Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

put in place in the context of the U.S. embargo against Sudan. .... The accounts of these banks were therefore opened with the aim of "facilitating transfers of funds in USD for Sudanese banks." This comment was made on the account opening application forms of these banks. The funds in question were then transferred, on the same day, or at the latest D+ 1 or 2 by the [satellite banks] to [U.S. correspondent banks].

26

Case 1:16-cv-03228-AKH-JW    Document 715-2    Filed 06/09/25    Page 28 of 52

*Kashef et al v. BNP Paribas SA et al.,* No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

*Involvement of Senior Officials at BNPP Geneva and BNPP Paris*

27. BNPP Geneva's methods of evading U.S. sanctions against Sudan- including the omission of references to Sudan from wire messages involving Sanctioned Entities and the use of satellite banks to process transactions for sanctioned Sudanese banks - were known to and condoned by senior compliance and business managers at both BNPP Geneva and BNPP Paris. As early as 2003, for example, after a visit to Geneva, a senior BNPP Paris compliance officer conveyed to BNPP CIB executives in Paris that BNPP Geneva was routinely employing a cover payment method that omitted the names of Sanctioned Entities from U.S. dollar payment messages to prevent the transactions from being discovered in the United States. ~~The senior compliance officer observed that "in practice, in all kinds of ways, the headers of messages seem to have been amended in Geneva."~~ In fact, an analysis of the payment messages during the relevant time period shows that BNPP Geneva processed payments involving Sanctioned Entities differently than those involving non-sanctioned entities in order to hide the Sanctioned Entity's identity.

| | | |
|---|---|---|
| Admit the paragraph subject to the redactions identified below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration). The paragraph is also a relevant admission relating to the knowledge of the Bank's leadership of the use of these methods to violate sanctions. | Redact the paragraph in full, including the section header. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. | Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |
| Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | | |
| **Redact:** The senior compliance officer observed that "in practice, in all | | |

27

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

| | | |
|---|---|---|
| 28. In 2004, the Federal Reserve Bank of New York ("FRB-NY") and the New York State Banking Department (now known as the New York State Department of Financial Services) ("DFS") identified systemic failures in BNPP's compliance with the Bank Secrecy Act, and specifically highlighted deficiencies in BNPP New York's monitoring of transactions with overseas clients, including the processing of U.S. dollar transactions for overseas clients. In response to the regulatory inquiries, in September 2004, BNPP agreed to enter into a Memorandum of Understanding (the "MOU") with the FRB-NY and DFS that required, among other things, that BNPP New York improve its systems for compliance with U.S. bank secrecy and sanctions laws. | kinds of ways, the headers of messages seem to have been amended in Geneva."<br><br>Redact the paragraph in full. | Redact the paragraph in full. The paragraph concerns economic procedures that are irrelevant to the alleged illicit acts by the Government of Sudan and its affiliates. |

28

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 29. ~~Shortly after BNPP entered into the MOU~~ **In 2004,** two senior BNPP Paris executives and BNPP Geneva executives met in Geneva to discuss how "embargoes against sensitive countries (Sudan, ~~Libya, Syria~~)" affected BNPP's business and operational issues with respect to sensitive countries. At that meeting, the executives decided to switch to an unaffiliated bank in the United States ("U.S. Bank I") to process payments for countries subject to U.S. sanctions. Following that meeting, BNPP Geneva employees were instructed to have U.S. dollar payments involving Sanctioned Entities cleared through U.S. Bank 1 instead of BNPP New York. | Admit the paragraph subject to the redactions identified below, procedures that are irrelevant to account for the elimination of references to the MOU. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.<br><br>Redact:<br>• Redact "Shortly after BNPP entered into the MOU" and replace with "[In 2004,]"<br>• ", Libya, Syria ..." | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

Case 1:16-cv-03228-AKH-JW    Document 715-2    Filed 06/09/25    Page 31 of 52

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 30. The decision to switch dollar clearing involving Sanctioned Entities to U.S. Bank 1 was at least in part an attempt to decrease BNPP New York's exposure to enforcement actions by U.S. authorities, as indicated in meeting minutes outlining the new policy for U.S. dollar payments involving sanctioned countries: "the cover payments are to be executed via [U.S. Bank 1], such following problems BNP NY encountered with the U.S. authorities." In implementing the switch to U.S. Bank 1, BNPP relied on incorrect advice that outside counsel ("U.S. Law Firm 1") provided, which suggested that BNPP may have been able to protect itself from being penalized by U.S. authorities if it conducted these prohibited transactions through another U.S. bank. This was memorialized in a legal memorandum in October 2004. From 2004 through 2007, the vast majority of BNPP Geneva's transactions involving Sudanese Sanctioned Entities were cleared through U.S. Bank 1 using a payment method that concealed from U.S. Bank 1 the involvement of Sanctioned Entities in the transactions. Thus, as evidenced in a January 2006 email, the problem" of clearing U.S. dollar transactions involving Sanctioned Entities was "in some ways shifted onto [U.S. Bank 1] Switzerland, which has the advantage of being a U.S. Bank." | Redact the paragraph in full.<br><br>Whether the Bank received certain legal advice is not probative and would mislead the jury for three reasons:<br><br>(1) The Bank did not assert an advice of counsel affirmative defense in its answer (ECF No. 248), as required by FRCP 8(c); has not produced all documents subject to the attorney client privilege; and has not made its attorneys available for deposition (all of which would be required to maintain this defense).<br><br>(2) Whether the Bank received incorrect legal advice is irrelevant. Mistake of the law is no defense to the Plaintiffs' claims because as Judge Nathan held, Article 50 does not require that the accomplice's participation be "willful" — "negligence is sufficient." ECF No. 193 at 8.<br><br>(3) Allowing this defense would call into question whether Cleary Gottlieb Steen & Hamilton LLP (the firm that provided the legal advice) can continue to represent the Bank in this action. | Admit the paragraph, subject to the below redactions and revisions in full. The first sentence of the paragraph is irrelevant to the elements of the Swiss tort and selectively characterizes BNPP's motivations in a way that is unfairly prejudicial.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>BNPP is not asserting an advice of counsel defense. The remainder of the paragraph is, rather, probative of BNPP's state of mind and is necessary to provide context and background for the admissions contained throughout this document. The identity of U.S. Law Firm 1 is not relevant and should not be admitted.<br><br>Redactions: |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| "The decision to switch dollar clearing involving Sanctioned Entities to U.S. Bank 1 was at least in part an attempt to decrease BNPP New York's exposure to enforcement actions by U.S. authorities, as indicated in meeting minutes outlining the new policy for U.S. dollar payments involving sanctioned countries: "the cover payments are to be executed via [U.S. Bank 1], such following problems BNP NY encountered with the U.S. authorities." | Revisions:<br><br>Every instance of the words "sanctioned entity" or "Sanctioned Entities" should be redacted and replaced with the word "Sudan." |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 31. In the months and years that followed the decision to use U.S. Bank 1 as BNP Geneva's principal means for clearing U.S. dollar transactions with Sanctioned Entities, senior BNPP compliance and legal personnel repeatedly recognized BNPP's role in circumventing U.S. sanctions against Sudan, and yet allowed these transactions to continue in part because of their importance to BNPP's business relationships and "goodwill" in Sudan. [~~In July 2005, for example, a BNPP Geneva employee~~] ~~noted how high-level business managers at BNPP were aware of and supported the transactions involving Sudan: the general management of CPB has encouraged us to follow this [the satellite bank] model.… The working of this whole mechanism coordinated with CIB/ECEP Compliance.…~~ ~~I consider it most desirable to maintain these accounts which support our vision and our position regarding our good interests in Sudan.~~ ~~In late 2005, a Paris compliance~~ ~~officer described the thriving illegal BNPP Geneva business with Sudan as seemed necessary to us to harmonize the practices used inside of Geneva and Paris, particularly given BNPP Geneva's exposure to embargo-risk-countries due to: The privileged and historical relationship maintained with institutions in complicated countries, where some groups in particular are circumventing embargoes of some groups, in respect of certain trade embargoes (Sudan). The present US groups.~~ ~~With respect to the U.S. embargo of Sudan, the Paris compliance officer concluded that a client we have, however, long-since made aware of the embargoes and are supposed to turn to Compliance when ~~[~~they have a problem of interpretation.~~]~~~~ | Admit the paragraph subject to the redactions below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention," Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.<br><br>**Redact:**<br>In July 2005, for example, a BNPP Geneva employee noted | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also characterizes or otherwise describes BNPP's motivations for violating U.S. sanctions that are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

Page 33 of 52

*Kashef et al. v. BNP Paribas SA et al.*, No. 16-cv-03228
Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

how high-level business
managers at BNPP were aware of
and supported the transactions
involving Sudan: "the general
management of CIB has
encouraged us to follow this [the
satellite bank] model. ... The
working of this whole mechanism
is coordinated with CIB/ECEP
Compliance. ... I consider it
most advisable to maintain these
accounts which support our
vision and our position regarding
our goodwill in the Sudan." In
late 2005, a Paris compliance
officer drafted a memo that
highlighted BNPP Geneva's
business with Sudan: "It seemed
necessary to us to harmonize the
practices and circuits of Geneva
and Paris, particularly given
[BNPP Geneva's] exposure to
embargoes, in particular due to:
The privileged and historical
relationship maintained with
institutions in countries under
total US trade embargo (Sudan),
The practices for circumventing
embargoes of some groups, in
particular US groups." With
respect to the U.S. embargo of
Sudan, the Paris compliance
officer concluded that "Client

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| |
|---|
| managers have, however, been made aware of the embargoes and are supposed to turn to Compliance when they have a problem of interpretation." |

34

### Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228
#### Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

| | | |
|---|---|---|
| 32. On certain occasions, senior compliance and legal personnel expressed concerns about BNPP's continued business with Sudanese Sanctioned Entities, but were rebuffed. In August 2005, for example, a senior compliance officer at BNPP Geneva expressed concern about the use of satellite banks and emphasized the unusual nature of these operations given the fact that BNPP Geneva was not typically in the business of providing correspondent banking services. In an email sent to legal, business and compliance personnel at BNPP Geneva, the senior compliance officer warned: "As I understand it, we have a number of Arab Banks (nine identified) on our books that only carry out clearing transactions for Sudanese banks in dollars. . . . This practice effectively means that we are circumventing the US embargo on transactions in USD by Sudan." In response to another e-mail voicing the same concern, a high-level Geneva employee explained that these transactions had the "full support" of management at BNPP Paris:<br><br>I see that certain questions are coming back to the surface on the way in which we are processing these transactions. I remember when you ... made me meet the Minister of Finance of Sudan and the President of the [Sudanese Government Bank 1], it had been specified that all business activity - meaning in passing - the Minister and the President had shown themselves to be very satisfied - and it had received the full support of our General Management in Paris. | Admit the paragraph subject to the redactions below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue or the bank's knowledge and intention," Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration). With regard to the Bank's comment about "selective descriptions," the Bank stipulated to the Stipulated Statement of Facts and agreed to the inclusion of language and descriptions in every instance. | Redact the paragraph in full. The paragraph characterizes or otherwise describes BNPP's awareness of U.S. sanctions violations that have no connection to any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>The paragraph also includes selective descriptions or characterizations that are unduly prejudicial.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al. v. BNP Paribas SA et al.,* No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 33. In September 2005, senior compliance officers at BNPP Geneva arranged a meeting of BNPP executives "to express, to the highest level of the bank, the reservations of the Swiss Compliance office concerning the transactions executed with and for Sudanese customers." The meeting was attended by several senior BNPP Paris and Geneva executives. At the meeting, a senior BNPP Paris executive dismissed the concerns of the compliance officials and requested that no minutes of the meeting be taken. | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention," Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration). With regard to the Bank's comment about "selective descriptions," the Bank stipulated to the Stipulated Statement of Facts and agreed to the inclusion of language and descriptions in every instance. | Redact the paragraph in full. The paragraph characterizes or otherwise describes BNPP's awareness of U.S. sanctions violations that have no connection to any element of the Swiss tort at issue.<br><br>Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>The paragraph also includes selective descriptions or characterizations that are unduly prejudicial.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 34. In interviews with outside counsel for BNPP, several BNPP employees who were involved in or had knowledge of BNPP's business with Sudan claimed that they did not believe that U.S. sanctions laws applied or could be applied to certain foreign banks, particularly if transactions involving sanctioned Entities were processed through an unaffiliated U.S. bank, as opposed to BNPP New York. This view of the reach of U.S. sanctions, while incorrect, was supported in part by a legal memorandum from U.S. Law Firm 1 received by BNPP in October 2004 regarding the general applicability of U.S. sanctions (the "2004 Legal Opinion"). The 2004 Legal Opinion made it clear that U.S. sanctions laws did, in fact, apply to all U.S. dollar transactions cleared in the United States, including those initiated by foreign banks. However, the opinion also suggested that U.S. authorities might not be able to penalize BNPP itself for participating in prohibited transactions if no U.S. branch of BNPP was involved. Specifically, the opinion stated that "transactions between non-U.S. parties cleared by U.S. banking institutions (including BNPP's New York branch) are subject to the provisions in OFAC sanctions regimes against Cuba, Iran, Syria and Sudan, and to penalties for any violations of these regulations." However, "[i]f a non-U.S. BNPP entity were to initiate a U.S. dollar payment to a payee domiciled in Cuba, Sudan or Iran through a U.S. bank not affiliated with BNPP, U.S. sanctions should not apply to BNPP (assuming no involvement by any U.S. person of BNPP), but U.S. sanctions would call for the payment to be frozen or blocked by the U.S. bank." Senior legal and business officials at BNPP have claimed that, pursuant to this legal opinion, they believed that BNPP would not face penalties under U.S. sanctions laws so long as transactions with | Redact the paragraph in full.

Whether the Bank received certain legal advice is not probative and would mislead the jury for three reasons:

(1) The Bank did not assert an advice of counsel affirmative defense in its answer (ECF No. 248), as required by FRCP 8(c); has not produced all documents subject to the attorney client privilege; and has not made its attorneys available for deposition (all of which would be required to maintain this defense).

(2) Whether the Bank received incorrect legal advice is irrelevant. Mistake of the law is no defense to the Plaintiffs' claims because as Judge Nathan held, Article 50 does not require that the accomplice's participation be "willful"— "negligence is sufficient." ECF No. 193 at 8.

(3) Allowing this defense would call into question whether Cleary Gottlieb Steen & Hamilton LLP (the firm that provided the legal advice) can continue to represent the Bank in this action.

*[Continued on next page]* | Admit the paragraph in full.

BNPP is not asserting an advice of counsel defense. The paragraph is, rather, probative of BNPP's state of mind and is necessary to provide context and background for the admissions contained throughout this document. The identity of U.S. Law Firm 1 is not relevant and should not be admitted. |

37

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| Sanctioned Entities cleared through U.S. Bank 1 or another unaffiliated bank, and not through BNPP New York. | In addition, the description of what "Senior legal and business officials at BNPP" have "claimed" is hearsay outside any exception. |
| | |

38

### Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228
### Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

| | | |
|---|---|---|
| 35. However, to the extent BNPP employees relied on this 2004 legal opinion to justify BNPP's conduct regarding Sudan, by the summer of 2006, it became clear that BNPP could not, in fact, escape the reach of U.S. sanctions simply by having transactions cleared through an unaffiliated U.S. bank. In May 2006, BNPP received an additional legal opinion from U.S. law firm ("U.S. Law Firm 2"), which specifically warned BNPP that if the bank were to omit relevant identifying information in U.S. dollar payments sent to the United States, with the objective of avoiding U.S. economic sanctions, BNPP could be subjecting itself to various U.S. criminal laws. In March and June 2006, BNPP received two additional legal opinions from U.S. Law Firm 1, which informed BNPP that (a) U.S. sanctions could apply to BNPP even when the transactions were processed by U.S. Bank 1 instead of BNPP New York, and (b) U.S. authorities had become especially sensitive to the use of "cover payments" by foreign banks that omitted underlying descriptive details about the nature of transactions, and advised BNPP to "ensure that they have adequate procedures in place to guard against any abuses of cover payment messages that could cause their U.S. operations to engage in prohibited transactions under U.S. sanctions." In July 2006, BNPP issued a policy across all its subsidiaries and branches that acknowledged the applicability of U.S. sanctions to non-U.S. banks. The policy stated that "if a transaction is denominated in USD, financial institutions outside the United States must take American sanctions into account when processing their transactions." | Redact the paragraph in full. Whether the Bank received certain legal advice is not probative and would mislead the jury for three reasons: (1) The Bank did not assert an advice of counsel affirmative defense in its answer (ECF No. 248), as required by FRCP 8(c); has not produced all documents subject to the attorney client privilege; and has not made its attorneys available for deposition (all of which would be required to maintain this defense). (2) Whether the Bank received incorrect legal advice is irrelevant. Mistake of the law is no defense to the Plaintiffs' claims because as Judge Nathan held, Article 50 does not require that the accomplice's participation be "willful" — "negligence is sufficient." ECF No. 193 at 8. (3) Allowing this defense would call into question whether Cleary Gottlieb Steen & Hamilton LLP (the firm that provided the legal advice) can continue to represent the Bank in this action. | Admit the paragraph, subject to the below redactions and revisions. The first sentence of the paragraph selectively characterizes BNPP's actions in a way that is unfairly prejudicial to BNPP and irrelevant to the elements of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. BNPP is not asserting an advice of counsel defense. The remainder of the paragraph is, rather, probative of BNPP's state of mind and is necessary to provide context and background for the admissions contained throughout this document. The identity of U.S. Law Firm 1 is not relevant and should not be admitted. |
| | Redact: | Redact: |

*Kashef et al. v. BNP Paribas SA et al.*, No. 16-cv-03228
Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

"However, to the extent BNPP employees relied on this 2004 legal opinion to justify BNPP's conduct regarding Sudan, by the summer of 2006, it became clear that BNPP could not, in fact, escape the reach of U.S. sanctions simply by having transactions cleared through an unaffiliated U.S. bank."

40

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 38. In November 2006, three BNPP Geneva employees drafted a memorandum that explained: "the 'clearing' activity of USD correspondents ... is of real significance in relation to our activity in Sudan. . . . The fundamental importance of these [satellite bank] accounts lies in the fact that they allow us to receive incoming funds from Sudanese banks as cover for their commercial transactions on our books .... Moreover ... we maintain commercial relations with these [satellite] banks which offer significant commercial potential, not only in connection with Sudan." In February 2007, a senior BNPP Paris compliance officer specifically recognized the significance of the Sudanese business for BNPP Geneva: | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention," Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also includes gratuitous statements about banking structures that do not connect to any specific injury alleged by any of the Plaintiffs. These are not probative of any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

41

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 39. At the same time that compliance and business personnel within BNP were emphasizing the importance of the Sudanese business to BNPP Geneva's operations, certain senior compliance officers at BNPP Paris made appeals to BNPP Geneva to discontinue the U.S. dollar business with Sudan. In February 2007, for example, a senior BNPP Paris compliance officer told business managers at BNPP Geneva that U.S. dollar transactions cleared through unaffiliated U.S. banks could be viewed as a "serious breach." Similarly a BNPP Geneva compliance officer wrote to BNPP Paris and BNPP Geneva executives that the use of U.S. Bank 1 to process transactions with Sanctioned Entities could be interpreted as a "grave violation." Despite these warnings, the transactions continued. | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention," Tr. 30:5-7 (Paragraph 16 Illustration), and to enhance the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration).

Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both "conscious assistance" and causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions. | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also characterizes or otherwise describes BNPP's awareness of U.S. sanctions violations that have no connection to any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.

Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 40. In May 2007, senior officials at OFAC met with executives at BNPP New York and expressed concern that BNPP Geneva was conducting U.S. dollar business with Sudan in violation of U.S. sanctions. Shortly after this meeting, OFAC requested that BNPP conduct an internal investigation into transactions with Sudan initiated by BNPP Geneva that may have violated U.S. sanctions, and asked that BNPP report its findings to OFAC. It was not until this intervention by OFAC that BNPP made the decision, in June 2007, to stop its U.S. dollar business with Sudan. | Admit the paragraph in full. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration). This paragraph is also relevant to expert witness Cameron Hudson's testimony that the criminal investigation of BNPP—which stemmed the flow of dollars—helped precipitate the downfall of the Bashir regime, proving that the Bank's conscious assistance of that regime caused the genocide. | Redact the paragraph in full. The paragraph contains statements about U.S. regulatory inquiries and characterizations of BNPP's conduct resulting from these investigations. These issues have no connection to any element of the Swiss tort at issue. The paragraph also includes reference to external investigations into U.S. sanctions violations that may cause juror confusion as to what law applies. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion referenced above. Furthermore, the propriety of Cameron Hudson's testimony is a separate matter that will be addressed in BNPP's motion regarding Plaintiffs' proffered experts. |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 41. BNPP's willingness to engage in U.S. dollar transactions involving Sudan significantly undermined the U.S. embargo and provided the Sudanese government and Sudanese banks with access to the U.S. financial system that they otherwise would not have had. Even after July 2006, when it became clear to BNPP that its dollar transactions with Sudan [redacted] [redacted] conduct, BNPP continued to process U.S. dollar transactions with Sudanese Sanctioned Entities for nearly another year. Only after OFAC launched an inquiry into the Sudanese transactions in the spring of 2007 did BNPP cease this activity. From July 2006 until BNPP ended its Sudanese business in June 2007, BNPP knowingly, intentionally and willfully processed a total of approximately $6.4 billion in illicit U.S. dollar transactions involving Sudan. | Admit the paragraph subject to the redactions identified below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue [of] the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration). This paragraph is also relevant to expert witness Cameron Hudson's testimony that the criminal investigation of BNPP—which stemmed the flow of dollars—helped precipitate the downfall of the Bashir regime, proving that the Bank's conscious assistance of that regime caused the genocide.

To the extent U.S. criminal law imposes a different scienter requirement than Swiss Article 50(1), the U.S. requirement of "knowing and willful" conduct | Redact the paragraph in full. The paragraph relates to the *mens rea* element of the IEEPA violation, which is legally and factually distinct from the *mens rea* element of Swiss tort law. The paragraph also contains statements about U.S. regulatory inquiries and characterizations of BNPP's conduct resulting from these investigations. These issues have no connection to any element of the Swiss tort at issue. The paragraph also includes reference to external investigations into U.S. sanctions violations that may cause juror confusion as to what law applies.

Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.

The scienter requirements of U.S. criminal law and Swiss Article 50(1) are distinct. Conflating inapposite U.S. and Swiss legal |
| | | *[Continued on next page]* |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | |
|---|---|
| exceeds the burden under Swiss law.<br><br>Redact:<br>• "; when it became clear to BNPP that its U.S. dollar transactions with Sudanese Sanctioned Entities were illegal, and that U.S. law did in fact apply to BNPP's conduct," | standards will inevitably confuse the jury.<br><br>Furthermore, the propriety of Cameron Hudson's testimony is a separate matter that will be addressed in BNPP's motion regarding Plaintiffs' proffered experts. |

45

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 63. In January 2006, a compliance officer at BNPP Paris analyzed BNPP's compliance with U.S. sanctions ~~in light of the ABN AMRO settlement~~ and wrote the following to a group of senior BNPP Paris compliance and business personnel:<br><br>Does ECEP run the risk of an allegation for circumventing the embargo? A practice does exist which consists in omitting the Beneficiaries'/Ordering party's contact information for USD transactions regarding clients from countries that are under U.S. embargo: Sudan, ~~Cuba, Iran~~. This avoids putting BNPP NY in a position to uncover these transactions, to block them, and to submit reports to the regulator. This monitoring is practiced especially by the Operational Center in Paris, but it also exists in other centers. However, the fact that SWIFT messages are not referencing the final Beneficiary or the Initiating Party for the movement of funds does not protect the bank totally, because the investigative capacities of U.S. banks ... are more and more sophisticated, ~~Concerning Cuba, it is true that we are not completely in line with the U.S. regulations~~.<br><br>(Emphasis added). Also in January 2006, an ECEP employee at BNPP Paris asked a compliance officer at BNPP Paris, "when we lend money to the Cubans, the loans are generally made out in Dollars, except in a few exceptional cases ... could we be reprimanded, and if so, based on what?" The compliance officer responded to the | Admit the paragraph subject to the redactions identified below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention." Tr. 30:5-7 (Paragraph 16 Illustration).<br><br>Swiss law neither requires nor precludes the consideration of an accomplice's illicit acts. The fact that the Bank engaged in illicit, prohibited transactions—in violation of sanctions aimed at preventing human rights abuses in Sudan—is relevant to both causation. The Bank can address any potential confusion between the Government of Sudan's illicit acts and its own through proposed jury instructions.<br><br>Redact:<br>• "in light of the ABN AMRO settlement"<br>• ", Cuba, Iran"<br>• "Concerning Cuba - It is true that we are not completely in | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. These are not probative of any element of the Swiss tort at issue. The paragraph also characterizes or otherwise describes BNPP's awareness of U.S. sanctions violations that have no connection to any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

46

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228
Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

47

| | |
|---|---|
| ECEP employee and several other senior ECEP employees at BNPP Paris with a clear warning:<br><br>These processing transactions obliges us to obscure information regarding the USD (BNPP NY) Clearer, and it is a position which BNPP is not comfortable with and which, of course, offers a risk to its image and, potentially, a risk for reprisals from US authorities if this behavior was discovered, even if such could not occur directly.... In a way, a risk which we thought was non-existent is becoming a little less so. | line with the text of the US. regulations."<br><br>"(Emphasis added). Also in January 2006, an ECEP employee at BNPP Paris asked a compliance officer at BNPP Paris, "when we lend money to the Cubans, the loans are generally made out in Dollars, except in a few exceptional cases. Could we be reprimanded, and if so, based on what?" The compliance officer responded to the ECEP employee and several other senior ECEP employees at BNPP Paris with a clear warning:"<br><br>"These processing transactions obliges us to obscure information regarding the USD (BNPP NY) Clearer, and it is a position which BNPP is not comfortable with, and which, of course, offers a risk to its image and, potentially, a risk for reprisals from US authorities if this behavior was discovered, even if such could not occur directly .... In a way, a risk which we thought was non- |

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| 64. In May 2006, the executive at BNPP New York responsible for ethics and compliance expressed his concern about the use of cover payments to conceal the involvement of Sanctioned Entities in transactions processed by BNPP New York. In response, a CIB Paris compliance officer wrote an e-mail to several senior BNPP Paris compliance officers that stated:<br><br>If [the New York head of ethics and compliance] only offers the choice between abandoning the [cover payment] for movements in favor of clientele or promising BNPP NY we do not wire transfer in USD concerning ~~Cuba, Iran~~, Sudan ~~or Syria~~, I only see the solution of going through another bank than BNPP NY for all transactions to these destinations. The other, less gratifying alternatives are to stop working in USD in these zones or to disguise the reality with the no win situation between telling stories to BNPP NY or to [U.S. Bank 1]. | existent is becoming a little less so."<br><br>Admit the paragraph subject to the redactions identified below. The paragraph is a relevant admission relating to "the methods used by the bank to try to circumvent the sanctions [which are] relevant to the issue of the bank's knowledge and intention," Tr. 30:5-7 (Paragraph 16 Illustration), and to the "purpose of the violations to enhance the profit and the power of the bank in relationship to the government of Sudan." Tr. 30:8-10 (Paragraph 37 Illustration).<br><br>Redact:<br>• "Cuba, Iran,"<br>• "or Syria," | Redact the paragraph in full. The paragraph describes economic procedures that are irrelevant to the alleged illicit acts by the GOS and its affiliates. The paragraph also characterizes or otherwise describes BNPP's awareness of U.S. sanctions violations that have no connection to any element of the Swiss tort at issue. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.<br><br>Furthermore, to the extent the quoted statements are admissible, they should be introduced through the documents in which they originally appear and not through the Statement of Facts. The originals documents are available and provide necessary context for the quoted statements. |

*Kashef et al v. BNP Paribas SA et al., No. 16-cv-03228*
Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts

| BNPP's Failure To Timely Provide Relevant Information to the Government | | |
|---|---|---|
| 71. BNPP was on notice of law enforcement concerns regarding its potential sanctions-violative conduct in as early as December 2009, when it was contacted by the New York County District Attorney's Office. In a subsequent meeting, in early 2010 between BNPP and the U.S. Department of Justice and the New York County District Attorney's Office, BNPP agreed to conduct an internal investigation into business conducted with countries subject to U.S. sanctions at a number of its subsidiaries and branches and covering the time period January 1, 2002 through December 31, 2009, including in Paris, London, Milan, Rome and Geneva. The review was expanded after BNPP discovered instances in which its illicit conduct continued past the original agreed-upon review period. | Admit the paragraph in full. It is relevant to the opinion of expert witness Timothy Fogarty, who will testify about the findings from his transaction reviews. | Redact the paragraph in full, including the section heading. The paragraph describes U.S. regulatory inquiries and characterizations of BNPP's conduct resulting from these investigations. These issues have no connection to any element of the Swiss tort at issue. The paragraph also includes reference to external investigations into U.S. sanctions violations that may cause juror confusion as to what law applies.

Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. |

*Kashef et al v. BNP Paribas SA et al.,* No. 16-cv-03228
**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

Dated: New York, New York
June 30, 2014

PREET BHARARA
United States Attorney

LESLIE CALDWELL
Assistant Attorney General
Criminal Division

JAIKUMAR RAMASWAMY
Chief, Asset Forfeiture and Money
Laundering Section

By: [Signature of Andrew D. Goldstein]

Andrew D. Goldstein
Martin S. Bell
Christine I. Magdo
Micah W. J. Smith
Assistant United States Attorneys
(212) 637-2200

By: [Signature of Craig Timm]
Craig Timm
Jennifer E. Ambuehl
Trial Attorneys
Asset Forfeiture and Money Laundering
Section, Criminal Division
(202) 514-1263

Admit the signature block in full. It is relevant and informs the jury that the Bank stipulated to these facts.

Redact the paragraph in full. The signature block is not relevant to any element of the Swiss tort in question and risks juror confusion as to the applicable law. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion.

*Kashef et al v. BNP Paribas SA et al.*, No. 16-cv-03228

**Parties' Joint Submission Regarding Proposed Redactions of Bank's Stipulated Statement of Facts**

| | | |
|---|---|---|
| AGREED AND CONSENTED TO:<br><br>After consulting with its attorney and pursuant to the plea agreement entered into this day between the defendant, BNPP, and the United States, the designated corporate representative authorized by the Board of Directors of BNPP, hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.<br><br>[Signature block of BNP Paribas S.A.]<br><br>APPROVED:<br><br>We are counsel for BNPP in this case. We have carefully reviewed the above Statement of Facts with the Board of Directors of BNPP. To our knowledge, the Board of Directors' decision to stipulate to these facts is an informed and voluntary one.<br><br>[Signature block of Sullivan & Cromwell LLP, Attorneys for BNP Paribas S.A.] | Admit the signature block in full. It is relevant and informs the jury that the Bank stipulated to these facts. | Redact the paragraph in full. The signature block is not relevant to any element of the Swiss tort in question and risks juror confusion as to the applicable law. Even if the Court finds that the fact of BNPP's sanctions violation is probative of the Swiss law tort, collateral details pertaining to how BNPP violated those sanctions are insufficiently probative to outweigh the risks of unfair prejudice and jury confusion. |

51