UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

ENTESAR OSMAN KASHEF et al.,

                          Plaintiffs,

   -against-

BNP PARIBAS SA, et al.,

                          Defendants.

------------------------------------------------------------- x

**ORDER REGULATING PROCEEDINGS**

16 Civ. 3228 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

A conference was held on June 26, 2025 to discuss issues relating to expert witnesses and *Daubert*, the questionnaire class members are to complete, and motion briefing schedules.

   1)   As to the parties' *Daubert* arguments, my rulings are reflected in the attached annotated charts.

   2)   As to the two issues identified for briefing in my Order of June 24, 2025, ECF No. 743 (burden of proof under Swiss law; and admissibility and propositions of fact as to the grant of asylum status), Plaintiffs shall file their opening brief by July 18, 2025, Defendants shall file their opposition brief by August 1, 2025, and Plaintiffs shall file their reply brief by August 5, 2025. Oral argument will be held on August 7, 2025 at 2:15 p.m.in Courtroom 14D. By August 4, 2025, the parties shall jointly submit to the Court (via the email address HellersteinNYSDChambers@nysd.uscourts.gov) a list of all counsel expected to appear on the record, and an agenda of points either party wishes to discuss.

1

The Clerk of Court shall terminate ECF Nos. 717 and 721.

SO ORDERED.

Dated:      July ____, 2025
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

2

Case 1:16-cv-03228-AKH-JW    Document 741-1    Filed 06/24/25    Page 1 of 8

**CAMERON HUDSON**

The purpose and effect of U.S. sanctions on the Government of Sudan (GOS); how BNPP's illicit support undermined U.S. sanctions and supported the Bashir Regime.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert on U.S. policy on Sudan, OFAC, and U.S. sanctions.**<br><br>• Former Director for African Affairs for the National Security Council under President George W. Bush and Chief of Staff for the U.S. Special Envoy to Sudan; key player regarding U.S. policy on Sudan, and on sanctions in particular; former head of the U.S. Holocaust Memorial Museum's Center for the Prevention of Genocide. | • Why and how the U.S. government imposed the sanctions to halt the atrocities being committed by Sudan's military, security, and paramilitary forces.<br><br>• The Bank's violation of U.S. sanctions significantly undermined their effectiveness in curbing human rights ~~claims~~.<br><br>• How the Bashir Regime's ability to monetize its oil assets, aided by the Bank's sanctions violations, played in the Regime's abuses.<br><br>• The connections between and among the Bank's internal documents, ~~efficacy of the U.S. sanctions~~, and the Bank's knowledge that the Bashir Regime was carrying out widespread atrocities. |

*Kashef v. BNP Paribas SA, et al.* – Plaintiffs' Experts Demonstrative

1

Case 1:16-cv-03228-AKH-JW    Document 741-1    Filed 06/24/25    Page 2 of 8

**BARRY KOCH**

Role of banks' compliance function; explanation of banking terminology; explanation of the complex money laundering and sanctions evasion structures used by the Bank; role of the bank's compliance personnel in BNPP's decision to continue doing business with Sudanese Specially Designated Nationals (SDNs) and its belated decision to end those banking relationships.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert on international anti-money laundering compliance and risk management.**<br><br>• More than two decades of experience in compliance and risk management in the financial services industry; served in senior compliance roles at a number of major international financial institutions, including as Global Head of Anti-Money Laundering Compliance at American Express and Chief Compliance Officer of Western Union. | • ~~Bank terminology, processes, and the role of banks' compliance function.~~<br><br>• Sanctions-evasion methods and complex money laundering structures used by BNPP.<br><br>• ~~Role of the bank's compliance personnel in BNPP's decision to continue doing business with Sudan.~~ |

2

**DR. ALLEN KELLER**

Evidence of specific injuries suffered by each of the three Plaintiffs: Abulgasim Abdalla; Turjuman Adam; and Entesar Kashef.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert on assessing torture and war-related trauma.**<br><br>• Founder of the Bellevue Hospital/New York University School of Medicine Program for Survivors of Torture. | • Plaintiff Abulgasim Abdalla's physical examination related to injuries highly consistent with his account of being attacked and tortured by GOS forces in Sudan.<br><br>• Plaintiff Turjuman Adam's physical examination related to injuries highly consistent with his account of being detained, beaten, and tortured by GOS forces in Sudan.<br><br>• Plaintiff Entesar Kashef's physical examination related to injuries highly consistent with her account of being detained, beaten, raped, and tortured by GOS forces in Sudan.[1] |

---

[1] Dr. Lydia Grympa will provide expert testimony for Plaintiff Entesar Kashef's physical examination related to injuries highly consistent with her account of being detained, beaten, raped, and tortured by GOS forces in Sudan.

*Kashef v. BNP Paribas SA, et al.* – Plaintiffs' Experts Demonstrative

3

Case 1:16-cv-03228-AKH-JW   Document 741-1   Filed 06/24/25   Page 4 of 8

**DR. BARRY ROSENFELD**

Evidence of specific psychological injuries suffered by each of the three Plaintiffs: Abulgasim Abdalla; Turjuman Adam; and Entesar Kashef.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert on forensic psychology and war-related trauma.**<br><br>• Professor at Fordham University; board certified in forensic psychology; extensive publications concerning the impact of torture and trauma on mental health, post-traumatic stress disorder, refugee trauma, and detection of feigned mental disorders. | • Plaintiff Abulgasim Abdalla's psychological examination related to trauma stemming from his abuse at the hands of the Bashir Regime.<br><br>• Plaintiff Turjuman Adam's psychological examination related to trauma stemming from his abuse at the hands of the Bashir Regime.<br><br>• Plaintiff Entesar Kashef's psychological examination related to trauma stemming from her abuse at the hands of the Bashir Regime.[2]<br><br>• Experience of forced displacement as a traumatic event separate and distinct from the other individual injuries. |

---

[2] Dr. Debbie Green will provide expert testimony for Plaintiff Entesar Kashef's psychological examination related to trauma stemming from her abuse at the hands of the Bashir Regime.

*Kashef v. BNP Paribas SA, et al.* – Plaintiffs' Experts Demonstrative

4

Case 1:16-cv-03228-AKH-JW    Document 741-1    Filed 06/24/25    Page 5 of 8

## DR. SULIMAN BALDO

Bashir Regime command and control; human rights monitoring on the ground in Sudan in the areas of Plaintiffs' injuries at the time of their abuse by the Bashir Regime; relevant to proving attribution of injuries to the Bashir Regime campaign of persecution.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert on monitoring and documenting human rights violations.**<br><br>• Sudanese human rights and anti-corruption researcher with nearly 40 years of experience. Researched and authored key contemporaneous human rights reports that helped document the systematic and widespread human rights violations under the Bashir Regime. | • The only human rights documentarian during the relevant period to testify on the command and control and modus operandi of the Bashir Regime's forces as perpetrators of a genocidal campaign involving the pattern of abuses Plaintiffs experienced.<br><br>• On-the-ground reporting of the Bashir Regime's human rights abuses documented by the United Nations, U.S. government, and international human rights groups, including reports from NGOs such as Human Rights Watch, and Amnesty International.<br><br>• Attribution opinion on Entesar Kashef's attack. |

*Admissible to the extent his testimony does not bolster the testimony of other witnesses.*

*Kashef v. BNP Paribas SA, et al. – Plaintiffs' Experts Demonstrative*

5

Case 1:16-cv-03228-AKH-JW    Document 741-1    Filed 06/24/25    Page 6 of 8

## DR. JOK MADUT JOK

Cultural taboos and norms surrounding sexual violence, strict gender roles, and distinctive methods of communication and reactions to the abuses experienced generally by Sudanese victims; cultural impact of injuries, including forced displacement.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert in cultural anthropology of Sudan.**<br>• Professor of Anthropology, History and Public Affairs at Syracuse University. Former Undersecretary in the Ministry of Culture for the Republic of South Sudan. Public policy specialist on human rights, conflict, and sexual violence in Sudan and South Sudan. Significant field work in Sudan. | • Patterns of abuses by the Bashir Regime against targeted populations.<br>• In-depth analysis on injury to human dignity from displacement.<br>• Context to cultural idiosyncrasies and trauma presentation.<br>• Impact of abuses on Sudanese culture, family structure (including marriage and divorce and children), communities, economic opportunities, and overall quality of life. |

Not admissible.

*Kashef v. BNP Paribas SA, et al.* – Plaintiffs' Experts Demonstrative

6

Case 1:16-cv-03228-AKH-JW   Document 741-1   Filed 06/24/25   Page 7 of 8

## DR. HARRY VERHOEVEN

Qualitative, historical opinions as a political economist on the Bashir Regime's control of Sudan's natural resources, banking sector, and private industry; how BNPP funded the Regime through the Central Bank of Sudan and other entities; and how the Regime used this funding to remain in power and carry out the genocide.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| **Expert in Sudanese political economy and author of the book** *Water, Civilization and Power in Sudan: The Political Economy of Military-Islamist State Building* **(Oxford University Press 2015).** | • How Bashir took power and maintained control.<br><br>• Why the Bashir Regime was running out of money by mid-1990s.<br><br>• Why the Regime needed external funding.<br><br>• Qualitative analysis explaining how BNPP's contributions bailed out the Regime. |
| Scholar of African politics, author of books, articles, and reports on the political economy of African nations (including Sudan); served as a professor in the School of International and Public Affairs of Columbia University, as a Senior Research Scholar at the Center on Global Energy Policy, and as a Senior Adviser to the European Institute of Peace on security and political matters pertaining to the Horn of Africa, with a focus on Sudan. | • How BNPP's contributions as Sudan's *de facto* central bank enabled the Regime to survive and realize its strategy of authoritarian control of the Sudanese economy. |

*Kashef v. BNP Paribas SA, et al.* – Plaintiffs' Experts Demonstrative

7

**TIMOTHY FOGARTY**

How international correspondent banking and trade finance works, and how and why Sudan required access to the U.S. dollar clearing system; quantitative analysis of BNPP's contribution to the illicit acts of the Regime, including transactions totaling more than $80 billion for the Bashir Regime and its affiliated entities, exceeding and enabling a massive increase in Sudan's military expenditures during the same period.

| QUALIFICATIONS | SUBJECT OF OPINIONS |
|---|---|
| • **Expert on international central banking operations.**<br><br>• Served as Senior Vice President in charge of Central Bank and Int'l Acc't Services Function at the Federal Reserve Bank of New York. Directly responsible for establishing and managing the dollar accounts for the Iraqi authorities at the FRBNY following the Iraq War that permitted Iraq to resume the export of oil to finance the new government's operation. | • How international correspondent banking and trade finance works.<br><br>• How and why Sudan required access to the U.S. dollar-clearing system to monetize its oil exports.<br><br>• Quantitative analysis of BNPP's contribution to the ill~~~~~~~~~~~~ the Regime, including explanation of BNPP transaction review and conclusion that BNPP completed transactions totaling more than $80B for Regime and affiliated entities.<br><br>• BNPP's sanction violations giving the Regime access to revenue, which in turn enabled it to increase its military expenditures.<br><br>• Sudan's access to USD international banking services used to financially exploit Sudan's oil reserves.<br><br>• BNPP's provision of access to USD accounts and services that permitted the Bashir Regime to recognize significant oil revenue (quantitative analysis). |

*Kashef v. BNP Paribas SA, et al. – Plaintiffs' Experts Demonstrative*

8

Case 1:16-cv-03228-AKH-JW    Document 755-1    Filed 06/25/25    Page 1 of 11

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)

**BNPP'S EXPERTS DEMONSTRATIVE**

*June 25, 2025*

## ENRICO CARISCH

The complexity and scope of conflicts in Sudan, and rebuttal of the opinions of plaintiffs' experts concerning the attribution of plaintiffs' injuries to the Government of Sudan ("GOS") and whether BNPP processed any military transactions, issues which are relevant to causation

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in international sanctions and strategic trade control**<br><br>• Repeatedly appointed by the UN Secretaries General Kofi Annan and Ban Ki-moon to serve on the UN Panel of Experts, including twice for Sudan<br><br>• Co-authored two UN reports on Sudan | • Mr. Carisch will provide testimony regarding the relevant actors and conflicts in Sudan and rebut the opinions of (1) Dr. Baldo, who seeks to link plaintiffs' injuries to the GOS and discusses BNPP's alleged involvement in weapons purchases; and (2) Dr. Jok (plaintiffs' reserve expert), who opines that the GOS destroyed the plaintiffs' communities.<br><br>• That testimony is relevant to the third element of Article 50(1), as it goes to causation. To determine whether BNPP's alleged assistance to the GOS caused the plaintiffs' injuries, the jury must consider whether those injuries were caused by actors who were unaffiliated with and independent of the GOS, and whether there were no connections between BNPP's services and the GOS's military. |

Admissible, but he may not testify that he did not observe evidence of defendants' involvement in Sudan's weapons purchases.

Case 1:16-cv-03228-AKH-JW    Document 755-1    Filed 06/25/25    Page 2 of 11

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**
*June 25, 2025*

**ANDREW HOOD**

UN and European sanctions on Sudan and their rationales, which are relevant to both state of mind and causation

| Qualifications | Subject of Opinions |
| --- | --- |
| • **Expert in trade, regulatory, and public international law matters with a focus on international and EU law and the development of sanctions** | • Mr. Hood will explain the UN, EU, French and Swiss sanctions regimes on Sudan that were applicable to BNPP during the relevant period and their rationales. |
| • Partner and Head of London International Trade Team at Fieldfisher LLP | • That testimony is relevant to the second element of Article 50(1), as it goes to BNPP's state of mind. In determining whether BNPP knew or should have known that its business in Sudan would contribute to the illicit acts by the GOS that the plaintiffs allege, the jury must consider other sanctions regimes that BNPP operated under, which like the U.S. sanctions, were intended to address the human rights violations in Sudan but did not reflect the view that doing business in Sudan would contribute to human rights violations. |
| • Spent over a decade as a lawyer, policy officer, and negotiator for the U.K. Government, including serving as General Counsel to the U.K. Prime Minister and Legal Adviser to the U.K. Permanent Representation to the EU | • That testimony is also relevant to the third element of Article 50(1), as it goes to causation. To determine whether human rights violations were a foreseeable consequence of U.S. sanctions violations, the jury must consider evidence of the purposes of other applicable sanctions regimes (UN, EU, France, and Switzerland) and BNPP's compliance with them. And in making the "value judgment" called for by the proximate cause inquiry, the jury must consider Swiss values, as embodied by Switzerland's sanctions rules. |

Not admissible

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**
*June 25, 2025*

## GARY HUFBAUER

Explain U.S. sanctions on Sudan, the rationale behind them, and the effect of sanctions on target countries, issues which are relevant to both state of mind and causation

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in economic sanctions**<br><br>• Holds a Ph.D. in International Economics from Cambridge University and is a Non-Resident Senior Fellow at the Peterson Institute for International Economics, where he focuses on economic sanctions, trade policy, and international taxation<br><br>• Authored three editions of a major study titled Economic Sanctions Reconsidered | • Mr. Hufbauer will provide testimony regarding U.S. sanctions on Sudan and rebut the testimony of plaintiffs' expert Mr. Hudson on the scope and primary objectives of the sanctions imposed by the U.S. on Sudan during the relevant period<br><br>• Mr. Hufbauer will also testify regarding the impact and lack of impact on the policies and conduct of the target country.<br><br>• That testimony is relevant to the second element of Article 50(1), as it goes to BNPP's state of mind. To answer whether BNPP knew or should have known based on the U.S. sanctions that its business in Sudan would contribute to the illicit acts by the GOS that the plaintiffs allege, the jury must consider whether the U.S. implemented many of its sanctions against Sudan without the primary purpose of preventing human rights abuses<br><br>• That testimony is also relevant to the third element of Article 50(1), as it goes to causation. To evaluate plaintiffs' suggestion of a one-to-one link between violations of U.S. sanctions and plaintiffs' alleged injuries, the jury must consider whether sanctions actually impact the policy or conduct of target countries or actually worsen human rights conditions. |

Admissible but may not testify as to [3] whether sanctions against Sudan imposed, or not imposed, by foreign countries.

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**
*June 25, 2025*

## ANTOINE GAUDEMET

Explain the international, European, and French standards that applied to BNPP during the relevant period, issues which are relevant to both state of mind and causation

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in AML and European bank compliance** <br><br> • Professor of Private Law at the University of Paris-Panthéon-Assas, where he teaches French business law and compliance | • Mr. Gaudemet will explain the existing international, European, and French bank regulatory, anti-money laundering, and compliance standards that applied to BNPP during the relevant period, and the diplomatic policies of France toward Sudan. <br><br> • That testimony is relevant to the second element of Article 50(1), as it goes to state of mind. To assess the reasonableness of BNPP's conduct, and whether it knew or should have known that its conduct allegedly contributed to human rights abuses, the jury must consider whether the developments in the policies, procedures, systems and controls implemented by BNPP to combat money laundering and ensure compliance with economic sanctions were in line with the changes in the regulatory framework and applicable standards during the relevant period; the international, European, and French bank regulatory, anti-money laundering, and compliance standards in that context; and the diplomatic policies of France toward Sudan. <br><br> • That testimony is also relevant to the third element of Article 50(1), as it goes to causation. To determine whether BNPP "was willfully indifferent" based on BNPP's purportedly "ineffective" compliance program (as plaintiffs contend), or whether BNPP acted reasonably to detect and prevent the human rights abuses (as BNPP contends), the jury must consider whether BNPP's compliance policies and procedures were consistent with applicable international, European, and French bank standards. |

4

*[Handwritten across page: Not Admissible]*

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**

*June 25, 2025*

Provide a transaction analysis, explanation of banking principles, and rebuttal of plaintiffs' claims (if made) that BNPP caused their alleged injuries by directly financing military transactions, issues which are relevant to causation and state of mind

**GARY B. GOOLSBY**

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in accounting and auditing**<br><br>• Licensed Certified Public Accountant with over 48 years of experience, including in forensic investigations, risk management, accounting standards, governance, internal controls, and business processes | • Mr. Goolsby will testify regarding BNPP's transactions with Sudanese entities, including by explaining and analyzing the transaction review provided by BNPP to U.S. authorities in connection with its investigation into transactions subject to U.S. sanctions.<br><br>• He will also rebut the testimony of plaintiffs' expert Mr. Fogarty, who provides a misleading "quantitative analysis" on these topics in support of plaintiffs' causation theory.<br><br>• In addition, Mr. Goolsby will rebut any assertions (if made) by the plaintiffs' experts regarding purported evidence that BNPP directly financed the GOS's military transactions.<br><br>Mr. Goolsby's testimony is relevant to the third element of Article 50(1), as it goes to causation. His testimony rebutting plaintiffs' experts' attempts to link BNPP to military actors is also relevant to the second element of Article 50(1), as it goes to state of mind. |

[Handwritten note:] Not admissible, except that he may testify to the impact on the budgets and the revenue flow of the Government of Sudan.

*Kashef v. BNP Paribas S.A*, No. 16-cv-3228-AKH (S.D.N.Y.)
### BNPP'S EXPERTS DEMONSTRATIVE
*June 25, 2025*

## DR. JOHN LLEWELLYN

Macroeconomics of Sudan and rebut the testimony of plaintiffs' experts, such as Mr. Fogarty and Dr. Verhoeven, that Sudan's oil revenues were essential to funding its military expenditures, issues which are relevant to causation

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in macroeconomics**<br><br>• Holds a doctorate in Economics from Oxford University<br><br>• Has served as an advisor to the U.K. Treasury as the Global Chief Economist of a major investment bank, as a member of the Faculty of Economics at Cambridge University, and in numerous roles at the Organization for Economic Cooperation and Development in Paris | • Dr. Llewellyn will explain the macroeconomics of Sudan and rebut the testimony of plaintiffs' experts, such as Mr. Fogarty and Dr. Verhoeven, that Sudan's oil revenues were essential to funding its military expenditures and thus to causing plaintiffs' injuries, and Dr. Verhoeven's proposed opinion that BNPP functioned as the GOS's "*de facto* central bank."<br><br>• That testimony is relevant to the third element of Article 50(1), as it goes to causation. To determine whether BNPP's alleged assistance to the GOS caused the plaintiffs' injuries, the jury must consider (1) whether plaintiffs' expert opinions attributing to BNPP the GOS's ability to produce, export, and sell oil are methodologically flawed; (2) the fact that the GOS's military expenditures cannot be linked to oil revenue, including because Sudan had significant non-oil revenue sources; and (3) BNPP did not function as the GOS's "de facto central bank." |

Admissible

6

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**

*June 25, 2025*

## DR. VICTOR MENALDO

Rebut plaintiffs' assertion of a causal relationship between oil on the one hand and human rights violations or regime duration on the other, issues which are relevant to causation, and demonstrate that plaintiffs' experts fail to follow any reliable methodology at all

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in the political economy of authoritarian governments and the political economy of the international oil industry.**<br><br>• Holds a Ph.D. in political science from Stanford University<br><br>• Professor of Policial Science at the University of Washington | • Dr. Menaldo will rebut the assertion by plaintiffs' experts (Mr. Fogarty, Dr. Verhoeven, Dr. Baldo, and Dr. Jok, if he is offered) regarding a supposed causal relationship between oil on the one hand and human rights violations or regime duration on the other.<br><br>• Dr. Menaldo will also demonstrate that plaintiffs' experts fail to follow any reliable methodology at all.<br><br>• That testimony is relevant to the third element of Article 50(1), as it goes to causation. |

Not admissible

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
BNPP'S EXPERTS DEMONSTRATIVE
*June 25, 2025*

## CHARLES ALEXANDER MORGAN III

Rebut plaintiffs' experts' conclusions regarding PTSD and trauma

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in post-traumatic stress disorder ("PTSD")** <br><br> • Medical doctor, forensic psychiatrist, former intelligence officer, and neuroscientist with extensive experience in assessing, diagnosing, and treating people who have suffered a wide range of traumatic stressors <br><br> • Professor in the Department of National Security at the University of New Haven who also served on the faculty of the Yale University School of Medicine for over 30 years <br><br> • Developed what is now the gold-standard methodology for the assessment of PTSD | • Dr. Morgan will rebut plaintiffs' medical experts by demonstrating that Drs. Keller and Rosenfeld use an inadequate methodology for establishing psychiatric diagnoses of PTSD, depression, and somatic illnesses in the plaintiffs. <br><br> • Dr. Morgan will also demonstrate that plaintiffs' medical experts reach conclusions outside of their expertise regarding causation and are based on an inadequate methodology. |



Not admissible

8

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**
*June 25, 2025*

## DR. PHILIP K. VERLEGER

Sudan's oil industry and rebuttal of plaintiffs' claims that BNPP's involvement was instrumental to Sudan's development of its oil industry and to its oil revenues, issues which are relevant to causation

| Qualifications | Subject of Opinions |
|---|---|
| • Expert in energy and commodity markets | • Dr. Verleger will provide testimony concerning the development of the Sudanese oil industry and the functioning of oil markets, and rebut the opinions of plaintiffs' experts Timothy Fogarty and Harry Verhoeven that BNPP was instrumental to Sudan's development of its oil industry and to its oil revenues. |
| • Holds a Ph.D. in Economics from MIT | • That testimony is relevant to the third element of Article 50(1), as it goes to causation. To determine whether BNPP's alleged assistance to the GOS caused the plaintiffs' injuries, the jury must consider whether (1) Sudan developed its oil industry primarily without BNPP, and (2) Sudan's oil revenues did not depend on its ability to transact in U.S. dollars. |
| • Served as a Senior Staff Economist on President Ford's Council of Economic Advisers and as Director of the Office of Energy Policy at the U.S. Department of the Treasury in President Carter's administration | |

*Not admissible*

9

Case 1:16-cv-03228-AKH-JW    Document 755-1    Filed 06/25/25    Page 10 of 11

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**
*June 25, 2025*

**TERESA A. PESCE**

Rebut plaintiffs' claims that BNPP's compliance program was out of step with industry standards and customary practices, which is relevant to both state of mind and causation

| Qualifications | Subject of Opinions |
|---|---|
| • **Expert in financial crimes regulatory enforcement and U.S. bank compliance** | • Ms. Pesce will rebut the plaintiffs' claims that BNPP's compliance program was out of step with industry standards and customary practices, and related opinions offered by Mr. Koch. |
| • Served in senior compliance roles, including as Global Head of AML and Head of Financial Crimes at KPMG | • That testimony is relevant to the second element of Article 50(1), as it goes to state of mind. To determine whether BNPP knew or should have known that its business in Sudan was contributing to the GOS's illicit acts against plaintiffs, the jury must consider whether BNPP's compliance practices were in line with the industry practices of non-U.S. banks when effecting transactions between U.S.-sanctioned and non-U.S. parties during the relevant period. |
| • Served as Chief of the Major Crimes Unit, Deputy Chief of the Criminal Division, and as an Assistant United States Attorney for the Southern District of New York, where she supervised the prosecution of white-collar crimes | • That testimony is also relevant to the third element of Article 50(1), as it goes to causation. To determine whether BNPP's alleged assistance to the GOS caused the plaintiffs' injuries, the jury must consider whether the GOS could have transacted in U.S. dollars without BNPP's assistance, or whether it could have done so using other non-U.S. banks, given contemporary industry practices. |

Not admissible

*Kashef v. BNP Paribas S.A.*, No. 16-cv-3228-AKH (S.D.N.Y.)
**BNPP'S EXPERTS DEMONSTRATIVE**
*June 25, 2025*

**STEPHEN YALE-LOEHR—CONDITIONAL**

Rebut the testimony of plaintiffs' immigration expert Prakash Khatri (if they call him)

| Qualifications | Subject of Opinions |
|---|---|
| • Recognized expert in the field of immigration law<br><br>• Holds a J.D. from Cornell Law School, where he served as a Professor of Immigration Law Practice | • Professor Yale-Loehr will rebut the arguments of plaintiffs' expert Mr. Khatri that a finding of refugee status can serve as a proxy and equivalent to the conclusion that an individual has suffered the purportedly compensable injury of "forced displacement" perpetrated by the GOS or its agents.<br><br>• Professor Yale-Loehr will also testify regarding the procedures for establishing asylum or refugee status in the United States and the highly individualized nature of the determination process. |

*Defendants stated that they do not intend to call him as an expert, and thus, he is not admissible.*

11