UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BNP PARIBAS S.A. and BNP PARIBAS US WHOLESALE HOLDINGS, CORP.,<br><br>Defendants. | Case No. 1:16-cv-03228-AKH-JW |

**MOTION OF HAUSFELD LLP AND ZUCKERMAN SPAEDER LLP TO DISQUALIFY LEE BOYD AS CLASS COUNSEL**

The Court is the protector of this Class of over 20,000 genocide survivors—the Court, not Lee Boyd, and not even the class representatives. "A judge in a class action is obligated to protect the interests of absent class members." *In re "Agent Orange" Product Liability Litigation,* 996 F.2d 1425, 1438 (2d Cir. 1993). The Court must now protect the class from any further misconduct or poor judgment by Lee Boyd.

Never in half a century of practice have the undersigned witnessed a situation like this. Ex. A, Declaration of Michael D. Hausfeld. Ms. Boyd—in a panic over a sanctions motion—has attempted to hijack control, derail progress in resolving this case, and purge all other class counsel two months before trial.

Ms. Boyd staged this coup after Hausfeld LLP and Zuckerman Spaeder LLP refused to defend her misconduct. The undersigned counsel cannot do so: Ms. Boyd defied Hausfeld's specific instructions not to coach questionnaire responses. Nor can counsel, as fiduciaries to the Class and officers of the Court, permit Ms. Boyd to anoint herself lead trial counsel. Not after four seasoned trial lawyers advised her that she was unfit to try the case. Not after Perry Law LLP

cautioned her separately not to engage in other unethical conduct. And not after she herself admitted she has only tried "a few" federal cases and is not suitable as trial counsel.

Hausfeld and Zuckerman Spaeder cannot ethically continue to work with Ms. Boyd as co-Class Counsel, as she will not cooperate and will not heed Court orders or ethical advice. Since 2019, Hausfeld has been the thin blue line preventing Ms. Boyd from acting unethically and jeopardizing this case:

- During discovery in 2023, a distraught expert witness contacted Hausfeld to complain that Ms. Boyd was trying to force her words into their mouths; the pressure was so intense they were prepared to resign to protect their reputation—Hausfeld worked with the expert to ensure that only the truth would be presented;

- In January 2025, Hausfeld gave Ms. Boyd specific instructions not to coach questionnaire responses, yet Ms. Boyd defied those instructions, as revealed by Defendants' recordings;

- Throughout the spring of 2025, Ms. Boyd was repeatedly advised on her ethical obligations regarding interactions with class members and witnesses;

- In May 2025, Class Counsel observed Ms. Boyd once again attempt, during a prep session, to force words into the mouth of an expert witness, prompting—among other incidents--trial counsel to advise Ms. Boyd that she was unfit to try the case;

- After these repeated lapses of ethical judgment and repeated attempts by class counsel to restrain her, Ms. Boyd purported to "fire" all other Class Counsel and apparently influence the trial plaintiffs to side with her.

Ms. Boyd is trying to erase the thin blue line that held her in check. Her conduct renders her unfit to continue as Class Counsel. As the Court observed, Ms. Boyd's attempted contamination of settlement questionnaire risks diminishing the settlement value of this case. And her purge of

all trial counsel—two months before trial—has recklessly endangered trial preparedness, wasted resources, and impeded progress made by Mr. Hausfeld and Mr. Berke—at Special Master Capra's direction—in resolving this case.

Undersigned counsel attempted to resolve this privately[1] and then sought the Court's assistance to enforce a majority-rule agreement previously agreed to by Ms. Boyd. Ex. B. But it is now apparent that no unity is possible. Under Federal Rule of Civil Procedure 23(g) the Court has the duty to decide which counsel is "best able to represent the interests of the class." Is it Ms. Boyd, with her chaos, appearance of impropriety, and admitted lack of trial experience? Or Mr. Hausfeld, with his fifty years of experience leading and settling class actions, the Hausfeld team that has won victory after victory in this case, and Zuckerman Spaeder's robust trial experience.

Ms. Boyd apparently believes that she can circumvent the Court's authority under Rule 23(g) and influence the Plaintiffs to choose her and fire the rest.[2] But the claims of the three trial plaintiffs only arise within the class lawsuit; they do not have separate lawsuits. Any jury verdict on their claims regarding the Bank's conscious assistance of the Sudanese government will necessarily affect the rights of the entire Class.

Therefore, "the authority to appoint or to discharge Class Counsel rests with this Court, not with the named representative plaintiffs." *Banyai v. Mazur*, No. 00 CIV. 9806 (SHS), 2004 WL 1948755 at *2 (S.D.N.Y. Sept. 1, 2004). As the 2003 Advisory Committee Notes to Rule 23(g) state: "The class representatives do not have an unfettered right to 'fire' class counsel." Loyalty to Ms. Boyd—based on an incomplete picture of the facts—cannot prevail over the interests of the Class in having competent, credible counsel. "The ultimate responsibility to ensure that the

---

[1] Hausfeld and Zuckerman Spaeder offered to meet and confer in person with Hecht Partners, but on July 2, 2025, that offer was rejected.

[2] Hausfeld has a signed retainer agreement with each of the named plaintiffs and with thousands of class members and plaintiffs in related cases.

interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).

This Motion rests on the facts asserted here and the attached declarations.[3] If the Court needs anything further, we encourage the Court to confer with Special Master Capra who for months has been witness to Ms. Boyd's conduct. Although undersigned counsel previously moved for the Court merely to enforce Class Counsel's majority-rule agreement, in their *ex parte* filing of July 7, it is now apparent that there is no room for unity. The Court must choose between Mr. Hausfeld and Ms. Boyd.

**LEGAL STANDARD**

The Court has the obligation, not just the authority, under Federal Rule of Civil Procedure 23(g) to regulate the leadership structure and conduct of appointed class counsel. *See Newberg and Rubenstein on Class Actions* § 10:1 (6th ed.) ("*Newberg*"); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.").

The Court has an ongoing "obligation to insure that the plaintiff class is adequately represented throughout the litigation." *Foe v. Cuomo*, 892 F.2d 196, 198 (2d Cir. 1989). One of the most important tasks is addressing ethical misconduct and replacing class counsel if necessary. *See, e.g.*, *Lowenschuss v. C. G. Bluhdorn*, 78 F.R.D. 675, 678 (S.D.N.Y. 1978). "In cases where attorneys guilty of misconduct withdraw and are replaced by ethically competent counsel, class

---

[3] Ms. Perry and Ms. Illuzzi-Orbon carefully reviewed Mr. Smith's Declaration and confirm its accuracy as to their actions, statements and beliefs. They will be available at the Thursday, July 10 hearing if any questions need to be addressed to them.

4

certification should normally be allowed, provided that the other criteria of Rule 23 have been satisfied." *Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 577 (N.D.N.Y. 1979); *see Korn v. Franchard Corp.*, 456 F.2d 1206, 1211-12 (2d Cir. 1972).

In deciding between competing attorneys, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). In making that determination, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(a). The Court can also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* 23(g)(1)(B).

The authority to remove class counsel is rooted in the Court's duty to protect the interests of the class and ensure the fair and efficient administration of justice: "A judge in a class action is obligated to protect the interests of absent class members." *In re "Agent Orange" Product Liability Litigation*, 996 F.2d 1425, 1438 (2d Cir. 1993).

## ARGUMENT

**I.     The Court must choose which Counsel can best represent the interests of the Class.**

All efforts at private ordering have failed. Ms. Boyd has proven unwilling to cooperate, Class Counsel cannot reach consensus, and neither Hausfeld nor Zuckerman Spaeder can ethically proceed on behalf of the Class if Ms. Boyd remains Class Counsel.

More than a year ago, Ms. Boyd informed Mr. Hausfeld that she could not and should not try this case. Co-lead Class Counsel agreed to bring on trial counsel, but that was about all they could agree on. The working relationship began to decline dramatically in January 2025, when Ms.

5

Boyd failed in her unilateral attempt to recruit Mr. Berke of Gibson, Dunn & Crutcher LLP as trial counsel. Ms. Boyd has what she describes as a close personal friendship with Mr. Berke dating back decades. According to her, this relationship has been renewed over numerous conversations with Mr. Berke about this case both before and after his retention by BNPP. Ms. Boyd responded to Mr. Berke's appearance for the Bank as a visceral, personal betrayal sending her into a tailspin clear to any outside observer. Under ABA Ethics guidance, in a class action setting, even the appearance of a personal-interest conflict between Ms. Boyd and Mr. Berke counsels in favor of limiting her role.[4]

Since then, Ms. Boyd has plunged plaintiffs' counsel into chaos. Mr. Hausfeld and Ms. Boyd both agreed that the Class would be best served by bringing on trial counsel, given the complexity of this case. Mr. Hausfeld proposed Zuckerman Spaeder; Ms. Boyd proposed Perry Law. But rather than cooperate in selecting one or both eminently qualified firms, Hecht Partners unilaterally retained Perry Law in February 2025. Hausfeld then retained Zuckerman Spaeder. At Ms. Boyd's request, it was agreed that Perry Law would try the "victim side" of the case.

Hausfeld, Zuckerman Spaeder, and Perry Law have been able to cooperate on a division of work, assigning most of the "victim-focused" witnesses to Perry Law, and all other witnesses to Zuckerman. *See* Ex. C, Declaration of Cyril Smith ¶ 10 ("Smith Decl."). But there were soon disagreements between the majority of counsel and Ms. Boyd as to tactics or assignments, often with Ms. Boyd escalating minor matters into vituperative attacks—with Ms. Boyd crudely and cruelly denigrating the age, appearance, and intelligence of co-counsel.

---

[4] *See* ABA Formal Opinion 494 (July 29, 2020), noting that a personal interest conflict is more likely to arise with a lawyer who is "lead counsel" than with a lawyer who has "little or no direct decision-making authority . . . and minimal contact with the opposing counsel." https://www.americanbar.org/groups/litigation/resources/newsletters/ethics-professionalism/formal-opinion-494-guidance-personal-relationships/.

Ms. Boyd began to assert that she had veto-power over every decision in the case; that she could fire any member of the team, including Mr. Hausfeld, at her will; and that she alone was qualified to present this case at trial. *See, e.g.*, Smith Decl. ¶ 15.

One focal point of the discord was this: Ms. Boyd refused to heed this Court's repeated orders to streamline the case for trial. *See, e.g.,* ECF No. 704 (directing the parties to "avoid duplication"). Previously, Ms. Boyd had abided by Hausfeld's recommendations to abandon unnecessary witnesses or arguments. But now she was intransigent—to the point of defying the Court. She relentlessly pressured far more experienced trial counsel to reject the Court's determinations of relevance, to refuse to limit any of the admissions in the Statement of Facts, and to defy the Court's Order to eliminate duplicative expert testimony.

On May 23, 2025, Ms. Boyd and Mr. Hausfeld entered into an agreement on executive decision-making (the "Leadership Agreement"): In the absence of consensus, the majority vote of trial counsel would control. Ms. Boyd accepted the agreement in writing.

Nevertheless, Ms. Boyd continued to insist on disregarding the Court's May 21 Order, refused to drop unnecessary experts, and asserted unilateral veto power. On May 29, 2025, Ms. Boyd purported to unilaterally rescind the Leadership Agreement, stating she will no longer abide by the "majority vote" and contending that she alone was qualified to represent the victims. Ms. Boyd also complained to named plaintiffs about trial counsel, in an apparently successful effort to undermine plaintiffs' counsel in any lawyer other than Ms. Boyd. Since then, Ms. Boyd has acted unilaterally, placing the best interests of the Class at risk.[5]

---

[5] Certainly, Mr. Hausfeld has unilaterally discussed potential settlement with Mr. Berke, who jointly proposed a continuance to facilitate mediation. But Mr. Hausfeld was directed by Special Master Capra, on behalf of the Court, to make settlement efforts one-on-one with Mr. Berke. And co-lead Class Counsel had previously agreed to and jointly requested a continuance to facilitate settlement.

Matters then took a turn for the worse. Around the same time, for purposes of potential meetings with class members, Perry Law had sought and obtained confidential outside ethics advice. Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with class members. *See* Smith Decl. ¶ 17. This followed repeated efforts by Hausfeld to advise Ms. Boyd on her ethical obligations regarding her interactions with class members and witnesses.

As detailed below, both Hausfeld and Perry Law observed Ms. Boyd impede the ability of trial counsel to prepare an expert witness and instead attempt to feed them her preferred answers. Co-counsel were able to fend off Ms. Boyd's effort, and the expert dismissed Ms. Boyd's insistent suggestions as inaccurate. However, this incident, among others, led all trial counsel to repeatedly advise Ms. Boyd and her partners David Hecht and Max Price that Ms. Boyd was unfit to try the case. One such exchange, between Perry Law and Messrs. Hecht and Price, occurred on May 27, 2025.

After these exchanges, Ms. Boyd's partner, David Hecht, directed Perry Law to stop all work on the case. He did so without consulting Mr. Hausfeld, let alone informing this Court. At Mr. Hausfeld's urging, Hecht Partners relented and agreed that Ms. Illuzzi-Orbon could travel to San Diego the week of June 2, 2025 with Ms. Boyd and Kristen Nelson (Hecht Partners) and Amanda Lee-DasGupta (Hausfeld), to meet with victim-side witnesses. *See id.* ¶ 21. But the trip proved to be a waste of time.

Far from facilitating the victim-witnesses' work with Ms. Illuzzi-Orbon, Ms. Boyd limited Ms. Illuzzi-Orbon's time with one witness, and she was unable to spend any time at all preparing a different witness's testimony. *See* Smith Decl. ¶¶ 17-21. The trip also accentuated the Perry and Hausfeld's firms concerns about Ms. Boyd's ethical lapses. During this trip, multiple attorneys were alarmed when Ms. Boyd brazenly stated that she planned to unilaterally engage in an action

8

that would clearly violate ethical obligations. Ms. Boyd was cautioned against this and ultimately (to undersigned counsel's knowledge) did not follow through with her plans.

But after and in response to these exchanges, Hecht Partners prohibited Ms. Perry and Ms. Illuzzi-Orbon from performing their Court-appointed duties, informing Perry Law that Hecht Partners would not pay them for further work. In the wake of Hecht Partners' actions, Mr. Hausfeld, Mr. Smith, Mr. Goelman, Ms. Lee-DasGupta, and Ms. Boyd (along with her partners Mr. Hecht and Mr. Price) met with Special Master Capra on June 13 to resolve these disputes, without success.

Instead, Ms. Boyd escalated. On June 24 and June 26, 2025, she indicated her intent to oust Mr. Hausfeld from negotiating settlement with Mr. Berke—despite Special Master Capra's specific direction, on behalf of the Court, that Mr. Hausfeld and Mr. Berke were to engage in one-on-one discussions.

Ms. Boyd is now apparently set on spinning some conspiracy theory that Mr. Hausfeld and Mr. Berke are colluding and committing "fraud upon the Court." In reality, Mr. Hausfeld and Mr. Berke have been doing precisely what Special Master Capra directed: engaging in direct discussions to explore a resolution. And those discussions are on the cusp of bearing fruit: the parties are close to agreeing to the appointment of mediators.

But Ms. Boyd threatens to blow up all chance at resolution. After Hausfeld and Zuckerman Spaeder declined to allow Hecht Partners to lead a joint response to Defendants' sanctions motion, Ms. Boyd launched a coup to oust all other Class Counsel. Perry Law's termination became real and final on July 1, 2025, when Ms. Perry wrote to co-counsel as follows: "As everyone has been aware, Perry Law's limited engagement by Hecht in this matter has been terminated." Ms. Perry was faced, she said, with a choice between "formally withdrawing" and "otherwise re-engag[ing]

9

in short order." Smith Decl. ¶ 23. Mr. Hecht responded by stating unilaterally that "We acknowledge and accept your formal withdrawal from the matter on behalf of the class."

Then on July 7, 2023, Ms. Boyd purported to unilaterally terminate Zuckerman Spaeder and pressured Michael Hausfeld to resign under threat of duress.

There is an irreconcilable rupture among Class Counsel and the Court must decide who best represents the interest of the Class. The very idea of jettisoning experienced, Court-appointed counsel two months before trial demonstrates Ms. Boyd's unfitness.

## II.     Hausfeld and Zuckerman Spaeder are the only team that can effectively try and settle this case.

On experience and substantive merits alone, the decision is not even close: the Zuckerman Spaeder/Hausfeld team are the only team who can now advance this case to its conclusion, by trial or settlement, in the best interests of the class.

### A.  Trial Experience

Cy Smith and Aitan Goelman of Zuckerman Spaeder present six decades of robust experience in trying to verdict before juries the most complex of cases, which include human rights/terrorism cases, personal injury and mass tort cases, as well as other complex civil and criminal matters. Lee Boyd has no such trial experience. Indeed, she has admitted that she has tried at most "a few" cases in federal court and in the past conceded that she should not be trying this case. Mr. Smith and Mr. Goelman's trial experience has been recognized through their membership in the American College of Trial Lawyers, an invitation extended only to the most experienced trial lawyers in the country. Ms. Boyd is not a member of the College. Ms. Boyd represents that she will be joined by DiCello Leavitt LLP, but it is clearly not in the best interests of the Class for new counsel, with no familiarity with the case and no understanding of Swiss law whatsoever, to take the reins two months before trial.

B.  **Settlement Experience**:

Michael Hausfeld has settled some of the largest and most significant cases in the past 50 years, with multiple case resolutions in the billions of dollars. Mr. Hausfeld's success is due in large part to his fierce advocacy for his clients, his good judgment, his credibility, and his creative problem-solving skills.

Among many relevant matters:

- Mr. Hausfeld led a historic legal battle alleging that Swiss banks were the chief financiers of the Nazi regime and laundered stolen funds, jewelry, and art treasures in furtherance of war crimes, crimes against humanity, slave labor, and genocide. Mr. Hausfeld shepherded a landmark settlement agreement, resulting in the payment of nearly $1.29 billion to 458,400 Holocaust victims, for which he was recognized by the Simon Wiesenthal Center Award for Distinguished Service.

- Mr. Hausfeld was lead counsel against the German government and several industries, on behalf of surviving European citizens from the Czech Republic, Poland, Ukraine, Belarus, Russia and Israel, for harms inflicted upon them in concentration camps and during forced labor throughout the reign of the Third Reich. The claims were settled in a multinational treaty executed in in Berlin establishing a claim fund of $5 Billion, which was endorsed by President Clinton and Germany's Prime Minister.

For these and his top-tier litigation skills, he has been recognized again and again for his lifetime achievements, including most recently from the American Bar Association in 2022. It is therefore no surprise that, when mediation became a possibility in this matter, Special Master Capra (at the direction of the Court) instructed Mr. Hausfeld to engage with counsel for the Bank, Mr. Berke, to the exclusion of Ms. Boyd. Ms. Boyd protested but to no avail.

C.  **Substantive Merits**

Ms. Boyd started this case and acted as primary liaison with the class, and should be recognized one day for that work. But when it comes to the substantive work on this matter, Ms. Boyd's role has been limited and pales in comparison to that of Hausfeld and Zuckerman Spaeder:

11

Motion Practice

- Prior to 2025, Hausfeld has been the primary, and often <u>sole</u>, drafter of all substantive motions, including the successful:
    - Opposition to Defendants' motion to dismiss under Swiss law
    - Opposition to Defendants' forum non conveniens motion
    - Opposition to Defendants' motion for summary judgment
    - Motion for Class Certification
    - *Touhy* Motion
    - Motion Regarding Refugee Status

Daubert Motions

- Hausfeld and Zuckerman Spaeder lawyers were the primary drafters of the affirmative and defensive briefs relating to challenges to experts.

Guilty Plea-Related Motions

- Hausfeld and Zuckerman Spaeder lawyers were the primary drafters of the briefing relating to the admissibility of the Bank's guilty plea and admissions of facts.

Appeal

- Hausfeld successfully drafted and argued Plaintiffs' opposition to the Bank's Rule 23(f) petition.

Expertise on Swiss Law

- Hausfeld's partner Scott Gilmore and associate Claire Rosset (both French speakers) are the <u>only</u> lawyers for the Class who became steeped in expertise on Swiss Law, which of course will be a central issue as concerns jury instructions, trial preparation, and issues arising at trial.

- Mr. Gilmore took and defended the depositions of the parties' Swiss law experts.

Fact Discovery:

- Hausfeld lawyers took 11 fact witness depositions and prepared/defended 4 class representatives.

- Ms. Boyd took 1 fact witness deposition—and was only able to do so with extensive preparation by Hausfeld given her lack of substantive knowledge—and prepared and defended the depositions of 8 class representatives.

Expert Discovery:

- Hausfeld retained 5 of the experts now slated to testify at trial.

- Ms. Boyd retained both of the experts dropped from this case as irrelevant.

- Hausfeld worked with 10 experts to prepare their reports.

12

- Ms. Boyd worked with 2 experts to prepare their reports.

- Hausfeld lawyers took 11 expert depositions and defended 10 expert depositions.

- Ms. Boyd took 1 expert depositions and defended 3 expert depositions.

All told, when it comes to a comparison of relative trial experience, ability to settle, and substantive work on this case, the choice is clear: only the Hausfeld/Zuckerman team can proceed to resolution of the case in the best interests of the class.

### III. Ms. Boyd is unfit to continue as Class Counsel and incapable of trying or settling the case.

#### A. Ms. Boyd's unwillingness to abide by Court orders and ethical norms disqualifies her as Class Counsel.

Since 2019, Hausfeld has served as the thin blue line preventing Ms. Boyd from engaging in questionable ethical conduct—until just recently.

Hausfeld first became alarmed in 2021 during expert discovery, when a distraught expert witness contacted a Hausfeld attorney and reported that Ms. Boyd was pressuring the witness to include an opinion in their report with which the expert did not fully agree. The expert had pushed back on Ms. Boyd's insistence to the point they were considering resigning. Hausfeld informed the expert that they must present their true and accurate opinion, that they should disregard any further attempt by Ms. Boyd, and that Hausfeld will never permit words to be put in their mouth. The firm succeeded in preventing Ms. Boyd from exercising any undue influence and informed Ms. Boyd that she must accept the expert witness's independent opinion—which was in fact included in the final report, rather than Ms. Boyd's.

But by January 2025, Hausfeld was again concerned about Ms. Boyd's ability to restrain herself, this time regarding the settlement questionnaire. As the Court and Special Master Capra are aware, for several months, Ms. Boyd has led an effort to communicate with class members

13

about the settlement questionnaire process, anticipating that Sudanese refugees would be unfamiliar with the procedure and that semi-literate victims may require assistance from community leaders or family members.

The Court had instructed counsel on the need to be "careful about suggesting anything to the people" filling out questionnaires, which must be answered "not by counsel but by the individuals" under oath. ECF No. 582, Oct. 29, 2024 Hr'g. Tr. at 23:3-15. Hausfeld was attuned to these concerns and wanted to make sure that Ms. Boyd would abide by them.

On January 17, 2025, Hausfeld provided Ms. Boyd with a script of what she was permitted to say to class members. Hausfeld directed Ms. Boyd not to coach responses. Under no circumstances was she to instruct a class member to check a particular box or supply an answer. Ms. Boyd was specifically directed to inform class members: "the answers must be your answers, not the answer someone else suggests or the answer you think someone would want you to provide. It must be your truth." Ex D, Declaration of James Gotz, Ex. D-1.

Despite this warning, and without co-counsel's authorization, Ms. Boyd acted unilaterally. The recordings attached to Defendants' Motion for Sanctions speak for themselves. Co-counsel discovered Ms. Boyd's apparent actions for the first time through Defendants' motion.

This, however, is not Ms. Boyd's only ethical lapse. On yet another occasion in May 2025, Hausfeld and co-counsel at Perry Law observed Ms. Boyd interrupt an expert witness during a mock prep exercise and attempt to feed answers reflecting her views rather than the expert's. The expert properly insisted on fidelity and rejected Ms. Boyd's efforts, while co-counsel sought to re-assert control over the meeting.

This incident, among others, prompted all four seasoned trial lawyers—Cy Smith and Aitan Goelman from Zuckerman Spaeder and Danya Perry and Joan Illuzzi-Orbon from Perry Law—

and Mr. Hausfeld to advise Ms. Boyd and Hecht Partners LLP that Ms. Boyd was unfit to try the case. And it was one of the stepping stones leading to Ms. Boyd's effort to oust all Class Counsel who have raised concerns with her about her ethical obligations, duties to the Class, and suitability for trial.

Ms. Boyd's alarming conduct warrants disqualification. As the district court held in *Lowenschuss v. C. G. Bluhdorn*, an attorney must withdraw as class counsel when their conduct violates ethical standards such as "Canon 9 of the Code of Professional Responsibility" which requires "a lawyer to avoid even the appearance of professional impropriety." 78 F.R.D. 675, 678 (S.D.N.Y. 1978) (internal quotations omitted).

Ms. Boyd has created an appearance of impropriety. And in doing so, she may already have prejudiced the Class. As the Court observed at the June 26, 2025 status conference, "to the extent this was done, it contaminates the questionnaire." Conf. Tr. at 6:2-3. The questionnaires have an "informative value in terms of an overall settlement value of the case." *Id.* at 6:8-9. The mere suspicion of Ms. Boyd's "contamination . . . diminishes those values." *Id.* at 6:10-11. In any case, the fact that Ms. Boyd must personally defend her actions creates diverging interests between herself and the Class and distracts from resolving this case. The Class will be ill served by the trial devolving into a side show surrounding Ms. Boyd's comportment and lack of credibility.[6]

Although the undersigned do not dispute that Ms. Boyd made the statements reflected in the exhibits to Defendants' motion, co-Class Counsel oppose sanctioning class members or trial plaintiffs in any way—as set forth in ECF No. 771, Response to Defendants' Motion for Sanctions.

---

[6] As the undersigned make clear in their response to Defendants' sanctions motion, Ms. Boyd alone should be held to account for her actions. None of her statements regarding settlement questionnaires placed any conceivable taint on the trial plaintiffs: they neither heard the statements nor even completed a questionnaire.

Indeed, Ms. Boyd's conduct detrimental to settlement may already have harmed the Class: plaintiffs and class members should not suffer further.

### B. Ms. Boyd lacks the experience and temperament to try or settle this case.

Ms. Boyd admitted to Hausfeld in summer 2024 that she was unsuited to try this case. She repeated that mantra all winter. That is precisely why she chose to retain the Perry Firm to present the victim side of the case at trial. Indeed, Ms. Boyd admitted to Mr. Hausfeld, in the presence of her partner Maxim Price that she has only ever tried, at most, "a few" federal jury trials.[7] A lawyer who, by their own admission, is incompetent to try this case is unqualified to become the sole Class Counsel in this case—which is what will happen if Ms. Boyd is not disqualified. Hecht Partners may claim that they will bring in DiCello Leavitt LLP as trial counsel—but there is no conceivable way that with only two months to prepare, DiCello Leavitt could try this case nearly as well as the Zuckerman Spaeder/Hausfeld team. The Class would be gravely prejudiced by allowing this last- minute replacement of counsel. The only interests it could conceivably serve are Ms. Boyd's self-aggrandizement and the pecuniary interests of Hecht Partners LLP and its third-party funder.

Lastly, Ms. Boyd is incapable of settling this case. A settlement requires an honest broker. The Bank does not have an honest broker in Ms. Boyd; Defendants just leveled a very serious sanctions motion against her. Settlement also requires objectivity. That risk that Ms. Boyd's judgment will be clouded by her vindictiveness against Mr. Berke is too great. Until Mr. Hausfeld put the kibosh on the idea, Ms. Boyd intended to place articles in newspapers personally attacking Ms. Berke as defending genocide abettors, hoping it would spoil his reputation at dinner parties.

---

[7] Undersigned counsel have been unable to find any record corroborating Ms. Boyd's claim to have participated in *any* federal trials.

16

Mr. Boyd is passionate about this case, about the Sudanese victims, and about defense counsel—but as protector of the Class, the Court must not put her in charge of trial and settlement. Her temperament, lack of experience, and poor ethical judgment risk dooming this case for the entire Class.

Dated: July 9, 2025                                             Respectfully submitted,

| | |
|---|---|
| Cyril V. Smith<br>ZUCKERMAN SPAEDER LLP (Baltimore)<br>100 East Pratt Street, Suite 2440<br>Baltimore, MD 21202<br>(410) 332-0444<br>csmith@zuckerman.com<br><br>Aitan D. Goelman<br>ZUCKERMAN SPAEDER LLP (DC)<br>1800 M Street, Suite 1000<br>Washington, DC 20036<br>(202) 778-1996<br>agoelman@zuckerman.com | /s/ Michael D. Hausfeld<br>Michael D. Hausfeld<br>Scott A. Gilmore<br>Amanda E. Lee-DasGupta<br>Claire A. Rosset<br>Mary S. Van Houten Harper<br>Percy Metcalfe<br>HAUSFELD LLP<br>1200 17th Street, Suite 600<br>Washington, DC 20036<br>(202) 540-7200<br>mhausfeld@hausfeld.com<br>sgilmore@hausfeld.com<br>alee@hausfeld.com<br>crosset@hausfeld.com<br>mvanhouten@hausfeld.com<br>pmetcalfe@hausfeld.com<br><br>James D. Gotz<br>HAUSFELD LLP<br>One Marina Park Dr., Suite 1410<br>Boston, MA 02210<br>(617) 207-0660<br>jgotz@hausfeld.com |

## CERTIFICATE OF SERVICE

I certify that on July 9, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Michael D. Hausfeld
Michael D. Hausfeld