# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BNP PARIBAS S.A. and BNP PARIBAS US WHOLESALE HOLDINGS, CORP., <br><br> Defendants. | Case No. 1:16-cv-03228-AKH-JW <br><br> **In-chambers conference requested**. |

### *EX PARTE* MOTION OF HAUSFELD LLP AND ZUCKERMAN SPAEDER LLP FOR RELIEF UNDER RULE 23(G)

The Court's intervention is urgently required to regulate the conduct and leadership of Class Counsel. Lee Boyd of Hecht Partners LLP ("Hecht Partners") is seeking to force the withdrawal of all other Court-appointed Class Counsel, unilaterally appoint herself sole Class Counsel, and try and settle this case herself.

On July 1, 2025, Ms. Boyd purported to unilaterally terminate Perry Law LLP ("Perry Law"). Today, she purported to terminate Zuckerman Spaeder LLP ("Zuckerman Spaeder"), stating "please turn over the client file; and please let's discuss an orderly transition immediately." And now Hecht Partners is trying to strong-arm Michael Hausfeld into resigning.

Ms. Boyd apparently feels that this class action is her personal fiefdom, entitling her—at her whim—to override and contradict the Court appointments of all other Class Counsel.

In doing so, Ms. Boyd is defying Court orders and violating an agreement between all four Court-appointed firms (the "Leadership Agreement"). Under that agreement, each firm has a say in the direction of trial preparation and strategy, but a majority vote of trial counsel controls decisions that are not unanimous. Even worse, Ms. Boyd is making these moves under a storm

cloud of serious doubts about her willingness to comply with Court orders and ethical obligations—as alleged in Defendants' sanctions motion, ECF No. 753.

This unilateral action follows a pattern of Ms. Boyd disregarding majority decisions and refusing to hear ethical guidance, including instructions specifically directing Ms. Boyd not to engage in conduct that is now the subject of Defendants' sanctions motion. Hausfeld cautioned Ms. Boyd not to influence class members in responding to the settlement questionnaire. *See* Ex. C, Declaration of James Gotz ("Gotz Decl.").

Hausfeld LLP ("Hausfeld") and Zuckerman Spaeder oppose Ms. Boyd's improper attempt to force all other Class Counsel withdraw. *See* Ex. A, Declaration of Cyril Smith ¶ 27 ("Smith Decl."); Ex. B, Declaration of Michael D. Hausfeld ¶ 2.[1] It is not in the best interests of the Class for Ms. Boyd to impede trial preparation by ousting all other Class Counsel two months before trial. Doing so after being advised of her ethical obligations—and the risk she presents to the Class should she try this case—is inexcusable.

Ms. Boyd's actions may have already prejudiced the Class. As this Court observed, even the appearance that Ms. Boyd contaminated questionnaires diminishes the settlement value of this case. Status Conference Tr. at 6:9-11, June 26, 2025 ("Conf. Tr."). If unchecked, her effort to oust all co-counsel will waste months of trial preparation, deprive the Class and trial plaintiffs of eminent trial counsel, and undo progress made by Mr. Hausfeld in attempting to settle this case.

On June 13, 2025, co-counsel met with Ms. Boyd and Special Master Capra to resolve this dispute and enforce the Leadership Agreement, but to no avail. Hausfeld and Zuckerman Spaeder offered to meet and confer in person with Hecht Partners, but on July 2, 2025, that offer was

---

[1] Under a stop-work order imposed by Hecht Partners, Perry Law has been restrained from participating in this case.

rejected. Hausfeld is prepared to retain Perry Law under a new agreement and Perry Law is prepared to accept, so long as the Court authorizes this transition and appoints trial counsel.

Hausfeld, Zuckerman Spaeder, and Perry Law are well-prepared to vigorously prosecute this case at trial, but Ms. Boyd's obstruction must end. To prevent any further prejudice, Hausfeld and Zuckerman Spaeder respectfully request that the Court:

(a) Enforce the Court's appointment orders and preclude Ms. Boyd from ousting all appointed Class Counsel and trying this case herself;

(b) Appoint Zuckerman Spaeder and Perry Law as trial counsel, with authority to oversee the presentation of evidence and argument at trial;

(c) Direct that, in the absence of consensus over trial strategy, pre-trial preparation, and conduct of the trial, all Class Counsel shall abide by every decision reached by a majority of all Court-appointed Class Counsel;

(d) Direct Ms. Boyd to take all steps necessary to ensure that any plaintiffs or other witnesses cooperate fully in the preparation and presentation of testimony at trial, including following the direction of trial counsel or a majority of Class Counsel; and

(e) Adopt any other measure deemed necessary to protect the interests of the Class.

The orderly resolution of this case, whether through settlement or trial, requires urgent judicial action.[2] Hausfeld and Zuckerman Spaeder respectfully request an in-chambers conference this week.

---

[2] This motion addresses Class Counsel's dynamics as concerns trial preparation and strategy. As to settlement efforts, Michael Hausfeld will continue to discuss potential resolution with lead counsel for the Bank, Barry Berke, as each was specifically directed by Special Master Capra on behalf of the Court.

3

**LEGAL STANDARD**

The Court has authority under Federal Rule of Civil Procedure 23 to regulate the leadership structure and conduct of appointed class counsel. *See Newberg and Rubenstein on Class Actions* § 10:1 (6th ed.) ("*Newberg*"); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties."). This authority is rooted in the Court's duty to protect the interests of the class and ensure the fair and efficient administration of justice: "A judge in a class action is obligated to protect the interests of absent class members." *In re "Agent Orange" Product Liability Litigation*, 996 F.2d 1425, 1438 (2d Cir. 1993).

One of the key tasks is "creating a management structure among counsel," *Newberg* § 10:1, which includes (i) "[i]dentify[ing] the positions that are needed" and "appoint[ing] lawyers to the positions" (including "trial counsel"); (ii) "defin[ing] the responsibility for those positions"; and (iii) "[p]eriodically revisit[ing]" those appointments to ensure that counsel for the class is properly overseen. *Id.* § 10:9.

District courts managing class actions routinely appoint trial counsel. *See Ann. Manual for Complex Litigation* § 10.221 (4th ed.). *See, e.g.*, *Evans v. TIN, Inc.*, Civil A. 11-2067, 2013 WL 4501061, at *16-17 (E.D. La. Aug. 21, 2013) (noting appointments of trial counsel). District courts also routinely enter orders dictating how class counsel should comport themselves. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 222, 227 n.5 (D.D.C. 2005) (order "described the responsibilities" of class counsel; directed how class counsel would internally "implement[]" policy; and directed certain members of class counsel to "consult with" the Executive Committee "on all major policy decisions").

## ARGUMENT

**I. Ms. Boyd has violated Court orders and the Leadership Agreement and jeopardized the best interests of the Class.**

**A. Background**

No-one questions Ms. Boyd's founding role in this case and co-counsel will always honor and credit that role. But in earlier stages, Ms. Boyd had the wisdom to seek help. She retained appellate counsel to overcome the initial dismissal. On remand, however, she lacked co-counsel and Plaintiffs struggled to make a compelling presentation on conflicts of law. At Ms. Boyd's request, Hausfeld joined as co-counsel in 2019, developed a new theory of the case and led on briefing, discovery, class certification, and selecting experts or replacing Ms. Boyd's selections. Under this arrangement, Ms. Boyd principally served as liaison counsel with Plaintiffs and Sudanese community leaders, while consulting on motion practice and being prepared by Hausfeld for the two depositions that she took. The result was a string of victories for the Class. Throughout, Hausfeld consulted with Ms. Boyd, but ensured there were checks and balances on her temperament and occasional lapses of judgment.

That successful relationship broke down by January 2025, when Ms. Boyd failed in her unilateral attempt to recruit Mr. Berke of Gibson, Dunn & Crutcher LLP as trial counsel.[3]

Indeed, as early as the summer of 2024, Ms. Boyd had informed Mr. Hausfeld that she felt she could not and should not try this case. She reiterated this in January 2025. Both agreed it would be best for the Class to add trial counsel. Mr. Hausfeld proposed Zuckerman Spaeder; Ms. Boyd proposed Perry Law. But rather than cooperate in selecting one or both eminently qualified firms,

---

[3] Ms. Boyd has not been forthcoming about her apparently close personal friendship with Mr. Berke, which she describes as dating back decades and purportedly renewed during multiple conversations in recent years concerning this case.

Hecht Partners unilaterally retained Perry Law in February 2025. Hausfeld then retained Zuckerman Spaeder. At Ms. Boyd's request, it was agreed that Perry Law would try the victim side of the case.

Since then, Hausfeld, Zuckerman Spaeder, and Perry Law have been able to cooperate on a division of work, assigning most of the "victim-focused" witnesses to Perry Law, and all other witnesses to Zuckerman. *See* Ex. A, Smith Decl. ¶ 10. But Ms. Boyd has been incapable of cooperating. There were soon disagreements between the majority of counsel and Ms. Boyd as to tactics or assignments, often with Ms. Boyd escalating minor matters into vituperative attacks.

These disagreements intensified greatly in May 2025. Ms. Boyd began to assert that she had veto-power over every decision in the case; that she could fire any member of the team, including Hausfeld, at her will; and that she alone was qualified to present this case at trial. *See, e.g.*, Smith Decl. ¶ 15.

The focal point of the discord was this: Ms. Boyd refused to heed this Court's May 21, 2025 Order that the case must be streamlined for trial. ECF No. 704 (directing the parties to "avoid duplication"). Previously, Ms. Boyd had abided by Hausfeld's recommendations to abandon unnecessary witnesses or arguments. But now she was intransigent—to the point of defying the Court's May 21, 2025 Order.

### B. The Leadership Agreement

To avoid an impasse on this issue, on May 23, 2025, Ms. Boyd and Mr. Hausfeld entered into an agreement on executive decision-making (the "Leadership Agreement"). In the case of disagreement among trial counsel and the co-leads, the majority vote of trial counsel will control. Ms. Boyd accepted the agreement in writing.

Nevertheless, Ms. Boyd continued to insist on disregarding the Court's May 21 Order to avoid duplication and asserted unilateral veto power over all decisions. On May 29, 2025, Ms.

6

Boyd purported to unilaterally rescind the Leadership Agreement, stating she will no longer abide by the "majority vote." Since then, Ms. Boyd has acted unilaterally, placing the best interests of the Class at risk.[4]

### C. Ms. Boyd is attempting to oust all other appointed Class Counsel after they questioned her suitability for trial and gave her ethical guidance.

Matters then took a sharp turn for the worse. Ms. Boyd began asserting that she, and she alone, was capable of preparing for and trying the case as it related to the victim-witnesses. This despite conceding for months that she should not try the case and specifically retaining Perry Law to do so. Hausfeld, Zuckerman Spaeder, and Perry Law all shared their concerns that it was not in the best interests of the Class for Ms. Boyd to try the case, given her temperament, inability to cooperate, and resistance to heeding the Court's directives on avoiding redundancy and relevance.

Around the same time, for purposes of potential meetings with class members, Perry Law had sought and obtained confidential outside ethics advice. Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with class members. *See* Smith Decl. ¶ 17.

Based on their observations of Ms. Boyd, Perry Law informed Hecht Partners that they did not believe Ms. Boyd could effectively try the case. After these exchanges, Ms. Boyd's partner, David Hecht, directed Perry Law to stop all work on the case. He did so without consulting Mr. Hausfeld, let alone informing this Court.

At Mr. Hausfeld's urging, Hecht Partners relented and agreed that Ms. Illuzzi-Orbon could travel to San Diego the week of June 2, 2025 with Ms. Boyd and Kristen Nelson (Hecht Partners) and Amanda Lee-DasGupta (Hausfeld), to meet with victim-side witnesses. *See id.* ¶ 21. But the

---

[4] Ms. Boyd may argue that Mr. Hausfeld has unilaterally discussed potential settlement with Mr. Berke, who jointly proposed a continuance to facilitate mediation. But Mr. Hausfeld was directed by Special Master Capra, on behalf of the Court, to make settlement efforts one-on-one with Mr. Berke. And co-lead Class Counsel had previously agreed to and jointly requested a continuance to facilitate settlement.

trip proved to be a waste of time. Far from facilitating the victim-witnesses' work with Ms. Illuzzi-Orbon, Ms. Boyd limited Ms. Illuzzi-Orbon's time with one witness, and she was unable to spend any time at all preparing a different witness's testimony. *See* Smith Decl. ¶¶ 17-21.

After and in response to these exchanges, Hecht Partners prohibited Ms. Perry and Ms. Illuzzi-Orbon from performing their Court-appointed duties, informing Perry Law that Hecht Partners would not pay them for further work. In the wake of Hecht Partners' actions, Mr. Hausfeld, Mr. Smith, Mr. Goelman, Ms. Lee-DasGupta, and Ms. Boyd (along with her partners Mr. Hecht and Mr. Price) met with Special Master Capra to resolve these disputes, without success.

Instead, Ms. Boyd escalated. Ms. Boyd has appointed herself lead trial counsel against the majority vote of Class Counsel. Not stopping there, on June 24 and June 26, 2025, she indicated her intent to oust Mr. Hausfeld from negotiating potential settlement with Mr. Berke—despite Special Master Capra's specific direction, on behalf of the Court, that Mr. Hausfeld and Mr. Berke were to engage in one-on-one discussions. Ms. Boyd now asserts that she alone can get this case settled with Mr. Berke, with whom she purportedly has a longstanding close, personal friendship that risks clouding her judgment.[5]

Perry Law's termination became real and final on July 1, 2025, when Ms. Perry wrote to co-counsel as follows: "As everyone has been aware, Perry Law's limited engagement by Hecht in this matter has been terminated." Ms. Perry was faced, she said, with a choice between "formally withdrawing" and "otherwise re-engag[ing] in short order." Smith Decl. ¶ 23. Mr. Hecht responded

---

[5] *See* ABA Formal Opinion 494 (July 29, 2020), noting that a personal interest conflict is more likely to arise with a lawyer who is "lead counsel" than with a lawyer who has "little or no direct decision-making authority . . . and minimal contact with the opposing counsel." In a class action setting, even the appearance of a personal interest conflict between Ms. Boyd and Mr. Berke counsels in favor of requiring her compliance with the Leadership Agreement and majority rule. https://www.americanbar.org/groups/litigation/resources/newsletters/ethics-professionalism/formal-opinion-494-guidance-personal-relationships/.

8

by stating unilaterally that "We acknowledge and accept your formal withdrawal from the matter on behalf of the class."

Days later, Ms. Boyd proceeded with attempting a complete *coup d'état* against all other Class Counsel. She called for co-lead Class Counsel Michael Hausfeld to withdraw. And on July 7, 2023 purported to unilaterally terminate Zuckerman Spaeder. This very day, Ms. Boyd and her firm have now taken steps to oust co-lead Class Counsel, Zuckerman Spaeder, and Perry Law from preparing for trial and attempting to resolve this case through settlement or trial.

To state the obvious: it is not in the best interests of the Class to eviscerate the entire trial team—two months before jury selection, waste substantial time and resources, and allow Ms. Boyd to anoint herself and her firm sole Class Counsel. Her attempted *coup* is all the more alarming given the serious doubts about Ms. Boyd's judgment, candor, and willingness to abide by Court orders, ethical norms, and common sense.

### D. Defendants present evidence that Ms. Boyd unilaterally chose to coach certain questionnaire responses, contravening Hausfeld's ethical guidance.

If the *coup* were not enough, Ms. Boyd's other lapses of judgment have come into sharp focus. As the Court and Special Master Capra are aware, for several months, Ms. Boyd has led an effort to communicate with class members about the settlement questionnaire process, anticipating that Sudanese refugees would be unfamiliar with the procedure and that semi-literate victims may require assistance from community leaders or family members.

Concerned with Ms. Boyd's ability to exercise self-restraint, in January 2025, Hausfeld gave clear instructions to Ms. Boyd about the questionnaire process. Because the questionnaire is under oath, improper advice to a class member carries great risks.

On January 17, 2025, Hausfeld provided Ms. Boyd with a script of what she was permitted to say to class members. Hausfeld directed Ms. Boyd not to coach responses. Under no

9

circumstances was she to instruct a class member to check a particular box or supply an answer. Ms. Boyd was specifically directed to inform class members: "the answers must be <u>your</u> answers, not the answer someone else suggests or the answer you think someone would want you to provide. It must be your truth." Ex C, Gotz Decl., Ex. C-1.

Despite this warning, and without co-counsel's authorization, Ms. Boyd acted unilaterally. The recordings attached to Defendants' Motion for Sanctions speak for themselves. Co-counsel discovered Ms. Boyd's apparent actions for the first time through Defendants' motion.

Even the appearance of misconduct by Ms. Boyd may already have prejudiced the interests of the class. As the Court observed at the June 26, 2025 status conference, "to the extent this was done, it contaminates the questionnaire." Conf. Tr. at 6:2-3. The questionnaires have an "informative value in terms of an overall settlement value of the case." *Id.* at 6:8-9. The mere suspicion of Ms. Boyd's "contamination . . . diminishes those values." *Id.* at 6:10-11. In any case, the fact that Ms. Boyd must personally defend her actions creates diverging interests between herself and the Class and distracts from resolving this case.

Although the undersigned do not dispute that Ms. Boyd made the statements reflected in the exhibits to Defendants' motion, co-Class Counsel oppose sanctioning class members or trial plaintiffs in any way—as set forth in the accompanying Response to Defendants' Motion for Sanctions.[6] Indeed, Ms. Boyd's conduct detrimental to settlement may already have harmed the Class: plaintiffs and class members should not suffer further.

---

[6] As the Court correctly observed, because the questionnaires "are not going to be evidence, it's hard to see that anyone was really damaged in the context of trials." Conf. Tr. at 6:11-13.

10

**II.  The Court should preclude Ms. Boyd from unilaterally interfering with the Court appointed roles of Class Counsel and should enforce the appointment orders and Leadership Agreement.**

Ms. Boyd's unilateral actions—her attempted *coup*, disregard of Court orders, and lapses of judgment—present a real and present danger to the Class. They threaten to impede preparation for trial and the trial itself. They risk turning the trial into a sideshow about Ms. Boyd's conduct rather than the merits of the case, harming the credibility of the Plaintiffs. And they risk undermining all progress made in resolving this case. This would have far-reaching consequences for the Class.

All attempts at private ordering have failed. Ms. Boyd has demonstrated she is unwilling to honor agreements made by Class Counsel concerning the direction of this case or hear guidance on applicable rules of professional conduct. This makes it impossible for Class Counsel to restrain Ms. Boyd or work with her collaboratively in preparation for trial.

The undersigned parties invoke the Court's "nearly unfettered discretion in managing complex litigation," *Newburg* § 10:1, and urgently request that the Court oversee the proper supervision of this class action. To protect the trial plaintiffs and absent class members from further prejudice, the Court should issue an Order to:

(a) Enforce the Court's appointment orders and preclude Ms. Boyd from ousting all appointed Class Counsel and prosecuting this case herself;

(b) Appoint Zuckerman Spaeder and Perry Law as trial counsel, with authority to oversee the presentation of evidence and argument at trial;

(c) Direct that, in the absence of consensus over trial strategy, pre-trial preparation, and conduct of the trial, all Class Counsel shall abide by every decision reached by a majority of all Court-appointed Class Counsel;

(d) Direct Ms. Boyd to take all steps necessary to ensure that any plaintiffs or other witnesses cooperate fully in the preparation and presentation of testimony at trial, including following the direction of trial counsel or a majority of Class Counsel; and

(e) Adopt any other measure deemed necessary to protect the interests of the Class.

Given the urgency of this motion, Class Counsel respectfully request a conference in chambers with the Court.

Dated: July 7, 2025                                    Respectfully submitted,

Cyril V. Smith                                         /s/ *Michael D. Hausfeld*
ZUCKERMAN SPAEDER LLP (Baltimore)                      Michael D. Hausfeld
100 East Pratt Street, Suite 2440                      Scott A. Gilmore
Baltimore, MD 21202                                    Amanda E. Lee-DasGupta
(410) 332-0444                                         Claire A. Rosset
csmith@zuckerman.com                                   Mary S. Van Houten Harper
                                                       Percy Metcalfe
Aitan D. Goelman                                       HAUSFELD LLP
ZUCKERMAN SPAEDER LLP (DC)                             1200 17th Street, Suite 600
1800 M Street, Suite 1000                              Washington, DC 20036
Washington, DC 20036                                   (202) 540-7200
(202) 778-1996                                         mhausfeld@hausfeld.com
agoelman@zuckerman.com                                 sgilmore@hausfeld.com
                                                       alee@hausfeld.com
                                                       crosset@hausfeld.com
                                                       mvanhouten@hausfeld.com
                                                       pmetcalfe@hausfeld.com

                                                       James D. Gotz
                                                       HAUSFELD LLP
                                                       One Marina Park Dr., Suite 1410
                                                       Boston, MA 02210
                                                       (617) 207-0660
                                                       jgotz@hausfeld.com