# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> BNP PARIBAS S.A. and BNP PARIBAS US WHOLESALE HOLDINGS, CORP., <br><br> Defendants. | Case No. 1:16-cv-03228-AKH-JW |

### DECLARATION OF CYRIL V. SMITH

Cyril V. Smith submits this unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am counsel of record for the Plaintiff class in this matter pursuant to this Court's order of appointment dated May 16, 2025, and I submit this declaration in support of the Motion of Hausfeld LLP and Zuckerman Spaeder LLP for Relief Under Rule 23(g) (the "Motion"). I have personal knowledge of all facts stated herein, unless otherwise stated, and could competently testify to them if required. Where this Declaration describes the actions or beliefs of other class counsel, I have carefully reviewed its contents with those individuals. In submitting this Declaration, I have not waived — and do not intend to waive — either the attorney-client privilege or the work-product protection.

2. I have been practicing law for almost four decades, since my 1986 graduation from the University of Virginia School of Law, and have been a partner in the firm of Zuckerman Spaeder ("Zuckerman") since 1994. Before that, I was an associate lawyer at



1

Zuckerman, and before that an associate lawyer at the Washington, D.C. firm of Dickstein Shapiro.

3. For at least the last three decades, my practice has focused on the representation of plaintiffs, and particularly plaintiff classes, in civil litigation and trials. Before that, my work primarily focused on the representation of individuals who were the subject of federal criminal investigation, prosecution and trial.

4. As a result, I have tried a number of cases — principally to juries — in both federal and state court. Many of those trials — at least ten — have been protracted, lasting a month or more. In 2017, I was elected to the American College of Trial Lawyers.

5. I have also been appointed by state and federal courts to significant leadership positions in the representation of plaintiff classes. Most recently, I concluded my service on the Plaintiffs' Steering Committee for the plaintiff subscriber class in *In re Blue Cross-Blue Shield Antitrust Litigation*, a Multi District Litigation matter centered in the Northern District of Alabama where my work began in 2012. (Michael Hausfeld and David Boies served effectively as co-Lead Counsel for the class in that matter.) That case, which was at various points the largest private antitrust case in the country, resulted in substantial changes to the national health insurance markets as well as some $2.7 billion for the benefit of the plaintiff class of insurance purchasers.

6. All of the protracted cases that I have tried have involved multiple law firms. I have never experienced any substantial difficulty in managing or reconciling the views or interests of the law firms and clients involved, whether more recently when I was acting as lead trial counsel, or much earlier in my career in a different capacity. At the same time, it has been my universal experience that every trial team must have a settled method for making decisions,



2

10226422.1

and those decisions must be final. The failure to agree on such a process, or to follow and carry out those decisions, can be fatal to the tasks both before and at trial.

7.  In late January 2025, Mr. Hausfeld contacted me to ask whether I was in a position to act as lead trial counsel in the trial of this matter. He explained that he and his co-lead class counsel, Lee Boyd, had reached the joint conclusion that neither they nor their firms were appropriate for the trial of this case, and that they therefore sought to affiliate other counsel who would lead and conduct the trial of the case.

8.  Mr. Hausfeld further explained that Ms. Boyd and her law firm, Hecht Partners, wished to have another firm involved as well in the trial of the case, and that firm turned out to be Perry Law, including its named partner Danya Perry, and her colleagues Joan Illuzzi-Orbon and Josh Perry. My partner, Aitan Goelman, a former Assistant United States Attorney in this District with decades of trial experience in his own right, and a fellow member of the American College of Trial Lawyers, agreed to try the case with me.

9.  Although I did not know Ms. Perry, Mr. Goelman knew her from his time in this District, where she too had served as an Assistant United States Attorney. I also learned of Ms. Illuzzi-Orbon's deep experience representing the victims of sexual assault as a member of the Manhattan District Attorney's Office, and her own membership in the American College of Trial Lawyers.

10. Mr. Goelman and I quickly established a solid working relationship with the Perry Law firm, and were promptly able to agree on the division of work both before trial and at trial. Broadly speaking, that division of work assigned most of the "victim-focused" witnesses (the testifying plaintiffs, certain percipient witnesses, and certain medical/psychological experts) to Perry Law, and all other witnesses to Zuckerman. Both in my presence, and as reported to me by



3

Ms. Perry and Ms. Illuzzi-Orbon, Lee Boyd confirmed that Perry Law was to try the case, and to focus on the victim side of the case. This was true at the outset of our work with Perry Law, and immediately after this Court made clear on April 9 that it would select only three Named Plaintiffs for the September 2025 trial.

11.     Starting with the initial months of our work, there were disagreements with Ms. Boyd as to tactics or assignments, but Ms. Boyd generally deferred to Zuckerman's decisions. Thus, for example, we were able to make a unified and consistent presentation at each of the April 9 and May 20 hearings, where Zuckerman acted as lead counsel. (Of course, as in all previous substantial, multi-firm cases that I have been involved on, no important decision was made without input from both co-lead Class Counsel.)

12.     These disagreements intensified greatly beginning in May 2025. Without waiving any applicable privilege or protection, I can inform the Court that these disagreements initially related to the form and content of submissions to this Court.

13.     When these disagreements arose, Mr. Goelman and I consulted frequently with our fellow trial counsel at the Perry Firm. In each case, we were able to reach agreement with them on how to proceed. Ms. Boyd, however, asserted that she had a veto power over every decision in the case, large and small, regardless of the views of Mr. Hausfeld, her co-lead Class Counsel, or both trial teams at Zuckerman and Perry Law. She contended, for example, that no pleading could be filed without her approval of specific language; no witness could be assigned or prepared without her approval. Many of these disagreements became heated on Ms. Boyd's end, even on relatively small matters. In my thirty-nine years of practice, I had never seen an attorney or law firm assert such a right, particularly in a way that potentially undermined their clients' interests.



4

10226422.1

14. These disagreements were problematic at several levels. For one thing, they created an ongoing distraction from critical trial preparation tasks. For another, they threatened our ability to make the best decisions on behalf on the class, and to have those decisions "stick."

15. To protect the Plaintiff class, we worked diligently to forge a durable solution to this problem. Together with co-lead Class Counsel Mr. Hausfeld and Ms. Boyd, and the Perry Firm, we reached an agreement on how to make decisions where Ms. Boyd was at loggerheads with her co-lead Class Counsel Mr. Hausfeld, or the trial team, or both. That agreement called for a majority vote among trial counsel to control trial and trial preparation decisions. In the wake of this agreement, however, Ms. Boyd quickly repudiated it and re-asserted her unilateral veto power over every decision in the case — stating on May 29, 2025 that she "will no longer agree" to abide by her commitment.

16. This situation was far from ideal. However, we knew that Ms. Perry and Ms. Illuzzi-Orbon were extremely capable and highly experienced trial lawyers, and were confident that — once we got to trial — we could collectively present the Plaintiffs' case succinctly and in a compelling fashion. At the same time, the trial team agreed that Ms. Boyd lacked the relevant experience and temperament to try the case.

17. Matters took a sharp turn for the worse in recent weeks. Ms. Perry and Ms. Illuzzi-Orbon informed us, among other things, that Ms. Boyd had told them that she, and she alone, was capable of preparing for and trying the case as it related to the victim-witnesses. In addition, for purposes of meeting with Class members, Perry Law had sought and obtained confidential outside ethics advice. Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with Class members, and on at least one occasion gave her advice about applicable ethics rules.

5

10226422.1

18.     Based on these observations, Perry Law had reached the judgment that Ms. Boyd could not effectively try the case, and had so informed Hecht Partners.

19.     Following these exchanges (but without consulting Mr. Hausfeld, let alone informing this Court), David Hecht (Ms. Boyd's partner) directed Perry Law to stop all work on the case.

20.     Perry Law did not seek this termination and was ready to prepare for and try the case. Indeed, Ms. Illuzzi-Orbon had previously scheduled a trip to San Diego to meet with victim-side witnesses and prepare them for trial. The Hecht Partners' directive to stop work would have prevented that vital trial preparation.

21.     At Mr. Hausfeld's urging, Hecht Partners finally relented and agreed that Ms. Illuzzi-Orbon should travel to San Diego. But that trip proved to be a waste of time. Far from facilitating or encouraging the victim-witnesses' work with Ms. Illuzzi-Orbon, Ms. Boyd limited Ms. Illuzzi-Orbon's time with one witness, and she was unable to spend any time at all preparing a different witness's testimony.

22.     In the wake of the San Diego trip, Ms. Perry and Ms. Illuzzi-Orbon were effectively sidelined from trial preparation by Ms. Boyd and Hecht Partners, who informed Perry Law that Hecht Partners would not pay them for additional work. After learning of these facts, Mr. Goelman and I met with Ms. Boyd (along with her partners Mr. Hecht and Mr. Price) and Mr. Hausfeld, and Prof. Daniel Capra, to attempt resolution of these disputes, without success. If anything, matters have worsened in recent days, as Ms. Boyd has not only claimed her need to approve every decision before and at trial, but has also asserted that she should take on many of the roles traditionally assigned to lead counsel at trial. I am concerned, based on my experience,



6

10226422.1

that without Court action, the interests of the 23,000-member Class could well be impaired both in trial preparation and at the trial itself.

23. Despite these developments, Perry Law remained counsel of record in this case, had not sought to withdraw, and this Court's order appointing them continued in force. However, the instruction by Ms. Boyd's firm to Perry Law to cease work on the case became real and final on Tuesday, July 1, 2025, when Ms. Perry wrote to plaintiffs' counsel as follows: "As everyone has been aware, Perry Law's limited engagement by Hecht in this matter has been terminated." Ms. Perry was faced, she said, with a choice between "formally withdrawing" and "otherwise re-engag[ing] in short order." Mr. Hecht, Ms. Boyd's partner, responded by thanking her and stating that "We acknowledge and accept your formal withdrawal from the matter on behalf of the class."

24. Again, Ms. Boyd and Hecht Partners had neither sought nor obtained this Court's authority for the withdrawal of Perry Law from this proceeding. Similarly, Ms. Boyd did not seek or obtain the consent of Mr. Hausfeld to the termination of Perry Law, and I understand that Mr. Hausfeld rejects that action.

25. These problems are compounded by another recent development. On Wednesday, June 25, Defendants filed their Motion for Sanctions as a Result of Plaintiffs' Counsel's Misconduct and for a Hearing, ECF 750 (the "Sanctions Motion"). That motion described certain conduct by Ms. Boyd and sought sanctions – including potentially sanctions against the class – as a consequence.

26. The Sanctions Motion raises additional real and substantial questions about Ms. Boyd's ability to effectively prosecute this case at trial. And regardless of the accuracy or inaccuracy of the charges contained in that Motion, it creates at least a potential conflict between



7

Ms. Boyd's need to address and defend against the Motion, on the one hand, and any role she might play at trial, on the other. The filing of the Motion thus further underlines the need for appointment of trial counsel who are not burdened by either the allegations in the Motion, the need to respond to them, or the need to calibrate the behavior of Plaintiffs' counsel vis-à-vis this Court, the victim-witnesses, or defense counsel, in order to grapple with the Sanctions Motion. And even if that Motion is denied, it still creates a potential actual conflict for Ms. Boyd (as well as the obvious appearance of one), because it presents allegations and alleges facts which defendants will argue can be used to cross-examine witnesses at trial. It is my understanding that the applicable ethical rules prevent counsel who are witnesses to the subject matter of trial testimony from participating in that trial.

27. For all of these reasons, I believe that the best interests of the class require an order appointing trial counsel, namely Zuckerman Spaeder and Perry Law as contemplated in ECF 697; requiring that all class counsel abide by every decision reached by a majority of class counsel; and further directing Ms. Boyd to take all steps necessary to ensure that any named plaintiffs or other victim witnesses cooperate fully in the presentation of testimony at trial, including following the direction of trial counsel or a majority of trial counsel. In the alternative, Zuckerman Spaeder requests that this Court grant leave for its withdrawal from the case.

Dated: July 6, 2025
      Baltimore, Maryland

_____
Cyril V. Smith

10226422.1