**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENTESAR OSMAN KASHEF, *et al.*,<br><br>　　*Plaintiffs*,<br><br>　　v.<br><br>BNP PARIBAS S.A., BNP PARIBAS S.A. NEW YORK BRANCH, and BNP PARIBAS US WHOLESALE HOLDINGS, CORP. (f/k/a/ BNP PARIBAS NORTH AMERICA, INC.),<br><br>　　*Defendants*. | No. 1:16-cv-03228-AKH-JW |

**July 18, 2025 DECLARATION OF FRANZ WERRO,**

**PROFESSOR OF LAW AT THE UNIVERSITY OF FRIBOURG AND THE GEORGETOWN UNIVERSITY LAW CENTER, FORMER PRESIDENT OF THE COUNCIL OF THE SWISS INSTITUTE OF COMPARATIVE LAW**

I, Franz Werro, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

INTRODUCTION

1.  I have been asked by the plaintiffs to respond to the Court's request for clarification on the burden of proof under Swiss law. In preparing this Declaration, I reviewed the following materials:

> a. The Court's decisions denying BNP Paribas's motion to dismiss, ECF No. 193 ("MTD Op."), and motion for summary judgment, ECF, No. 499 ("SJ Op.");
>
> b. Plaintiffs' motion for the adoption of Swiss law findings (ECF No. 709) and proposed order (ECF No. 710) as well as BNPP's opposition to such motion (ECF No. 740);[1]
>
> c. BNPP's Stipulated Statement of Facts as part of its guilty plea agreement in *United States v. BNP Paribas SA*, Stipulated Statement of Facts (ECF No. 241-3) ("SSOF"); and
>
> d. The authorities cited below.

2.  I am a tenured Professor of Law at the Fribourg University Faculty of Law in Switzerland, where I have held the Chair of the Law of Obligations and European Private Law since 1994. I am also a tenured Professor of Law at Georgetown University Law Center, where I have taught International Sales Law and Comparative Law since 1999. In 2019, the Swiss Government appointed me as the President of the Council of the Swiss Institute of Comparative Law. My tenure in this capacity came to an end on April 1, 2025.

3.  As the Court observed in its February 16, 2021 Opinion ("Opinion"), I have "written extensively on Article 50.1" and have "been cited by the Swiss Federal Supreme Court

---

[1] I consulted with Plaintiffs' counsel in the preparation of Plaintiffs' Proposed Findings on Swiss Law, ECF Nos. 709, 710. I confirm that the proposed findings are an accurate presentation of the legal standards on liability and damages as applied to this case.

on this precise provision in several judgements."[2] The Court's Opinion principally adopted my opinion on the interpretation and application of Article 50.1 CO:

> The Court therefore finds Professor Werro's descriptions of Article 50.1 and the surrounding case law to be coherent, credible, and supported by Swiss case law. In contrast, Professor Roberto's interpretation is unsupported by, and at times inconsistent with, those cases. The Court adopts Professor Werro's view that Article 50.1 allows liability if an accomplice "intentionally or unintentionally assists the illicit act of the perpetrator who himself is also at fault." Werro Dec. ¶ 33. And the Court agrees that, as applied to this case, Plaintiffs must "allege, at a minimum, that BNPP consciously cooperated with the Sudanese government by providing financial support and that it knew or should have known, had it exercised due care, that its support would contribute to the Sudanese government's violation of human rights." Werro Dec. ¶ 35.[3]

4. I confirm that since the Court's April 18, 2024 summary judgment opinion, there has been no intervening decision by the Swiss Supreme Court concerning Article 50(1) CO.

5. Note that I offer no opinion as to whether, pursuant to applicable rules of conflicts of law that govern this matter, Swiss law, U.S. federal law, or New York law provides the governing standard of proof.

## I.   The Burden of Proof Under Swiss Tort Law

6. The Swiss legal system has no jury trials. The trial judge decides all questions of law and findings of fact, with a margin of appreciation and a flexibility on evidentiary issues that do not translate easily to an American federal jury trial.

7. The term "burden of proof" encompasses both the burden of persuasion (which party must persuade the trier of fact on a certain issue) and the standard of proof (the degree of certainty by which a fact must be proven before a judge may enter an order).

---

[2] *Kashef v. BNP Paribas SA*, No. 16-cv-3228 (AJN), 2021 WL 603290, at *3 (S.D.N.Y. Feb. 16, 2021).
[3] *Id.* at 4.

2

8. Under Article 8 of the Swiss Civil Code, the plaintiff in a tort suit ordinarily bears the burden of persuasion: "Unless the law provides otherwise, the burden of proving the existence of an alleged fact shall rest on the person who derives rights from that fact."[4]

9. Swiss law recognizes four standards of proof, in descending order:

- *Beyond a reasonable doubt* – the criminal standard of proof;
- *Full conviction* – the general civil standard in cases where direct proof is readily available;
- *Preponderant likelihood* – the civil standard (i) on questions of causation, or (ii) in cases necessarily relying on circumstantial evidence, or (iii) where provided by statute.
- *Plausibility* – the standard in summary or preliminary proceedings.

10. **Full Conviction.** In civil cases, the general standard of proof is *full conviction*. Under this standard, "a fact is considered established when the judge is satisfied that an allegation is true." *Coffeemaker Case*, Swiss Sup. Ct. 133 III 81 at 4.2.2, p. 89 (2006). *See also Prospectus Case*, Swiss Sup. Ct. 132 III 715 at 3.1, p. 719 (2006) ("evidence is deemed to have been provided if the court is convinced of the accuracy of a factual assertion from an objective point of view."). The courts generally apply the full conviction standard in straightforward cases, where direct evidence is readily available to the Plaintiff. *See Coffeemaker Case* at p. 88.

11. **Preponderant Likelihood.** Courts apply a lower standard of proof to determine the causal link between an illicit act and the damage: preponderant likelihood (vraisemblance prépondérante). *See* Werro, La responsabilité civile, 3rd ed., n. 258. Courts also require proof by

---

[4] The Swiss government's non-official English translation of the Civil Code is available at: https://www.fedlex.admin.ch/eli/cc/24/233_245_233/en.

3

a *preponderant likelihood* in any other case that would otherwise require stricter proof but where direct evidence is not readily available through no fault of the party who bears the burden of proof or where such a party must rely on circumstantial evidence. *Coffeemaker Case* at p. 88. Swiss writers call this circumstance "evidentiary difficulty" ("*Beweisnot*" in German). As the Swiss Supreme Court put it, the preponderant likelihood standard of proof applies "when, due to the nature of the case, strict proof is not possible or cannot reasonably be required, in particular if the facts alleged by the party bearing the burden of proof can only be established indirectly or by circumstantial evidence." *Id.*[5]

12.  "Preponderant likelihood presupposes, from an objective point of view, that there are substantial grounds for the accuracy of an allegation, [and] that other possibilities exist, but do not appear to have played a determinative role or do not reasonably enter into account." *Delayed Stroke Treatment Case*, Swiss Sup. Ct., 4A_401/2023 (2024) at 6.4. Declaration of Maxim Price in Support of Plaintiffs' Opening Memorandum of Law on Burden of Proof Under Swiss Law ("Price Decl."), Ex. 1.

13.  Under this preponderant likelihood standard, "the judge [the trier of fact] must follow the description of the facts that they consider to be the most probable of all possible sequences of events." *Insolvency Compensation Case*, Swiss Sup. Ct., 144 V 427 at 3.2, p. 429 (2018). Price Decl. Ex. 2.

---

[5] The Coffeemaker Case illustrates a "evidentiary difficulty." There, the plaintiff was injured at a dinner party by an exploding coffee pot and taken to a hospital. 133 III 81 at p. 82. When she returned home, her guests had swept up the shattered product and thrown it in a garbage can. *Id.* The lower court dismissed the plaintiffs' product liability claim, holding that without the damaged product, she could not prove a product defect with sufficient certainty. The Swiss Supreme Court reversed, holding that strict proof could not reasonably be required because the plaintiff could only establish her case through circumstantial evidence: witness testimony on the events. The Court remanded the case to be reconsidered under the preponderant likelihood standard. *Id.* at 4.2.3.

14. It remains that a plaintiff fails to establish proof by a preponderant likelihood "if, according to the special circumstances of the case, there are other possibilities that are just as seriously considered or are even more likely…" *Gravel Pit Case*, Swiss Sup. Ct., 107 II 269 (1981) at 1, p. 273. *See* Price Decl., Ex. 3. "The mere possibility of a certain state of affairs is not sufficient to meet this standard of proof." *Shoulder Injury Case*, Swiss Sup. Ct., 8C_331/2020 (2021) at 5.3.

15. However, as the Swiss Supreme Court has further noted, "case law renounces using percentages of probability, unlike legal scholars who propose a percentage of probability significantly higher than 51% for preponderant likelihood." *Shoulder Injury Case*, Swiss Sup. Ct., 8C_331/2020 (2021) at 5.3.[6]

16. In effect, the Swiss Supreme Court's case law pertaining to the preponderant likelihood standard highlights that it is the concurrence of evidence presented that will convince the judge, however low the percentage or likelihood of an allegation may be. In a medical case, a patient suffered complications after surgery. Although a medical expert had determined that complications occur in only 13% of cases, the Swiss Supreme Court found that in conjunction with the fact that the patient had complained about pain for the first time three days after the surgery had taken place, surgery was the cause of the complications that had occurred. *See* Sup. Ct. 4A_329/2012.

17. Courts therefore often use a *faisceau d'indices* (a series of indicators) to consider whether a plaintiff has brought forth sufficient evidence. In the *Sanofi vaccination Case*[7], the ECJ

---

[6] This is not to say the courts will not consider a percentage of probability if offered into evidence. For example, in the *Delayed Stroke Treatment Case*, an expert witness testified that if doctors had intervened earlier, the patient would have had a 22% to 41% chance of a better outcome. In this case, the Swiss Supreme Court affirmed that a mere 41% probability was insufficient to meet a preponderant likelihood standard. Price Decl. Ex. 1.

[7] ECJ, C-621/15, ECLI:EU:C:2017:484, W e.a./Sanofi Pasteur MSD. This case is applicable to Swiss law (*see* Swiss Sup. Ct., 137 III 226, at 2.2).

ruled that a vaccine could be considered defective based on "[…] the temporal proximity between the administering of a vaccine and the occurrence of a disease and the lack of personal and familial history of that disease, together with the existence of a significant number of reported cases of the disease occurring following such vaccines being administered […]"[8].

18.     The Swiss Supreme Court, using the *faisceau d'indices approach*, has also recognized that causation may be established even where the defendant's conduct is only a contributing or secondary factor in the harm. In the *Apricot case*, a group of farmers claimed that toxic emissions from an aluminum producer were responsible for the loss of 90% of their apricot harvest. The Swiss Supreme Court ruled in the farmers' favor, employing a two-step analysis to establish natural causation. Swiss Sup. Ct. 109 II 304. First, it identified a *faisceau d'indices* suggesting that the aluminum emissions could, in principle, have had a detrimental effect on the crops. Second, and in light of the specific circumstances, the Court found it unreasonable to assume that the emissions had played no role in the damage. Therefore, it concluded that, even if the emissions were only a contributing ("secondary") factor, they must have had a harmful impact on the apricot harvest.

**II.    Applying the Law in the Present Case**

19.     In my opinion, as described more fully below, a Swiss court considering this case would apply a preponderant likelihood standard as to all elements of Plaintiffs' claims under Article 50(1) CO.

20.     As the Court correctly has held, to establish a claim under Article 50(1) CO, a plaintiff must show that "(1) a main perpetrator committed an illicit act, (2) the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to

---

[8] ECJ, C-621/15, ECLI:EU:C:2017:484, W e.a./Sanofi Pasteur MSD, para. 41.

an illicit act, and (3) their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." ECF No. 499, SJ Op. at 3.

21. **Illicit Act**

22. The Plaintiffs allege that they suffered the following illicit acts at the hands of the Government of Sudan or its agents:

    a. forced displacement (in violation of their rights to private and family life and the home);

    b. violations of freedom of movement (*i.e.*, arbitrary detention);

    c. harmful or offensive physical contact in violation of bodily integrity, including beatings, rape, torture, or cruel, degrading, or inhumane treatment;

    d. violations of mental well-being, including being placed in fear of persecution or suffering the wrongful killing of family members.

23. A Swiss court would require the Plaintiffs to prove these illicit acts by a preponderant likelihood because doing so would necessarily require circumstantial evidence. Direct evidence is not reasonably available because such evidence, if it still exists, is likely in the hands of the Government of Sudan. In a country ruled by a military dictatorship and embroiled in a civil war, it would be unreasonable to expect that the Plaintiffs could obtain direct evidence from Sudan. Instead, a Swiss Court would apply a preponderant likelihood standard of proof. In my opinion, a Swiss court would thus assess whether the Plaintiffs have presented sufficient circumstantial evidence to satisfy the Court that other possible explanations for their injuries are not as likely or even more likely.

24. **Conscious Assistance**

25. "The Second Element of Article 50 (1) CO requires that 'the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to an illicit act.'" MTD Op. at *3. This element requires proof that the Defendant (i) provided some form of assistance to the Government of Sudan, (ii) did so consciously (meaning the Defendant was aware of its actions), and (iii) knew or should have known that it was contributing to the Government of Sudan's human rights abuses.

26. A Swiss Court would also apply a preponderant likelihood standard of proof to this element. Evidence of BNPP's assistance is in the possession of the bank. As I understand from the bank's Stipulated Statement of Facts in its criminal conviction, the bank withheld evidence under Switzerland's bank secrecy laws and redacted information in the documents produced in the criminal case and this case. This situation clearly presents a *Beweisnot*—evidentiary difficulty—under which a court would make do with circumstantial evidence and require proof by a preponderant likelihood. Indeed, proving that the bank *should* have known it was contributing to human rights abuses necessarily requires inferences drawn from circumstantial evidence.

27. **Culpable cooperation causing the harm**

28. The third element of Article 50(1) CO is that the "accomplice's culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." Kashef, MTD Op. at 6 (internal quotation marks omitted).

29. As stated above, as a general rule Swiss courts apply the preponderant likelihood standard of proof to questions of causation, which invariably require inferences drawn from circumstantial evidence, rather than scientific certitude. As the Swiss Supreme Court has held:

> The injured party does not need to prove the causal link between the damaging event and the injury with scientific precision in either area. The Federal Supreme Court has always rejected this, as it would often overburden the injured party. He cannot be expected to always demonstrate causality in a stringent manner. Nor

8

should the certainty of the occurrence of an event, which the evidence is intended to provide a judge with, be equated with the absolute exclusion of any other possibility. Rather, in cases where the nature of the case does not allow for direct proof, it must be sufficient for the judge to be convinced that the preponderant likelihood speaks in favor of a certain causal course of events.

107 II 269 (1981) at 1, p. 273.

30. I wish to illustrate how the preponderant likelihood standard would apply to natural causation in the specific context of a claim against an accomplice under Article 50(1) CO.

31. As the Swiss Supreme Court made clear in the 2019 *Swisscom* case, the question under Article 50(1) CO is whether the principal perpetrator infringed the rights of the plaintiff and whether the accomplice made a "legally relevant contribution" to that infringement. In other words, the principal must have caused harm and the accomplice's assistance must have contributed to it. However, one should not consider the accomplice's support alone, but the support in conjunction with the acts of the main perpetrator. A plaintiff must therefore establish that the cooperation between the accomplice and the principal facilitated the plaintiffs' injuries. This is what I meant when Judge Allison Nathan quoted my opinion for the proposition that the "accomplice's culpable cooperation was the natural and adequate cause." ECF No. 193 at 5.

32. In general, "'[a] natural causal link exists where the harm would not have occurred at the same time or in the same way or magnitude without the conduct alleged.'" *Id.* (quoting ECF No. 174, Werro Dec. ¶ 47). If, by preponderant evidence, the judge finds a fact to be the natural cause of the harm, the judge will then decide if adequate causation (an equivalent of proximate cause in Anglo-American law) exists. As a basic principle, "'[a]n adequate causal link exists when the wrongdoer's conduct was capable, in the ordinary course of events and common experience, of leading to the kind of result that occurred.'" *Id.* at 6 (quoting ECF No. 174, Werro Dec. ¶ 48). The essential question here is "whether the result of an infringement can reasonably be attributed

9

to a liable party." *Swisscom Case*, Swiss Sup. Ct., 145 III 72 at 2.3.1, p. 77. Although "not every random contributing act that is merely 'somehow' a supportive influence . . . is adequate," this causation standard is met if "the conduct of a contributor" is "generally capable of facilitating the [illicit act] of the direct infringer." *Id.*

33.  The terms "*faciliter*" in French and "*erleichtern*" in German have the same meaning: to make something easier. And that is precisely how this term of art is applied by Swiss courts under Article 50(1) CO. As the Swiss Supreme Court confirmed in its most recent decision on Article 50(1) CO, an accomplice need only make "a legally relevant contribution." *Swisscom Case*, Swiss Sup. Ct., 145 III 72 at § 2.1, p. 73 (2019). To be an adequate basis for liability, that contribution must be "generally capable of facilitating the unlawful" act. *Id.* In other words, "in the usual course of events and general experience of life" the accomplice's assistance was the type of action that would make it easier for the principal to commit the illicit act. *Id.*

34.  For more than a century, the Swiss Supreme Court has made clear that to be liable under Article 50(1) CO, an accomplice need only contribute to the injury—it need not be the direct, but-for cause of the injury. For example, in an 1899 decision concerning accomplices to a barroom brawl, the Supreme Court held that a group of participants were jointly liable as accomplices—even though it could not be proven that any one of them was the but-for cause of the specific eye injury. The Court held it was sufficient that "he contributed to the achievement" and that "this achievement is then to be attributed to him as guilt if he had to have foreseen that this achievement could occur by his action." ECF No. 435-107, *Bar Fight Case*, Swiss Sup. Ct. 25 II 817 (1899) at 824.

35.  BNPP's contribution need not be the "sole or direct cause" of the Plaintiffs' injuries. *Whiplash Case*, Swiss Sup. Ct., 147 V 161 at § 3.2, p. 163 (2021); *Vehicular Homicide*

*Case*, Swiss Sup. Ct., 131 IV 145 at § 5.2, p. 148 (2005). Accordingly, as the *Locksmith Case* instructs, it is sufficient for Article 50(1) CO purposes if BNPP's "financial assistance" was of an "important nature." *Locksmith Case*, Swiss Sup. Ct., 4A_185/2007 at § 6.2.1 (2007). In that case, a locksmith who was infringing a competitor's trademark relied on a third party management service to help with loans and handling accounts receivable. The Court affirmed that the third-party manager was liable as an accomplice for the trademark infringement, without requiring any proof that the trademark would not have been infringed without the accomplice's help.

36. The last criteria for causation is foreseeability *See* ECF No. 193, MTD Op., at 14. In this case, the jury must determine whether "[i]n the ordinary course of events and common experience, it was reasonably foreseeable" that the Defendants' assistance would contribute to the Plaintiffs suffering human rights abuses, ECF No. 193 at 7-8, *Locksmith Case*, Swiss Sup. Ct., 4A_185/2007 at § 6.2.3 (2007).

37. Thus, between 1899 and 2019, the Swiss Supreme Court has consistently required that to be liable an accomplice must have foreseeably contributed to the principal's illicit act. And that illicit act must, of course, be the natural but-for cause of the injury. Here, the question of whether BNPP's support was *the sine qua non* cause or the sole cause of the harm is therefore irrelevant. The Court would not consider the support alone, it would consider the support in conjunction with the acts of the Government of Sudan

38. These principles can be synthesized into the following standard: To establish the element of natural and adequate causation, the Plaintiffs must (1) show that the assistance provided by BNPP to the Government of Sudan could generally enable or strengthen the Government of Sudan's capacity to commit human rights abuses; (2) that it was reasonably foreseeable that providing such assistance could lead to injuries such as the ones Plaintiffs experienced, and (3)

that these injuries would not have occurred at the same time or to the same extent without the human rights abuses that BNPP's assistance facilitated.

39. A Swiss court would require the Plaintiffs to prove these elements by a preponderant likelihood. Not only is this the general standard of proof for causation, but there is a *Beweisnot* ("evidentiary difficulty"), because the direct evidence of what the Government of Sudan did with BNPP's financial support lies in war-torn Sudan. Given the nature of the case, Plaintiffs necessarily must rely on circumstantial evidence.

40. **Harm**

41. An even lower standard of evidence could apply with respect to harm (or damage[9]), whether economic or moral, when it is difficult to establish or quantify (with respect to moral harm, see Swiss Sup. Ct., 4C.283/2005 at 2.1., citing Franz Werro, Commentaire romand (1st ed.), n. 1 ad art. 42), for example, when there is no direct proof of it. Indeed, Article 42(2) CO provides: "Where the exact value of the damage cannot be quantified, the court shall estimate the value at its discretion in the light of the normal course of events and the steps taken by the person suffering damage." (see the Swiss government's non-official English translation of the Code of Obligations, available at https://www.fedlex.admin.ch/eli/cc/27/317_321_377/en).

42. Article 42(2) CO applies if the harm is such that it is very difficult, or even impossible, to establish, if the necessary evidence is lacking or if the plaintiff cannot reasonably be required to provide it (*Beweisnot*) (Swiss Sup. Ct., 4A_431/2015, at 5.1.2.). It enables a judge to accept that the injured party has established the loss, even where this is not based on strict proof (Werro, 3rd ed, n. 1080).

---

[9] The term "harm" is another term for damage or loss. All three terms can be used interchangeably.

43. While Article 42(2) CO lightens the burden of proof in favor of the injured party, the plaintiff must allege and prove all the circumstances that may serve as evidence to establish the loss (Swiss Sup. Ct., 144 III 155, at 2.3). Indeed, these circumstances must make it possible for a judge to rule that the harm exists and to estimate its approximate amount (Swiss Sup. Ct., 131 III 360, at 5; see also Swiss Sup. Ct., 128 III 271 at 2b, where the court accepted plaintiff's position).

44. For the foregoing reasons (para. 41 ss), a Swiss court would apply Article 42 (2) CO to this case. Alternatively, should the prerequisites of Article 42 (2) CO not be met, a Swiss Court would decide the question of the proof of the loss on the basis of the preponderant likelihood standard (see para. 39).

45. Lastly, I will correct the Defendants' mischaracterization of my opinion concerning moral damage. I previously noted that the Swiss Supreme Court has "rejected the idea that the assessment of satisfaction [moral damage] should be based on schematic standards." And requires that the "amount of satisfaction must not be determined according to fixed tariffs, but must be adjusted to the individual case." The Defendants have misconstrued this as meaning that Swiss law prohibits awarding class wide damages or precludes a Court from awarding the same amount of moral damages to multiple victims who have all suffered a common injury. This is not at all what I, or the Swiss Supreme Court, intended. There are no class actions in Swiss procedural law, so there is no substantive norm on the availability of class wide damages.

46. When the Court states that the moral damage must not be determined according to fixed tariffs, the Court is distinguishing Switzerland's approach to personal injury damages from those of other civil law countries, which publish fixed tariffs prescribing the exact amount of damages available for enumerated types of injuries. As the cases cited in Plaintiffs' Proposed Swiss

13

Law findings illustrate, the Swiss Supreme Court and Swiss lower courts routinely set a baseline amount of moral damage and award the same sum to victims who suffered substantially similar injuries.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 18, 2025

_____
Dr. Franz Werro