# EXHIBIT A

Christoph Müller
Professor, attorney-at-law
University of Neuchâtel Faculty of Law
LL.M. (Columbia Law School, New York)
Clare Hall College, Cambridge (UK)

01 AUGUST 2025

# EXPERT REPORT

### IN THE MATTER OF

### KASHEF, *ET AL.* (PLAINTIFFS)

and

### BNP PARIBAS SA, *ET AL.* (DEFENDANTS)

before the United States District Court Southern District of New York

Case 1:16-cv-03228-AKH

Avenue du 1$^{er}$-Mars 26, 2000 Neuchâtel (Switzerland)
**Phone** +41 32 718 12 39                                               **Fax** +41 32 718 12 01
**E-mail** christoph.mueller@unine.ch                         **Website** www.unine.ch/droit

I. Introduction ................................................................................................. 3
   1. Instructions ........................................................................................... 3
   2. My qualifications ................................................................................. 3
   3. Documents reviewed ........................................................................... 5
II. Executive summary ..................................................................................... 5
III. The burden of proof is a matter of Swiss substantive law ................................................. 5
IV. Plaintiffs bear the burden of proof for all elements under Article 50(1) SCO ............................. 6
V. The standard of proof for all elements of Article 50(1) SCO is "full conviction" ........................... 7
VI. Plaintiffs must prove natural causation with "preponderant likelihood" ................................... 9
VII. Under certain circumstances, Plaintiffs must prove the quantum of the loss or harm suffered with "preponderant likelihood" ................................................................................. 11
VIII. Conclusion ................................................................................................. 12
IX. Confirmations ............................................................................................. 12

Neuchâtel, 01 August 2025

I, Christoph Müller, declare as follows pursuant to 28 U.S.C. § 1746:

## I. Introduction

### 1. Instructions

1. I have been instructed to submit a fourth legal expert report (the "**Expert Report**") on Swiss law in connection with the proceedings before the United States District Court Southern District of New York ("**Court**") (Case 1:16-cv-03228-AKH) between Entesar Osman Kashef, *et al.* (the plaintiffs who are referred to collectively as the "**Plaintiffs**") and BNP Paribas SA ("**BNP Paribas**") and BNP Paribas U.S. Wholesale Holdings, Corp. ("**BNP Paribas U.S. Wholesale**") (together "**Defendants**") to address the burden of proof under Swiss tort law.

2. According to these instructions, this Expert Report is limited to Swiss law.

3. This Expert Report will also address certain arguments made in Prof. Franz Werro's latest declaration of 18 July 2025 ("**Declaration Werro, July 2025**") and Plaintiffs' opening memorandum of law on the burden of proof under Swiss law and the admissibility of refugee/asylum grants pursuant to Federal Rule of Evidence 803(8) ("**Plaintiffs' Motion**").

### 2. My qualifications

4. Since 2006, I have been a full professor at the Faculty of Law at the University of Neuchâtel (Switzerland) teaching tort law, the law of specific contracts, comparative and European private law and contract drafting. From 2014 to 2016, I was the dean of the Faculty of Law. From 2016 to 2017, I was a visiting scholar at the Faculty of Law at the University of Cambridge (U.K.) and a visiting fellow at Clare Hall College, Cambridge (U.K.).

5. Before my appointment as full professor, I worked for six years in the dispute resolution departments of two major Swiss law firms, focusing on international commercial arbitration and litigation.

6. In 1995, I graduated from the University of Neuchâtel and I was admitted to the bar in Switzerland in 1997. In 2000, I obtained an LL.M. from Columbia University (New York) with honours, and in 2002, I obtained a *juris doctor* degree with a *summa cum laude* distinction from the University of Neuchâtel.

7. I am the author of various books and articles in the fields of tort law, contract law, comparative private law and international arbitration. In particular, I am the author of a textbook on Swiss tort law in French (*La responsabilité civile extracontractuelle*, Helbing Lichtenhahn, Basel 2013, 312 pages). Since my third expert report of 8 September 2023, I have published the 2nd edition of the

3

French version of this textbook. Given the great success which this book encountered, the commercial editor invited me to write an updated version in German (*Ausservertragliches Haftpflichtrecht*, Helbing Lichtenhahn, 319 pages) this year. In 2023, the 4th edition of my commentaries (in German) on the most important statutory provisions of Swiss tort law (Arts. 41-49 und 52-61 OR (Haftpflichtrecht), in: Atamer/Furrer (eds.), Handkommentar zum Schweizer Privatrecht, Obligationenrecht, Allgemeine Bestimmungen, 4th ed., Schulthess Verlag, Zurich/Geneva 2023, at 279-348, 368-438) has been published. All these publications are regularly cited by the Swiss Federal Supreme Court. In the commentary on the Swiss Road Traffic Code, I have also commented in French on the relevant provisions on tort liability (Bussy/Rusconi/Jeanneret/Kuhn/Mizel/Müller (eds.), Code suisse de la circulation routière commenté, Helbing Lichtenhahn, Basel 2015, at 680-881), including Article 66 concerning the plurality of injured parties.

8. Furthermore, I was one of the three experts in charge of proposing new tort law provisions for the future Swiss Code of Obligations (Huguenin/Hilty (eds.), *OR/CO 2020: Schweizer Obligationenrecht – Entwurf für einen neuen allgemeinen Teil*, Schulthess Verlag, Zurich/Basel/Geneva 2013, at 152-95). I am also the co-editor of a monthly newsletter on tort and insurance law (https://rcassurances.ch) in which I regularly comment on the most recent Swiss Supreme Court cases in the field of tort law. In this context, I am also the co-organiser of a biannual conference on tort and (social) insurance law as well as the co-editor of, and contributor to, the books which are published on the topic of the conference (e.g., the last conference concerned the topic of the assessment of personal injury: Dupont/Müller (eds.), *L'évaluation du prejudice corporel, Questions pratiques et actualités en droit de la RC et des assurances*, Helbing Lichtenhahn, Basel/Neuchâtel 2021). My publications (including those relating to tort law) are regularly cited by the Swiss Federal Supreme Court and lower Swiss courts. In 2007, I was invited by Professor Franz Werro to give a speech and provide a written contribution concerning the central topic of this case, i.e., joint and several liability according to Article 50 SCO (*La solidarité parfaite*, in: Werro (ed.), *La pluralité des responsables*, Stämpfli éditions, Berne 2009, at 31-49). I have, moreover, written several legal expert opinions on various tort law issues under Swiss law.

9. Since 1995, I have acted as arbitrator and legal expert in over 250 arbitrations (both institutional, e.g., ICC, Swiss Arbitration Centre, LCIA, Swedish Chamber of Commerce, UNCITRAL, WIPO, CAS, DIS, and *ad hoc*) and court proceedings. I am also an arbitrator on the General List of the CAS.

10. I have also been invited as a Visiting Professor at the *Scuola de Giurisprudenza* of the *Università degli Studi* of Florence from 1 January to 30 June 2024.

11. I am bilingual in German and French. I am also fluent in English and Italian.

12. I am compensated at the rate of CHF 700 per hour. My compensation is not dependent upon the opinions expressed in this Expert Report, or the outcome of this litigation.

4

**3.    Documents reviewed**

13.    For the preparation of this Expert Report, I have reviewed the documents listed and set out in **Annex A** to this Expert Report.

## II.    Executive summary

14.    The burden of proof is a matter of Swiss substantive law.

15.    The general standard of proof for all elements of Article 50(1) of the Swiss Code of Obligations ("**SCO**") is "full conviction" or "strict proof". This means that the judge must be convinced of the Plaintiffs' claim with a probability of at least 90%.

16.    The standard of proof for natural causation is "preponderant likelihood." This means that the judge must be convinced of the factual link between a cause and a consequence with a probability of at least 75%.

17.    The standard of proof of the existence of a reparable loss or harm suffered by each individual Plaintiff is "full conviction" or "strict proof" (see below, para. 26). This means that the judge must be convinced of the existence of a reparable loss or harm suffered by each individual Plaintiff with a probability of at least 90%. However, under certain circumstances, the standard of proof for the quantum of the loss or harm suffered by each individual Plaintiff is "preponderant likelihood." This means that provided the strict conditions of Article 42(2) SCO are met, the judge must be convinced of the quantum of the loss or harm suffered by each individual Plaintiff with a probability of at least 75%.

18.    In the current case, with the exception of natural causation, "strict proof" applies to each element of Article 50(1) SCO. "Preponderant likelihood" applies to the natural causation element of Article 50(1) SCO and to the quantum of the harm or loss allegedly suffered.

## III.    The burden of proof is a matter of Swiss substantive law

19.    As Prof. Werro correctly states (Declaration Werro, July 2025, para. 8), the fundamental provision governing the burden of proof (*Beweislast, fardeau de la prevue*) in Swiss private law is Article 8 of the Swiss Civil Code ("**SCC**"), which is distinct from the Swiss Civil Procedure Code.[1] Provisions of the SCC relate to the substantive elements of Swiss civil claims.

20.    Under the heading "Burden of proof", Article 8 SCC reads as follows:

---

[1] Decision of the Swiss Federal Supreme Court ("**DFSC**") 148 [2021] III 105 reas.3.3.1; DFSC 128 [2002] III 271 reas. 2a/aa.

5

> "Unless the law provides otherwise, the burden of proving the existence of an alleged fact shall rest on the person who derives rights from that fact."[2]

21. According to the Swiss Federal Supreme Court, "*the applicable substantive legal norms determine the allocation of the burden of proof.*"[3] This is why burden of proof under Article 8 SCC is a substantive law norm and not a procedural law norm. The Swiss Supreme Court has made clear that: "[t]*he function of the standard measure of proof is to ensure that substantive law prevails in litigation.*"[4] As Swiss substantive law (in particular Articles 41 and 50(1) SCO) governs the case at hand, all issues related to the burden of proof must also be governed by Swiss norms on the burden of proof.

## IV. Plaintiffs bear the burden of proof for all elements under Article 50(1) SCO

22. As mentioned above (para. 20), Article 8 SCC provides that "[u]*nless the law provides otherwise, the burden of proving the existence of an alleged fact shall rest on the person who derives rights from that fact.*" The plaintiff thus bears the burden to prove all facts necessary to establish each element for its claim for compensation against the alleged tortfeasor (i.e., the defendant). General Swiss tort law does not provide for any presumption to shift the burden of proof from the plaintiff to the defendant.[5]

23. In a case of 2019, the Federal Supreme Court expressed this clear principle in the following terms:

> "Under Article 41(1) of the SCO [i.e., the general rule on tortious liability under Swiss law], *any person who unlawfully causes loss or damage to another, whether willfully or negligently, is obliged to provide compensation.*
>
> *The injured party must allege and prove all the facts constituting this standard of liability, in accordance with Article 8 SCC: the unlawful act, the fault, the damage, and the natural and adequate causal link between the unlawful act and the damage. The injured party bears the burden of proving each of these relevant facts, which means that if the court is unable to reach a conviction* […], *if it is unable to determine whether*

---

[2] Article 8 SCC provides in the German and French original as follows: "*Wo das Gesetz es nicht anders bestimmt, hat derjenige das Vorhandensein einer behaupteten Tatsache zu beweisen, der aus ihr Rechte ableitet*"; "*Chaque partie doit, si la loi ne prescrit le contraire, prouver les faits qu'elle allègue pour en déduire son droit*". It should be noted that an English translation of the SCC and the SCO is made available on the publication platform for federal law of the Swiss Confederation but that this translation is for information purposes only and has no legal force, see https://www.fedlex.admin.ch/eli/cc/24/233_245_233/en (for the SCC) and https://www.fedlex.admin.ch/eli/cc/27/317_321_377/en (for the SCO).
[3] DFSC 128 [2002] III 271 reas. 2a/aa; DFSC 4A_487/2018 of 30 January 2019, reas. 4.2.1; DFSC 4A_594/2017 of 13 November 2018, reas. 5.
[4] DFSC 128 [2002] III 271 reas. 2b/aa.
[5] DFSC 132 [2006] III 715 reas. 3.2.2.

6

*each of these facts occurred or did not occur, it must rule to the detriment of the injured party [...].*"[6]

24. Therefore, in the case at hand, the court must reject the Plaintiffs' claim if they fail to prove the facts necessary to establish even one of the following elements under Article 50(1) SCO identified in Judge Nathan's Opinion and Order of 18 April 2024, i.e.:

    *"(1)  a main perpetrator committed an illicit act,*

    *(2)   the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to an illicit act, and*

    *(3)   their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss."*[7]

25. In reality, this last prerequisite implies that each of the Plaintiffs must also individually establish that they suffered a reparable harm or loss and the quantum of that harm or loss.

## V. The standard of proof for all elements of Article 50(1) SCO is "full conviction"

26. As Prof. Werro acknowledges, the default standard of proof (*Regelbeweismass, degré de la prevue ordinaire*) translates to "**full conviction**" or "**strict proof**" (*strikter Beweis, preuve stricte*) (Declaration Werro, July 2025, para. 10).

27. The standard of full conviction requires that based on objective criteria, the judge is fully convinced of a factual assertion. In other words, the standard is satisfied when the judge no longer has any serious doubts about the existence of an alleged fact or any remaining doubts are minor.[8] As the Swiss Supreme Court has explained, "*A fact is considered proven when the judge is convinced of the truth of an asserted fact. This requires objective conviction. However, it is not necessary that the fact be established with certainty; it is sufficient if any doubts appear immaterial. Mere preponderance of probability that the asserted fact occurred is not enough.*"[9]

28. In fact, the majority of legal authors has commented that to satisfy "full conviction," the judge must be convinced of the Plaintiffs' claim with probability of at least 90%.[10] Some Cantonal Supreme

---

[6] DFSC 4A_337/2018 of 9 May 2019, reas. 4.
[7] Opinion and Order, Kashef v. BNP Paribas S.A., No. 16-cv-3228 (AJN) (S.D.N.Y. April 18, 2024), ECF No. 499, pp 4-5.
[8] DFSC 149 [2023] III 218 reas. 2.2.3; DFSC 148 [2022] III 134 reas. 3.4.1, DFSC 148 [2021] III 105 reas. 3.3.1.
[9] DFSC 128 [2002] III 271 reas. 2b/aa.
[10] Peter Guyan, Art. 157 ZPO in: Spühler/Tenchio/Infanger (eds.), Basler Kommentar Schweizerische Zivilprozessordnung, 4th ed., Basel 2024, para. 8; Baumgartner Samuel, in: Oberhammer/Domej/Haas (eds.), Kurzkommentar Schweizerische Zivilprozessordnung, Vor Art. 150-193 ZPO, 3rd ed., Basel 2021, para. 9; Leu Christian, in: Brunner/Gasser/Schwander (eds.), ZPO Schweizerische Zivilprozessordnung, Zurich 2016, Art. 157 ZPO, para. 64; Bühler Alfred, Beweismass und Beweiswürdigung bei Gerichtsgutachten – unter Berücksichtigung

Courts also expressly refer to this minimal threshold[11]. In its decision of 2020, the Zurich Supreme Court, the most influential Cantonal Supreme Court in Switzerland, stated as follows:

> *"According to the default standard of proof applicable in the present case, proof is generally deemed to have been provided if the court is convinced of the accuracy of a factual assertion based on objective criteria. […] Remaining doubts are permissible if, taken as a whole, they are insignificant and do not give rise to serious reservations about the decision on evidence. […] A numerical probability of 90% can be used as a guideline […]."*[12]

29. This very high general standard of full conviction applies in principle to any claim for compensation in torts.

30. Exceptions to the "full conviction" standard of proof are limited and narrowly defined. In torts, only the following two exceptions to the general standard of full conviction exists:

- First, the standard of "preponderant likelihood" is required for the proof of the facts necessary to establish natural causation. This first exception has been developed by case law and legal doctrine because the but-for factual link between a cause and a consequence is, by nature, difficult to proof to full conviction (see below, paras. 33-41); and

- Second, under certain limited conditions, the standard of "preponderant likelihood" is also required for the proof of the quantum of the loss or harm suffered. This second exception is established by Art. 42(2) SCO because in certain situations, it is impossible for the plaintiff to prove the quantum of the loss or harm suffered to the precise dollar and cent (see below, paras. 42-50).

31. While these exceptions may apply to specific elements (natural causation and quantum of loss or harm) of a tort claim, Swiss law does not permit a court to assess the entire tort claim under a lower standard of proof.[13]

32. The relaxation of the standard of proof for these two elements presupposes a state of necessity of proof (*Beweisnot, état de nécessité quant à la prevue*). A reduction of the full conviction standard for these two elements *"is warranted in cases of 'evidentiary hardship' (Beweisnot), which arise when, by nature of the matter, strict proof is either impossible or cannot reasonably be demanded — particularly where the facts alleged by the party bearing the burden of proof can only be*

---

der jüngsten Lehre und Rechtsprechung, in: Jusletter 21 June 2010, para. 9; Walter Hans Peter, Beweis und Beweislast im Haftpflichtprozess, HAVE/REAS 2009, p. 53; Groner Roger, Beweisrecht, Bern 2011, p. 181; Berger-Steiner Isabelle, Das Beweismass im Privatrecht, PhD University of Bern, Bern 2008, ("**Berger-Steiner**"), p. 249, para. 06.81.

[11] Graubünden Supreme Court, II. Civil Chamber ZK2 23 13 Judgment of 13 December 2023, reas. 4.2; Zurich Supreme Court, I. Civil Chamber LA180035-O/U Decision and Judgment of 28 May 2020.

[12] Zurich Supreme Court, I. Civil Chamber LA180035-O/U Decision and Judgment of 28 May 2020, reas. 3.3.1.

[13] DFSC 4C.222/2004 of 14 September 2004 reas. 2.

8

*demonstrated indirectly, through circumstantial indicators.*"[14] When a court applies these exceptions to the "strict proof" standard, "*it does not exempt the plaintiff from substantiating, to the extent possible, the factual circumstances* [… necessary to] *show damage with near certainty; mere possibility is not sufficient* [...]."[15] Moreover, "[m]*ere difficulties in proving facts in a particular case do not justify an easing of the burden of proof*."[16]

## VI. Plaintiffs must prove natural causation with "preponderant likelihood"

33. Swiss case law and legal doctrine have established a limited exception to the general standard of full conviction (see above, para. 30) for the proof of natural causation (causation in fact; *natürlicher Kausalzusammenhang, causalité naturelle*).

34. Under Swiss tort law, as Prof. Werro states (Declaration Werro, July 2025, para. 11), the plaintiff must prove natural causation with "preponderant likelihood" (*überwiegende Wahrscheinlichkeit, vraisemblance prépondérante*).[17]

35. Prof. Werro inaccurately conflates this standard with the US standard of preponderance of evidence of "more likely than not." However, although the French or German phrase can be translated to "preponderance" as a matter of English vocabulary, this has nothing to do with the US legal definition of preponderance. The Swiss standard of preponderant likelihood is much stricter than the "more likely than not" standard under US law presented in Plaintiffs' Motion.[18]

36. In describing the preponderant likelihood standard, the Swiss Supreme Court has stated that: "*Preponderant likelihood implies that, from an objective standpoint, there are strong reasons in favor of the accuracy of an allegation, with no other possibilities carrying significant weight or reasonably being taken into account*."[19]

37. Swiss case law does not set a specific percentage limit for the standard of preponderant likelihood but the Federal Supreme Court has acknowledged that "*a 51% probability is not sufficient, and a clearly higher level must be used; a probability of 75% has been cited*."[20] Legal scholarship supports a threshold of at least 75%.[21]

---

[14] DFSC 149 [2023] 218 reas. 2.2.3; DFSC 148 [2022] III 134 reas. 3.4.1; DFSC 148 [2021] 105 reas. 3.3.1.
[15] DFSC 133 [2007] III 462 reas. 4.4.2.
[16] DFSC 130 [2004] III 321 reas. 3.2.
[17] DFSC 143 [2017] II 661 reas. 5.1.1; DFSC 4A_401/2023 of 15 May 2024, reas. 6.1.1.
[18] See DFSC 4A_289/2023 of 11 June 2024, reas. 5.1, where the Swiss Federal Supreme Court specifies that the term "preponderant likelihood" corresponds to the definition which case law gives of "high likelihood" (*hohe Wahrscheinlichkeit, haute vraisemblance*).
[19] DFSC 4A_401/2023 of 15 May 2024, reas. 6.1.1 and 6.4; DFSC 4A_424/2020 of 19 January 2021 reas. 4.1.
[20] DFSC 4A_401/2023 of 15 May 2024, reas. 6.4; DFSC 4A_424/2020 of 19 January 2021 reas. 4.1.
[21] Flavio Lardelli/Meinrad Vetter, Art. 8 SCC in: Geiser/Fountoulakis (eds.), Basler Kommentar Zivilgesetzbuch I Art. 1-456 ZGB, 7th ed., Basel 2022, para. 18; Hans Peter Walter, Art. 8 SCC in: Hausheer/Walter (eds.), Berner Kommentar zum schweizerischen Privatrecht - Einleitung, Art. 1-9 ZGB Schweizerisches Zivilgesetzbuch, Einleitung und Personenrecht, Bern 2021, para. 138; Hrubesch-Millauer Stephanie/Bosshardt Martina, Die Einleitungsartikel des Schweizerischen Zivilgesetzbuches (Art. 1-9 ZGB), Bern 2019, p. 236, para. 88; Bühler

38. Prof. Werro appears to share the view that a percentage of merely 51% is insufficient to meet the standard of preponderant likelihood under Swiss law since he co-authored the following review of a Swiss Federal Supreme Court case of 2008:

    *"65. Federal Supreme Court, 4A_397/2008 of 23 September 2008: legal aid, proof of preponderant likelihood that the victim's worthening health is causally linked to an accident; private expert opinion supplemented by a supplementary judicial expert opinion; in the case at hand, 51% probability insufficient […]."*[22]

    In that case, the Swiss Federal Supreme Court rejected the appellant's argument that an expert report concluding that it was 51% certain the aggravation occurred was enough to satisfy the preponderant likelihood standard. In so holding, the Supreme Court wrote "[t]*he appellant is unable to show that the lower court based its judgement* [finding no causal link] *on an incorrect standard of proof under federal law,*" and thus found that the appellant was incorrect in "*opini*[ng] *that a 51% probability is predominant* [and thus sufficient to satisfy the "preponderant likelihood" standard]".[23]

39. Prof. Werro is incorrect, however, in attempting to minimize the significance of scholarship that identifies the applicable percentage as far more than 75%. According to Article 1(3) SCC, when applying the law, "*the court shall follow established doctrine and case law*". Therefore, a judge applying the preponderant likelihood standard must be convinced by more than 75% of the existence of a but-for factual link between the alleged cause and the asserted consequence.

40. Prof. Werro also misleadingly cites to case law which is not pertinent for the present matter, as the decisions concern product liability (e.g., *Coffeemaker Case* at paras 9 and 11; *Sanofi Vaccination Case* of the European Court of Justice at para. 17; case 4A_329/2012 at para. 16 of the Declaration Werro, July 2025). These cases were decided under product liability law, which applies rules of evidence not generally applicable to claims under Article 50(1) SCO.

41. In the case at hand, this standard of preponderant likelihood applies to only **one element** of the Plaintiffs' claim:

    - the natural causation between the culpable cooperation of each individual Defendant with the harm or loss suffered by the individual Plaintiff.

---

Alfred, Beweismass und Beweiswürdigung bei Gerichtsgutachten – unter Berücksichtigung der jüngsten Lehre und Rechtsprechung, in: Jusletter, 21 June 2010, para. 13; Berger-Steiner, p. 269, para. 06.123.

[22] Chappuis Christine/Werro Franz, Le hit-parade des décisions récentes (2006-2010), in: Chappuis/Winiger (eds.), La preuve en droit de la responsabilité civile, Journée de la responsabilité civile 2010, Schulthess 2011, p. 175, para. 65 (citing 4A_397/2008 of 23 September 2008).

[23] DFSC 4A_397/2008 of 23 September 2008, reas. 4.3.

10

## VII. Under certain circumstances, Plaintiffs must prove the quantum of the loss or harm suffered with "preponderant likelihood"

42. Swiss statutory law provides for a second exception to the general standard of full conviction (see above, para. 30) for the proof of the quantum of the loss or harm suffered, provided that certain prerequisites are met.

43. Under the heading "Determining the damage", Article 42(1) SCO provides as follows:

> "(1) A person claiming damages must prove the damage occurred."[24]

44. Article 42(1) SCO merely repeats for the proof of loss or harm what Article 8 SCC already states for any prerequisite for tortious liability. Therefore, the plaintiff must prove the fact that it suffered a reparable loss or harm to the judge's full conviction (see above, paras. 26-32).

45. Therefore, in the case at hand, the very high general standard of full conviction in principle also applies to the following element of Plaintiffs' claim (see above, para. 25):

- the suffering of a reparable loss or harm by each individual Plaintiff.

46. Under certain conditions, namely where it is difficult to quantify the precise value of the harm or loss alleged, Article 42(2) SCO provides however for a somewhat relaxed standard of proof. This article provides as follows:

> "(2) Where the exact value of the damage cannot be quantified, the court shall estimate the value at its discretion in the light of the normal course of events and the steps taken by the person suffering damage."[25]

47. Article 42(2) SCO is a statutory exception to the general standard of full conviction within the meaning of Article 8 SCC (see above, paras. 42-43).[26] Article 42(2) SCO grants the court discretionary powers by authorizing it to consider the quantum of a loss or harm proved by a lower standard of "preponderant likelihood."[27] Under Article 42(2) SCO, the facts alleged by the plaintiff should be sufficient to prove the existence of the loss or harm and to estimate its approximate amount.[28]

48. However, Article 42(2) SCO only applies "*where the nature of the damage makes strict proof objectively impossible or cannot reasonably be demanded—placing the plaintiff in a state of*

---

[24] Article 42(1) SCO provides in the German and French original as follows: "*Wer Schadenersatz beansprucht, hat den Schaden zu beweisen*"; "*La preuve du dommage incombe au demandeur*".
[25] Article 42(2) SCO provides in the German and French original as follows: "*Der nicht ziffernmässig nachweisbare Schaden ist nach Ermessen des Richters mit Rücksicht auf den gewöhnlichen Lauf der Dinge und auf die vom Geschädigten getroffenen Massnahmen abzuschätzen*"; "*Lorsque le montant exact du dommage ne peut être établi, le juge le détermine équitablement en considération du cours ordinaire des choses et des mesures prises par la partie lésée*".
[26] DFSC 128 [2002] III 271 reas. 2b/aa; DFSC 5A_741_2018 of 18 January 2019, reas. 6.4.
[27] DFSC 128 [2002] III 271 reas. 2b/aa; DFSC 4A_431/2015 of 19 April 2016, reas. 5.1.2.
[28] DFSC 143 [2017] III 297 reas. 8.2.5.2; DFSC 4A_659/2024 of 2 May 2025, reas 5.1.

*evidentiary necessity (Beweisnot)*."[29] This is for instance the case if the standard of full conviction would entail costs that are disproportionate to the loss or harm suffered, or if the standard of full conviction would entail the violation of the plaintiff's personal rights or trade secrets.[30]

49. As an exception to the general standard of full conviction within the meaning of Article 8 SCC and Article 42(1) SCO, Article 42(2) SCO "*must be restrictively applied.*"[31] As a consequence, "*it does not exempt the plaintiff from substantiating, to the extent possible, the factual circumstances* [… necessary to] *show damage with near certainty; mere possibility is not sufficient* […]."[32] Therefore, Article 42(2) SCO only facilitates the proof of the loss or harm and does not aim to relieve the plaintiff from the burden of proof (see above, para. 32).[33]

50. This high standard of "preponderant likelihood" applies narrowly to the element of the quantum Plaintiffs' reparable loss or harm, provided, for each harm claimed by the Plaintiffs that the restrictive conditions for applying Article 42(2) SCO are met. Plaintiffs bear the burden on this issue, as they do with each other element of their claim (see above, paras. 22-25).

## VIII. Conclusion

51. In summary, as the Swiss case law makes clear, the default burden of proof for tort liability cases is "full conviction." This requires the plaintiff to demonstrate the requisite facts with a probability of more than 90%. However, under certain circumstances, when assessing natural causation or the quantum of the loss or harm alleged, the Swiss courts may apply a standard of "preponderant likelihood" to those elements only, which requires the plaintiff to demonstrate the requisite facts with much more than a 51% probability, and has been approximated to be at least 75% probability.

## IX. Confirmations

52. I understand that in preparing and giving this report, my primary duty is to the Court and not the person(s) from whom I have received my instructions or by whom I am paid. I confirm that I have complied with this duty.

53. I confirm that insofar as the facts stated in this report are within my own knowledge, I have made clear they are and I believe them to be correct, and that the opinions I have expressed represent my accurate and complete professional opinion.

---

[29] DFSC 147 [2021] III 463 reas. 4.2.3; DFSC 4A_59/2024 of 20 December 2024, reas. 5.
[30] Müller Christoph, Ausservertragliches Haftpflichtrecht, Basel 2025, para. 569.
[31] DFSC 142 [2016] IV 237 reas. 1.3.1; DFSC 133 [2007] III 462 reas. 4.4.2; DFSC 6B_807/2021 7 June 2022, reas. 11.3.2.
[32] DFSC 133 [2007] III reas. 4.4.2.
[33] DFSC 143 [2017] III 297 reas. 8.2.5.2; DFSC 4A_659/2024 of 2 May 2025, reas 5.1.

12

54. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: August 1, 2025

Professor Christoph Müller

13

**Annex A**

For the preparation of this legal opinion, I have reviewed the following documents:

- Opinion and Order, Kashef v. BNP Paribas S.A., No. 16-cv-3228 (AJN) (S.D.N.Y. Feb. 16, 2021)
- [499] Opinion and Order, Kashef v. BNP Parisbas S.A., No. 16-cv-3228 (AJN) (S.D.N.Y. April 18, 2024) ("**Order and Opinion**")
- [799] Plaintiffs' Opening Memorandum of Law on the Burden of Proof under Swiss Law and the Admissibility of Refugee/Asylum Grants Pursuant to Federal Rule of Evidence 803(8) (filed July 18, 2025), and the following documents attached:
    - [800] Declaration of Professor Franz Werro in Support re [799] ("**Declaration Werro, July 2025**")
    - [801-1] Exhibit 1 Delayed Stroke Treatment Case
    - [801-2] Exhibit 2 Insolvency Compensation Case
    - [801-3] Exhibit 3 Gravel Pit Case
    - [801] Declaration of M. Price In Support re [799]