UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ENTESAR OSMAN KASHEF *et al.*,

                Plaintiffs,

        -against-

BNP PARIBAS S.A. and BNP PARIBAS US
WHOLESALE HOLDINGS, CORP.,

                Defendants.

---

No. 16 Civ. 3228 (AKH)

Hon. Alvin K. Hellerstein

<br>

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR EXPEDITED EVIDENTIARY HEARING AND DISCOVERY
## <u>REGARDING PLAINTIFFS' COUNSEL'S MISCONDUCT</u>

<br>

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
T: (212) 351-4000

CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T: (212) 225-2000

*Counsel for Defendants BNP*
*Paribas S.A. and BNP Paribas*
*US Wholesale*
*Holdings, Corp.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................4

    I.    Class Counsel Alleged Serious Ethical Misconduct by Plaintiffs' Counsel Lee Boyd That Taints Witness Testimony and the Upcoming Trial.............................4

    II.    Hausfeld and Zuckerman Spaeder Moved to Disqualify Ms. Boyd......................6

    III.    The Court Ordered Ms. Boyd to Try the Case in September as Sole Lead Counsel. ...........................................................................................................7

    IV.    The Court Denied Defendants' Motion for Sanctions with Leave to Renew. .........8

LEGAL STANDARD ..................................................................................................................8

ARGUMENT ...............................................................................................................................9

    I.    There Is Substantial Evidence That Plaintiffs' Counsel's Misconduct Will Taint the Upcoming Trial. ..................................................................................9

    II.    The Court Has a Duty to Police Misconduct Now, Not After Trial. ...................12

    A.  A Hearing Is Necessary to Determine What Testimony to Be Introduced at Trial Has Been Tainted, and the Appropriate Curative Steps........................14

    B. A Hearing Is Necessary to Determine Whether Ms. Boyd Should Continue as Trial Counsel or Be Disqualified...........................................................15

    C. A Hearing Is Necessary to Determine the Scope of the Evidence and Arguments Relating to Tampering That Are Admissible at Trial...............17

    D. A Hearing Is Necessary to Avoid the Risk of a Retrial When the Full Facts of Attorney Misconduct Inevitably Come to Light....................................17

    III.    An Expedited Evidentiary Hearing Would Be Efficient and Would Not Interfere with the September Trial Date............................................................19

CONCLUSION...........................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berger v. Property I.D. Corp.*,
2006 WL 8567219 (C.D. Cal. Nov. 7, 2006) ............................................................................16

*Boe v. Marshall*,
762 F. Supp. 3d 1152 (M.D. Ala. 2024) ...................................................................................19

*Carroll v. Trump*,
124 F.4th 140 (2d Cir. 2024) ....................................................................................................17

*Ceramco, Inc. v. Lee Pharms.*,
510 F.2d 268 (2d Cir. 1975) .....................................................................................................16

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .........................................................................................................2, 9, 12

*Chevron Corp. v. Donziger*,
2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) .........................................................................15

*Cuomo v. Off. of N.Y. State Att'y Gen.*,
754 F. Supp. 3d 334 (E.D.N.Y. 2024) ......................................................................................14

*Davis by Davis v. Jellico Cmty. Hosp. Inc.*,
912 F.2d 129 (6th Cir. 1990) ....................................................................................................18

*Erickson v. Newmar Corp.*,
87 F.3d 298 (9th Cir. 1996) ...........................................................................................2, 12, 13

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
270 F.R.D. 150 (S.D.N.Y. 2010) ..............................................................................................16

*Gentner v. Shulman*,
55 F.3d 87 (2d Cir. 1995) .............................................................................2, 8, 12, 16, 20

*Glueck v. Jonathan Logan, Inc.*,
653 F.2d 746 (2d Cir. 1981) .....................................................................................................16

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) ......................................................................................................................9

*Harre v. A.H. Robins Co.*,
750 F.2d 1501 (11th Cir. 1985) ................................................................................................18

*Holley v. Gilead Scis., Inc.*,
2023 WL 2440237 (N.D. Cal. Mar. 9, 2023) ...........................................................................15

## TABLE OF AUTHORITIES
### (*continued*)

Page(s)

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
888 F.3d 753 (5th Cir. 2018)......................................................................................4, 18

*In re Gilly*,
976 F. Supp. 2d 471 (S.D.N.Y. 2013)..............................................................................10

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000)...........................................................................................14

*In re Jackson Nat. Life Ins. Co. Premium Litig.*,
2000 WL 33654070 (W.D. Mich. Feb. 8, 2000)..............................................................15

*In re Sealed Appellant*,
194 F.3d 666 (5th Cir. 1999)...........................................................................................11

*Kaplan v. Pomerantz*,
132 F.R.D. 504 (N.D. Ill. 1990).................................................................................16, 20

*Lelsz v. Kavanagh*,
137 F.R.D. 646 (N.D. Tex. 1991)....................................................................................16

*LNC Invs., Inc. v. First Fid. Bank*,
2000 WL 1182772 (S.D.N.Y. Aug. 21, 2000)..................................................................17

*MacArthur v. Bank of New York*,
524 F. Supp. 1205 (S.D.N.Y. 1981)................................................................................16

*Murray v. Metro. Life Ins. Co.*,
583 F.3d 173 (2d Cir. 2009)............................................................................................16

*Novartis Pharma AG v. Incyte Corp.*,
2025 WL 1132303 (S.D.N.Y. Apr. 17, 2025)..................................................................19

*Perez v. Dole Food Co., Inc.*,
2017 WL 5405729 (Cal. Ct. App. Nov. 14, 2017)...........................................................18

*Ransmeier v. Mariani*,
718 F. 3d 64 (2d Cir. 2013)...............................................................................................9

*Riley v. City of New York*,
2015 WL 541346 (E.D.N.Y. Feb. 10, 2015)........................................................3, 13, 15

*Rossbach v. Montefiore Medical Center*,
81 F.4th 124 (2d Cir. 2023).............................................................................................13

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Santoni-Lorenzi v. F.W. Woolworth Co.*,
993 F.2d 1531 (1st Cir. 1993)..........................................................................................19

*Shangold v. Walt Disney Co.*,
2006 WL 71672 (S.D.N.Y. Jan. 12, 2006)..................................................................2, 8

*SI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*,
618 F.3d 204 (2d Cir. 2010)............................................................................................16

*Sorlucco v. N.Y. City Police Dep't*,
971 F.2d 864 (2d Cir. 1992)............................................................................................18

*United States v. Daniells*,
79 F.4th 57 (1st Cir. 2023)................................................................................................2

*United States v. Friedman*,
854 F.2d 535 (2d Cir. 1988)............................................................................................15

*United States v. Harvey*,
547 F.2d 720 (2d Cir. 1976)............................................................................................17

*United States v. Prevezon Holdings Ltd.*,
839 F.3d 227 (2d Cir. 2016)..............................................................................................2

*Virginia Props., LLC v. T-Mobile Ne. LLC*,
865 F.3d 110 (2d Cir. 2017)............................................................................................13

## Rules

Fed. R. Civ. P. 23(d)..........................................................................................................9

Fed. R. Civ. P. 60(b)(3) ...................................................................................................20

N.Y. R. Prof'l Conduct 3.3(a)(3).....................................................................................10

N.Y. R. Prof'l Conduct 3.4(a)(4).....................................................................................10

N.Y. R. Prof'l Conduct 3.7(a)..........................................................................................16

## Other Authorities

ABA Comm. on Ethics & Pro. Resp., Formal Op. 23-508 (2023).................................10

N.Y. R. Prof'l Conduct 3.3 cmt. 12.................................................................................10

Restatement (Third) of the Law Governing Lawyers § 116 cmt. b.................................15

## PRELIMINARY STATEMENT

This motion is based on the specific, sworn evidence of serious attorney misconduct submitted by Plaintiffs' class counsel at the Hausfeld and Zuckerman Spaeder firms in their recent motion to disqualify their co-counsel, Lee Boyd. That misconduct includes the alleged improper pressuring and coaching of witnesses who will testify at the upcoming trial, including during one "mock prep exercise" just three months ago. Specifically, **Ms. Boyd's own co-counsel represented—as officers of the Court and backed by sworn declarations under penalty of perjury—that**:

- "During discovery in 2023, a distraught expert witness contacted Hausfeld to complain that Ms. Boyd was trying to force her words into their mouth[]; the pressure was so intense they were prepared to resign to protect their reputation …." ECF No. 784 at 2.

- "In May 2025, Class Counsel observed Ms. Boyd once again attempt, during a prep session, to force words into the mouth of an expert witness …." *Id.*

- During June 2025 meetings with "victim-side witnesses" in San Diego, "multiple attorneys were alarmed when Ms. Boyd brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations." *Id.* at 8–9.

Notably, two of the three trial Plaintiffs live in San Diego. It appears Ms. Boyd's recent threatened misconduct squarely relates to the preparation of those witnesses' trial testimony.

Ms. Boyd's misconduct was so egregious that her former co-counsel Danya Perry and Joan Illuzzi-Orbon were forced to obtain ethics advice from an independent expert. *See id.* at 8. They have since withdrawn from this case. Ms. Perry and Ms. Illuzzi-Orbon—eyewitnesses to Ms. Boyd's apparent misconduct—have made themselves available to address what they saw with the Court. *See id.* at 4 n.3.

This is not normal, and it cannot be ignored. The evidence submitted to this Court—not by an adversary, but by Ms. Boyd's own co-counsel—goes directly to the integrity of the upcoming trial and Ms. Boyd's ability to serve as lead counsel in it. It is different in kind from the *separate* evidence of misconduct that Ms. Boyd improperly coached class members to opt-in and claim injuries whether or not they were true. *See* ECF No. 751. The Court found that

apparent misconduct to be unrelated to the upcoming three-Plaintiff trial and, therefore, that the matter could be deferred until after trial. *See* ECF No. 789. But the same is not true for the new evidence of Ms. Boyd's improper coaching and pressuring of expert and fact witnesses who will testify at this trial. Even the limited evidence Ms. Boyd's co-counsel have submitted demonstrates a strong risk that tainted testimony will be presented. Unless the Court intervenes, there is no way to know before trial which witnesses Ms. Boyd allegedly tampered with and what she pressured or encouraged them to falsely say.

The Court has a core gatekeeping function to safeguard the integrity of the adversary process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (discussing a court's inherent powers to protect "the integrity of the courts," including "the power to conduct an independent investigation in order to determine whether it has been the victim of fraud"); *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006). That duty cannot be deferred. It would be flagrant and prejudicial error to leave this red-flag evidence of attorney misconduct unresolved before the upcoming trial. The Second Circuit is clear: "A trial judge is required to take measures against unethical conduct occurring in connection with any proceeding before him." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995). A district court "abdicate[s] its duty" by not "address[ing] the ethical issues implicated by [counsel's] behavior prior to trial" and instead waiting until "after both sides have expended the resources to go to trial." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996). And a district court's failure to exercise its "inherent power to preserve the integrity of the adversary process" by erroneously denying a motion for disqualification is a basis for mandamus. *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 236–42 (2d Cir. 2016) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

The law makes clear what must happen next. An expedited evidentiary hearing is required to determine whether the alleged misconduct occurred, and if so, how a tainted trial may be avoided. *See United States v. Daniells*, 79 F.4th 57, 88 (1st Cir. 2023) (district court abused its discretion by failing to hold evidentiary hearing where there were sufficient allegations of

facts that would have required disqualification of counsel). The Court should obtain the facts from counsel under oath and order full disclosures relating to the alleged misconduct: the identity of the witnesses Ms. Boyd improperly pressured, and the basis for class counsel's troubling but oblique allegations of Ms. Boyd "acting unethically" in this case "[s]ince 2019." ECF No. 784 at 2. It would be unfair and inefficient to proceed with a trial of the three Plaintiffs—involving the same expert witnesses expected to testify in support of all class members—without first determining whether trial testimony of the Plaintiffs, experts or other witnesses have been infected by unethical conduct, and whether this taint requires, or can be mitigated by, protective measures including disqualification of counsel. The hearing would address how BNPP may present the witness tampering evidence to the jury, including by supplementing its witness list to add percipient attorneys, and any accompanying jury instruction. *See Riley v. City of New York*, 2015 WL 541346, at *12 (E.D.N.Y. Feb. 10, 2015) (conducting pre-trial evidentiary hearing on witness tampering allegations and imposing "monetary sanctions, in addition to notifying the jury of Plaintiff's witness tampering and permitting the jury to draw an adverse inference against Plaintiff based on the witness tampering allegations"). And in fairness, Ms. Boyd is entitled to confront her accusers and assert her defense.

The Court has held that trial will proceed in September, and this motion is entirely consistent with that schedule. No delay is sought or required. It would not be unduly burdensome or time-consuming to conduct this inquiry before trial. It could be accomplished in one day. Class counsel Cyril Smith at Zuckerman Spaeder has submitted a sworn declaration, and Ms. Perry and Ms. Illuzzi-Orbon have offered to answer questions in court. The Court could issue written interrogatories with a short response deadline, asking counsel which witnesses Ms. Boyd allegedly tried to tamper with, what she tried to pressure them to say, and to explain the "unethical conduct" referenced in their papers and the "Court orders" or "ethical advice" they say Ms. Boyd "will not heed." ECF No. 784 at 2. An expedited hearing would then explore the issues and permit Ms. Boyd the opportunity to respond. The Court could make findings on whether unethical conduct did or did not occur and could take appropriate curative measures,

addressing the potential taint of witness testimony and presentation of false evidence before expending significant time and effort on a complicated and lengthy jury trial. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 792 (5th Cir. 2018) (granting new trial after finding that plaintiffs' counsel had acted deceptively and affirmatively misled the jury). Only by taking these steps before trial can the Court discharge its gatekeeping duty, safeguard the integrity of the proceedings, and avoid error.

* * * * *

BNPP does not make this motion lightly. Class counsel's sworn evidence that Ms. Boyd repeatedly attempted to tamper with witnesses, suborn perjury, and cross ethical lines are shocking—all the more because it was brought forward by her own co-counsel of many years. The facts presented here are serious and unique. Investigation and resolution of the witness tampering allegations is needed to allow the case to proceed to trial in September. Forcing BNPP to try this case under a cloud of serious witness tampering allegations, without conducting a judicial inquiry, would be highly prejudicial to BNPP and a manifest injustice. And the relief BNPP requests is modest under the circumstances: hold a hearing, find the facts, and get to the truth. Anything less will create a substantial risk that the upcoming jury trial will be tainted by witness misconduct, false evidence and legal error.

## <u>BACKGROUND</u>

I.   **Class Counsel Alleged Serious Ethical Misconduct by Plaintiffs' Counsel Lee Boyd That Taints Witness Testimony and the Upcoming Trial.**

On July 9, 2025, Hausfeld LLP and Zuckerman Spaeder LLP filed a motion for disqualification accusing their co-counsel Lee Boyd of Hecht Partners of serious attorney misconduct, including attempted witness tampering. ECF No. 784. Class counsel's motion, backed by sworn declarations, identified at least three different instances of attorney misconduct.

**First Attempted Witness Tampering in 2023.** During expert discovery, "a distraught expert witness contacted a Hausfeld attorney and reported that Ms. Boyd was pressuring the witness to include an opinion in their report with which the expert did not fully agree." *Id.* at

4

13.[1]  The expert witness stated they were considering resigning to protect their reputation.  *Id.*
Class counsel did not disclose who the expert is, what opinion was at stake, whether it will be
part of the trial, or what steps the Hausfeld firm took to allegedly prevent witness tampering.

**Second Attempted Witness Tampering in May 2025.**  In May 2025, "during a mock
prep exercise," Ms. Boyd attempted to "force words into the mouth of an expert witness."  *Id.* at
2, 8, 14.  The expert witness allegedly "dismissed Ms. Boyd's insistent suggestions as
inaccurate."  *Id.* at 8.  Ms. Boyd's coaching attempt was so serious that it "prompted all four
seasoned trial lawyers—Cy Smith and Aitan Goelman from Zuckerman Spaeder and Danya
Perry and Joan Illuzzi-Orbon from Perry Law—and Mr. Hausfeld to advise Ms. Boyd and Hecht
Partners LLP that Ms. Boyd was unfit to try the case" on May 27, 2025.  *Id.* at 8, 14–15.  Key
details remain undisclosed, including the identity of the expert witness or subject of the expert
opinion at issue.  That the tampering occurred as part of a recent "mock prep exercise" indicates
this expert witness will testify at the upcoming trial.

**Third Attempted Witness Tampering in June 2025.**  In early June 2025, while
preparing "victim-side witnesses" in San Diego for trial, Ms. Boyd excluded from the meeting
her co-counsel from Perry Law, who had raised red flags about her ethical conduct just days
earlier.  *Id.* at 7–8.  Ms. Boyd declared to multiple attorneys on the San Diego trip that she
intended to "unilaterally engage in an action that would clearly violate ethical obligations."  *Id.*
at 9.  Perry Law also "sought and obtained confidential ethics advice" about potential meetings
with class members and had to have multiple conversations with Ms. Boyd about her interactions
with class members.  *Id.* at 8.  Many details remain undisclosed, including what misconduct
prompted Perry Law to obtain outside ethics advice and the "clearly" unethical action Ms. Boyd
"brazenly" threatened to take "unilaterally."  *Id.* at 9.

---

[1] Class counsel's papers date this event to 2021, but elsewhere, class counsel's papers date a
similar witness tampering event to 2023.  ECF No. 784 at 2.  This may be the same episode or
potentially two separate events.

Notably, two of the three upcoming trial Plaintiffs live in San Diego, the third formerly lived there, and all three had been selected as the trial Plaintiffs by June 2025—strongly suggesting the trial Plaintiffs themselves were the "victim-side witnesses" whose testimony Ms. Boyd attempted to coach.  Compl., ECF No. 4 (May 2, 2016) ¶¶ 54, 66; Third Am. Compl., ECF No. 241 (June 22, 2021) ¶¶ 30, 43, 50c; ECF No. 642-1 at 3, 11; ECF No. 674 at 1.  Rather than course-correct at her co-counsel's urging, Ms. Boyd allegedly sidelined Perry Law entirely and refused to pay for any further work.  ECF No. 784 at 9.

After observing Ms. Boyd's misconduct firsthand, Perry Law made its exit official.  On July 8, 2025, less than two months after having been appointed co-class counsel, *see* ECF No. 697, Perry Law moved to withdraw as counsel.  ECF No. 774.  Counsel from Perry Law "carefully reviewed" class counsel's supporting declaration accusing Ms. Boyd, "confirm[ed] its accuracy as to their actions, statements and beliefs," and stated that they would be available to the Court "if any questions need to be addressed."  ECF No. 784 at 4 n.3.  On July 11, the Court granted Perry Law's motion to withdraw.  ECF No. 791.

Taken together, class counsel has documented a yearslong pattern of unethical misconduct centered on Ms. Boyd's repeated attempts to improperly influence witness testimony, offering multiple specific examples including those involving recent preparations for trial.

## II.    Hausfeld and Zuckerman Spaeder Moved to Disqualify Ms. Boyd.

On July 9, 2025, Hausfeld and Zuckerman Spaeder jointly moved to disqualify Ms. Boyd as class counsel, asserting that they "cannot ethically continue to work with Ms. Boyd as co-Class Counsel, as she will not cooperate and will not heed Court orders or ethical advice."  ECF No. 784 at 2.  Class counsel explained that Ms. Boyd had to be restrained from "engaging in questionable ethical conduct" since 2019.  *Id.* at 13.  They argued that "[t]he Court must not put her in charge of trial and settlement," based on what they described as her "temperament, lack of experience, and poor ethical judgment."  *Id.* at 17.  As another egregious example of her poor ethical judgment, they alleged that "Ms. Boyd intended to place articles in newspapers personally attacking [one of the defense counsel] as defending genocide abettors, hoping it

6

would spoil his reputation at dinner parties." *Id.* at 16. Hausfeld and Zuckerman Spaeder warned of the risk of "trial devolving into a side show surrounding Ms. Boyd's comportment and lack of credibility." *Id.* at 15.

In opposition, Ms. Boyd and Hecht Partners did not rebut the sworn evidence their co-counsel had presented. Ms. Boyd offered no declaration addressing the sworn statements that she pressured expert witnesses to give opinions they did not believe were true, acted unethically while preparing "victim-side witnesses" for testimony, or that she sidelined co-counsel who tried to correct her unethical behavior. Instead, Hecht Partners accused their co-counsel of a bad-faith "transparent power grab," of participating in a conspiracy against Ms. Boyd, and of "defraud[ing] this Court with a lie." ECF No. 786 at 1, 5–6.

## III. The Court Ordered Ms. Boyd to Try the Case in September as Sole Lead Counsel.

On July 10, 2025, the Court held a conference addressing class counsel's dueling accusations of misconduct. Notably, even when the Court offered an amicable resolution, class counsel stood on their ethical concerns and refused to work with Ms. Boyd. Specifically, after Ms. Boyd suggested that she could take a more limited role as "second chair" at trial, the Court asked class counsel if they could compromise, such that Ms. Boyd would present the individual Plaintiffs in court and conduct their direct examination, while Zuckerman Spaeder would lead the balance of the trial case. July 10, 2025 Hr'g Tr. at 18:24–19:8, 20:4–10. Class counsel flatly refused, saying:

> Your Honor, for all the reasons that are outlined in our papers, and in my declaration, it's our conclusion, having tried to make this work in every possible dimension for the last three or four months, that we can't try the case with Ms. Boyd…. And if the Court directly or indirectly insists on that … it would force us to withdraw.

*Id.* at 20:12–20.

To resolve the conflict, the Court "severed from the class" the three Plaintiffs whose cases were to be tried in September and ordered that Ms. Boyd act as their sole trial counsel: "You will be the one appearing. I will recognize no other appearances but yours…. They want

you, they have you." *Id.* at 30:9–10, 31:22–25.  The Court denied class counsel's motion to disqualify Ms. Boyd "without prejudice to renewal," and on the ground that "[r]egulating the disputes will compromise preparation efforts for the oncoming trial scheduled to begin September 8, 2025."  ECF No. 791 at 1–2.

**IV.    The Court Denied Defendants' Motion for Sanctions with Leave to Renew.**

Separate from the dispute among class counsel, on June 25, 2025, BNPP filed a motion for sanctions presenting evidence that Ms. Boyd had: (1) coached prospective *class members* about what injuries and damages to claim in their class questionnaires, regardless of whether those claims were known to be true; (2) made false statements to prospective class members to pressure them to opt in, and not opt out, of the class; and (3) misrepresented herself as counsel to people who were not her clients.  ECF No. 751.  On July 9, the Court denied this motion "[a]s to the individual plaintiffs," for lack of "support to any allegation of improper behavior with respect to the individual plaintiffs or their counsel."  ECF No. 789.  The Court "denied with leave to renew" the motion "[a]s to the issue between Co-Class Counsel Kathryn Lee Boyd and the class in relation to the numbers of the class answering the questionnaire."  *Id.*

BNPP's sanctions motion was based upon separate misconduct by Ms. Boyd vis-à-vis other class members.  At the time that sanctions motion was filed, BNPP and the Court did not yet know about the misconduct alleged in Hausfeld and Zuckerman Spaeder's later-filed motion to disqualify Ms. Boyd, which concerns witnesses expected to testify in the upcoming trial.

<u>**LEGAL STANDARD**</u>

"A trial judge is ***required*** to take measures against unethical conduct occurring in connection with any proceeding before him."  *Gentner*, 55 F.3d at 89 (emphasis added).  "***It is his duty and responsibility to disqualify counsel*** for unethical conduct prejudicial to counsel's adversary."  *Id.* (emphasis added).

All federal courts have "the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants."  *Shangold*, 2006 WL 71672, at *4.  Federal courts also have inherent power to "achieve the orderly and

expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).  This inherent power is "squeezed from the need to make the court function."  *Id.* at 42 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)).  It includes the authority to "sanction a party or attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Ransmeier v. Mariani*, 718 F. 3d 64, 68 (2d Cir. 2013) (quoting *Chambers*, 501 U.S. at 45–46).

Courts have a special role to ensure the integrity of class actions.  "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *see also* Fed. R. Civ. P. 23(d).

## ARGUMENT

### I.    There Is Substantial Evidence That Plaintiffs' Counsel's Misconduct Will Taint the Upcoming Trial.

The misconduct that Hausfeld and Zuckerman Spaeder allege Ms. Boyd committed, if true, constitutes a clear violation of her ethical duties and directly jeopardizes the upcoming trial.

Hausfeld and Zuckerman Spaeder allege that on at least two separate occasions, once in 2023, and again in May 2025, Ms. Boyd improperly pressured expert witnesses to elicit false testimony from them.  ECF No. 784 at 2.  They also allege that during a June 2025 trip "to meet with victim-side witnesses" in San Diego—where two of the three trial Plaintiffs live—"multiple attorneys were alarmed when Ms. Boyd brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations."  *Id.* at 8–9.  Ms. Boyd's then-co-counsel at Hausfeld and Perry Law attempted to rein in her contact with potential class members, leading Ms. Perry to obtain outside ethics advice and confront Ms. Boyd.  ECF No. 784 at 8.[2]  Their

---

[2] Hausfeld and Zuckerman Spaeder submitted a January 17, 2025 e-mail from Hausfeld attorney James Gotz to Ms. Boyd and others, which they described in their disqualification motion as a "script of what she was permitted to say to class members."  ECF No. 784 at 14 & Ex. D-1. According to their motion, "Hausfeld directed Ms. Boyd not to coach responses.  Under no circumstances was she to instruct a class member to check a particular box or supply an answer." ECF No. 784 at 14.

efforts were unsuccessful—as demonstrated most plainly by Ms. Boyd thereafter telling proposed class members on video to "check the box," against her co-counsel's instruction.  ECF No. 751 at 1.  The extent of Ms. Boyd's alleged misconduct with regard to preparing the testimony of the "victim-side witnesses," described by her co-counsel at Hausfeld and Perry Law, remains unknown.  This alleged pattern of deliberate misconduct led Ms. Boyd's experienced co-counsel at three separate, well-respected law firms to inform her that she was unfit to serve as trial counsel.  ECF No. 784 at 8.

Ethical rules prohibit an attorney from improperly influencing or attempting to influence a witness's testimony as Ms. Boyd is accused of doing.  New York's Rules of Professional Conduct prohibit a lawyer from "offer[ing] or us[ing] evidence that the lawyer knows to be false" and require a lawyer to "take reasonable remedial measures" to correct false testimony by a witness the lawyer offered.  N.Y. R. Prof'l Conduct 3.3(a)(3).  The comments to the rule explain that "[l]awyers have a special obligation as officers of the court to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process" including "intimidating or otherwise unlawfully communicating with a witness."  N.Y. R. Prof'l Conduct 3.3 cmt. 12.  Similarly, Rule 3.4 states that a lawyer shall not "knowingly use perjured testimony or false evidence."  N.Y. R. Prof'l Conduct 3.4(a)(4); *see In re Gilly*, 976 F. Supp. 2d 471, 477–78, 480 (S.D.N.Y. 2013) (suspending attorney who instructed associate to serve an expert report and reference the report in support of a settlement demand despite knowing that the report misrepresented damages); *see also* ABA Comm. on Ethics & Pro. Resp., Formal Op. 23-508 (2023) ("A lawyer violates ethical obligations by counseling a witness to give false testimony[.]").

Here, according to Hausfeld and Zuckerman Spaeder's motion and sworn declaration, Ms. Boyd did the opposite of protecting the Court's integrity—she affirmatively sought to destroy it by trying to coerce false testimony.  *See* Simon Declaration ¶¶ 8–14.  And on at least one occasion that has been disclosed publicly, it was actually the expert witness Ms. Boyd was pressuring who had to reach out to Hausfeld and threaten to withdraw to avoid Ms. Boyd's

tactics.  ECF No. 784 at 2, 13.  Whether Ms. Boyd's tactics were ultimately successful is unknown, but also irrelevant to whether she violated the ethical rules, because the Rules prohibit an attorney from "violat[ing] *or attempt[ing]* to violate the Rules of Professional Conduct," including "through the acts of another."  N.Y. R. Prof. Cond. 8.4(a) (emphasis added); *see also* Simon Declaration ¶ 10.  Indeed, "a district court can use its inherent power to *disbar an attorney for attempting* to induce a witness to testify falsely under oath," as Ms. Boyd is accused of doing.  *See In re Sealed Appellant*, 194 F.3d 666, 672 (5th Cir. 1999).

These ethical lapses must also be considered in light of the broader recent misconduct BNPP identified in its prior motion for sanctions, which showed that Plaintiffs' counsel's communications with class members, the Court, and Special Master Capra comprised independent violations of counsel's professional obligations.  ECF No. 751 at 13–21; ECF Nos. 785, 785-1 & 785-6.

Taken together, the allegations against Ms. Boyd demonstrate a substantial risk that her misconduct has tainted and will taint the upcoming trial and, at a minimum, create a strong appearance of impropriety.  The Court need look no further than the fact that one of the alleged attempts to interfere with an expert's testimony occurred "during a mock prep exercise" in May 2025—presumably a mock trial exercise in anticipation of the upcoming trial.  ECF No. 784 at 14.  Similarly, there is every indication that the June 2025 incident in San Diego, where Ms. Boyd threatened unethical conduct in connection with meeting the "victim-side witnesses," involved expected trial fact witnesses, given the timing and location of the meeting: just months before trial and in the city where the three Plaintiffs either currently or formerly lived.  BNPP should not be forced to try a case against lead counsel who is accused—by her own co-counsel— of affirmatively attempting to coerce false testimony and improperly sway witnesses, until those allegations are resolved.

Despite the explosive revelations in Hausfeld and Zuckerman Spaeder's motion to disqualify, much remains unknown about the misconduct they identified.  For example, which witnesses did Ms. Boyd allegedly try to pressure?  What did Ms. Boyd allegedly try to get those

11

witnesses to say?  How many fact or expert witnesses has Ms. Boyd worked with *without* supervision from Hausfeld or Zuckerman Spaeder, and which ones?  Why did Ms. Boyd exclude her co-counsel from preparation sessions with other fact witnesses after they tried to keep her ethically in line?  What did Ms. Boyd allegedly say or do with respect to prospective class members that led counsel at Hausfeld to send a script of what she was and was not allowed to say, and led Perry Law to obtain an outside ethics opinion?  What are class counsel talking about in their oblique references to Ms. Boyd's "unethical conduct" and that Ms. Boyd "will not heed Court orders or ethical advice"?  Each of these questions should be answered to preserve the integrity of the upcoming trial.

Given the pattern of misconduct presented, the picture painted of Ms. Boyd's refusal to heed ethics advice, and the prior history of public accusations of misconduct from Ms. Boyd's former co-counsel and clients, there is every reason to believe that the episodes identified in the publicly filed briefs reflect the tip of the iceberg.  Until there is full sunlight, it will be impossible to know the full extent to which this misconduct will taint the upcoming trial, as well as any future class proceedings.

## II.    The Court Has a Duty to Police Misconduct Now, Not After Trial.

Ms. Boyd's alleged misconduct and its consequences are extremely serious, and the Court must address these issues before trial.

"Whenever an allegation is made that an attorney has violated his moral and ethical responsibility, … [i]t is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar."  *Erickson*, 87 F.3d at 302 (quoting *Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1324–25 (9th Cir. 1976)); *see also Chambers*, 501 U.S. at 44 (recognizing that a federal court's "inherent power" to police fraud against it is "necessary to the integrity of the courts, for 'tampering with the administration of justice … involves far more than an injury to a single litigant,'" but "'is a wrong against the institutions set up to protect and safeguard the public'" (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 245–46 (1944))); *Gentner*, 55 F.3d at 89.  A district court

"abdicate[s] its duty" by not "address[ing] the ethical issues implicated by [counsel's] behavior prior to trial." *Erickson*, 87 F.3d at 303. Otherwise, the issues could prevent the opposing party from receiving a fair trial and must still be addressed "after both sides have expended the resources to go to trial." *Id.* The kind of misconduct alleged here—including witness tampering—"subvert[s] the entire judicial process" and therefore must be addressed immediately. *Id.* at 304 (quoting *Burke v. Vose*, 847 F. Supp. 256, 263 n.33 (D.R.I. 1993)); *see also* Green Declaration ¶ 21. And the allegations are made even more serious because they were raised by Ms. Boyd's own co-counsel, who owe ethical and fiduciary duties to the same clients, as well as a duty of candor to the Court, and have no strategic interest in harming Plaintiffs' case.

An evidentiary hearing is necessary to assess and remedy allegations of attorney misconduct. In *Riley v. City of New York*, for example, the district court held a hearing to determine that a finding of witness tampering was supported and that the appropriate sanction was to permit the jury to draw an adverse inference against the plaintiff. 2015 WL 541346, at *3–4, *11–12. And in *Rossbach v. Montefiore Medical Center*, the Second Circuit affirmed dismissal of the claims and the award of monetary sanctions against a plaintiff, noting that the district court—which had held a hearing—"acted within its discretion in admitting and weighing evidence, assessing witness credibility, making factual findings, and ruling against [the plaintiff]." 81 F.4th 124, 142 (2d Cir. 2023). The Second Circuit explained that "[a] primary aspect of the discretion that attends a federal court's inherent power 'is the ability to fashion an appropriate sanction for conduct which abuses the judicial process,'" including severe sanctions that are supported by the evidence. *Id.* at 141 (quoting *Chambers*, 501 U.S. at 44–45); *see also Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 114 (2d Cir. 2017) ("The district court's initial instinct was to hold a hearing on [the sanctions] issue, and that instinct was a good one.").

There are four independent reasons why the Court must hold an evidentiary hearing now, before trial: (1) to determine what testimony to be introduced at the trial has been tainted and decide on the appropriate curative steps, such as preclusion of witness testimony or jury instructions; (2) to determine the scope of evidence and argument regarding tampering that

should be permitted at trial; (3) to determine whether Ms. Boyd can continue as lead trial counsel or should be disqualified; and (4) to avoid the risk of a retrial when the full facts of the attorney misconduct inevitably come to light.

**A.    A Hearing Is Necessary to Determine What Testimony to Be Introduced at Trial Has Been Tainted, and the Appropriate Curative Steps.**

Class counsel has clearly alleged attempted witness tampering and the crossing of ethical lines by Ms. Boyd. But without further factual development, the full extent of the taint on the upcoming trial is unknown. For instance, Hausfeld and Zuckerman Spaeder provided accounts of Ms. Boyd attempting to influence at least two separate expert witnesses, but they did not identify the witnesses or elaborate on the details of these incidents—including the substance of what Ms. Boyd wanted them to say, or how Hausfeld supposedly was able to prevent Ms. Boyd from succeeding at that time. *See* ECF No. 784 at 2, 8, 13–15; Simon Declaration ¶¶ 18–19. Hausfeld and Zuckerman Spaeder also described a trip to San Diego to meet with "victim-side witnesses" in which "Ms. Boyd brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations." *Id.* at 8–9. Again, they did not identify the "victim-side witnesses," what this "action" was or who "cautioned" her against this, and they did not explain how they know she did not "follow through with her plan," at least at that moment. *Id.* Class counsel also say there were "other incidents" involving Ms. Boyd that prompted them to advise Ms. Boyd that she was unfit to try this case. *Id.* at 2, 14–15.[3]

---

[3] Any claim of privilege over this information was lost when counsel partially disclosed it in their motion to disqualify. Plaintiffs' counsel cannot hide behind the shield of privilege after disclosing the materials to make accusations of misconduct because "the attorney-client privilege cannot at once be used as a shield and a sword." *Cuomo v. Off. of N.Y. State Att'y Gen.*, 754 F. Supp. 3d 334, 365 (E.D.N.Y. 2024) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (brackets and quotation marks omitted)). A privilege holder may impliedly waive privilege when the holder "asserts a claim that *in fairness* requires examination of protected communications." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quoting *Bilzerian*, 926 F.2d at 1292). That is, "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *Id.* Separately, "[i]t is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they

The risk of tainted testimony is too great to ignore.  Should the Court find that counsel successfully elicited from expert witnesses testimony that is not their own, the proper remedy would be to exclude those witnesses.  *See Holley v. Gilead Scis., Inc.*, 2023 WL 2440237, at *2 (N.D. Cal. Mar. 9, 2023) (excluding expert testimony where the court could not "conclude that the reports represent[ed] the experts' opinions rather than counsel's"); *In re Jackson Nat. Life Ins. Co. Premium Litig.*, 2000 WL 33654070, at *1 (W.D. Mich. Feb. 8, 2000) (excluding testimony of expert who "with advice of counsel, clearly gave incomplete and misleading answers to legitimate questions concerning the authorship of his report").  Similarly, the improper coaching of fact witnesses would be a serious ethical violation calling into question the admissibility of these witnesses' testimony.  *See United States v. Friedman*, 854 F.2d 535, 568 (2d Cir. 1988) (exclusion of witness testimony is appropriate where a party "suffered actual prejudice, and there has been connivance by the witness or counsel to violate the rule" of sequestration (citation and quotation marks omitted)).  Until class counsel provides complete transparency and Ms. Boyd has the opportunity to respond, the Court cannot know the full scope of the taint and decide what curative steps should be taken—such as excluding witness testimony or providing a curative jury instruction.  *See Riley*, 2015 WL 541346, at *12 (ordering an adverse inference jury instruction to address claims of witness tampering).

### B.    A Hearing Is Necessary to Determine Whether Ms. Boyd Should Continue as Trial Counsel or Be Disqualified.

Should the allegations about counsel prove true, it will be the Court's "duty and responsibility to disqualify counsel for [such] unethical conduct [which is] prejudicial to

---

relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *Chevron Corp. v. Donziger*, 2013 WL 1087236, at *25 (S.D.N.Y. Mar. 15, 2013) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984)).  Ms. Boyd's alleged misconduct rises to the level of fraud on the Court, and therefore communications that she made in furtherance of the misconduct are not protected.  *See id.* at *30 (materials related to counsel's fraudulent activities were subject to discovery); *see also* Restatement (Third) of the Law Governing Lawyers § 116 cmt. b ("Attempting to induce a witness to testify falsely as to a material fact … may … constitute fraud, warranting denial of the attorney-client privilege to client-lawyer communications relating to preparation of the witness.").

15

counsel's adversary." *Gentner*, 55 F.3d at 89; *accord Ceramco, Inc. v. Lee Pharms.*, 510 F.2d 268, 271 (2d Cir. 1975), *abrogated on other grounds*, 449 U.S. 368 (1981); *see also Lelsz v. Kavanagh*, 137 F.R.D. 646, 655–56 (N.D. Tex. 1991) (collecting cases). Disqualification is appropriate where it "poses a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (disqualification is warranted where "an attorney's conduct tends to taint the underlying trial" (citation and quotation marks omitted)).[4]

Depending on the outcome of an evidentiary hearing, BNPP may also call Ms. Boyd to testify at trial regarding her alleged attempts to influence witness testimony. Doing so creates an independent risk that Ms. Boyd may be disqualified as trial counsel. *See* N.Y. R. Prof'l Conduct § 3.7(a) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless" certain exceptions are met.); *see also Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (If the "risks that Rule 3.7(a) is designed to alleviate … materialize, they could undermine the integrity of the judicial process."); *see* Green Declaration ¶¶ 22–24. This risk counsels in favor of a prompt pre-trial evidentiary hearing for the Court to decide the existence and scope of attorney misconduct. *See MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1210 (S.D.N.Y. 1981) ("[T]he problem of disqualification should be anticipated ***as early as possible*** to minimize expense, inconvenience, and needless expenditure of judicial resources, [and] the rule controls irrespective of when the need for the attorney's testimony becomes evident." (emphasis added)).

---

[4] Disqualification of class counsel is also appropriate when necessary to "protect the class from the injurious ethical lapses of its counsel." *Berger v. Property I.D. Corp.*, 2006 WL 8567219, at *3 (C.D. Cal. Nov. 7, 2006); *see also Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160–61 (S.D.N.Y. 2010) (explaining that "in considering whether the proposed class counsels are adequate, the Court may consider the honesty and integrity of the putative class counsels" and denying class certification on that basis); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510–11 (N.D. Ill. 1990).

### C.    A Hearing Is Necessary to Determine the Scope of the Evidence and Arguments Relating to Tampering That Are Admissible at Trial.

Hausfeld and Zuckerman Spaeder's allegations—backed by sworn affidavits—are compelling evidence of witness bias that are admissible at trial.  The use of such evidence should be informed by the outcome of an evidentiary hearing.

"In cross-examining [expert] witnesses, counsel for Defendants are entitled to very considerable latitude in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him."  *LNC Invs., Inc. v. First Fid. Bank*, 2000 WL 1182772, at *2 (S.D.N.Y. Aug. 21, 2000).  Moreover, "a cross-examiner is not required to 'take the answer' of a witness concerning possible bias, but may proffer extrinsic evidence, ***including the testimony of other witnesses***, to prove the facts showing a bias in favor of or against a party."  *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976) (emphasis added).  Because "[b]ias of a witness is not a collateral issue," "extrinsic evidence is admissible to prove that a witness has a motive to testify falsely."  *Carroll v. Trump*, 124 F.4th 140, 173 (2d Cir. 2024) (quoting *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976)).  Ultimately, the "admissibility of evidence for this purpose depends on whether it is 'sufficiently probative of the witness's asserted bias to warrant its admission into evidence.'"  *Id.* (quoting *United States v. Abel*, 469 U.S. 45, 49 (1984) (alterations accepted)).

A hearing would clarify the scope of BNPP's challenges regarding any testimony affected by the alleged misconduct.  For example, to the extent that certain factual episodes are developed or substantiated, BNPP may add to its witness list for the upcoming trial the percipient attorney witnesses to Ms. Boyd's misconduct.  BNPP may also offer class counsel's motion for disqualification and supporting declarations in evidence.  This is classic evidence of witness bias that may be explored at trial.  *See Harvey*, 547 F.2d at 722.

### D.    A Hearing Is Necessary to Avoid the Risk of a Retrial When the Full Facts of Attorney Misconduct Inevitably Come to Light.

Waiting until after trial to address these issues creates an unnecessary risk that the parties and the Court will waste substantial time and resources on a tainted trial that must be redone

after the full scope of misconduct comes to light.  For example, the Fifth Circuit ordered a new trial where it came to light after trial that Plaintiff's counsel "misled the jury in creating the impression that [plaintiffs' expert] had neither pecuniary incentive nor motive in testifying."  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d at 792.  And in another case, the Eleventh Circuit remanded for a new trial after concluding that "a material expert witness testified falsely on the ultimate issue in the case," where counsel "knew or should have known of the falsity of the testimony."  *Harre v. A.H. Robins Co.*, 750 F.2d 1501, 1503, 1505 (11th Cir. 1985), *vacated in part on other grounds*, 866 F.2d 1303 (11th Cir. 1989); *see Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992) (explaining that a new trial would be warranted in a case "where contradictory evidence subsequently comes to light revealing [] perjury"); *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 134 (6th Cir. 1990) (confirming that a new trial should be granted when, among other things, the party seeking the new trial did not know of the falsity of testimony until after trial).  Even when addressed before trial, the specter of witness tampering imposes tangible and needless costs on the opposing party.  *See Perez v. Dole Food Co., Inc.*, 2017 WL 5405729, at *2 (Cal. Ct. App. Nov. 14, 2017) (awarding defendant over $300,000 in costs, including those needed "to prove to the court that plaintiffs' counsel engaged in a pattern of witness tampering," after Colombian plaintiffs abandoned their paramilitary funding case).

The pending allegations of attorney misconduct in this case are not going away.  The Court permitted both class counsel and BNPP to renew their motions after trial.  Inevitably, the motions will be renewed, specific accusations and defenses will be asserted, and the truth will come out.  There is no basis to allow these serious allegations of misconduct to potentially taint the trial when they could be addressed at this juncture, resolving the uncertainty and letting the parties and the Court proceed in the most fair and efficient manner possible under the circumstances.

## III.    An Expedited Evidentiary Hearing Would Be Efficient and Would Not Interfere with the September Trial Date.

It would not be unduly burdensome or time-consuming to conduct a short evidentiary hearing and make factual findings, and it would not threaten the September trial date.  The Court should order full disclosures relating to Ms. Boyd's alleged misconduct in this case and should conduct a targeted evidentiary hearing to address the existence and extent of the claimed witness tampering and other ethical violations.

To begin, the Court could issue written interrogatories requiring all current and former counsel to respond to the following questions:

(1) Identify the witnesses Ms. Boyd tried to pressure and what she wanted them to say.

(2) Identify the witnesses Ms. Boyd met with in San Diego in June 2025 and what unethical conduct she threatened to engage in.

(3) Identify the Court orders and ethical advice Ms. Boyd refused to heed.[5]

Former class co-counsel Ms. Perry and Ms. Illuzzi-Orbon have already committed that they were ready to appear at a hearing "if any questions need to be addressed to them."  ECF No. 784 at 4 n.3.  BNPP requests that current and former class counsel testify under oath at the hearing, subject to examination by the Court and BNPP's counsel.  *See Santoni-Lorenzi v. F.W. Woolworth Co.*, 993 F.2d 1531, 1531 (1st Cir. 1993) (in response to allegation of juror tampering, "[t]he district court held a full evidentiary hearing at which witnesses for appellant and appellee testified and were cross-examined under oath," including the "attorney alleged to have engaged in the misconduct"); *Boe v. Marshall*, 762 F. Supp. 3d 1152, 1177 (M.D. Ala. 2024) ("There is nothing unusual about attorneys testifying under oath in an investigation into attorney

---

[5] BNPP respectfully requests leave to serve discovery on class counsel on substantially these topics.  The manifest injustice to BNPP from witness tampering—both at the upcoming trial and at any future class trial—and BNPP's diligence in seeking this discovery establish adequate "good cause" for this narrow reopening of discovery.  *Novartis Pharma AG v. Incyte Corp.*, 2025 WL 1132303, at *5 (S.D.N.Y. Apr. 17, 2025) ("A finding of 'good cause' depends on the diligence of the moving party." (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (alterations accepted))).  BNPP also respectfully renews its request for discovery and a hearing for those topics identified in its June 25, 2025 motion for sanctions.  ECF No. 753 at 21–22.

misconduct."). Such testimony by current class counsel would be consistent with their duty to absent class members and the Court. *See Kaplan*, 132 F.R.D. at 510–11 (decertifying class where "plaintiff's counsel was at least a silent accomplice in, and at most encouraged, plaintiff's false testimony").

The Court previously held that investigation of Ms. Boyd's tampering with the classwide questionnaire and opt-out process "will interfere with the preparation for trial." ECF No. 789. But now that class counsel has raised ethical issues directly linked to expected trial witnesses, this equation has shifted. The facts now present a textbook example of when a judge's gatekeeping function is triggered—the Court is "required to take measures against unethical conduct occurring in connection with any proceeding before him," including taking preventative measures to ensure that the jury does not hear untruthful or coerced testimony. *Gentner*, 55 F.3d at 89. It would be highly prejudicial to BNPP and a manifest injustice to try the case before the Court conducts an inquiry into class counsel's allegations of serious witness tampering to determine which witnesses are impacted, and how. The lack of a judicial resolution would cast doubt on every one of Plaintiffs' trial witnesses, needlessly requiring BNPP to address tampering with each witness and casting substantial doubt on any resulting jury verdict. If Ms. Boyd engaged in witness tampering and those witnesses ultimately provide false testimony at trial, the jury could hand down a verdict against BNPP based on misrepresentations. Such an unjust outcome is the reason that the Federal Rules of Civil Procedure provide for relief from a final judgment that is based on "fraud," "misrepresentation," or "misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

In light of BNPP's right to a trial untainted by false testimony or evidence, including the rights to cross-examine trial witnesses about improper coaching and to introduce evidence of witness bias and tampering, holding a one-day pretrial evidentiary hearing outside the jury's presence is required. Fairness, the integrity of these proceedings, and judicial efficiency demand it.

## CONCLUSION

The gravity of this situation and the need for an expedited evidentiary hearing is self-evident.  Ms. Boyd's own co-counsel have been forced to seek ethical advice to mitigate her misconduct, refused to try this case with her based on her "unfitness" and unethical conduct, and moved to disqualify her for her alleged ethical lapses.  They have provided specific, sworn evidence of witness tampering that compromises the integrity of the upcoming trial, as well as other unknown "unethical conduct."  The Court has a duty to preserve the integrity of the adversarial process.  At a minimum, the facts here require an evidentiary hearing with testimony from Plaintiffs' counsel, full disclosure relating to all of counsel's misconduct, and the admission of evidence of the misconduct at the upcoming trial.


Dated: New York, New York
       August 4, 2025


*/s/ Barry H. Berke*
Barry H. Berke
Dani R. James
Michael Martinez
Matt Benjamin
David P. Salant
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
bberke@gibsondunn.com
djames@gibsondunn.com
mmartinez2@gibsondunn.com
mbenjamin@gibsondunn.com
dsalant@gibsondunn.com

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Abena Mainoo
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: (212) 225-2000
cboccuzzi@cgsh.com
amainoo@cgsh.com

*Counsel for Defendants BNP Paribas and
BNP Paribas US Wholesale Holdings, Corp.*