UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ENTESAR OSMAN KASHEF *et al.*,

                    Plaintiffs,

        -against-

BNP PARIBAS S.A. and BNP PARIBAS US
WHOLESALE HOLDINGS, CORP.,

                   Defendants.

No. 16 Civ. 3228 (AKH)

Hon. Alvin K. Hellerstein

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
*IN LIMINE* TO EXCLUDE REFERENCES TO INTERNATIONAL TERRORISM**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
T: (212) 351-4000

CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T: (212) 225-2000

*Counsel for Defendants BNP
Paribas S.A. and BNP Paribas
US Wholesale
Holdings, Corp.*

## PRELIMINARY STATEMENT

Plaintiffs have repeatedly and gratuitously referred to the Government of Sudan's ("GOS") links to Al-Qaeda in motion practice, including that the GOS hosted Osama bin Laden between 1991 and 1996.  The September trial, however, will decide the claims of three plaintiffs whose earliest injuries occurred in 1998, after Al-Qaeda was expelled from Sudan.  Plaintiffs do not allege any connection between their injuries and Al-Qaeda or international terrorism, and any reference to those topics at trial will unfairly prejudice a New York jury against BNPP.  Indeed, the Second Circuit has repeatedly held that references to international terrorism are unduly prejudicial where, as here, the defendant is not accused of participating in acts of international terrorism.  Accordingly, the Court should preclude any reference to the GOS's connection with international terrorism, including that it harbored Al-Qaeda years before the events at issue in the September trial, as irrelevant under Federal Rule of Evidence ("FRE") 401 and 402 and unduly prejudicial under FRE 403.

## BACKGROUND

Plaintiffs' counsel and their experts have repeatedly and needlessly referred to the GOS's "role in supporting international terrorism," Defendants' Memorandum of Law in Opposition to Plaintiffs' Offer of Proof at 18, ECF No. 698 , including that the GOS "harbored Osama bin Laden."  Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 23, ECF No. 465.  For example:

- Plaintiffs have repeatedly asserted that BNPP and its employees were aware that the GOS supported Al-Qaeda and international terrorism, *see* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 91, ECF No. 466, and that the regime harbored Osama bin Laden, *see* ECF No. 466 at 23;

- Plaintiffs' U.S. sanctions expert Cameron Hudson provides an extensive discussion of the GOS's designation as a "state-sponsor of terrorism," *see* C. Lee Decl., Ex. H ¶ 11 (Hudson Report), ECF No. 720-8;

1

- Plaintiffs designated portions of deposition transcripts, Ex. P, Plaintiffs' Deposition Designations, at 46,[1] in which Plaintiffs' counsel questioned BNPP's witnesses regarding whether "Osama bin Laden could have had a valid account" at Sudanese banks which transacted with BNPP, *see* Ex. H, Cozine Dep. Tr. 171:24-25, and whether Sudanese state banks "were supporting the government, the same government that supported Osama bin Laden" and "help[ed] terrorism," Ex. D, de Saint Andre Dep. Tr. 139:19-140:13; and

- Plaintiffs' political science and human rights experts Drs. Suliman Baldo and Harry Verhoeven describe the GOS's links to terrorist organizations, including how the GOS hosted Al-Qaeda between 1991 and 1996 and how "the Bashir Regime maintained ties to international terrorist actors that promoted Jihad," such as Hamas and Boko Haram; *see* C. Lee Decl., Ex. B (Baldo Report) at 39-40, ECF. No. 720-2.[2]

Plaintiffs have gone so far as to imply that BNPP's actions put "our national security at risk" and played a pivotal role in providing a refuge for Osama Bin Laden. ECF No. 466 at 18, 23. The Court already struck references to international terrorism and Osama bin Laden when it ruled on the admissibility of the statement of facts included in BNPP's plea agreement with U.S. authorities related to sanctions violations. *See* Order at 16, ECF No. 738.

## **LEGAL STANDARD**

FRE 402 dictates that "irrelevant evidence is not admissible." In addition, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Moreover, the Second Circuit has held that "evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice," and accordingly that such "highly inflammatory [and] highly charged" statements should be excluded

---

[1] Plaintiffs have indicated that they will amend their deposition designations and exhibit list by August 15.
[2] All exhibits cited herein are attached to the Declaration of Dani R. James, filed herewith.

to avoid "lur[ing] the fact finder into declaring guilt on a ground different from proof" of the claim alleged. *United States. v. Al-Moayad*, 545 F.3d 139, 166 (2d. Cir. 2008).

## ARGUMENT

Plaintiffs' claims have nothing to do with international terrorism, Al-Qaeda, or Osama bin Laden. Any testimony regarding those topics is likely to inflame and confuse a New York jury, many of whose members will likely remember the events of September 11, 2001. The Court should preclude Plaintiffs from making any reference to those topics at trial.

*First*, the GOS's connection to international terrorism is irrelevant to Plaintiffs' claims. "Relevance is measured against the proffering party's theory of the case." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MD01570-GBD-SN, 2023 WL 3116763, at *3 (S.D.N.Y. Apr. 27, 2023). In the September 11 proceeding, for example, the Court excluded "irrelevant terrorism history" by an expert because it would "not aid the jury in resolving the core factual dispute: whether Defendants materially supported al Qaeda." *Id.* at *6 (internal quotation marks omitted). Here, there are *no* factual disputes bearing on Al-Qaeda or international terrorism generally. The Court has ruled that to establish their claims, Plaintiffs have the burden of proving that "(1) [GOS] committed an illicit act, (2) [BNPP] consciously assisted the perpetrator and knew or should have known that [it] was contributing to an illicit act, and (3) their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." *Kashef v. BNP Paribas SA*, 2024 WL 1676355, at *2 (S.D.N.Y. Apr. 18, 2024) (quotation marks omitted). Mr. Abdalla, Mr. Adam, and Ms. Kashef all allege injuries purportedly caused by some combination of Sudanese government security forces and government-backed militias between 1998 and 2008, *after* the GOS expelled Al-Qaeda in 1996. They do not allege any connection between Al Qaeda or international terrorism and their injuries, which occurred in the midst of a decades-long

-3-

civil war, unlike the events of September 11 and other attacks organized by organizations like Al-Qaeda. Al-Qaeda is thus irrelevant to whether the GOS "committed an illicit act" and whether BNPP was the "natural and adequate cause of the plaintiff's harm or loss." *Id.* Moreover, because Plaintiffs allege no connection between Al-Qaeda (or any other terrorist group) and their injuries, the GOS's prior connections to international terrorism are also irrelevant to whether BNPP "knew or should have known that [it] was contributing" to the GOS's alleged illicit acts on Plaintiffs at different times and places in Sudan years after Al-Qaeda left the country. *Id.* The Court should therefore exclude any evidence, argument or testimony regarding international terrorism on this basis alone.

*Second*, any minimal probative value of such evidence is far outweighed by the danger of undue prejudice, as it is likely to inflame the jury, and to encourage jurors to unfairly and improperly transfer their opprobrium for international terrorists onto BNPP. As a result, courts in this district—including this one—have consistently limited argument and testimony related to international terrorism where defendants were not themselves accused of participating in acts of international terrorism. *See e.g., In re September 11 Litigation*, 2007 WL 3036439, at *4–5 (S.D.N.Y. Oct. 17, 2007) (Hellerstein, J.) (excluding certain evidence related to September 11 attacks in wrongful death action, due to likelihood that the evidence would have "strongly prejudicial value").

The Second Circuit has repeatedly endorsed that approach because "there can be little doubt that in the wake of the events of September 11, 2001, evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice." *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008); *United States v. Royer,* 549 F.3d 886, 902–03 (2d Cir. 2008). In fact, the Second Circuit has not hesitated to order new trials on this

very basis.  In *Al-Moayad*, for example, the Second Circuit overturned a jury verdict against defendants for providing material support to Al-Qaeda and Hamas based largely on the district court's failure to preclude the admission of evidence regarding a terrorist attack perpetrated by Hamas and an Al-Qaeda training camp.  *See Al-Moayad*, 545 F.3d at 165.  In so ruling, the court noted that although the defendants were charged with "providing material support to Hamas and Al-Qaeda," they were not charged "with violent terrorist acts," and thus "there was a significant danger that [admission of evidence of Hamas and Al-Qaeda's violent acts] caused undue prejudice."  *Id* at 166.  Such prejudice "cast sufficient doubt on the fairness of the trial as to warrant new proceedings."  *Id.* at 166 n.22.

Admitting evidence and argument regarding the Government of Sudan's prior links to international terrorism would have the same effect here.  Rather than risk that the jury's verdict as to BNPP's liability will be unduly influenced by inflammatory references to Al-Qaeda or Osama bin Laden, which have no relevance to the parties' claims and defenses, the Court should preclude any reference to international terrorism.  Excluding statements of this nature will help ensure "that the proceedings in the courtroom remain devoted to a reasoned and reasonable search for justice between the parties," *Koufakis v. Carvel and Franchise Licensors, Inc.*, 425 F.2d 892, 901 (2d Cir. 1970), and comports with the "fundamental sense of fairness which guides our system of justice."  *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992).

## CONCLUSION

For the foregoing reasons, BNPP respectfully requests that the Court order that Plaintiffs' counsel and their witnesses be precluded from referring at trial to international terrorism as well as the Government of Sudan's connections to international terrorism.

Respectfully submitted,

Dated: New York, New York
        August 14, 2025

Barry H. Berke                          /s/ Carmine D. Boccuzzi, Jr.
Dani R. James
Michael Martinez                        Carmine D. Boccuzzi, Jr.
Matt Benjamin                           Abena Mainoo
David P. Salant
                                        CLEARY GOTTLIEB STEEN &
GIBSON, DUNN & CRUTCHER LLP             HAMILTON LLP
200 Park Avenue                         One Liberty Plaza
New York, New York 10166                New York, New York 10006
T: (212) 351-4000                       T: (212) 225-2000
bberke@gibsondunn.com                   cboccuzzi@cgsh.com
djames@gibsondunn.com                   amainoo@cgsh.com
mmartinez2@gibsondunn.com
mbenjamin@gibsondunn.com
dsalant@gibsondunn.com

                                        *Counsel for Defendants BNP Paribas S.A.*
                                        *and BNP Paribas US Wholesale Holdings,*
                                        *Corp.*

-6-