**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ENTESAR OSMAN KASHEF, *et al.*,

        *Plaintiffs*,

v.

BNP PARIBAS S.A. and BNP PARIBAS
US WHOLESALE HOLDINGS, CORP.,

        *Defendants*.

Case No. 1:16-cv-03228-AKH-JW

Hon. Alvin K. Hellerstein

---

**<u>PLAINTIFFS' PRETRIAL MEMORANDUM</u>**

I.      INTRODUCTION

This case arises from the role that Defendants, BNP Paribas S.A. and its affiliates ("BNPP"), played in consciously assisting the Government of Sudan to carry out one of the most notorious campaigns of persecution in modern history. Plaintiffs are lawful citizens of the United States who fled Sudan after suffering forced displacement, the destruction of their homes and property, and severe personal harms, including the loss of family members and consortium, at the hands of the Sudanese regime. BNPP is jointly and severally liable under Swiss law for those harms.

The Second Circuit has already held that the Government of Sudan's actions, viz.,—a campaign of genocide, mass rape, ethnic cleansing, physical assault, physical and psychological torture, intentional infliction of mental anguish, kidnapping and forced detention, forcible displacement, and property damage, theft and destruction—constitute violations of *jus cogens* norms of international law and therefore illicit act within the meaning of Swiss law. *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 60 (2d Cir. 2019) ("*Kashef II*"). It is also law of the case that BNPP knowingly and consciously provided Sudan with access to the U.S. financial system in violation of sanctions, conduct to which BNPP admitted in its criminal guilty plea in *United States v. BNP Paribas, S.A.*, No. 14-cr-460 (S.D.N.Y. 2015). *Kashef v. BNP Paribas SA,* 2021 WL 603290, at *3 (S.D.N.Y., 2021) ("*Kashef IV*"); ECF 499, Or. on MSJ, at 5–6.  BNPP admitted that its own employees recognized BNPP's "central role in providing Sudanese financial institutions access to the U.S. financial system, despite the Government of Sudan's role in supporting terrorism and committing human rights abuses . . ." *Id*.

At trial, Plaintiffs will prove that BNPP's systemic and pervasive assistance was a natural and adequate cause of their injuries because it allowed Sudan to generate oil revenue, finance its military, and escalate its campaign of atrocities. Plaintiffs will further prove their entitlement to

compensatory damages under Swiss law, including both pecuniary damages for the loss of homes, lands, and livelihoods, and moral damages for displacement, detention, torture, sexual violence, grief, and loss of companionship. Plaintiffs' injuries "would not have occurred at the same time or in the same way or magnitude" except for BNPP's assistance. *Kashef IV*, 2021 WL 603290, at *12. Again, under Article 50(1) of the Swiss Code of Obligations, Defendants are jointly and severally liable for these harms.

## II.     FACTUAL ISSUES TO BE TRIED

At trial, the jury will be asked to resolve whether Plaintiffs have proven the following facts by a preponderance of the evidence:

### A.  Nature and Extent of Sudan's Illicit Act

- The scope and magnitude of the Government of Sudan's campaign of persecution, including, but not limited to, genocide, ethnic cleansing, mass rape, torture, arbitrary detention, forced displacement, destruction and pillaging of property, and the killing of civilians.

### B.  BNPP's Conscious Assistance

- Whether BNPP knowingly, recklessly, or negligently provided financial assistance to Sudanese banks and the Government of Sudan in violation of U.S. sanctions.

- Whether BNPP knew or should have known that providing financial services to the Government of Sudan would contribute to the Sudanese government's campaign of persecution.

### C.  Natural and Adequate Causation

- Whether Plaintiffs' injuries "would not have occurred at the same time or in the same way or magnitude" absent BNPP's assistance.

2

- Whether it is reasonable to hold BNPP responsible for causing at least some of the human rights abuses in Sudan because the atrocities were foreseeable consequences of Sudan's oil revenues and military financing enabled by BNPP.

### D. Plaintiffs' Injuries

- The specific harms suffered by each Plaintiff, including forced displacement, physical injuries, sexual violence, arbitrary detention, torture, the killing of family members.

- The destruction, loss, or forced abandonment of homes, land, livestock, and other property.

- The harms suffered by close relatives as a violation of their own "personality rights".

### E. The Extent of Compensatory Damages

- Damages for forced displacement.

- Damages for arbitrary detention.

- The value of lost or destroyed property and livelihoods (pecuniary damages).

- The amount of moral damages to compensate for torture, sexual violence, grief, and loss of companionship.

- The harms suffered by close relatives as a violation of their own "personality rights" such marital disruption, loss of intimacy, emotional strain on the marriage, etc.

## III. POTENTIAL LEGAL DISPUTES

### A. Elements of Liability under Swiss Art. 50(1) CO

1. <u>Illicit Act</u>

3

Whether the Government of Sudan's (GOS) conduct constitutes an illicit act within the meaning of Swiss Code of Obligations Article 50(1) has been decided. It is the law of the case that Sudan's campaign of genocide, mass rape, ethnic cleansing, and related abuses violated jus cogens norms and therefore qualify as an illicit act as a matter of law. *Kashef II*, 925 F.3d 53, 60; ECF No. 499, Or. on MSJ at 5–6. Plaintiffs will submit evidence proving that specific acts within that campaign caused the injuries of Plaintiffs Abdalla, Adam, and Kashef, as a natural and adequate cause of BNPP's conscious assistance of the GOS and the extent of those specific acts.

2. Conscious Assistance

To the extent Defendants attempt to contend that the conscious assistance standard requires a direct showing of willful or deliberate participation, this position has also been rejected. This "Court determine[d] that Professor Werro's position that an accomplice need only be negligent as to its cooperation in tort is the accurate description of how the Swiss Supreme Court has interpreted Article 50.1." *Kashef IV*, 2021 WL 603290, at *4.[1]

3. Natural and Adequate Causation

To the extent that Defendants contend that a direct showing of but-for causation is required under Swiss law—that Plaintiffs need to prove direct tracing of dollars to military who harmed specific Plaintiffs — this contention has also been rejected. That direct a causal link is not required under Swiss law. *Kashef IV*, 2021 WL 603290, at 7, 12; ECF No. 499, Or. on MSJ, at 9.[2] Causation must be "adequate," that is, as Judge Nathan articulated the standard, "whether it would be

---

[1] Moreover, Judge Nathan held that Plaintiffs could establish a presumptive causal link between the financial assistance given by BNPP to Sudan and the atrocities about which plaintiffs complain, and that Plaintiffs can invoke the presumption by showing that 1) " the revenue generated for the Sudanese government through BNPP's assistance exceeded the Sudanese government's entire military budget, leading to a massive increase in military expenditure," and that 2) "[t]he government of Sudan used its newfound access to U.S. financial markets provided by BNPP to import sophisticated weapons from major arms suppliers in China, Russia, Ukraine, Iran and Belarus." ECF 499, Or on MSJ, at 8 (quoting *Kashef IV*, 2021 WL 603290, at *8.)

[2] See also June 26, 2025 Hr'g Tr. at 46:21-23 ("Is there going to be a sticky note on a dollar that comes to Bank Paribas? Objection's sustained.").

4

'reasonable' to hold BNPP responsible for causing at least some of the human rights abuses in Sudan," and "whether those atrocities were foreseeable to BNPP at the time." *Kashef IV*, 2021 WL 603290, at *7. "This reasonableness determination is to be made based on examining the quality of the casual links: namely, Defendants' knowledge that Sudan was committing human rights abuses, "that those abuses were committed with weapons and soldiers that were bought with funds generated by its relationship to BNPP," and that Sudan would not have been able to obtain those funds absent Defendants' skirting of U.S. sanctions." ECF No. 499, Or on MSJ, at 9. Another consideration on whether it is reasonable to hold BNPP accountable is "whether BNPP was motivated to increase and continue its profitable business relationship with Sudan and thus was indifferent to the human rights violations that BNPP's financing enabled Sudan to commit." *Kashef IV*, 2021 WL 603290, at 17; ECF No. 499, Or. on MSJ at 9.

### B.  Damages under Swiss Law

#### *1.*  Baseline Damages

Swiss law recognizes an award of baseline moral damages for categories of injury where exact quantification is impossible but the suffering is inherent, such as forced displacement and arbitrary detention. These damages are standardized to reflect the average harm suffered by victims of the illicit act. *See* ECF No. 435-104, Werro Decl. (Mar. 2, 2023) ¶¶ 151, 155; ECF No. 800, Werro Decl. (2025) ¶¶ 41–46; Arts. 42(2), 49 CO; ECF 708-24, *Poster Campaign Case*, ATF 128 IV 53 (2002); ECF No. 708-28, *Holocaust Denial Case*, ATF 127 IV 203 (2001).

#### *2.*  Moral Damages

Swiss law recognizes that close relatives (including spouses) may recover moral damages for grief, loss of companionship, and injury to mental health when a family member is killed, tortured, or severely injured. This is a violation of their own personality rights under CO Arts. 47,

5

49. ECF 435-104, Werro Decl. ¶¶ 143–146; ECF 708-21, *Gunshot Case*, ATF 132 II 117 (2006); ECF 708-22, *Forced Prostitution Case*, 6B_628/2012 (2013)).

IV. **Defenses to Be Tried**

Defendants have no affirmative defenses to be tried. The factual issues that Defendants contest are outlined above and summarized as follows: Defendants contend that Plaintiffs cannot prove BNPP's conduct was the natural and adequate cause of their injuries. They argue that Sudan had other sources of revenue, that Plaintiffs were not living in oil-producing regions, and that many harms were inflicted with unsophisticated weapons not linked to BNPP financing. Defendants deny that BNPP knowingly or consciously assisted Sudan's illicit act. They argue BNPP merely provided routine financial services, did not intend to support human rights abuses, and that liability cannot rest on negligence or recklessness.

Defendants further dispute the sufficiency of Plaintiffs' evidence of property loss. They argue that claims for destroyed homes, land, and personal property are speculative and not adequately proven. Defendants contend that certain categories of moral damages—such as displacement, detention, or spousal/consortium harms—are not compensable under Swiss law. They also argue that Plaintiffs have not provided sufficient individualized evidence of psychological harm.

V. **CONCLUSION**

This case will present the jury with a clear application of Swiss law to facts that are well established in the record. The Court and the Second Circuit have already determined that the Government of Sudan committed *jus cogens* violations that constitute an illicit act, and that BNPP knowingly provided Sudan with access to the U.S. financial system in violation of sanctions aimed at ending that act. What remains for trial are fact questions for the jury: the nature and extent of

the illicit act, whether BNPP's systemic assistance was the natural and adequate cause of Plaintiffs' injuries, and the extent of compensatory damages to which each Plaintiff is entitled.

Plaintiffs will prove that BNPP's financing enabled Sudan to generate oil revenue, expand its military capacity, and escalate its genocidal campaign, making Plaintiffs' displacement, injuries, and losses a foreseeable consequence of BNPP's conduct. Plaintiffs will also prove their entitlement to compensatory damages under Swiss law, including pecuniary damages for lost property and livelihoods, and moral damages for displacement, detention, torture, sexual violence, grief, and loss of companionship. Under Article 50(1) of the Swiss Code of Obligations, all remaining BNPP entities are jointly and severally liable for these harms.

Accordingly, the trial will focus on causation and damages. Plaintiffs respectfully submit that the issues for trial are ready for presentation to the jury.

| | |
|---|---|
| Dated: August 28, 2025 | Respectfully submitted, |
| /s/ Kathryn Lee Boyd | /s/ Greg G. Gutzler |
| Kathryn Lee Boyd | Greg G. Gutzler |
| David L. Hecht | Carrie Syme |
| Maxim Price | DICELLO LEVITT LLP |
| Michael Eggenberger | 485 Lexington Ave., Ste 1001 |
| HECHT PARTNERS LLP | New York, NY 10017 |
| 125 Park Avenue, 25th Floor | (646) 933-1000 |
| New York, NY 10017 | ggutzler@dicellolveitt.com |
| (212) 851-6821 | csyme@dicellolveitt.com |
| lboyd@hechtpartners.com | |
| dhecht@hechtpartners.com | Kenneth P. Abbarno |
| mprice@hechtpartners.com | Robert F. DiCello |
| meggenberger@hechtpartners.com | DICELLO LEVITT LLP |
| | 8160 Norton Parkway, Third Floor |
| Kristen Nelson | Mentor, OH 44060 |
| HECHT PARTNERS LLP | (440) 953-8888 |
| 2121 Avenue of the Stars | kabbarno@dicellolevitt.com |
| Los Angeles, CA 90067 | rfdicello@dicellolevitt.com |
| (212) 851-6821 | |
| knelson@hechtpartners.com | Adam J. Levitt |
| | DICELLO LEVITT LLP |
| *Co-Counsel for Plaintiffs* | Ten North Dearborn Street, Sixth Floor |
| | Chicago, IL 60602 |

(312) 214-7900
alevitt@dicellolevitt.com

*Co-Counsel for Plaintiffs*

8