# EXHIBIT 1

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Embassy of Switzerland in the United States

Via email and express courier

The Honorable Alvin K. Hellerstein
United States District Court for
the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

Washington, D.C., 2 September 2025

**Case No. :16-cv-03228-AKH-JW:  Entesar Osman Kashef, et al., v. BNP Paribas S.A. et al.**

Dear Judge Hellerstein:

The Government of Switzerland has become aware that in the above mentioned matter the Court has determined to apply Swiss law to a class action tort claim for banking activities in Switzerland. Because the interpretation of Swiss law by U.S. courts (and in particular the potential use of U.S. sanctions regulations as a basis for Swiss tort liability) raises important questions concerning Swiss law and sovereignty, I am writing to inform you of the views of Switzerland on this subject.

I wish to emphasize that the Government of Switzerland has no independent knowledge of the underlying merits of the case before you. The comments in this letter are limited strictly to the interpretation of Swiss law and issues of Swiss sovereignty.

The United States Supreme Court has stated that courts should "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 546 (1987). Moreover, according to Rule 44.1 of the Federal Rules of Civil Procedure, United States Courts are expressly authorized to consider any relevant material or source in determining foreign law, whether or not submitted by a party. I therefore trust that you will be able to give full consideration to our comments.

Swiss Efforts to Support the Sudanese People

Switzerland has long been involved in providing humanitarian support and political efforts to facilitate negotiations in Sudan. With regard to the civil war between Northern and Southern Sudan, in January 2002, after eight years of peace talks, a Swiss delegation brokered the Nuba Mountains ceasefire agreement, which also provided the framework for the Comprehensive Peace Agreement (CPA) that was signed by the Sudanese government and its opponents on 9 January 2005.

The government agency Swiss Development Cooperation (SDC) has provided humanitarian aid in Sudan since 1994. Before and after the CPA, efforts have focused on the south of the country and the Nuba Mountains. From 2003, mitigating the impact of the war in Darfur became one of SDC's priorities. The support provided covered both emergency relief and rehabilitation projects. In 2004, SDC opened an office in Khartoum and in 2006 in Juba to coordinate the activities of Swiss Humanitarian Aid and of

other Swiss actors. When Sudan was divided into two independent states in 2011, the SDC doubled the budget it had previously allocated to the former Sudan.

In April 2023, another conflict arose in the Darfur region, which has had catastrophic consequences and constitutes a major humanitarian crisis, with over 30 million people in need of assistance. Since April 2023, the Federal Department of Foreign Affairs has allocated CHF 134 million to support the affected populations in Sudan and neighboring countries, and for the continuation of peace policy initiatives. Since August 2024, Switzerland has been a member of the ALPS Coalition (together with the United States, the UAE, Saudi Arabia, Egypt, the UN, and the African Union). Through its joint diplomatic efforts, the ALPS Coalition calls for the removal of all bureaucratic obstacles hindering humanitarian activities and for guarantees that humanitarian actors can carry out their work.

In 2005, the United Nations Security Council established a Committee to oversee sanctions on Sudan adopted by the Council in relation to Darfur, which include an arms embargo and an asset freeze and travel bans for designated individuals. On 25 May 2005, the Government of Switzerland adopted sanctions against Sudan by implementing the United Nations resolutions 1556 and 1591. The United Nations did not impose a complete ban on banking transactions with Sudan.

Elements of Applicable Swiss Law

We understand that the actions of BNP Paribas that are the subject of this lawsuit were commercial transactions conducted from Switzerland that at the time were permissible under Swiss law. The lawsuit amounts to a claim for damages based on Plaintiffs' view that Switzerland (and all other countries) should have banned such transactions during the relevant time period. The lawsuit therefore constitutes a challenge to Swiss sovereignty, seeking to interfere with the ability of Switzerland to regulate the conduct of its own nationals within its own territory.

In the light of this Court's previous ruling that Switzerland has a much stronger connection to the actions at issue than the United States and therefore that Swiss law should be applied to determine whether a tort was committed by BNP Paribas, the established laws of Switzerland and practice of the Swiss Courts in the interpretation of the laws in question should be carefully considered.

Based on the available documents, the Government of Switzerland is concerned that Articles 41 and 50(1) of the Swiss Code of Obligations ("SCO") are being interpreted in a manner that actually conflicts with Swiss law. The Government of Switzerland wishes to highlight as examples the following points.

- Primary liability: For Article 50(1) SCO joint and several liability to apply to an accomplice, there must be an underlying violation by a "main perpetrator" who could be liable under Swiss tort law. In this regard, Article 41 SCO is a private law obligation that does not impose civil liability (1) on foreign sovereigns or (2) for extraterritorial acts committed outside of Switzerland. Accordingly, there can be no actionable private law tort claim against the "main perpetrator" under Swiss law, and therefore can be no secondary liability for its alleged accomplice.

- Elements of complicity: The application of Article 50(1) SCO also requires that the accomplice made a "conscious cooperation" in the plaintiff's injury, meaning a willful and substantial assistance to the unlawful act that injured the plaintiff at issue, not generalized assistance to the perpetrator. Also, there must be a specific causal link between the defendant's conduct and the plaintiff's individual injury. DFSC 145 [2019] III 72, reas. 2.3.2 at 84-85.[1] Basing liability on a general engagement with the perpetrator, without tying the bank's services to the specific plaintiff's injuries, would have no basis in Swiss law.

- Requirement for tort liability under Swiss law: For liability under Articles 41 and 50 SCO to apply, an act must be unlawful within the meaning of Swiss law. Violations of a U.S. sanctions regulation cannot serve as a basis to establish Swiss tort liability. Consistent with principles of sovereignty and each country's ability to regulate its economic relations with foreign countries, compliance with Swiss laws, not U.S. laws, is of primary relevance to a bank's operations in Switzerland. It would offend Swiss sovereignty for a court to defer to or rely on the different and inconsistent law or administrative/regulatory measures of third countries, including those related to U.S. sanctions, particularly when the underlying transactions occurred in Switzerland.

- Standard of proof: Swiss jurisprudence is clear that the party alleging tort liability under the Swiss Code of Obligations must prove every required element and that the standard for civil tort liability is "full conviction," which is otherwise known as "strict proof." Only with respect to the

---

[1] We understand this court ruling is in the record of the case at ECF 708-13.

element of natural causation may the "preponderant likelihood" standard be applied. DFSC 132 III 715 consid. 3.1.[2]

Switzerland has a strong sovereign interest in regulating conduct, including banking, within its own borders. An interpretation of Articles 41 and 50 SCO inconsistent with the above basic principles would result in the Court not applying Swiss law at all, but rather a new U.S. court-created law. The creation of an alternative cause of action to allow private plaintiffs to seek damages for actions taken in foreign countries consistent with those countries' laws would amount to allowing them to project unilaterally their preferred policy decisions on foreign jurisdictions. That result would be contrary to both Swiss sovereignty and established principles of jurisdictional competence under international law and comity. Basing private civil liability for a Swiss bank on non-compliance with U.S. sanctions while disregarding Swiss sanctions compliance would be equally contrary to Swiss law and sovereignty.

Especially in light of the potentially significant implications of this case for Switzerland and international law, I respectfully request that you carefully consider the points raised in this letter as you evaluate issues of Swiss law.

Yours sincerely,

THE AMBASSADOR OF SWITZERLAND

Dr. Ralf Heckner

---

[2] We understand this court ruling is in the record of the case at ECF 813-2.

3

cc: Counsel of Record:

Abena A. Mainoo
amainoo@cgsh.com

Adam J. Levitt
alevitt@dicellolevitt.com

Aitan D. Goelman
agoelman@zuckerman.com

Amanda E. Lee-Dasgupta
alee@hausfeld.com

Barry H. Berke
BBerke@gibsondunn.com

Carmine D. Boccuzzi, Jr
cboccuzzi@cgsh.com

Carrie Ann Syme
csyme@dicellolevitt.com

Charity E. Lee
charitylee@cgsh.com

Claire Agnes Marie Rosset
crosset@hausfeld.com

Cyril V. Smith
csmith@zuckerman.com

Dani R. James
DJames@gibsondunn.com

David Salant
DSalant@gibsondunn.com

David L. Hecht
dhecht@hechtpartners.com

Greg G. Gutzler
ggutzler@dicellolevitt.com

James Gotz
jgotz@hausfeld.com

Joshua T. Mathew
jmathew@zuckerman.com

Katherine R. Lynch
kalynch@cgsh.com

Kathryn Lee Boyd
lboyd@hechtpartners.com

Kenneth P. Abbarno
kabbarno@dicellolevitt.com

Kristen L. Nelson
knelson@hechtpartners.com

Leila Mgaloblishvili
lmgaloblishvili@cgsh.com

4

Mark A. DiCello
madicello@dicellolevitt.com

Mary Sameera Van Houten Harper
mvanhouten@hausfeld.com

Matthew Benjamin
MBenjamin@gibsondunn.com

Maxim Price
mprice@hechtpartners.com

Michael Eggenberger
meggenberger@hechtpartners.com

Michael Martinez
MMartinez2@gibsondunn.com

Michael D. Hausfeld
mhausfeld@hausfeld.com

Percy Metcalfe
pmetcalfe@hausfeld.com

Richard S. Lewis
rlewis@hausfeld.com

Robert F. DiCello
rfdicello@dicellolevitt.com

Scott Gilmore
sgilmore@hausfeld.com

Theodor Dietrich Erwin Bruening
tbruening@pm.me