UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                         :
ENTESAR OSMAN KASHEF, et al.,              :     **OPINION AND ORDER AS TO**
                                         :     **BURDEN OF PROOF AND**
                              Plaintiffs,    :     **ADMISSIBILITY OF**
                                           :     **IMMIGRATION RECORDS**
    -against-                                  :
                                           :     16 Civ. 3228 (AKH)
BNP PARIBAS SA, et al.,                        :
                                           :
                              Defendants.   :
------------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

    I asked the parties to brief two important issues for the oncoming trial: what should be the burden of proof, and if government records regarding Plaintiffs' entitlement to asylum status should be admissible. I have read the parties' briefs and heard arguments. My rulings follow.

### I. Burden of Proof

    The law of the case, initially determined by Judge Alison J. Nathan,[1] *see Kashef v. BNP Paribas ("Kashef I"), S.A.*, 442 F. Supp. 3d 809 (S.D.N.Y. 2020), and again by me, *see Kashef v. BNP Paribas, S.A. ("Kashef II")*, 16 Civ. 3228 (AKH), 2024 U.S. Dist. LEXIS 72098 (S.D.N.Y. Apr. 18, 2024), is the law of Switzerland. Specifically, Swiss Code of Obligations ("SCO") Article 50(1) governs the substantive elements of this action. *Id.* Plaintiffs, in order to establish Defendants' liability, are required to prove three material propositions: (1) the commission of an illicit act by a main perpetrator, here, the Government of Sudan; (2) Defendants' conscious assistance of the main perpetrator, such that BNP Paribas knew, or should have known, that it

---

[1] Judge Nathan presided over this case until her ascension to the United States Court of Appeals for the Second Circuit, when this case was reassigned to me.

1

was contributing to the illicit act; and (3) that Defendants' culpable cooperation was the natural and adequate cause of Plaintiffs' harm or loss. *Id.*

The issue now to be discussed is how to define Plaintiffs' burden of proof.

Federal courts in diversity cases apply federal law to procedural issues, and the law of the state in which the forum sits to substantive issues. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 69 (1938); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 428 (1996). On issues where substantive rules among potentially applicable states differ, the choice of law is made according to the conflicts law of the state in which the federal court sits. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Bank of N.Y. v. Yugoimport SDPR J.P.*, 780 F. Supp. 2d 344, 354 (S.D.N.Y. 2011), *aff'd* 745 F.3d 599 (2d Cir. 2014) ("The district court, as in a case of diverse citizenship, first must apply the choice of law rules of the state in which the district court is situated, and then the substantive law of the appropriate state or nation thus found.").

Under federal law, burden of proof is considered substantive. *See, e.g., Dir. Off. of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 271 (1994) ("[T]he assignment of the burden of proof is a rule of substantive law."); *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) ("[W]e have held that in diversity cases the federal courts must follow the law of the State as to burden of proof"); *United States v. McCombs*, 30 F.3d 310, 323-24 (2d Cir. 1994) ("[M]atters related to the burden of proof are considered matters of substantive law, governed by the law of the jurisdiction whose substantive law applies to the merits in question."); *N.A.A.C.P. v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 477 (E.D.N.Y. 2003) ("It is generally accepted that burden of proof is a substantive question requiring the application of state law."). Thus, the law of the state in which the forum sits provides the law governing burden of

2

proof—either its own substantive law, if there is no conflict with the law of another potentially applicable jurisdiction, or its choice-of-law rules if substantive laws conflict.

In New York, the burden of proof in a civil negligence case is preponderance of the evidence—whether the plaintiff has proved that its case is more likely true than not true, even if ever so slightly. *Rinaldi & Sons, Inc. v. Wells Fargo Alarm Service, Inc.*, 39 N.Y.2d 191, 196 (N.Y. 1976). Swiss law differs, perhaps linguistically, perhaps substantively, as will be discussed below. Since the burden of proof is considered substantive, and since Swiss law governs substantive matters, Swiss law, to the extent different, will define the burden of proof.

The parties' experts on Swiss law, Dr. Franz Werro for Plaintiffs and Dr. Christoph Muller for Defendants, provide the concepts. ECF Nos. 800, 813-1. Both agree that in a civil case, plaintiffs have the burden of proof, and that the "default standard" is "full conviction," also known as "strict proof." Werro Decl. ¶ 10; Muller Decl. ¶ 15. Both agree also that if there is "evidentiary difficulty" or "evidentiary hardship" in that a party must rely on circumstantial evidence, the standard becomes "preponderant likelihood." Werro Decl. ¶ 11; Muller Decl. ¶¶ 16, 18, 32.

Dr. Werro would apply the "preponderant likelihood" standard to all three material propositions, reasoning that the proofs for each of them will rely on circumstantial proof, and equally present "evidentiary hardships." Werro Decl. ¶¶ 19-39. Dr. Muller would apply the "preponderant likelihood" standard to only the issue of natural causation. He argues that "Swiss law does not permit a court to assess the entire tort claim under a lower standard of proof," lower than "full conviction" or "strict proof." Muller Decl. ¶ 30. To be "fully convinced," he argues, requires a standard even higher than "reasonable doubt." *Id.* ¶¶ 15, 28. Any remaining doubts,

3

he asserts, must be "insignificant;" "a numerical probability of 90% can be used as a guideline." *Id.* ¶ 28 (quoting from a decision of a Cantonal Supreme Court).

Thus, both experts agree that Plaintiffs must prove the third material element of their case—that Defendants' culpable cooperation was the natural and adequate cause of Plaintiffs' injuries—according to the standard of a "preponderant likelihood." Indeed, Dr. Muller, Defendants' expert, agrees that the lesser standard of a "preponderant likelihood" applies to this element. Muller Decl. ¶ 16.

As to the disagreements of the experts regarding the other two material propositions, I believe that Dr. Werro is correct. There will be as much "evidentiary hardship" in proving the first two material propositions—that the Government of Sudan committed illicit acts against Plaintiffs, and that Defendants, knowing, or reasonably knowing that they did so, consciously provided culpable cooperation to the Government of Sudan in perpetrating its illicit acts—as there is for "natural causation." Plaintiffs intend to present both percipient witnesses and documents relevant to all three elements of the case. Any effort to apply different standards to different proofs will more likely confuse the jury than assist it in delivering a true verdict. "Preponderant likelihood" will be the single standard for Plaintiffs' burden of proof, applicable to all elements of the case.

But what does "preponderant likelihood" mean? Dr. Werro, Plaintiffs' expert, defines the term as requiring "substantial grounds for the accuracy of an allegation," that if "other possibilities exist, but do not appear to have played a determinative role or do not reasonably enter into account," a preponderant likelihood has been proven. Werro Decl. ¶ 12. The term cannot be defined by a percentage, although he agrees that it would be more than 51%. *Id.* at ¶ 15.

4

Dr. Muller, Defendants' expert, states that "a 51% probability is not sufficient;" that "preponderant likelihood" means 75%; and that the trier of fact "must be convinced of the factual link between a cause and a consequence with a probability of at least 75%." Muller Decl. ¶¶ 16, 37. He acknowledges that no case supports assigning a percentage, but that "[l]egal scholarship supports a threshold of at least 75%." *Id.* at ¶ 37.

The rule presented by the "Coffeemaker Case," a 2006 decision of the Swiss Federal Supreme Court, the highest court in Switzerland, is instructive, and is the basis of Dr. Werro's opinion. *See* ECF No. 813-8. In that case, a coffeemaker, after a year's use, exploded, injuring plaintiff's hand. Plaintiff sued the manufacturer and initially lost, having failed to satisfy his burden to prove the negligence of the manufacturer under the standards of "full conviction" and "strict proof." The Swiss Supreme Court reversed, holding that it would not be reasonable to require the plaintiff to prove such a case by direct proof when the evidence that he had to rely on was circumstantial. *Id.* The Swiss Federal Supreme Court remanded the case with instructions to apply a standard of "preponderant probability." It explained:

> As a rule, a fact is considered proven when the court is persuaded of the truth of an allegation. However, statutory law, legal literature, and case law provide for exceptions to this principle of evidence evaluation. A lesser evidentiary burden is warranted in cases of "evidentiary hardship" (*Beweisnot*), which arise when, by nature of the matter, strict proof is either impossible or cannot reasonably be demanded—particularly where the facts alleged by the party bearing the burden of proof can only be demonstrated indirectly, through circumstantial indicators.

*Id.* In order to satisfy the standard of a "preponderant probability," the Swiss high court ruled, there must be "compelling reasons supporting the accuracy of the allegation, without other possible explanations being of substantial importance or reasonably likely." *Id.* And, if counter

5

evidence is presented, the counter-evidence must be sufficient "to undermine the initial evidence to the extent that the primary allegations no longer appear to be the most likely." *Id.*

The holding of the Swiss Federal Supreme Court will be the basis of my instructions to the jury on all elements of the case.

## II. Admissibility and Import of Immigration Records

Plaintiffs seek to introduce various immigration records issued by the U.S. Department of Homeland Security ("DHS"), with stamps certifying that each individual Plaintiff was given asylum or refugee status. DHS is authorized to confer asylum or refugee status on an individual who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *Ojo v. Garland*, 25 F.4th 152, 161 (2d Cir. 2022).

Following an application for asylum, officers of the U.S. Citizenship and Immigration Services ("USCIS") investigate and adjudicate the claim. They conduct interviews, collect and assess evidence, and consider comments submitted by the Department of State and DHS. 8 C.F.R. § 208.9. "The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts;" otherwise, "the trier of fact may weigh the credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii). The applicant bears the burden of proof to make the required showing. 8 U.S.C. § 1158(b)(1)(B).

The certificate granted by DHS reflects the adjudication of the USCIS officer. It is relevant to show that the plaintiff resides in the United States "because of persecution or a well-

6

founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). And it is well-settled that, generally speaking, DHS immigration records are admissible under the hearsay exception for public records, Fed. R. Evid. 803(8). *See, e.g., United States v. Noria*, 945 F.3d 847, 860 (5th Cir. 2019) (DHS immigration records admissible under public record hearsay exception); *United States v. Tobbalba-Mendia*, 784 F.3d 652, 665 (9th Cir. 2015) (same); *United States v. Agustino-Hernandez*, 14 F.3d 42, 43 (11th Cir. 1994) (same).

Plaintiffs seek to offer their certificates as relevant to an additional proposition, that it was the Government of Sudan that actually persecuted them. Fed. R. Evid. 803(8)(A)(iii) provides for the admissibility of public records as a hearsay exception where the record or statement "sets out . . . in a civil case . . . factual findings from a legally authorized investigation; and" where "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."

Plaintiffs' certificates satisfy these conditions. The certificates reflect "factual findings from a legally authorized investigation" conducted by an officer of the United States authorized to investigate the facts, review documents, take testimony, and make such findings. *See* 8 U.S.C. § 1158(b). No evidence has been presented by Defendants to "show that the source of information or other circumstances indicate a lack of trustworthiness." *Punin v. Garland*, 108 F.4th 114, 127 (2d Cir. 2024); *Felzcerek v. INS*, 75 F.3d 112, 116 (2d Cir. 1996).

Defendants, citing Fed. R. Evid. 403, argue that jurors are likely to give undue weight to a DHS certificate. This argument is speculative. No presumption attaches merely because a government agency issued the certificates. And there will be much additional testimony concerning the conduct of the Government of Sudan, consistent with the findings of USCIS

7

officials to grant the certificate of asylum. If appropriate, a cautionary instruction can be given.

*United States v. Dupree*, 706 F.3d 131, 138-39 (2d Cir. 2013).

SO ORDERED

Dated:   September __, 2025
        New York, New York

ALVIN K. HELLERSTEIN
United States District Judge