**GIBSON DUNN**

Barry Berke
Partner
T: +1 212.351.3860
bberke@gibsondunn.com

October 30, 2025

<u>VIA ECF</u>
Hon. Alvin K. Hellerstein
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

      Re:    *Kashef v. BNP Paribas S.A.*, No. 16 Civ. 3228 (AKH)

Dear Judge Hellerstein:

      In accordance with the Court's rulings, we write to renew our request that the Court hold an evidentiary hearing regarding the misconduct committed by Plaintiffs' counsel at the Hecht firm, as alleged by their own co-counsel at the Hausfeld and Zuckerman Spaeder firms— misconduct that raises the serious prospect that the jury's verdict, and the trial-court proceedings, were tainted by fraud.  *See* ECF Nos. 789 at 1, 818 at 1, 3.  On October 24, 2025, the Hecht firm publicly stated that it "welcomes a full hearing" if the Court agrees.  Mike Vilensky, *BNP Revives Claims of Attorney Witness Tampering in Sudan Case*, Bloomberg Law (Oct. 24, 2025), https://news.bloomberglaw.com/business-and-practice/bnp-revives-claims-of-attorney-witness-tampering-in-sudan-case.  Accordingly, we respectfully ask this Court to hold the evidentiary hearing, preferably before November 14, 2025, the deadline for BNP's post-trial motions, so that BNP has an opportunity to consider and submit any post-trial motions that may be warranted.

      The alleged misconduct by Plaintiffs' counsel, and specifically the Hecht firm, is manifold and serious, infecting every aspect of this litigation.  Notably, accusations of misconduct were made by the Hecht firm's *own co-counsel* at the Hausfeld and Zuckerman

# GIBSON DUNN

Spaeder firms. Nor were those accusations made casually or in the heat of the moment. Rather, the Hausfeld and Zuckerman Spaeder firms set forth those accusations in detailed sworn affidavits, under penalty of perjury, in support of a motion to disqualify their own co-counsel at the Hecht firm. *See* ECF No. 784; *see also* ECF Nos. 784-1 (Decl. of M. Hausfeld); 784-3 (Decl. of C. Smith).

Before trial, this Court chose to defer an evidentiary hearing on the undisputably serious evidence of Plaintiffs' counsel's misconduct, so that there would be no delay of trial proceedings. The Court repeatedly made clear, however, that it would not ignore Plaintiffs' counsel's misconduct. Instead, the Court held that these issues would "be discussed after trial." ECF No. 970 at 2; *see also* Sept. 3, 2025 Pre-Trial Conf. Tr. 10:21–22. Now that the trial has concluded, the time has come to hold an evidentiary hearing to determine the full scope, nature, and consequences of counsel's misconduct, pursuant to the Court's duty to safeguard the integrity of these proceedings.[1]

After the Hecht firm's unethical conduct in connection with the class questionnaire and opt-in process came to light, as discussed in detail below, their own co-counsel at the Hausfeld and Zuckerman Spaeder firms submitted sworn testimony that Plaintiffs' counsel Lee Boyd improperly pressured and coached witnesses. ECF No. 815 at 1, 4–6. Specifically, (1) in 2023,[2] an expert witness complained that Ms. Boyd was "trying to force her words into their mouth"

---

[1] At trial, BNP was not permitted to examine witnesses about the alleged misconduct or the circumstances relating to the withdrawal of Hausfeld and Zuckerman Spaeder's motion to disqualify, reinforcing the need for a post-trial evidentiary hearing. *See* Sept. 3, 2025 Pre-Trial Conf. Tr. 10:21–12:4, 30:17–31:5.

[2] Class co-counsel Hausfeld and Zuckerman Spaeder's motion to disqualify Ms. Boyd initially dated this event to 2023, but elsewhere dated a similar episode to 2021. ECF No. 784 at 2, 13. This may be the same episode or two separate episodes.

# GIBSON DUNN

October 30, 2025
Page 3

and almost resigned because of that "intense" "pressure"; (2) in May 2025, Ms. Boyd's co-counsel observed her "once again attempt … to force words into the mouth of an expert witness"; and (3) during June 2025 meetings with "victim-side witnesses" in San Diego, Ms. Boyd "brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations." *Id.* at 1 (quoting ECF No. 784 at 2, 8–9). Notably, two of the three trial Plaintiffs live in San Diego, strongly suggesting that this alleged misconduct occurred in connection with the testimony of witnesses who testified at the trial.

Again, these accusations were made by the Hecht firm's own co-counsel, not BNP. And they were only the tip of the iceberg. According to Plaintiffs' co-counsel, there were "other incidents" of ethical misconduct by Ms. Boyd that still remain undisclosed to this Court. *Id.* at 14 (quoting ECF No. 784 at 2, 14–15). Ultimately, the ethical problems were so severe that co-counsel represented to this Court that they "cannot ethically continue to work with Ms. Boyd as co-Class Counsel, as she will not cooperate and will not heed Court orders or ethical advice." ECF No. 784 at 2. Although the Hausfeld and Zuckerman Spaeder firms ultimately withdrew their motion to disqualify Ms. Boyd, they did not withdraw their sworn allegations of ethical misconduct. Either the Hecht firm committed misconduct or the Hausfeld and Zuckerman Spaeder firms filed false affidavits with this Court. One or the other must be true.

Although this evidence more than justified prompt fact-finding by the Court, trial further reinforced the urgent need for an evidentiary hearing. Indeed, this Court witnessed and chastised Ms. Boyd's improper conduct firsthand. Ms. Boyd misled the Court and defense counsel to elicit blatantly premeditated, choreographed, and impermissible hearsay testimony from Plaintiffs'

**GIBSON DUNN**

witness, Nima Elbagir, to draw an altogether absent connection between the Government of Sudan and BNP. On the day of Ms. Elbagir's testimony, Plaintiffs' counsel asked this Court's permission to introduce two other hearsay statements, but they deliberately did not identify Ms. Elbagir's planned impermissible testimony. And although this Court repeatedly and clearly sustained objections in the build-up to that testimony, Ms. Boyd ignored those rulings, rushing headlong to elicit the testimony before this Court could once again sustain an objection. *See* ECF No. 962. The Court left no doubt that counsel's conduct was improper:

> [T]he criticism of Ms. Boyd is cogent. To ask these questions as if it were the prelude to something that was relevant but just to ask the questions itself was wrong. ***You should not have done that, Ms. Boyd, and don't do it again*** ….

Sept. 16 Trial Tr. 454:9–13 (emphasis added). Counsel showed a deliberate disregard for this Court's rulings before eliciting the obviously improper testimony, which had never been disclosed to the Court or BNP, including in the briefing about Ms. Elbagir's testimony the day before her testimony.

More broadly, the Hecht firm acted unethically in order to inflate the size of the class and potential damages. In violation of their representations to this Court and the Special Master, the Hecht firm (1) coached prospective class members about what injuries and damages to claim in their class questionnaires, telling them to "check the box" for mental health injuries, regardless of whether those claims were known to be true; (2) made false statements to prospective class members to pressure them to opt in, and not opt out, of the class; and (3) misrepresented themselves as counsel to people who were not their clients. ECF No. 751 at 7–11, 15–17. The goal of those improper communications was obvious: in Ms. Boyd's own words, "***the more***

**GIBSON DUNN**

October 30, 2025
Page 5

*people we get signed up, the more pressure the bank has to settle this case*." ECF No. 754-1 at 7:9–10 (emphasis added); ECF No. 754-2 at 15:49–15:55.

As the Court well knows, it has a core gatekeeping function to safeguard the integrity of the adversary process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006). The Second Circuit has left no doubt on this point: "A trial judge is required to take measures against unethical conduct occurring in connection with any proceeding before him." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995); *see also Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988) ("[F]raud on the court … threatens the very integrity of the judiciary and the proper administration of justice."). A district court's failure to exercise its "inherent power to preserve the integrity of the adversary process" may even serve as a basis for mandamus. *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 236–42 (2d Cir. 2016) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). Here, it would be prejudicial error to leave evidence of attorney misconduct unresolved before any further proceedings are held, particularly when Ms. Boyd and Mr. Hausfeld remain co-counsel for the entire class. This is especially so given the evidence of attorney misconduct was put forward under penalty of perjury by Plaintiffs' counsel themselves, and included conduct captured on videotape.

The Court deferred an evidentiary hearing until after trial, and the Hecht firm now "welcomes" it. That hearing is required to determine the nature, scope, and consequences of the misconduct, and what remedies are appropriate. *See United States v. Daniells*, 79 F.4th 57, 88 (1st Cir. 2023) (district court abused its discretion by failing to hold evidentiary hearing where

**GIBSON DUNN**

October 30, 2025<br>Page 6

there were sufficient allegations of facts that would have required disqualification of counsel). The hearing will not be unduly burdensome or time-consuming—it could be accomplished in one day. Accordingly, BNP respectfully renews its request for an evidentiary hearing and discovery on the topics enumerated in its previous motions, ECF No. 753 at 21–22; ECF No. 815 at 19 & n.5, in addition to the topics that have arisen in light of trial.

Respectfully submitted,

*/s/ Barry H. Berke*
Barry H. Berke
Dani R. James
Michael Martinez
Matt Benjamin
David Salant