**GIBSON DUNN**

Barry Berke
Partner
T: +1 212.351.3860
bberke@gibsondunn.com

November 5, 2025

<u>VIA ECF</u>
Hon. Alvin K. Hellerstein
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

   Re: *Kashef v. BNP Paribas S.A.*, No. 16 Civ. 3228 (AKH)

Dear Judge Hellerstein:

   On November 3, 2025, the Court scheduled a hearing into the alleged misconduct committed by Plaintiffs' counsel at the Hecht firm for November 12.  ECF No. 1017.  Those allegations of misconduct were made or affirmed by the Hecht firm's current and former co-counsel at the Hausfeld, Zuckerman Spaeder, and Perry Law firms ("Plaintiffs' Co-Counsel"), not by BNP Paribas ("BNPP").  Plaintiffs' Co-Counsel know the details of the incidents of alleged misconduct, not BNPP.  Accordingly, we respectfully request that the Court require the lawyers who made those allegations—in other words, the lawyers who witnessed or have relevant knowledge about the Hecht firm's misconduct—to attend the upcoming hearing to describe and substantiate their allegations.  Without those lawyers' participation, the Court, the Class, and BNPP will be left without the necessary information to assess the allegations that Plaintiffs' Co-Counsel have made and to determine the full scope, nature, and consequences of counsel's misconduct.

   BNPP requested a hearing following reports of misconduct committed by Ms. Boyd and the Hecht firm, made by their co-counsel at the Hausfeld, Zuckerman Spaeder, and Perry Law

# GIBSON DUNN

November 5, 2025
Page 2

firms. That misconduct included numerous overt acts of alleged witness tampering, subornation of perjury, and other misconduct. ECF No. 784 at 8–9, 13–14. The public allegations made by Plaintiffs' Co-Counsel were deliberately vague. For example, while Plaintiffs' Co-Counsel referenced numerous attempts by Ms. Boyd to "pressur[e] or "feed answers" to witnesses, *they did not identify the specific witnesses at issue. Id.* at 13–14. Nor did Plaintiffs' Co-Counsel disclose the details of the incidents of alleged misconduct. For example, Plaintiffs' Co-Counsel described a June 2025 trip to prepare "victim-side witnesses" in San Diego at which "multiple attorneys were alarmed when Ms. Boyd brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations." *Id.* at 8–9. *But Plaintiffs' Co-Counsel did not identify which specific witnesses were involved or disclose what unethical misconduct Ms. Boyd planned to commit.*

The Court has ordered BNPP to "identify by page and line in transcript, in direct and cross examination, and other documents as necessary, information in connection with any claim of tainted testimony," and BNPP will do so. ECF No. 1017. But BNPP does not have the information necessary to understand and assess the allegations made against Ms. Boyd and the Hecht firm. Only the lawyers who made those allegations or witnessed the relevant conduct at the Hecht, Zuckerman Spaeder, and Perry Law firms do. For example, BNPP does not and cannot know which witnesses Ms. Boyd and the Hecht firm allegedly tampered with, whether those witnesses ultimately testified at the trial, whether those witnesses will testify at the next trial, what testimony Ms. Boyd and the Hecht firm attempted to influence or procure, whether that testimony was elicited or introduced at the trial through those witnesses, or whether that

**GIBSON DUNN**

November 5, 2025
Page 3

testimony was introduced through other means. Only the Hecht, Zuckerman Spaeder, and Perry Law firms do.

In fact, Mr. Hausfeld of the Hausfeld firm has already attested under penalty of perjury that he has "personal knowledge" of all the actions taken by, and the knowledge possessed by, attorneys at the Hausfeld firm regarding the Hecht's firm's alleged misconduct. ECF No. 784-1 ¶ 1. Mr. Smith of the Zuckerman Spaeder firm has already attested under penalty of perjury that he has "personal knowledge" of "all facts stated" in the Motion to Disqualify, unless expressly stated otherwise. ECF No. 784-3 ¶ 1. And former Plaintiffs' co-counsel Danya Perry and Joan Illuzzi-Orbon of the Perry Law firm have already made themselves available to testify about the allegations against Ms. Boyd and the Hecht firm. ECF No. 784 at 4 n.3, 8–9. Without hearing that testimony from Plaintiffs' Co-Counsel—testimony they have already offered to share with the Court—there is simply no way for the Court to assess the allegations they have made and to determine the full scope, nature, and consequences of Plaintiffs' counsel's misconduct.

Those consequences are not confined to the trial that has occurred. They relate to all ongoing and future proceedings in this litigation, including review by the appellate court and other trials in the district court, as well as the adequacy of Plaintiffs' counsel to represent the interests of the class and the viability of the class. And of course, even if the Court were to determine that Plaintiffs' counsel's misconduct was merely attempted or did not materially influence testimony presented at the trial, that misconduct would still be relevant to the ongoing proceedings and may warrant sanctions under this Court's inherent authority. *See Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 145 (2d Cir. 2012) ("[O]ur sanctions jurisprudence . . .

**GIBSON DUNN**

November 5, 2025<br>Page 4

counsels district courts to focus on the purpose rather than the effect of the sanctioned attorney's activities.").

To enable a meaningful evidentiary hearing on November 12, BNPP respectfully requests the Court require that the relevant attorneys from the Hausfeld, Zuckerman Spaeder, and Perry Law firms[1] attend the hearing to describe and substantiate the misconduct by the Hecht firm they reported, including the incidents set forth in Appendix A below.

Respectfully submitted,

*/s/ Barry H. Berke*
Barry H. Berke
Dani R. James
Michael Martinez
Matt Benjamin
David Salant

---

[1] Those lawyers include, at a minimum, Michael Hausfeld, Cy Smith, Danya Perry, and Joan Illuzzi-Orbon, as well as Scott Gilmore, James Gotz, Amanda Lee-DasGupta, and Aitan Goelman.

# GIBSON DUNN

November 5, 2025
Page 5

### Appendix A

| Representation by Plaintiffs' Co-Counsel | Citation |
|---|---|
| "Hausfeld first became alarmed in 2021 during expert discovery, when a distraught expert witness contacted a Hausfeld attorney and reported that Ms. Boyd was pressuring the witness to include an opinion in their report with which the expert did not fully agree.  The expert had pushed back on Ms. Boyd's insistence to the point they were considering resigning." | ECF No. 784 at 13 |
| "During discovery in 2023, a distraught expert witness contacted Hausfeld to complain that Ms. Boyd was trying to force her words into their mouths; the pressure was so intense they were prepared to resign to protect their reputation[.]" | ECF No. 784 at 2 |
| "In January 2025, Hausfeld gave Ms. Boyd specific instructions not to coach questionnaire responses, yet Ms. Boyd defied those instructions, as revealed by Defendants' recordings[.]" | ECF No. 784 at 2 |
| "Ms. Boyd staged this coup after Hausfeld LLP and Zuckerman Spaeder LLP refused to defend her misconduct.  The undersigned counsel cannot do so: Ms. Boyd defied Hausfeld's specific instructions not to coach questionnaire responses." | ECF No. 784 at 1 |
| "On January 17, 2025, Hausfeld provided Ms. Boyd with a script of what she was permitted to say to class members.  Hausfeld directed Ms. Boyd not to coach responses.  Under no circumstances was she to instruct a class member to check a particular box or supply an answer.  Ms. Boyd was specifically directed to inform class members: 'the answers must be your answers, not the answer someone else suggests or the answer you think someone would want you to provide.  It must be your truth.' Ex D, Declaration of James Gotz, Ex. D-1.<br><br>Despite this warning, and without co-counsel's authorization, Ms. Boyd acted unilaterally.  The recordings attached to Defendants' Motion for Sanctions speak for themselves." | ECF No. 784 at 14 |
| "Throughout the spring of 2025, Ms. Boyd was repeatedly advised on her ethical obligations regarding interactions with class members and witnesses[.]" | ECF No. 784 at 2 |
| "In May 2025, Class Counsel observed Ms. Boyd once again attempt, during a prep session, to force words into the mouth of an expert witness, prompting—among other incidents—trial counsel to advise Ms. Boyd that she was unfit to try the case[.]" | ECF No. 784 at 2 |
| "On yet another occasion in May 2025, Hausfeld and co-counsel at Perry Law observed Ms. Boyd interrupt an expert witness during a mock prep exercise and attempt to feed answers reflecting her views rather than the expert's." | ECF No. 784 at 14 |

**GIBSON DUNN**

November 5, 2025<br>
Page 6

| | |
|---|---|
| "After these repeated lapses of ethical judgment and repeated attempts by class counsel to restrain her, Ms. Boyd purported to 'fire' all other Class Counsel and apparently influence the trial plaintiffs to side with her." | ECF No. 784 at 2 |
| "Ms. Boyd's attempted contamination of settlement questionnaire risks diminishing the settlement value of this case." | ECF No. 784 at 2 |
| "The [June 2025 San Diego] trip also accentuated the Perry and Hausfeld's firms concerns about Ms. Boyd's ethical lapses. During this trip, multiple attorneys were alarmed when Ms. Boyd brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations. Ms. Boyd was cautioned against this and ultimately (to undersigned counsel's knowledge) did not follow through with her plans." | ECF No. 784 at 8–9 |
| "This incident, among others, prompted all four seasoned trial lawyers—Cy Smith and Aitan Goelman from Zuckerman Spaeder and Danya Perry and Joan Illuzzi-Orbon from Perry Law—and Mr. Hausfeld to advise Ms. Boyd and Hecht Partners LLP that Ms. Boyd was unfit to try the case." | ECF No. 784 at 14–15 |
| "Perry Law LLP cautioned [Ms. Boyd] separately not to engage in other unethical conduct." | ECF No. 784 at 1–2 |
| "Perry Law had sought and obtained confidential outside ethics advice. Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with class members. This followed repeated efforts by Hausfeld to advise Ms. Boyd on her ethical obligations regarding her interactions with class members and witnesses." | ECF No. 784 at 8 |
| "[B]oth Hausfeld and Perry Law observed Ms. Boyd impede the ability of trial counsel to prepare an expert witness and instead attempt to feed them her preferred answers." | ECF No. 784 at 8 |
| "Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with Class members, and on at least one occasion gave her advice about applicable ethics rules." | ECF No. 784-3 ¶ 17 |
| "Ms. Perry and Ms. Illuzzi-Orbon carefully reviewed Mr. Smith's Declaration and confirm its accuracy as to their actions, statements and beliefs." | ECF No. 784 at 4 n.3 |
| "I [Mr. Hausfeld] have carefully reviewed the Motion and, where it describes the actions of attorneys at Hausfeld LLP or the knowledge possessed by those attorneys, I have personal knowledge of those facts and could competently testify to them if required." | ECF No. 784-1 ¶ 1 |
| "I [Mr. Smith] have personal knowledge of all facts stated herein, unless otherwise stated, and could competently testify to them if required." | ECF No. 784-3 ¶ 1 |