UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, et al., *Plaintiffs*, -against - BNP PARIBAS S.A. and BNP PARIBAS US WHOLESALE HOLDINGS, CORP. *Defendants*. | No. 1:16-cv-03228-AKH-JW  Hon. Alvin K. Hellerstein |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO REQUIRE ATTENDANCE OF WITNESSES TO PLAINTIFFS' COUNSEL'S ALLEGED MISCONDUCT AT EVIDENTIARY HEARING**

The basic backbone of a motion is the identification of the legal authority on which it rests. Local Civil Rule 7.1 requires that a notice of motion "specify the applicable rules or statutes pursuant to which the motion is brought." Defendants ("BNPP") knew that its motion lacked a good-faith basis in the law *ab initio* because it did not identify, cite, or even attempt to invoke any rule, statute, or precedent authorizing the relief it seeks anywhere, either in its "notice of motion" or in its "memorandum of law." Explicit procedural safeguards are built into Rule 45, which require personal service, witness fees, and geographic limits. See Fed. R. Civ. P. 45(b)(1), (c). Even the Court's inherent authority exists to protect the integrity of judicial proceedings and—not to enable wasteful fishing expeditions. *See Goldberg v. Travelers Fire Ins. Co.*, 11 F.R.D. 566, 568 (W.D.N.Y. 1950) ("the courts are not to be used to promote fishing expeditions"). As set forth in the September 2, 2025 Class Counsel Status Report, Hausfeld and Zuckerman Spaeder agreed to withdraw their pending motion to disqualify. ECF 939. And even if the allegations against Ms.

1

Boyd were true, none of the alleged testimony or alleged out-of-court statements described in Defendant's motion, ECF No. 1022, or Appendix A to that motion, was presented at trial or in any other filing or proceeding in this litigation, as Mr. Hausfeld will attest.

Indeed, the Court expressly ordered BNPP to identify "by page and line in transcript, in direct and cross examination, and other documents as necessary, information in connection with any claim of tainted testimony." ECF No. 1017. Rather than comply, BNPP now seeks to transform the hearing into an open-ended, exploratory proceeding—one untethered to any transcript citation, witness, or concrete evidence. BNPP cannot and will not identify a single page or line of testimony that was improperly influenced, because none exists. Its Motion confirms that it views the upcoming hearing not as an opportunity to test factual allegations against the trial record, but as a chance to air speculation, revive the same vague, unsubstantiated claims already rejected by the Court, and seek sanctions for alleged conduct surrounding settlement questionnaires that BNPP never intended in good faith to use for any settlement discussions.

Plaintiffs fully welcome the upcoming hearing and any other such hearings as an opportunity to clear Ms. Boyd's name and to bring closure to this manufactured issue once and for all. Plaintiffs have nothing to hide and have repeatedly invited a fair, orderly proceeding confined to the scope the Court ordered—an evaluation of any specific portions of the trial transcript that BNPP contends were tainted. What Plaintiffs oppose is not the hearing itself, but BNPP's effort to distort it into something it was never meant to be: an open-ended inquisition into counsel, based on speculation and hearsay, rather than an evidentiary review grounded in the trial record. The Court's directive provides a clear framework for resolving this issue; BNPP's attempt to expand it to fish for support for its vague theories of misconduct well beyond that framework is improper and should be rejected.

The time for testing those vague theories of misconduct has long passed. The best and only proper way to probe whether any witness testimony was "tainted" was through cross-examination at trial. **BNPP chose not to ask a single question on that subject**. By failing to confront a single witness with these accusations when it had the full opportunity to do so, BNPP purposefully abandoned the best source of evidence. What BNPP now proposes is not a hearing within the scope of the Court's order, but an upside-down discovery exercise—one in which one side's lawyers questions the other side's lawyers. What is more, BNPP waited to do this in the express absence of the witnesses who actually matter—as though the attorneys' personal opinions could somehow trump the witnesses' own sworn testimony and firsthand experience. The individuals who testified at trial are the only ones with knowledge of what they said, what they believed, and whether anyone attempted to influence them. BNPP's effort to replace those witnesses with lawyers speculating about what they "felt" or "understood" is not evidence; it is theater. The Federal Rules provide no such mechanism, and due process forbids it.

BNPP's failure to cross-examine witnesses or identify allegedly 'tainted' testimony raises the real prospect that these motions serve an improper purpose: to influence public opinion. Since the trial, BNPP has issued press releases, published materials on its website, and filed motions aimed not at factual clarification but at perpetuating public defamation of Ms. Boyd after having purposely failed to pursue these issues in court during the trial that ended just weeks ago.

This is not a case that rises to the level of inherent authority. BNPP's request is not directed at investigating any identified fraud on the court, obstruction of justice, or violation of court orders. Instead, it seeks to convene an evidentiary hearing to explore subsequently withdrawn, and unspecified misconduct that was vaguely alleged by co-counsel made without requisite personal knowledge or evidentiary support—a classic fishing expedition, not an honest investigation.

BNPP's motion, which asks this Court to "require" Plaintiffs' counsel to testify without subpoenas, without fees, and without any showing of necessity so as to justify overcoming attorney client and work product privilege, is therefore not merely procedurally defective—it is contrary to law and fundamental due process. The Due Process Clause prohibits the Court from summoning non-party attorneys to give testimony in an adversarial proceeding where privilege, confidentiality, and professional obligations are squarely implicated.

BNPP's Motion also underscores the hollowness of the prior representations. Having repeatedly asserted that allegations of misconduct were spelled out in sworn statements, BNPP now admits that those sworn statements do not exist. The so-called "sworn statements" are nothing more than unsupported vague assertions made in a **motion** without citation to a declaration. They do not purport to be supported by a declaration because, again, these statements have no citations. That is why BNPP is now flailing—asking the Court to compel an unspecified number of attorneys to travel from out of state to testify, hoping that someone will finally swear to something that could be construed as an allegation of misconduct.[1] Indeed, BNPP's own Appendix A confirms this: every citation refers to ECF 784, the motion itself, and not to any affidavit that actually attests to the alleged conduct. (ECF 1023 at 4–5.) Below is a reproduction of the chart provided by BNPP as Appendix A to its Motion, annotated by Plaintiff to demonstrate BNPP's bad faith reliance on each one. BNPP thus concedes, in substance, that there is no competent evidence of misconduct at

---

[1] BNPP isn't seeking evidence; it's hosting roll call for anyone who's ever disagreed with Ms. Boyd in her role as co-lead class counsel for over 5 years. It now asks this Court to compel an open-ended list of attorneys from several different states and three different firms—which, apparently "include, at a minimum, Michael Hausfeld, Cy Smith, Danya Perry, and Joan Illuzzi-Orbon, as well as Scott Gilmore, James Gotz, Amanda Lee-DasGupta, and Aitan Goelman." (Motion, ECF No. 1023 at 3 n.1.) This scattershot, open-ended request underscores that BNPP has no specific, identifiable evidence to present—only a hope that if enough people are compelled to appear, someone might eventually say something that could be construed as supporting an accusation.

4

all—only argument dressed up as fact. Having failed to identify a single sworn statement that provides notice of any specific act of misconduct, BNPP now asks the Court to compel opposing counsel to testify in order to manufacture proof it never had. That is not a hearing; it is an invitation to speculation and waste of judicial resources. BNPP has no intention of following the Court's directive regarding the purpose and scope of the upcoming hearing.

| Representation by Plaintiffs' Co-Counsel | Citation | Plaintiff's Comment |
|---|---|---|
| "Hausfeld first became alarmed in 2021 during expert discovery, when a distraught expert witness contacted a Hausfeld attorney and reported that Ms. Boyd was pressuring the witness to include an opinion in their report with which the expert did not fully agree. The expert had pushed back on Ms.Boyd's insistence to the point they were considering resigning." | ECF No. 784 at 13 | Cites only to ECF No. 784 (the motion itself), which provides no support whatsoever in the attached declaration. Vague as to time, place, or witness and based on multiple layers of hearsay. Even if true, it describes a routine disagreement between counsel and an expert that was resolved when the expert insisted on using only opinions they agreed with—showing no misconduct and no possible effect on trial testimony. |
| "During discovery in 2023, a distraught expert witness contacted Hausfeld to complain that Ms. Boyd was trying to force her words into their mouths; the pressure was so intense they were prepared to resign to protect their reputation[.]" | ECF No. 784 at 2 | Simply repeats the first allegation, above, again citing only to ECF No. 784 without any supporting affidavit or exhibit. |
| "In January 2025, Hausfeld gave Ms. Boyd specific instructions not to coach questionnaire responses, yet Ms. Boyd defied those instructions, as revealed by Defendants' recordings[.]" | ECF No. 784 at 2 | Settlement questionnaires have no relevance to the upcoming hearing about the trial nor to any substantive aspect of this case. Cites only to ECF No. 784 with no supporting affidavit. The claim is false on its face, as Defendants' own video shows that no coaching occurred. *See* ECF No. 777 |

| **Representation by Plaintiffs' Co-Counsel** | **Citation** | **Plaintiff's Comment** |
|---|---|---|
| "Ms. Boyd staged this coup after Hausfeld LLP and Zuckerman Spaeder LLP refused to defend her misconduct. The undersigned counsel cannot do so: Ms. Boyd defied Hausfeld's specific instructions not to coach questionnaire responses." | ECF No. 784 at 1 | Settlement questionnaires have no relevance to the upcoming hearing about the trial nor to any substantive aspect of this case. Cites only to ECF No. 784 with no supporting affidavit. The claim is false on its face, as Defendants' own video shows that no coaching occurred. *See* ECF No. 777 |
| "On January 17, 2025, Hausfeld provided Ms. Boyd with a script of what she was permitted to say to class members. Hausfeld directed Ms. Boyd not to coach responses. Under no circumstances was she to instruct a class member to check a particular box or supply an answer. Ms. Boyd was specifically directed to inform class members: 'the answers must be your answers, not the answer someone else suggests or the answer you think someone would want you to provide. It must be your truth.' Ex D, Declaration of James Gotz, Ex. D-1.<br><br>Despite this warning, and without co-counsel's authorization, Ms. Boyd acted unilaterally. The recordings attached to Defendants' Motion for Sanctions speak for themselves." | ECF No. 784 at 14 | Settlement questionnaires have no relevance to the upcoming hearing about the trial nor to any substantive aspect of this case. The claim is false on its face, as Defendants' own video shows that no coaching occurred. *See* ECF No. 777 |

| Representation by Plaintiffs' Co-Counsel | Citation | Plaintiff's Comment |
|---|---|---|
| "Throughout the spring of 2025, Ms. Boyd was repeatedly advised on her ethical obligations regarding interactions with class members and witnesses[.]" | ECF No. 784 at 2 | Settlement questionnaires have no relevance to the upcoming hearing about the trial nor to any substantive aspect of this case. Cites only to ECF No. 784 with no supporting affidavit. The claim is false on its face, as Defendants' own video shows that no coaching occurred. *See* ECF No. 777 |
| "In May 2025, Class Counsel observed Ms. Boyd once again attempt, during a prep session, to force words into the mouth of an expert witness, prompting— among other incidents—trial counsel to advise Ms. Boyd that she was unfit to try the case[.]" | ECF No. 784 at 2 | Settlement questionnaires have no relevance to the upcoming hearing about the trial nor to any substantive aspect of this case. Cites only to ECF No. 784 with no supporting affidavit. The claim is false on its face, as Defendants' own video shows that no coaching occurred. *See* ECF No. 777 |
| "On yet another occasion in May 2025, Hausfeld and co-counsel at Perry Law observed Ms. Boyd interrupt an expert witness during a mock prep exercise and attempt to feed answers reflecting her views rather than the expert's." | ECF No. 784 at 14 | No sworn declaration supports this allegation, only a cite to ECF No. 784 — the motion. Even if it contained any truth, it describes nothing more than a routine disagreement between counsel and an expert during preparation—conduct that could not have affected the trial in any way |
| "After these repeated lapses of ethical judgment and repeated attempts by class counsel to restrain her, Ms. Boyd purported to 'fire' all other Class Counsel and apparently influence the trial plaintiffs to side with her." | ECF No. 784 at 2 | No sworn testimony supports this allegation, only a cite to ECF No. 784 — the motion. The suggestion that Ms. Boyd "influenced" trial plaintiffs is baseless—the plaintiffs and class members support her because she is the only counsel who has bothered to communicate with them about the case. |

7

| Representation by Plaintiffs' Co-Counsel | Citation | Plaintiff's Comment |
|---|---|---|
| "Ms. Boyd's attempted contamination of settlement questionnaire risks diminishing the settlement value of this case." | ECF No. 784 at 2 | Settlement questionnaires have no relevance to the upcoming hearing about the trial nor to any substantive aspect of this case. Cites only to ECF No. 784 with no supporting affidavit. The claim is false on its face, as Defendants' own video shows that no coaching occurred. *See* ECF No. 777 |
| "The [June 2025 San Diego] trip also accentuated the Perry and Hausfeld's firms concerns about Ms. Boyd's ethical lapses. During this trip, multiple attorneys were alarmed when Ms. Boyd brazenly stated that she planned to unilaterally engage in an action that would clearly violate ethical obligations. Ms. Boyd was cautioned against this and ultimately (to undersigned counsel's knowledge) did not follow through with her plans." | ECF No. 784 at 8–9 | This allegation refutes itself. And it is so speculative and self-defeating that it is not worth dignifying with a substantive response. |
| "This incident, among others, prompted all four seasoned trial lawyers—Cy Smith and Aitan Goelman from Zuckerman Spaeder and Danya Perry and Joan Illuzzi-Orbon from Perry Law—and Mr. Hausfeld to advise Ms. Boyd and Hecht Partners LLP that Ms. Boyd was unfit to try the case." | ECF No. 784 at 14–15 | Completely irrelevant to any issue before the Court. This allegation has no connection to the hearing or the trial record and underscores how desperately BNPP is reaching to manufacture something out of nothing. |

8

| **Representation by Plaintiffs' Co-Counsel** | **Citation** | **Plaintiff's Comment** |
|---|---|---|
| "Perry Law LLP cautioned [Ms. Boyd] separately not to engage in other unethical conduct." | ECF No. 784 at 1–2 | Completely irrelevant to any issue before the Court. This allegation has no connection to the hearing or the trial record and underscores how desperately BNPP is reaching to manufacture something out of nothing. |
| "Perry Law had sought and obtained confidential outside ethics advice. Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with class members. This followed repeated efforts by Hausfeld to advise Ms. Boyd on her ethical obligations regarding her interactions with class members and witnesses." | ECF No. 784 at 8 | Completely irrelevant to any issue before the Court. This allegation has no connection to the hearing or the trial record and underscores how desperately BNPP is reaching to manufacture something out of nothing. |
| "[B]oth Hausfeld and Perry Law observed Ms. Boyd impede the ability of trial counsel to prepare an expert witness and instead attempt to feed them her preferred answers." | ECF No. 784 at 8 | This is merely a repetition of the 8th one, above. No sworn declaration supports this allegation, only a cite to ECF No. 784 — the motion. Even if it contained any truth, it describes nothing more than a routine disagreement between counsel and an expert during preparation—conduct that could not have affected the trial in any way |
| "Perry Law subsequently had multiple conversations with Ms. Boyd about her interactions with Class members, and on at least one occasion gave her advice about applicable ethics rules." | ECF No. 784-3 ¶ 17 | Again (as this is a repetition of the one two above this one) this is completely irrelevant to any issue before the Court. This allegation has no connection to the hearing or the trial record and underscores how desperately BNPP is reaching to manufacture something out of nothing. |

9

| **Representation by Plaintiffs' Co-Counsel** | **Citation** | **Plaintiff's Comment** |
|---|---|---|
| "Ms. Perry and Ms. Illuzzi-Orbon carefully reviewed Mr. Smith's Declaration and confirm its accuracy as to their actions, statements and beliefs." | ECF No. 784 at 4 n.3 | No sworn statement to this affect was signed, instead it was stated raw, without citation, in the body of the motion. Even if it had been signed, it merely confirms what was in the declarations, not the motions. The declarations did not contain any of the above allegations. |
| "I [Mr. Hausfeld] have carefully reviewed the Motion and, where it describes the actions of attorneys at Hausfeld LLP or the knowledge possessed by those attorneys, I have personal knowledge of those facts and could competently testify to them if required." | ECF No. 784-1 ¶ 1 | This statement does not say what Defendants claim it does; it is an admission that Mr. Hausfeld lacks personal knowledge of any other firm's actions or alleged misconduct. By limiting his knowledge only to what "attorneys at Hausfeld LLP" did or knew, he expressly disclaims any firsthand knowledge of the events underlying the accusations. |
| "I [Mr. Smith] have personal knowledge of all facts stated herein, unless otherwise stated, and could competently testify to them if required." | ECF No. 784-3 ¶ 1 | Does not say what Defendants claim. Mr. Smith affirms only the facts "stated herein" in his declaration, not the assertions in ECF 784. And his declaration does not substantiate any misconduct alleged in the Motion; it provides no firsthand facts that support BNPP's accusations. |

Dated: November 10, 2025

                                          */s/ Kathryn Lee Boyd*
                                          Kathryn Lee Boyd
                                          David L. Hecht
                                          Maxim Price
                                          Michael Eggenberger
                                          HECHT PARTNERS LLP
                                          125 Park Avenue, 25th Floor

New York, NY 10017
(646) 502-9515
lboyd@hechtpartners.com
dhecht@hechtpartners.com
mprice@hechtpartners.com
meggenberger@hechtpartners.com

Kristen Nelson
HECHT PARTNERS LLP
2121 Avenue of the Stars
Los Angeles, CA 90067
(646) 490-2408
knelson@hechtpartners.com

*Co-Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

This will certify that a true and accurate copy of the foregoing has been served via ECF, on this **10th day of November 2025,** to all parties of record.

*/s/ Kathryn Lee Boyd*
Kathryn Lee Boyd
