UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF *et al.*, <br><br>                    Plaintiffs, <br><br>    -against- <br><br>BNP PARIBAS S.A., <br><br>                    Defendant. | No. 16 Civ. 3228 (AKH) <br><br> Hon. Alvin K. Hellerstein |

**DEFENDANT BNP PARIBAS S.A.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST**

CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T: (212) 225-2000

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
T: (212) 351-4000

*Counsel for Defendant BNP
Paribas S.A.*

## TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................................... 2

    I.     Sudanese Law Governs and Prohibits Prejudgment Interest. ................................ 2

    II.    Prejudgment Interest Would Award an Impermissible Double Recovery ............. 3

    III.   At A Minimum, The Court Should Defer Calculation of Prejudgment Interest ................................................................................................................... 7

CONCLUSION .............................................................................................................................. 8

i

## TABLE OF AUTHORITIES

**Cases**             Page(s)

*Braunscheidel v. Buffalo Carpenters Pension Plan*,
 1993 WL 30935 (W.D.N.Y. Jan. 28, 1993)..................................................................................7

*Caruolo v. John Crane, Inc.*,
 226 F.3d 46 (2d Cir. 2000)..........................................................................................................2

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
 858 F.3d 744 (2d Cir. 2017).....................................................................................................5, 6

*Gilliam v. Allen*,
 62 F.4th 829 (4th Cir. 2023) ...............................................................................................4, 5, 7

*Jones v. Marsh & McLennan Cos.*,
 2025 WL 1517999 (S.D.N.Y. May 28, 2025) ............................................................................2

*Koch v. Greenberg*,
 14 F. Supp. 3d 247 (S.D.N.Y. 2014)...........................................................................................8

*Love v. State*,
 78 N.Y.2d 540 (1991) .................................................................................................................3

*Miller v. Santoro*,
 227 A.D.2d 534 (2d Dep't 1996) ................................................................................................3

*Moore-McCormack Lines, Inc. v. Richardson*,
 295 F.2d 583 (2d Cir. 1961)........................................................................................................5

*Neumeier v. Kuehner*,
 31 N.Y.2d 121 (1972) .................................................................................................................2

*Padula v. Lilarn Props. Corp.*,
 84 N.Y.2d 519 (N.Y. 1994) ........................................................................................................2

*Poleto v. Cons. Rail Corp.*,
 826 F.2d 1270 (3d Cir. 1987)......................................................................................................7

**Other Authorities**

ATF 78 I 86...................................................................................................................................4

ATF 143 II 37 ...............................................................................................................................4

DFSC 131 III 12...........................................................................................................................4

Franz Werro, *Les intérêts compensatoires et moratoires dans la responsabilité
 civile*, *in* Le temps dans la responsabilité civile (Franz Werro, ed. 2007)................................4

Sudan Civil Procedures Code 1983 § 110 ...................................................................................3

## TABLE OF AUTHORITIES
(continued)

**Page**

Walter Fellman & Andrea Kottman, I *Schweizerisches Haftpflichtrecht* (2012) ............................3

**Treatises**

Restatement (Second) of Torts § 913 (A.L.I. 1965) ........................................................................5

Following entry of judgment in their favor, Plaintiffs now ask this Court to add nearly $20 million in prejudgment interest to that judgment, effectively doubling the amount of the jury verdict. *See* ECF No. 1012. That extreme windfall would be unauthorized and unlawful, for several reasons. For starters, Sudanese law governs the availability of prejudgment interest here, not Swiss law (as Plaintiffs say). And Sudanese law flatly prohibits prejudgment interest as a matter of law.

Even if Swiss law applied, Plaintiffs still would not be entitled to the additional $20 million windfall they seek. Under black-letter law, an award of damages by a United States jury is *presumed* to be sufficient to make plaintiffs whole—taking into account the injuries plaintiffs suffered, and continue to suffer, from the time of injury to the time of verdict. This case is a textbook example. The jury's verdict was based on evidence that accounted for the *present-day* value of Plaintiffs' pecuniary damages (including the present-day appreciation of property and livestock) and pain and suffering. If Plaintiffs received both present-value-adjusted damages and prejudgment interest under Swiss law, that would constitute an impermissible double recovery.

Plaintiffs' motion should be summarily denied. At a minimum, the Court should defer ruling on Plaintiffs' motion as premature. In its forthcoming post-trial motions, BNP Paribas S.A. ("BNPP") will explain why the jury's award of damages is unauthorized and must be reduced as a matter of law. Until those post-trial motions are decided, and a final judgment is entered, the amount of damages and any corresponding prejudgment interest is uncertain and not ripe for decision.

1

## ARGUMENT

I.  **Sudanese Law Governs and Prohibits Prejudgment Interest.**

Under New York choice of law principles, "a distinction must be made between a choice-of-law analysis involving standards of conduct and one involving the allocation of losses." *See Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521–22 (N.Y. 1994). The Second Circuit has held that the availability of prejudgment interest is a "loss-allocating" issue. *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 59 (2d Cir. 2000) (holding that district court erred by failing to recognize that "New York law … requires that the same analysis applicable to … other loss-allocating issues, also be applied to the issue of pre-judgment interest"). Under the New York choice-of-law rules first set forth in *Neumeier v. Kuehner*, 31 N.Y.2d 121 (1972), which applies to "all post-accident loss distribution rules," *Caruolo*, 226 F.3d at 57 (citations and quotation marks omitted), where the parties have different domiciles, *the law of the place of plaintiff's injury* governs "loss-allocating" issues such as prejudgment interest, *Jones v. Marsh & McLennan Cos.*, 2025 WL 1517999, *2–3 (S.D.N.Y. May 28, 2025) (Hellerstein, J.) (applying *Neumeier* test and determining that the law of the place of injury applies to rule "whose purpose is grounded in loss allocation"). The place of Plaintiffs' injuries is Sudan, not Switzerland.[1]

---

[1] The Court has previously held that Swiss law governs conduct-regulating issues such as liability and punitive damages. *See* ECF No. 151 at 9–10 (explaining that "[t]he issue before the Court is whether Plaintiffs have stated a claim for a slew of New York torts—all rules that prospectively regulate parties' conduct" and concluding that Swiss law applied) (emphasis added); ECF No. 499 at 2 (adopting "determin[ation] that Swiss law is the law governing BNPP's liability") (emphasis added); *id.* at 11 (striking Plaintiffs' claims for punitive damages on the ground that punitive damages are "conduct-regulating" and therefore governed by Swiss law, under which they are not unavailable). The Court has never decided what law applies to loss-allocating issues like prejudgment interest.

2

Sudanese law thus governs this issue and prohibits all forms of interest—including prejudgment interest—"in any circumstances," as a matter of law. *See* Ex. 1 (Sudan Civil Procedures Code 1983) § 110.[2] Accordingly, Plaintiffs' motion must be denied.

## II. Prejudgment Interest Would Award an Impermissible Double Recovery.

Presumably, Plaintiffs know that prejudgment interest is not available under Sudanese law. Likewise, New York law precludes any award of prejudgment interest for personal injury claims such as Plaintiffs'. *Love v. State,* 78 N.Y.2d 540, 542 (1991) ("[T]he plaintiff in a personal injury action is not entitled to recover interest from the date the cause of action accrued … . [I]nterest may be recovered … under CPLR 5002 from the date the verdict was rendered to the date of entry of final judgment." (citation and quotation marks omitted)); *Miller v. Santoro*, 227 A.D.2d 534, 534 (2d Dep't 1996) (holding that it was "erroneous[]" to award prejudgment "interest on award of damages for conscious pain and suffering"). So, Plaintiffs have no choice but to seek prejudgment interest under Swiss law. As explained above, Swiss law does not apply to this issue. *See supra* Section I. But even if it did, Plaintiffs still would not be entitled to the $20 million windfall they seek.

Under Swiss law, damages are generally determined as of the date of injury. Prejudgment interest is then added to compensate plaintiffs for the period between the date of injury and the date of verdict. *See* Ex. 2 (Walter Fellman & Andrea Kottman, I *Schweizerisches Haftpflichtrecht* (2012)) § 6 ¶1377 ("The damage must always be calculated based on the time at which it occurred, which is often a point in time in the past. If the liable party only makes the payment at a later date, the injured party is entitled to interest on damages as compensation for

---

[2] All exhibits cited in this brief are attached to the concurrently filed declaration of Charity E. Lee.

the delayed payment." (emphases omitted)).  But as even Plaintiffs' expert, Professor Werro, has explained, "if the damage is determined at the time of the judgment, compensatory interest cannot be calculated from an earlier date.  Such a calculation would result in overcompensation of the injured party."  Ex. 3 (Franz Werro, *Les intérêts compensatoires et moratoires dans la responsabilité civile*, *in* Le temps dans la responsabilité civile 27, 35 (Franz Werro, ed. 2007)).

In Switzerland, as in the United States, an award of interest must serve the overarching purpose of making the plaintiff whole.  *See* Ex. 4 (DFSC 131 III 12) at reas. 9.1 ("This claim interest has the purpose of putting the person entitled to the claim in a position as if his claim had been satisfied on the date of the tort or for its economic effects: when they arose." (citation omitted)).  When interest exceeds that purpose, it amounts to a punitive and impermissible double recovery.  *See, e.g.*, *Gilliam v. Allen*, 62 F.4th 829, 850 (4th Cir. 2023) (reversing decision to award prejudgment interest because "the $36 million award [the district court] added to the jury's verdict was functionally a double recovery or punitive or both").  For that reason, Swiss courts have reduced the interest rate where it would exceed the amount needed to compensate plaintiffs for the damages they suffered.  *See, e.g.*, Ex. 5 (ATF 143 II 37) at reas. 7.3 (discussing case where the Federal Supreme Court denied prejudgment interest including because an interest rate of "5% would lead to considerable enrichment of the person entitled to reimbursement"); Ex. 6 (ATF 78 I 86) at reas. 5 (lowering interest rate because default rate of 5% was not appropriate).

Here, the jury awarded damages that *already* compensate Plaintiffs for the *present value* of their injuries, as of the date of the verdict.  The jury was specifically instructed to compensate Plaintiffs for their injuries in the "amount necessary to restore the plaintiff's well-being."  Oct. 16 Trial Tr. 1628:17–1629:9.  That instruction amounts to a *legal presumption* that the jury's

4

award of damages includes prejudgment interest because "no one would be so naive as to presume that juries do not throw into the scales the years that a plaintiff may have had to wait before his case can be heard by a jury." *Moore-McCormack Lines, Inc. v. Richardson*, 295 F.2d 583, 594 (2d Cir. 1961) (explaining that "courts in jury cases" traditionally refuse to grant prejudgment interest because "a jury usually makes some allowance for loss caused by delay"); *see also E.J. Brooks Co. v. Cambridge Sec. Seals*, 858 F.3d 744, 750 (2d Cir. 2017) ("[W]here there is a possibility that the jury award already allowed interest, no further prejudgment interest can be recovered on the verdict."); *Gilliam*, 62 F.4th at 848, 850 (reversing district court's grant of prejudgment interest because "it must be assumed that the jury … provid[ed] 'complete compensation'"); *cf.* Restatement (Second) of Torts § 913(2) (A.L.I. 1965) ("Interest is not allowed upon an amount found due for bodily harm [or] emotional distress … but the time that has elapsed between the harm and the trial can be considered in determining the amount of damages."); *id.* § 913 cmt. c ("It is … improper, having found the amount that should be awarded as compensation, to add to it a specific amount of interest.").

The trial record leaves no doubt: The jury's award of damages was based on evidence offered by Plaintiffs about the *present-day value* of their injuries. For example, Plaintiff Abdalla testified that the value of his livestock "could be up to a million [U.S. dollars]" *today* because "it's been over 20 years, and every year the cows would have more new baby cows." Sept. 25 Trial Tr. 909:2–11 (Testimony of Abulgasim Abdalla). He also testified that the value of his home *today* would be "above 200,000 [U.S. dollars]." *Id.* 909:12–15. Likewise, Plaintiff Turjuman testified about the values of his properties *today*. *See* Sept. 18 Trial Tr. 703:13–16 (Testimony of Turjuman Turjuman) (testifying that his house in Wau is worth between $300,000 and $500,000 today "because houses in Sudan are expensive *right now*" (emphasis added)),

5

707:1–5 (testifying that the price of his house in Khartoum is "[n]ow … between $2 million[] to $4 million[]").

Plaintiffs' testimony about the present value of their damages was not limited to their pecuniary harms. After testifying that the government of Sudan and the Janjaweed "beat [him] on [his] legs with a whip," Mr. Abdalla stated that "to this day, [he has] pains in [his] legs." Sept. 25 Trial Tr. 930:21, 931:2 (Abdalla). Likewise, Mr. Turjuman testified to continuing pain in his foot, as well as continuing mental health issues. *See* Sept. 18 Trial Tr. 689:3–7 (Turjuman) ("But later on I find out there [is] a big cut in my foot here. And it's still, you know, I can't stand for [a] long time."), 702:15–17 ("Q. Can you tell the jury about your physical health today? ... A: You know, beside[s] the pain that I feel in my foot, I feel like I'm torn out emotion, emotion. Whenever I remember things that happened, I just cry."). And Plaintiff Kashef testified that as a result of the harms she suffered in 2008, her sleep has been affected, including "get[ting] nightmares," and "now [she] start[ed] having headaches"; specifically, she testified that she has "been having migraine attacks at least three or four months." Sept. 26 Trial Tr. 1000:4–12 (Testimony of Entesar Kashef); *see also id.* 1001:4–6 ("So even today I'm wondering how I would be able to go and to sleep today. Any time I remember or talk about any of the things, I would not be able to sleep."). She further testified that she "suffer[s] emotionally," such as "want[ing] to be alone" "many times," "even when [she's] with [her] kids" or "in an[] event with other people." *Id.* 1000:12–17.

Because the jury's general verdict and award of damages was based on evidence of appreciated property values and other present-day harms, it would be impermissibly duplicative and unlawful to tack on prejudgment interest. *See, e.g., E.J. Brooks*, 858 F.3d at 750 ("[W]here there is a possibility that the jury award already allowed interest, no further prejudgment interest

6

can be recovered on the verdict."); *Gilliam*, 62 F.4th at 848–50 ("[O]ne cannot know for certain whether the jury considered as an element of complete compensation any delay in payment when it entered its general compensatory damages verdict. … In view of the nature of the injuries and the jury's general verdict, any 'calculation' of interest on amounts as they accrued could only be the product of speculation and not compensation for the loss of use of money."); *Poleto v. Cons. Rail Corp.*, 826 F.2d 1270, 1277 (3d Cir. 1987) ("[W]hen a jury has been asked to render only a general verdict, it might be presumed to have included prejudgment interest in its calculation of damages."), *abrogated on other grounds by, Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990).

This Court should not provide Plaintiffs with an unauthorized windfall by adding prejudgment interest to the jury's damages award. Under Swiss law, prejudgment interest would be allowed to compensate Plaintiffs only for the period between the date of injury and the date of verdict. But the jury's award of damages already does that, in full. Even if Swiss law governed (it does not), no prejudgment interest would be authorized or proper.

**III.    At A Minimum, The Court Should Defer Calculation of Prejudgment Interest.**

In any event, should this Court decide that some award of prejudgment interest is proper, it should not decide that amount until it has resolved BNPP's forthcoming post-trial motions, and the judgment is final. *See Braunscheidel v. Buffalo Carpenters Pension Plan*, 1993 WL 30935, at *3 (W.D.N.Y. Jan. 28, 1993) ("The award of prejudgment interest necessarily implicates a reexamination of many factors underlying the merits of a case and therefore must be considered an alteration or amendment of a final judgment.").

In its post-trial motions, BNPP will explain why the jury's award of damages cannot stand. *See* ECF Nos. 997, 998. Should the Court grant BNPP's renewed motion for judgment as a matter of law, Plaintiffs' motion requesting prejudgment interest would be moot. In the

7

alternative, BNPP will move for remittitur under Rule 59(e), which would require a reduction in the damages award. Because the damages awarded by the jury should be vacated or significantly reduced, the calculation of any prejudgment interest based on the verdict would be premature. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 286 (S.D.N.Y. 2014) (awarding prejudgment interest "on the remitted amount … rather than on the full amount").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for prejudgment interest.[3] At a minimum, the Court should defer calculation of any prejudgment interest until resolving BNPP's forthcoming post-trial motions, and the judgment is final.

Respectfully submitted,

Dated: New York, New York

November 10, 2025

| | |
|---|---|
| */s/ Barry H. Berke* <br> Barry H. Berke <br> Dani R. James <br> Michael Martinez <br> Matt Benjamin <br> David P. Salant <br><br> GIBSON, DUNN & CRUTCHER LLP <br> 200 Park Avenue <br> New York, New York 10166 <br> T: (212) 351-4000 <br> bberke@gibsondunn.com <br> djames@gibsondunn.com <br> mmartinez2@gibsondunn.com <br> mbenjamin@gibsondunn.com <br> dsalant@gibsondunn.com | */s/ Carmine D. Boccuzzi, Jr.* <br> Carmine D. Boccuzzi, Jr. <br> Abena Mainoo <br><br> CLEARY GOTTLIEB STEEN & HAMILTON LLP <br> One Liberty Plaza <br> New York, New York 10006 <br> T: (212) 225-2000 <br> cboccuzzi@cgsh.com <br> amainoo@cgsh.com <br><br> *Counsel for Defendant BNP Paribas S.A.* |

---

[3] BNPP does not oppose Plaintiffs' request to correct the typographical error in the judgment. *See* ECF No. 1012 at 1.

8