UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, et al., *Plaintiffs*, -against - BNP PARIBAS S.A., *Defendant*. | No. 1:16-cv-03228-AKH-JW Hon. Alvin K. Hellerstein |

**RESPONSE OF HAUSFELD LLP CONCERNING
MISCONDUCT ALLEGATIONS AGAINST KATHRYN LEE BOYD**

The description of Ms. Boyd's misconduct, set forth by Hausfeld LLP and Zuckerman Spaeder LLP in ECF No. 748, is true and accurate. But none of Ms. Boyd's misconduct "tainted" the trial for a simple reason: "None of the potential testimony or out-of-court statements described in Defendant's motion, ECF No. 1022, or Appendix A to that motion, was presented at trial or in any other filing or proceeding in this litigation." Ex. 1, Decl. of Michael Hausfeld ¶ 3; Ex. 2., Decl. of Scott A. Gilmore ¶ 3. Hausfeld LLP, as Plaintiffs' Co-Lead Counsel ("Co-Lead Counsel"), would not allow it.

*First*, Ms. Boyd's communications to class members regarding the settlement questionnaire—as recorded on video—are entirely irrelevant to the trial or verdict. It is true that on January 17, 2025, Hausfeld provided Ms. Boyd with a script of what she was permitted to say to class members. Ms. Boyd was directed to not coach responses. Under no circumstances was she to instruct a class member to check a particular box or supply an answer. *See* Hausfeld Decl. ¶¶ 4-5. Ms. Boyd was specifically directed to inform class members: "the answers must be your

answers, not the answer someone else suggests or the answer you think someone would want you to provide. It must be your truth." ECF No. 784-5, Jan. 17, 2025 Email from James Gotz to Lee Boyd. Despite this warning, and without Co-Lead Counsel's authorization, Ms. Boyd acted unilaterally. Hausfeld Decl. ¶ 6. The recordings attached to Defendants' Motion for Sanctions speak for themselves. Co-Lead Counsel discovered Ms. Boyd's apparent actions for the first time through Defendants' motion. *Id.*

But Ms. Boyd's unilateral actions had no possible effect on trial or the verdict because "[n]o settlement questionnaire response was used as evidence at trial." *Id.* ¶ 7.

*Second*, it is true that on or about May 21, 2025, during an in-person meeting at the offices of Perry Law, Ms. Boyd repeatedly interrupted an expert witness during a mock examination and attempted to feed answers reflecting her views rather than the expert's. Gilmore Decl. ¶¶ 4-11. The incident was so extreme that it prompted five seasoned trial attorneys—Mr. Hausfeld, Cy Smith, Aitan Goelman, Danya Perry, and Joan Illuzzi-Orbon—to advise Ms. Boyd and Hecht Partners LLP that Ms. Boyd needed to stop what she was doing and heed more experienced trial counsel. *See* ECF No. 784 at 14.

This incident had no influence on the verdict because, over Ms. Boyd's objections, Plaintiffs did not call this expert at trial—principally out of concern that Ms. Boyd's efforts could be construed as attempted impermissible witness coaching. Gilmore Decl. ¶ 11.

*Third*, it is true that in June 2025, during a trip to San Diego with attorneys from Perry Law and Hausfeld, Ms. Boyd stated to co-counsel that she intended to engage in an action that would have violated ethical obligations. Gilmore Decl. ¶ 12. Fortunately, Co-Counsel was able to dissuade Ms. Boyd from following through with her plans. *Id.* The contemplated unilateral action

did not occur, nor was it communicated to any witness testifying at trial. *Id.* ¶ 13. Thus, this incident had no effect on the verdict.

*Fourth*, it is true that during expert discovery in or around February 2023, an expert witness expressed concerns to Scott Gilmore at Hausfeld LLP that Ms. Boyd was insisting that the expert adopt inaccurate opinions concerning Sudanese history. Gilmore Decl. ¶ 14.[1] The expert made clear that they would not alter their opinions and sacrifice their professional integrity to appease Ms. Boyd, even if it meant stopping work on the case. *Id.* Mr. Gilmore assured the expert that they must present their true and accurate opinion, that they should disregard any further attempt by Ms. Boyd, and that Hausfeld would never permit words to be put in their mouth. *Id.* ¶ 15. The expert's independent opinion—not Ms. Boyd's—was included in the expert's report and all subsequent testimony. *Id.* ¶ 16. Ms. Boyd may chalk this up as the typical push and pull of expert work, but the fact remains that it was the presence and intervention of Co-Lead Counsel that, yet again, prevented Ms. Boyd's misconduct from having any potentially harmful impact on this litigation. As a result of Co-Lead Counsel's intervention, the expert witness in question declined to alter their opinion, and the suggested opinions with which they disagreed were not presented at trial. *Id.* ¶ 17. Clearly, an expert who rejects a suggestion has not been compromised.

Thus, none of Ms. Boyd's unilateral misconduct had any possible effect on trial or the verdict. In fact, the most damning testimony that *was* presented at trial came from Defendant's own executives and experts—who admitted that BNPP rescued the Government of Sudan as a "black knight," generated billions in illicit U.S. dollar funding, enabled that Government's choice to devote national resources to genocide, and did so in full knowledge of Sudan's mass atrocities.

---

[1] Note that a typo on page 13 of ECF No. 784 erroneously stated this occurred in 2021. As stated on page 2 of that motion, the correct year was 2023.

3

The lack of any taint is confirmed by BNPP's failure to comply with the Court's Order to identify "by page and line in transcript, in direct and cross examination, and other documents as necessary, information in connection with any claim of tainted testimony." ECF No. 1017. It is also confirmed by BNPP's unexplained failure to cross examine any witness at trial to substantiate its feverish allegations of "tainted" testimony. By choosing not to cross-examine a single witness with these accusations when it had the full opportunity to do so, BNPP waived any allegation of "fraud"-related conduct or testimony allegedly tainting the verdict.

Not only is BNPP's abject failure to substantiate its "taint" allegations fatal to its pending motions, but it raises the real prospect that these motions serve the improper purpose of influencing public opinion. If BNPP truly believed that witnesses were testifying falsely, it would have questioned them, rather than waive the "greatest legal engine ever invented for the discovery of truth."[2] And if there were any indicia of coached testimony at trial—*e.g.*, multiple witnesses repeating the same statement—BNPP could have and should have identified it at trial.  But, instead, BNPP decided to disparage Class Counsel and the Court through extrajudicial statements published on its website, claiming that "the jury's verdict, and the trial-court proceedings, were tainted by fraud."[3] BNPP may not use a post-trial fishing expedition to justify out of court statements that would ordinarily be libelous. *See Goldberg v. Travelers Fire Ins. Co*., 11 F.R.D. 566, 568 (W.D.N.Y. 1950) ("the courts are not to be used to promote fishing expeditions").

Although Ms. Boyd's misconduct did not contaminate the trial, it injected chaos and disorder into trial preparation and presentation, none of which is in the best interests of the class.

---

[2]  5 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, § 1367, at 32 (James H. Chabourn, ed., Little Brown 1974).

[3]  BNP Paribas, *Statement from BNP Paribas – Sudan* Litigation, Paris: Oct. 28, 2025, https://invest.bnpparibas/en/document/statement-from-bnp-paribas-sudan-litigation.

Co-Lead Counsel takes no position on whether Ms. Boyd should be sanctioned by the Court or referred to the New York Bar Association. *See, e.g.*, *In re D'Amico*, 729 F. App'x 62, 67 (2d Cir. 2018) (imposing public reprimand, but referring certain issues to state grievance committee).

Any potential sanction considered by the Court should be confined to Ms. Boyd, as only she is accused of sanctionable misconduct. Defendants' Letter of July 1, 2025, clarified that where Defendants' Motion "references Plaintiffs' counsel in connection with the" alleged "attorney misconduct," Defendants "have no information indicating that the Hausfeld, Zuckerman, or Perry Law firms were aware of the statements by class co-counsel (the Hecht firm and Lee Boyd) identified in the motion or that they made similar statements." ECF No. 771-1 Ex. A, Barry Berke Letter to the Honorable Judge Alvin K. Hellerstein.

Lastly, not only has Ms. Boyd refused to take any responsibility for her unilateral misconduct, but, in recent weeks, she has repudiated the September 2, 2025, co-counsel agreement, which was designed to ensure that she would contribute to the effective prosecution of this case without jeopardizing the interests of the class through any further threatened or actual unilateral misconduct. That agreement—executed by Ms. Boyd and Mr. Hecht—resolved the leadership disputes raised in ECF No. 784; delegated certain of Ms. Boyd's roles to DiCello Levitt; and sought to ensure that Ms. Boyd would be accountable to her Co-Lead Counsel and class counsel, as well as all the class members. *See* Hausfeld Decl. ¶¶ 8-9.

Nevertheless, on November 5, 2025, Ms. Boyd and Mr. Hecht attempted to unilaterally terminate DiCello Levitt without cause and despite the trial victory, which DiCello Levitt demonstrably led in all respects. She never consulted with, sought approval, or received the consent of Mr. Hausfeld on this decision. Mr. Hausfeld does not recognize or accept Ms. Boyd's unilateral, unwarranted attempt to terminate DiCello Levitt's role in this litigation. In light of the

5

exceptional performance and dedication exhibited by DiCello Levitt counsel in the preparation for and trial of the bellwether class representatives, Ms. Boyd's attempted severing of their continued relationship is not in the best interest of the class.[4] *Id.* ¶ 11.  Moreover, because Hausfeld LLP has not and will not consent to DiCello Levitt's termination, and because the Court, at the September 3, 2025, Final Pretrial Conference, made clear that Hecht Partners and Hausfeld are required to agree on all strategic and other decisions relating to this litigation,[5] Hecht Partners' attempted termination of DiCello Levitt is not before the Court.

Similarly, on November 3, 2025, Mr. Hecht and Ms. Boyd attempted to scuttle the months-long settlement efforts of Mr. Hausfeld, Mr. Berke, and Special Master Capra, by purporting to unilaterally terminate Co-Lead Counsel's retained mediator, Eric Green. *Id.* ¶ 12.  The sole reason for trying to fire Mr. Green was Ms. Boyd's objection that she was not included in these settlement efforts——despite the Court specifically noting at the July 10, 2025, hearing that Ms. Boyd was to focus on the then-severed trial, rather than on a class settlement.

Ms. Boyd's erratic and unilateral misbehavior has, unfortunately, continued in the current motion practice. Ms. Boyd unilaterally filed responses to Defendants' motions without consultation or agreement with Co-Lead Counsel. And in ECF No. 1014 at 3, Ms. Boyd made the following false statement to the Court: "At all times, I, along with every single lawyer at Hecht Partners, have acted ethically and beyond reproach; neither I nor any attorney at my firm has ever been sanctioned, *ever*." ECF No. 1014 at 3 (emphasis in original).

---

[4] This marks the second time that Ms. Boyd has unilaterally attempted to terminate trial counsel, without consultation or agreement with Mr. Hausfeld.

[5] *See* September 3, 2025 Transcript of Proceedings, at, e.g., 5:16 ("You and Hausfeld are the decision-makers[?]"); 6:16-17 ("You and Mr. Hausfeld are jointly in charge, right?"); 7:6-7 ("You have to agree on everything that does into the trial."); 8:5-6 ("That means that you [Mr. Hausfeld and Ms. Boyd] have to agree on strategies."); and 10:3 ("There will be two people in charge [Mr. Hausfeld and Ms. Boyd].").

6

This is patently false. Ms. Boyd's partner, David Hecht, was sanctioned by this very Court in 2019 for deceptively making surreptitious recordings. *Dareltech, LLC v. Xiaomi Inc.*, 2019 WL 10966202, at *4–5 (S.D.N.Y. Apr. 11, 2019) (Hellerstein, J.) (finding Mr. Hecht had violated, *inter alia*, Rule 8.4 of the New York Rules of Professional Conduct, prohibiting lawyers from engaging in conduct involving dishonesty and misrepresentation, after he secretly recorded conversations with represented parties). Ms. Boyd did not advise Mr. Hausfeld that she intended to make this factual misrepresentation in her signed papers. Mr. Hausfeld would never have allowed it.

These questions concerning Ms. Boyd's elevation of her self-interest above the best interests of the class, her obstruction of settlement and trial efforts, and fitness to lead, are distinct from Defendants' sanctions motion and, as necessary, will be further addressed by the undersigned after the instant motion is resolved.

For now, the only salient fact is that Ms. Boyd's misconduct was prevented from touching the class representative bellwether trial or influencing its verdict.

Dated: November 11, 2025                    Respectfully submitted,

/s/ Michael D. Hausfeld
Michael D. Hausfeld
Scott A. Gilmore
Amanda E. Lee-DasGupta
Claire A. Rosset
Mary S. Van Houten Harper
Percy Metcalfe
HAUSFELD LLP
1200 17th Street, Suite 600
Washington, DC 20036
(202) 540-7200
mhausfeld@hausfeld.com
sgilmore@hausfeld.com
alee@hausfeld.com
crosset@hausfeld.com

mvanhouten@hausfeld.com
pmetcalfe@hausfeld.com

James D. Gotz
HAUSFELD LLP
One Marina Park Dr., Suite 1410
Boston, MA 02210
(617) 207-0660
jgotz@hausfeld.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I certify that on November 11, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record.

*/s/ Michael D. Hausfeld*
Michael D. Hausfeld
