UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF *et al.*,<br><br>      Plaintiffs,<br><br> -against-<br><br>BNP PARIBAS S.A.,<br><br>      Defendant. | No. 16 Civ. 3228 (AKH)<br><br>Hon. Alvin K. Hellerstein |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
BNP PARIBAS S.A.'S MOTION TO REQUIRE ATTENDANCE OF WITNESSES TO
PLAINTIFFS' COUNSEL'S MISCONDUCT AT EVIDENTIARY HEARING**

On the eve of the hearing to address the allegations of Plaintiffs' counsel's misconduct, the long-running conflict between the Plaintiffs' law firms has erupted into open warfare, raising serious questions about the integrity of these proceedings and confirming the urgent need for a meaningful evidentiary hearing.

On the one hand, the Hausfeld firm says the Hecht firm has engaged in a years-long pattern of "unilateral misconduct," including improper witness coaching, solicitation of false class questionnaire responses against ethical advice, and a variety of other "erratic and unilateral misbehavior." ECF No. 1028 at 5, 6. Everything the Hausfeld firm has previously alleged about Ms. Boyd's misconduct under penalty of perjury—witness tampering, subornation of perjury, and other egregious misconduct—is "true and accurate." *Id.* at 1. It all happened, they say.

In response, the Hecht firm accuses the Hausfeld firm of "spew[ing] grotesque lies" and "[w]ielding false ethical accusation to obtain a personal advantage." ECF Nos. 1035-1 at 7 &

1

1033 at 3. "The Hausfeld team," they counter, were the ones who "attempted to 'force' words into [trial witnesses'] mouth." ECF No. 1035-1 at 7, 8.

The Court now has before it dueling accusations of gross and sanctionable misconduct, each backed by the declarations of multiple law firm partners under penalty of perjury. Both Co-Lead Class Counsel firms have accused each other of witness tampering.[1] This is not normal. It is an irreconcilable conflict between the lawyers who have been appointed to protect the interests of the class. And it involves serious years-long patterns of alleged ethical breaches, calling into question the integrity of the recent bellwether trial and the class action process.

BNPP respectfully reiterates its request that at today's hearing, the Court require knowledgeable attorneys to describe and substantiate their accusations, permit BNPP to explore the extent to which the alleged misconduct affected these proceedings, and begin to determine the full scope, nature, and consequences of Plaintiffs' counsel's misconduct.

*First*, the Hausfeld submission corroborates BNPP's long-stated concern, backed by video evidence, that the Hecht firm inappropriately pressured prospective class members to submit questionnaires claiming injuries regardless of their truth, made false statements to prospective class members to pressure them to opt in, and not opt out, of the class, and mispresented themselves as counsel to people who were not their clients. *See* ECF No. 751 at 7–11, 15–17. Mr. Hausfeld confirms that, with his authorization, his partner Mr. Gotz provided Ms. Boyd with a script detailing "what she was permitted to say to class members during community meetings concerning the settlement questionnaire" and gave a direction "to not coach

---

[1] Shockingly, the Hausfeld firm goes so far as *not to oppose* the sanctioning of Ms. Boyd—their own co-counsel—by the Court or her referral to the New York Bar Association, and instead "take no position." ECF No. 1028 at 5.

responses." ECF No. 1028-1 ¶ 5. He says he was unaware that Ms. Boyd had violated those guardrails and engaged in improper communications with potential class members until BNPP presented videotape evidence showing just that. *Id.* ¶ 6.

Lawyers do not typically feel compelled to prescribe what their own co-counsel are allowed to say. That Mr. Hausfeld saw it necessary to provide the Hecht firm with a prescribed script for these meetings and accompanying ethical advice begs the question of what improper conduct he had observed that led him to believe there was a need to do so. Nor does it answer the question of why the Perry Law firm felt compelled to get independent ethics advice about the Hecht firm's interactions with potential class members, before it suddenly withdrew from the case. *See* ECF No. 784-3 ¶ 17. And we still do not know what unspecified misconduct Ms. Boyd threatened to commit on her June 2025 trip to work with "victim-side" witnesses in San Diego. But what is clear is that none of the Hausfeld, Zuckerman, or Perry Law firms knew what the Hecht firm was doing when they were not watching, including at the more than two-dozen roadshow meetings with prospective class members and in prep sessions with multiple witnesses over several years.

*Second*, the declarations submitted by the Hausfeld firm detail a longstanding and persistent pattern of improper witness coaching by Ms. Boyd throughout this case. Hausfeld's submissions describe her attempts to "feed answers reflecting her views rather than the expert's," to make experts "adopt inaccurate opinions," "to hijack [sessions] and to instruct the expert on how to answer," including by "raising her voice and shouting at the expert," and to propose "conduct that was obviously unethical." ECF No. 1028-2 ¶¶ 6–14.

The Hausfeld firm seeks to minimize this flagrant misconduct, claiming that the one expert who testified at trial resisted Ms. Boyd's entreaties to give false testimony, the other

3

expert whom Ms. Boyd sought to improperly influence did not testify at trial (because of concerns that his testimony had been coached), and that Ms. Boyd was "dissuaded" from pursuing the "obviously unethical" acts she had "brazenly" proposed. *Id.* ¶¶ 11, 12, 17; ECF No. 784 at 8.  But Hausfeld's assurances that these discrete episodes "had no possible effect on the trial or the verdict" are conclusory, self-serving, and limited to the instances of misconduct they observed.  It appears that no one other than the Hecht firm played a role in preparing Nima Elbagir or the three individual plaintiffs for testimony at trial.  Indeed, co-counsel recounted being sidelined from "victim-side" witness preparation sessions in San Diego, the hometown of two of the three trial plaintiffs.  *See* ECF No. 784-3 ¶¶ 20–21.  The Hecht firm stated that "neither Mr. Hausfeld nor anyone from Zuckerman has spent a single moment speaking with the individuals set to testify at trial."  ECF No. 786 at 2.  And Ms. Boyd says she was "intimately involved in all strategy decisions, trial planning, and witness preparation," including "travel[ing] to prepare all law and expert witnesses, including the Plaintiffs themselves."  ECF No. 1034 ¶¶ 3–4.  The Hausfeld, Zuckerman, and Perry lawyers do not know what happened during discussions and meetings in which they were prevented from participating.

      Indeed, there are indications that the witnesses put on by the Hecht firm were improperly coached to push the boundaries of their testimony in ways contrary to their prior statements, in order to support Plaintiffs' class-wide theories of liability and increase the amount of trial damages.  For example, Ms. Boyd misled the Court and defense regarding her intentions when she elicited improper hearsay testimony from the witness Nima Elbagir—testimony that Ms. Elbagir had never previously mentioned and that Ms. Boyd had never previously disclosed.  *See* Trial Tr. 435:09–436:09.  The Court even recognized the impropriety of this subterfuge and line

4

of questioning and testimony at the time, *id*. 454:09–13, stating "the issue will be included with others to be discussed after trial." ECF No. 970 at 2.

The three plaintiffs likewise provided trial testimony that deviated conspicuously from their prior sworn deposition testimony, interrogatory responses, and other evidence and submissions. *See, e.g.*, Trial Tr. 653:11–19, 656:08–657:10, 703:09–706:23, 707:19–708:08, 708:24–710:02, 909:01–11 932:10–933:13. Importantly, while the Hausfeld firm has sworn under penalty of perjury that Ms. Boyd engaged in blatant unethical conduct in coaching witnesses to provide false testimony in the lead-up to the trial, following the Faustian bargain both firms made with each other on the eve of trial, the Hausfeld firm apparently took no steps to safeguard against similar misconduct in the preparation of the witnesses presented by the Hecht firm (Nima Elbagir and the three plaintiffs). While the Hecht and Hausfeld firms say BNPP somehow "waived" their right to raise these issues by not cross-examining the three plaintiffs at trial, the Court precluded the defense from probing into allegations of alleged misconduct, Sept. 3, 2025 Conference Tr. 30:09–31:05, and without access to the discovery we had previously sought and were denied, we were in no position to do so.

*Third*, the Hecht firm's counter-accusations against the Hausfeld firm are equally shocking. Hecht says that "Mr. Hausfeld has repeatedly put his, and his firm's, interests before those of the class in this case in contravention of his duties and committed numerous ethical violations" in his capacity as co-class counsel. ECF No. 1035 ¶ 3. Hecht accuses Hausfeld of "[w]ielding false ethical accusations" and telling "outright lie[s]" in filings with this Court, in a calculated plot to wrest control of the class from the Hecht firm. ECF No. 1033 at 3 & 6 n.7. Hecht further charges that it was not them but "the Hausfeld team" who "had attempted to 'force' words into the[ ] mouth" of expert witnesses, and that "members of the DiCello Levitt

5

team indicated that Mr. Hausfeld was not to be trusted, was extremely unethical, and that he and his firm faced disqualification and sanctions previously in matters that were sealed." ECF No. 1035-1 at 7, ECF No. 1035 ¶ 8.

The Court now has before it two diametrically opposed, irreconcilable accounts from Plaintiffs' counsel, who are accusing each other of gross misconduct—under penalty of perjury and their ethical and Rule 11 obligations to the Court. Both sets of filings documenting pervasive misconduct and ethical violations call into question the integrity of these proceedings, including the recent trial and entire class process. Indeed, the serious claims of witness tampering and other misconduct are unprecedented and can no longer be ignored. Plaintiffs' co-counsel's claims go to the fundamental fairness of these proceedings and whether the basic ethical safeguards that are the bare minimum for all judicial proceedings were violated by Plaintiffs' counsel for the cynical reason of seeking to win at all costs and maximize their personal gain.

The time has come for a full evidentiary hearing and investigation of the alleged misconduct by Plaintiffs' counsel to determine its full impact on these proceedings. The misconduct allegedly committed by Plaintiffs' counsel relates not only to the trial that has occurred, but to all ongoing and future proceedings in this litigation. That includes review by the appellate court and other trials in the district court, as well as the adequacy of Plaintiffs' counsel to represent the interests of the class and the viability of the class. The Hausfeld firm also stands accused of serious ethical misconduct. What is more, the Hausfeld and Zuckerman firms knew there was a history of serious misconduct when they moved to disqualify the Hecht firm in July 2025, and claimed they could not ethically serve as co-counsel at trial, but then apparently

withdrew those claims as part of a new power-sharing agreement—one they claim Ms. Boyd has now breached. ECF No. 1028-1 ¶ 8.

Plaintiffs' counsel strains to shield the recent trial verdict from the reach of their claims, but this self-serving demarcation is impossible. The Court cannot have any assurance that the trial was not tainted by the same alleged improper witness coaching that both Co-Lead Class Counsel accuse the other of committing before trial. Nor can the Court have any assurance that the class is being adequately represented by either the Hecht firm, which stands accused of gross ethical misconduct, or the Hausfeld firm, who was willing to withdraw its claims of ethical violations to secure a power-sharing agreement with likely financial repercussions, only to double back later. Nor can the Court know the extent to which the entire class process has been tainted by fraud given the recorded evidence of blatantly improper coaching by the Hecht firm at a recruitment meeting of prospective class members, the disclosure that the Hausfeld firm was so concerned about such unethical conduct by the Hecht firm, presumably from prior performances, that they had to provide a "script" for these recruitment roadshows, and the admission that the Hausfeld firm then failed to supervise adherence to that script at numerous subsequent sessions.

A meaningful evidentiary hearing is necessary to get to the truth. And only an evidentiary hearing that includes sworn testimony by the lawyers who have made these allegations, and by the lawyers who are the subject of them, can begin to determine the full scope, nature, and consequences of Plaintiffs' counsel's misconduct, consistent with the Court's inherent authority to safeguard the integrity of these proceedings.

Respectfully submitted,

Dated: New York, New York

November 12, 2025

| | |
|---|---|
| */s/ Barry H. Berke* <br> Barry H. Berke <br> Dani R. James <br> Michael Martinez <br> Matt Benjamin <br> David P. Salant <br><br> GIBSON, DUNN & CRUTCHER LLP <br> 200 Park Avenue <br> New York, New York 10166 <br> T: (212) 351-4000 <br> bberke@gibsondunn.com <br> djames@gibsondunn.com <br> mmartinez2@gibsondunn.com <br> mbenjamin@gibsondunn.com <br> dsalant@gibsondunn.com | */s/ Carmine D. Boccuzzi, Jr.* <br> Carmine D. Boccuzzi, Jr. <br> Abena Mainoo <br><br> CLEARY GOTTLIEB STEEN & HAMILTON LLP <br> One Liberty Plaza <br> New York, New York 10006 <br> T: (212) 225-2000 <br> cboccuzzi@cgsh.com <br> amainoo@cgsh.com <br><br> *Counsel for Defendant BNP Paribas S.A.* |