**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ENTESAR OSMAN KASHEF, et al.,

     *Plaintiffs*,

     - against -

BNP PARIBAS, S.A.,

     *Defendant*.

No. 1:16-cv-03228-AKH-JW

Hon. Alvin K. Hellerstein

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CO-LEAD CLASS COUNSEL MICHAEL D. HAUSFELD TO APPOINT ADAM LEVITT AS THIRD CO-LEAD CLASS COUNSEL

### INTRODUCTION

There is an impasse in this class action's leadership, as demonstrated by the recent filings and discussed during the November 12, 2025, hearing. Ms. Boyd and Mr. Hausfeld have disagreements on strategy and tactics, the composition of class counsel, and the respect and decorum with which team members should be treated and litigation conducted. At the November 12 hearing, the Court expressly stated that it lacks "confidence" in Ms. Boyd and suggested that DiCello Levitt—which led the trial—could serve as a "buffer." The Court directed Mr. Hausfeld to propose a solution to resolve this impasse. This motion is filed in response to that request.

There is a solution, and it was evidenced by the successful trial. DiCello Levitt served as the lead trial counsel, enabling the full team to operate under united dynamics for the benefit of the bellwether, class representative Plaintiffs. This successful leadership should now be formalized going forward.

Pursuant to Federal Rule of Civil Procedure 23(g), Co-Lead Class Counsel Michael Hausfeld respectfully moves the Court to appoint Adam Levitt, a founding partner of DiCello Levitt and an eminent class action litigator, as a third Co-Lead Class Counsel. Lead trial counsel Bobby DiCello supports the appointment of Mr. Levitt. *See* Ex. 1, Declaration of Robert F. "Bobby" DiCello ¶ 20 ("DiCello Decl."). Class counsel Zuckerman Spaeder LLP supports this solution as well. Earlier today, Mr. Hausfeld left a voicemail for Ms. Boyd proposing this solution and asking for a phone call to confer. Ms. Boyd responded by email, stating "I received your message, and we would oppose for a number of reasons I believe the Court would agree with."

This tripartite leadership structure is in the best interests of the Class. The Class will continue to benefit from Ms. Boyd's relationship with the class representatives and other members of the Sudanese refugee community. They will continue to benefit from Mr. Hausfeld's team, which has solely led on the Swiss law issues that will be critical for any appeal, has been instrumental in developing the factual and expert record, and has renowned abilities in class litigation and settlement and human rights matters. And they will continue to benefit from the trial leadership and class action and mass tort experience of DiCello Levitt, alongside the trial expertise of Zuckerman Spaeder. The proposed three Co-Lead Class Counsel would best serve the trial of future bellwethers, respond effectively to any defense appeal, and pursue a concerted resolution of the litigation.

## I.    The Court has the authority and the obligation to manage class representation and leadership.

Under Federal Rule of Civil Procedure 23(g), the Court has the responsibility to designate and regulate the leadership structure of appointed class counsel. *See* ANN. MANUAL COMPLEX LIT. § 10.224 (4th ed.) ("MANUAL"); NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 10:1 (6th ed.) ("NEWBERG"); *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("[A] district court

has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.").

This authority is rooted in the Court's duty to protect the interests of the class as a whole and ensure the fair and efficient administration of justice: "A judge in a class action is obligated to protect the interests of absent class members." *In re "Agent Orange" Product Liability Litigation*, 996 F.2d 1425, 1438 (2d Cir. 1993). A class action is unique in that it does not turn on the conventional attorney-client relationship: the tasks of "cho[osing] a lawyer . . . and monitor[ing] the lawyer's performance . . . fall to the judge, who creates the class by certifying it and must supervise those who conduct the litigation on behalf of the class." MANUAL § 21.27.

Appointing seasoned lead counsel is one of the district court's key organizational tools in complex litigation. MANUAL § 21.272. The appointment of co-lead counsel is routine and widely accepted in cases involving complex issues, as it allows counsel to share resources and expertise. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58–59 (E.D.N.Y. 2006) (appointing four co-lead counsel, including Michael Hausfeld). Courts often adopt a leadership structure proposed by counsel through private ordering. MANUAL § 21.272.  But the Court may, of its own accord, create a leadership structure best fit to protect the interests of the class—even over objections. *See Air Cargo*, 240 F.R.D. at 58.

Rule 23(g) directs that the Court "must consider" the following factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"

In addition, when crafting a leadership structure, courts should consider, among other factors: "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court . . . ." MANUAL § 10.224. The most important factor is "achieving efficiency and economy without jeopardizing fairness to the parties." *Id*. § 10.221.

In the end, "[t]he ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).

## II.    The Court Should Appoint Adam Levitt as a Third Co-Lead Class Counsel.

In order to best address the present differences among Plaintiffs' counsel, it is respectfully proposed that Adam Levitt of the DiCello Levitt team be appointed as a third Co-Lead Class Counsel. The DiCello Levitt team has demonstrated its ability to join the Hecht, Hausfeld, and Zuckerman Spaeder teams into a successful unified front. Moreover, Mr. Levitt is one of the nation's leading class action litigators, and a tripartite leadership will provide the structure to cooperatively maximize all four firms.

### A.  The Trial Demonstrated that Tripartite Leadership is a Winning Formula.

At the November 12, 2025, hearing, the Court suggested that DiCello Levitt be the leadership "buffer." I believe that Adam Levitt would not only be a buffer, but the mortar binding the team together.

Days before trial, plaintiffs' counsel set aside differences and united under Bobby DiCello's trial leadership, with a successful division of roles among all counsel. DiCello Levitt led on delivering an overwhelmingly effective opening and closing, direct expert examinations, trial logistics and liaising with the defense. Ms. Boyd led on direct examination of the plaintiffs and fact witness Nima Elbagir. Hausfeld led on legal arguments, co-authoring the opening and closing

arguments, and proposed jury instructions, as well as developing the factual record at trial. And Zuckerman Spaeder cross-examined two of the key defense witnesses. As Bobby DiCello explained, "every single person on the team was indispensable to securing a landmark verdict for the three class plaintiffs." DiCello Decl. ¶¶ 6-9.

The trial team had the constant benefit of Mr. Hausfeld's and Mr. Levitt's decades of class action experience, who "ensured that the trial would serve effectively as a *class* bellwether . . . ." *Id.* ¶ 16.

This successful collaboration demonstrated that a third leader was the missing ingredient enabling the cooperation of all plaintiffs' counsel in the interests of the plaintiffs and the other Class members. While Mr. DiCello's focus should remain on trial, his partner, Adam Levitt, with his wealth of class action experience, should be that third leader, joining Ms. Boyd and Mr. Hausfeld to see this case through the next phases and to its successful conclusion. Indeed, as further confirmation of Mr. Levitt's ability to cooperate with Hausfeld and Hecht Partners, DiCello Levitt currently serves as co-lead counsel with Hausfeld on not less than three pending class action and public entity cases[1]—and, separately, serves as co-counsel with Hecht Partners in a series of PPP whistleblower cases and a patent infringement litigation.[2]

**B.   Adam Levitt and the DiCello Levitt Team are Eminently Qualified Class Action and Trial Lawyers.**

Co-founder of DiCello Levitt LLP—named 2023 Plaintiffs' Law Firm of the Year by the *National Law Journal*—Adam Levitt has the credentials and the experience necessary to serve as Co-Lead Class Counsel here. His ability to build and lead winning teams, his innovative strategic

---

[1] *See, e.g., State of Maine v. BP p.l.c.*, Case No. PORSC-CV24-442 (Me. Super. Ct.); *In re Manufactured Home Lot Rents Antitrust Litigation*, Case No. 1:23-cv-06715 (N.D. Ill.).

[2] *See, e.g., Sitnet LLC v. Meta Platforms, Inc.*, Case No.: 1:25-cv-6185 (S.D.N.Y.); *Relator, LLC, et al. v. Ilink Employers Company, et al.*, No. 5:22-cv-01004-RGK-DTB (C.D. Cal.).

approaches, and willingness to lead difficult cases through trial and beyond has led to his appointment as lead or co-lead counsel in close to 25 multidistrict litigations. It has also resulted in his retention by institutional investors and multinational corporations, and his retention—through competitive bidding—by numerous State Attorneys General in a wide variety of matters, including by the States of Illinois and Michigan in the PFAS water contamination cases, the largest environmental litigations of our lifetime.[3] Moreover, as a court-appointed member of a leadership group characterized as a "class action dream team" in the historic litigation arising from Volkswagen's emissions scandal, Mr. Levitt helped secure a $16 billion settlement that benefitted car buyers across the United States.[4] He has also served as co-lead counsel in three of the largest biotechnology class actions in history, and, in doing so, created a game-changing economic model to measure crop contamination damages that set the modern industry standard.[5]

Mr. Levitt's work on behalf of plaintiffs has been recognized locally and nationally in ranking directories, including Chambers USA, where he has received a Band 1 ranking for Mainly Plaintiffs Litigation in Illinois. Chambers USA has also ranked him in Illinois for General Commercial Litigation and nationwide for Product Liability Litigation, where editors described him as the "go-to plaintiffs' attorney in the class action space." Benchmark Litigation has also repeatedly recognized him as a National Litigation Star: Securities and Litigation Star in Illinois,

---

[3] *Nessel v. 3M Co., et al.*, MDL No. 2873 (D.S.C.); *Nessel v. EI DuPont de Nemours and Co.*, *et al.*, MDL No. 2873 (D.S.C.); *Nessel v. Chemguard, et al.*, MDL No. 2873 (D.S.C.); *Nessel v. Asahi Kasei Plastics N. Am. Inc.*, Case No. 20-30909-NZ (Livingston Cir. Ct.); *People ex rel. Raoul v. 3M Co.*, Case No. 22-cv-4075 (C.D. Ill.).

[4] *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 15-MD-2672 (N.D. Cal.).

[5] *In re Genetically Modified Rice Litig.*, MDL No. 1811 (E.D. Mo.); *In re Imprelis Herbicide Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2284 (E.D. Pa.); *In re StarLink Corn Prods. Liab. Litig.*, MDL No. 1403 (N.D. Ill.).

and Lawdragon has named him one of the 500 Leading Plaintiff Financial Lawyers and one of the 500 Leading Plaintiff Consumer Lawyers in the United States. As further confirmation of his standing in the national class action bar, Mr. Levitt writes a monthly column on class action litigation ("Arguing Class Actions") in the *National Law Journal*. He is also an elected member of the American Law Institute and the Economic Club of Chicago.

Mr. Levitt brings, of course, the support of Lead Trial Counsel Bobby DiCello—with whom the Court is now well familiar, Mark DiCello—a leader of the mass tort bar—and the DiCello Levitt trial team, including partners Kenneth Abbarno, Carrie Syme, and Greg Gutzler.

### C. A Tripartite Leadership Structure is in the Best Interests of the Class.

The proposed leadership structure will give the Class the best that all of the firms offer. Ms. Boyd will remain in place, ensuring continuity in her relationships with the class representatives and members of the Sudanese-American community. The winning trial team will remain in place, led by Bobby DiCello with key contributions from Ms. Boyd and from Cy Smith and Aitan Goelman of Zuckerman Spaeder. And Hausfeld will remain in place—which is critical for this stage of the case. Mr. Hausfeld is recognized as one of the most prominent plaintiffs' lawyers in the United States, and a pioneer of human rights litigation, who led the Swiss banks Holocaust litigation and landmark settlement. In the present case, he has led settlement and mediation efforts to date, developing working relationships with Mr. Berke and Special Master Capra. As the Court noted, now is an opportune time to explore resolution; it is not the time to derail the process. As Bobby DiCello notes, "Mr. Hausfeld and Mr. Levitt have vast experience settling complex class cases." DiCello Decl. ¶ 14.

Moreover, Plaintiffs will likely need to defend judgments on appeal, which BNP Paribas intends to focus on Swiss law. For five years, the Hausfeld team has mastered the Swiss law in

this case. As Bobby DiCello states, "it is inconceivable how Plaintiffs would handle an appeal without Scott Gilmore and the Hausfeld team, who could teach a course in Swiss tort law at this point." DiCello Decl. ¶ 14. Mr. Gilmore—who is fluent in French and reads German—has led briefing and argument on all aspects of Swiss law ever since Judge Nathan decided to apply Swiss tort law, in addition to successfully defending the class certification order at the Second Circuit against BNPP's Rule 23(f) interlocutory appeal. His deposition of BNP Paribas's Swiss law expert, Vito Roberto, exposed the Bank's effort to fabricate Swiss law standards, leading to Judge Nathan's denial of the motion to dismiss. *Kashef v. BNP Paribas SA*, No. 16-CV-3228 (AJN), 2021 WL 603290, at *4 (S.D.N.Y. Feb. 16, 2021) (finding Defendant's expert admitted "these 'requirements' are not elements articulated by the Swiss courts, but are instead his own interpretation of the law as he believes it *should* be applied") (emphasis in the original). He is joined by Hausfeld partners James Gotz and Amanda Lee-DasGupta, with extensive mass tort experience, as well as associate Claire Rosset, a native French speaker, with an encyclopedic knowledge of the Bank's documents in their original language.

In short, the trial, appeal, client relationship pieces and settlement strengths are all in place and should not be disturbed. But in order to continue and succeed, there must be a changed leadership structure designed to fuse them together. Appointing Mr. Levitt as a third Co-Lead Class Counsel can achieve that.

## **CONCLUSION**

For all of the foregoing reasons, the undersigned respectfully request that, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court appoint Adam Levitt as Co-Lead Class Counsel while retaining Mr. Hausfeld and Ms. Boyd in their current roles.

Dated: <u>November 14, 2025</u>                    Respectfully submitted,

*/s/ Michael D. Hausfeld*
Michael D. Hausfeld
HAUSFELD LLP
1200 17th Street, Suite 600
Washington, DC 20036
(202) 540-7200
mhausfeld@hausfeld.com