UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF *et al.*, | |
| Plaintiffs, | |
| -against- | No. 16 Civ. 3228 (AKH) |
| BNP PARIBAS S.A., | Hon. Alvin K. Hellerstein |
| Defendant. | |

## DEFENDANT BNP PARIBAS S.A.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT UNDER RULE 54(B)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
T: (212) 351-4000

CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T: (212) 225-2000

*Counsel for Defendant BNP Paribas S.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD.............................................................................................. 5

ARGUMENT .......................................................................................................... 6

    I.      The Court Entered Final Judgment as to the Claims of the Three
            Individual Plaintiffs. ........................................................................... 6

    II.     There Is No Just Reason for the Court to Delay in Directing Final
            Judgment as to the Claims of the Three Individual Plaintiffs.............................. 7

          A.     An Immediate Appeal Will Clarify the Governing Principles of
                  Swiss Law. ........................................................................ 8

          B.     An Immediate Appeal Will Preserve the Resources of this Court
                  and the Parties. ................................................................. 9

          C.     An Immediate Appeal Will Preserve the Resources of the Court of
                  Appeals. ........................................................................... 11

          D.     The Balance of the Equities Supports an Immediate Appeal. ................. 12

    CONCLUSION.................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adams v. United States*,
  2010 WL 1994191 (D. Idaho May 12, 2010) ....................................................7, 8

*In re Asia Pulp & Paper Secs. Litig.*,
  293 F. Supp. 2d 391 (S.D.N.Y. 2003) ................................................................10

*Bay v. Anadarko E&P Onshore LLC*,
  912 F.3d 1249 (10th Cir. 2018) .........................................................................7, 8

*Bayshore Ford Truck Sales Inc. v. Ford Motor Co.*,
  607 Fed. App'x 203 (3d Cir. 2015) ........................................................................7

*Cabrera v. Islamic Republic of Iran*,
  2022 WL 21769425 (D.D.C. July 19, 2022) ....................................................7, 13

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
  47 F.4th 1278 (11th Cir. 2022) ..............................................................................8

*Cayuga Indian Nation of New York v. Pataki*,
  188 F. Supp. 2d 223 (N.D.N.Y. 2002) ...............................................6, 7, 9, 13, 14

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ................................................................................................7

*Cullen v. Margiotta*,
  811 F.2d 698 (2d Cir. 1987) .........................................................................6, 8, 11

*In re Depakote*,
  2017 WL 11438790 (S.D. Ill. June 13, 2017) ......................................6, 8, 9, 12, 13

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*,
  2017 WL 2672767 (N.D. Ind. June 19, 2017) ........................................................8

*Ginett v. Comput. Task Grp., Inc.*,
  962 F.2d 1085 (2d Cir. 1992) .......................................................................5, 7, 12

*Gumer v. Shearson, Hammill & Co.*,
  516 F.2d 283 (2d Cir. 1974) ................................................................................10

*Hudson River Sloop Clearwater v. Dep't of Navy*,
  891 F.2d 414 (2d Cir. 1989) ...........................................................................13, 14

*Kashef v. BNP Paribas SA*,
  2024 WL 1676355 (S.D.N.Y. Apr. 18, 2024) ......................................................3, 8

*Kashef v. BNP Paribas SA*,
  2025 WL 2941595 (S.D.N.Y. Sept. 8, 2025) ..........................................................8

*Kashef v. BNP Paribas S.A.*,
  925 F.3d 53 (2d Cir. 2019) ....................................................................................2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*L.B. Foster Co. v. Am. Piles, Inc.*,
   138 F.3d 81 (2d Cir. 1998)...........................................................................7, 13

*Linde v. Arab Bank PLC*,
   882 F.3d 314 (2d Cir. 2018)..................................................................................5

*Loral Fairchild Corp. v. Victor Co. of Japan*,
   931 F. Supp. 1044 (E.D.N.Y. 1996) ...................................................................10

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
   2010 WL 1328249 (S.D.N.Y. Apr. 5, 2010)...............................5, 6, 7, 8, 10, 12

*Mitchell v. Lyons Pro. Servs., Inc.*,
   727 F. Supp. 2d 116 (E.D.N.Y. 2010) .........................................................5, 7, 13

*Mod. Holdings, LLC v. Corning, Inc.*,
   2023 WL 12007022 (E.D. Ky. Aug. 14, 2023)............................................7, 8, 11

*Nippon Yusen Kaisha v. FIL Lines USA Inc.*,
   977 F. Supp. 2d 343 (S.D.N.Y. 2013)...................................................................5

*Novick v. AXA Network, LLC*,
   642 F.3d 304 (2d Cir. 2011)..............................................................................5, 6

**Rules**

Fed. R. Civ. P. 54(b) ...............................................................................................5, 6

## PRELIMINARY STATEMENT

On October 22, 2025, the Court entered judgment on a jury verdict finding BNPP liable to three individual Plaintiffs—Entesar Osman Kashef, Abulgasim Abdalla, and Turjuman Ramadan Turjuman—under Article 50(1) of the Swiss Code of Obligations. ECF No. 1006 ("the Order"). The Court decided to try the claims of the three Plaintiffs separately from the remainder of the case, adopting a "bellwether" approach that is commonly used in the mass tort context. In the clear majority of such cases, courts have recognized that certification of the bellwether verdict is proper under Rule 54(b). And for good reason. The purpose of individual bellwether trials is to develop the law of the case in a way that provides the parties with a better understanding of the law that governs the proceedings, which in turn provides the parties with greater certainty about their claims and defenses. Immediate appellate review promotes this process in a way that both respects the needs of the litigants and preserves the resources of the district court.

This case is a perfect example of a bellwether verdict that necessitates immediate appeal. This Court has entered judgment for three individuals in a case involving multiple parties. There is no dispute that the judgment is "final"—there is nothing more for the Court to do with respect to the claims of those three Plaintiffs other than to enter final judgment under Rule 54(b). Nor is there any just reason for delay. An appeal would provide vital guidance on hotly contested issues of Swiss law, which, as the Swiss Government has explained, has significant implications for international comity. If the Court of Appeals agrees with BNPP, then timely and decisive resolution of legal questions decided as part of the individual trial would preserve party and judicial resources by dispensing with the litigation altogether or, at a minimum, ensuring that future individual cases are conducted in accordance with Second Circuit law. If the Court of Appeals agrees with the three individual Plaintiffs, then an appeal would provide clarity for future

proceedings and permit payment to the three individuals that would otherwise be delayed by years of additional litigation.

Therefore, if the Court denies BNPP's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for a New Trial or to Amend the Judgment, then the Court should direct entry of final judgment under Rule 54(b) as to the October 22, 2025 Order. Pursuant to the Court's October 6 order granting judgment as a matter of law in favor of BNP Paribas US Wholesale Holdings, Corp., ECF No. 991, the Court should also enter final judgment as to that party.

## BACKGROUND

Plaintiffs, a group of 19 Sudanese refugees, filed their original complaint on April 29, 2016, nearly a decade ago. They seek damages for alleged misconduct BNPP engaged in starting in the late 1990s. More specifically, Plaintiffs' complaint (and every subsequent amended pleading) alleged that by facilitating financial transactions of Sudanese entities through letters of credit and otherwise, BNPP is responsible for both economic and noneconomic damages allegedly arising from the Government of Sudan's illicit acts.

Judge Alison J. Nathan initially granted BNPP's motion to dismiss, holding that Plaintiffs' claims were barred under the act of state doctrine and were, as to the class members who were adults at the time of their alleged injury, otherwise untimely. ECF No. 101. On appeal, the Second Circuit reversed, holding that Plaintiffs' claims were timely, and that the act of state doctrine did not apply because BNPP had not established that "the atrocities committed against the Plaintiffs were the officially sanctioned policies of Sudan," and because acts like genocide, which violate *jus cogens* norms, "can never be the basis of a rule of decision capable of triggering the … doctrine." *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 61–62 (2d Cir. 2019).

Following the Second Circuit's decision, the case changed dramatically. On March 3, 2020, Judge Nathan determined that Swiss law would govern this case, because Switzerland had "the greatest interest in this litigation." ECF No 151 at 19 (Op. and Order on Choice of Law). BNPP then moved to dismiss for *forum non conveniens*, in favor of Switzerland. ECF No. 262. This Court denied BNPP's motion, concluding that BNPP had failed to show that Switzerland was an available and preferable alternative forum. ECF No. 338.

BNPP subsequently filed a motion for summary judgment, which this Court denied on April 18, 2024, stating that there remained "material issues of fact to be tried." *Kashef v. BNP Paribas SA*, 2024 WL 1676355, at *3 (S.D.N.Y. Apr. 18, 2024). In so doing, the Court adopted Judge Nathan's holding that Swiss law would govern the question of liability. *Id.* at *1. The Court also adopted Judge Nathan's determination that Article 50(1) of the Swiss Code of Obligations was an independent source of accomplice liability, as well as her articulation of its elements, namely that "(1) a main perpetrator committed an illicit act, (2) the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to an illicit act, and (3) their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." *Id.* at *2. On May 9, this Court certified the class, defining it as "[a]ll refugees or asylees admitted by the United States who formerly lived in Sudan or South Sudan between November 1997 and December 2011." ECF No. 505 at 1.

Earlier this year, the Court determined it would hold a trial limited to the claims of only three Plaintiffs: Entesar Osman Kashef, Abulgasim Abdalla, and Turjuman Ramadan Turjuman. ECF Nos. 614 (Order on Trial Structure), 644 (Order on Plaintiff Selection), 675 (Order Selecting Three Plaintiffs). The purpose of this trial, which the Court characterized as a "bellwether" trial,

*e.g.*, Sept. 3, 2025 Pretrial Conf. Tr. at 5:24, was to clarify issues relating to potential liability and damages.  Jan. 13, 2025 Hr'g Tr. at 22:10–14.

After the Hausfeld and Zuckerman Spaeder firms accused Ms. Boyd and the Hecht firm of unethical misconduct, stating that they found it "impossible … to restrain Ms. Boyd or work with her collaboratively in preparation for trial," ECF No. 784-2 at 12, this Court severed the three Plaintiffs from the class, ECF No. 791 at 2.  The Court then un-severed them on the eve of trial, ECF No. 944 at 1, after Plaintiffs' counsel declared their willingness to work together again, ECF No. 939 at 1.

In any event, the Court emphasized throughout that the claims and issues to be tried in this trial were those of the three Plaintiffs *only*, not those of the class.  *See, e.g.*, Jan. 13, 2025 Hr'g Tr. at 22:10–14 ("We have a specific number of plaintiffs that will be tried.  Their damages are on trial. How that is extrapolated afterwards is a concern of the parties, but I am focused on whoever it is, three or five, their cases."); Apr. 9, 2025 Hr'g Tr. at 22:24–23:2 ("[W]e don't really know what the class issues are, cannot define them.  We are not going to reach them in the first trial, the first three cases."); May 20, 2025 Hr'g Tr. at 5:15–18 ("This is not a class action trial; this is a trial of three individuals.  And I'm going to determine, with the jury, the rights of these three individuals."); Sept. 3, 2025 Pretrial Conf. Tr. at 77:22–78:04 ("[W]e are trying an individual case.  It's a bellwether case.…  The fact of the matter is there are three individuals who are going to have their case tried without reference to a class.").

Trial opened with *voir dire* on September 9, 2025.  Trial closed over a month later, with a jury verdict finding BNPP liable to the three Plaintiffs under Article 50 of the Swiss Code of Obligations for the injuries they suffered at the hands of the Government of Sudan.  ECF No. 1004.

The jury awarded damages of $7.3 million to Ms. Kashef, $6.7 million to Mr. Abdalla, and $6.75 million to Mr. Turjuman. *Id.*

Both before and after trial, the Court has indicated that it intends to hold additional trials of individual Plaintiffs and scheduled a conference for January 2026 to discuss the plan for doing so. *See* Apr. 9, 2025 Hr'g Tr. at 17:9–16, 18:13–21 (stating that "[i]n time the cases will be tried," and "if there is going to be a trial there will be another trial"); Oct. 17 Trial Tr. 1670:25–1671:2 (Verdict) ("Now, there are any number of other cases that are coming up. We have to get together and decide how we will proceed with those cases.").

## LEGAL STANDARD

A court may enter final judgment under Rule 54(b) where: (1) there are multiple claims or parties; (2) "at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291"; and (3) there is "no just reason for delay." *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992) (quoting Fed. R. Civ. P. 54(b)); *accord Linde v. Arab Bank PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (same). "[I]n deciding whether there is no just reason for delay, 'a district court must take into account judicial administrative interests as well as the equities involved.'" *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 352 (S.D.N.Y. 2013) (quoting *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011)). But "[t]here are no fixed criteria for invoking this rule." *Mitchell v. Lyons Pro. Servs., Inc.*, 727 F. Supp. 2d 116, 119 (E.D.N.Y. 2010). Rather, the inquiry is ultimately about what "will make possible a more expeditious and just result for all parties." *Ginett*, 962 F.2d at 1092. In conducting this inquiry, courts have recognized that bellwether trials are the types of proceedings where entry of judgment under Rule 54(b) is particularly appropriate. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,

2010 WL 1328249, at *4 (S.D.N.Y. Apr. 5, 2010) ("[T]he role of this trial as a bellwether for an entire MDL makes this the type of 'exceptional' case where entry of final judgment pursuant to Rule 54(b) is appropriate."); *Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 240 (N.D.N.Y. 2002) (stating that it was "hard to imagine a case where the interests of judicial administration and efficiency would be better served" than the certification of a bellwether judgment in a case with thousands of plaintiffs); *In re Depakote*, 2017 WL 11438790, at *2 (S.D. Ill. June 13, 2017) (emphasizing that certification of the bellwether judgment under Rule 54(b) could obviate the need for over 617 individual trials).

To certify a judgment under Rule 54(b), the Court must "make an express determination 'that there is no just reason for delay.'" *Novick*, 642 F.3d at 310 (quoting Fed. R. Civ. P. 54(b)). This express determination must include a "reasoned, even if brief, explanation of its considerations" because "it is essential that a reviewing court have some basis for distinguishing between well-reasoned conclusions … and mere boiler-plate approval." *Id.* (cleaned up); *accord Cullen v. Margiotta*, 811 F.2d 698, 711–712 (2d Cir. 1987), o*verruled on other grounds by, Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987)*.*

## ARGUMENT

### I.    The Court Entered Final Judgment as to the Claims of the Three Individual Plaintiffs.

The threshold inquiry under Rule 54(b) is whether this Court has entered a final judgment as to fewer than all claims or parties to this litigation.  The Court's entry of judgment in the Order satisfies this standard.  *First*, the case involves multiple parties:  The Court entered judgment as to only three of 19 named Plaintiffs.  *Second*, the three Plaintiffs' claims are "'finally decided' within the meaning of § 1291." *Ginett*, 962 F.2d at 1092 (cleaned up); *accord id.* ("If the decision 'ends the litigation of that claim on the merits and leaves nothing for the court to do but execute the

judgment' on that claim then the decision is final." (alterations omitted) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978))). The Order entered judgment on the jury's verdict on both liability and damages, as to all three Plaintiffs—if BNPP's post-trial motions are denied, there is nothing more to decide with respect to the claims of the three Plaintiffs. Therefore, the threshold requirements of certification under Rule 54(b) are satisfied.

## II. There Is No Just Reason for the Court to Delay in Directing Final Judgment as to the Claims of the Three Individual Plaintiffs.

Additional trials will not disturb the legal rulings this Court made in the bellwether proceedings, which are as ripe for appeal now as they will ever be. Additional trials will only add years of costly litigation, the outcome of which may ultimately be overturned on appeal. Meanwhile, the three Plaintiffs may not seek any of the damages awarded by the jury until this Court has certified the judgment. *See L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998); *Mitchell*, 727 F. Supp. 2d at 120; *Cabrera v. Islamic Republic of Iran*, 2022 WL 21769425, at *1 (D.D.C. July 19, 2022). For these reasons and others discussed below, courts have overwhelmingly concluded that Rule 54(b) certification of bellwether judgments promotes both judicial efficiency and equity. *See MTBE Prods. Liab. Litig.*, 2010 WL 1328249, at *4; *Cayuga*, 188 F. Supp. 2d at 240–41; *Adams v. United States*, 2010 WL 1994191, at *1–2 (D. Idaho May 12, 2010); *Cabrera*, 2022 WL 21769425, at *1; *Mod. Holdings, LLC v. Corning, Inc.*, 2023 WL 12007022, at *2 (E.D. Ky. Aug. 14, 2023); *Bayshore Ford Truck Sales Inc. v. Ford Motor Co.*, 607 Fed. App'x 203, 205 (3d Cir. 2015); *Bay v. Anadarko E&P Onshore LLC*, 912 F.3d 1249, at 1255 (10th Cir. 2018); *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1296 n.4 (11th Cir. 2022); *cf. Cullen*, 811 F.2d at 712; *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 2017 WL 2672767, at *1–2, *11 (N.D. Ind. June 19, 2017).

7

### A.    An Immediate Appeal Will Clarify the Governing Principles of Swiss Law.

Certification under Rule 54(b) is necessary to ensure that the bellwether trial serves its intended function: clarifying the applicable law and otherwise advancing the baseline for the broader litigation.  "The purpose of adopting a bellwether approach is to assess the values of the claims at issue, develop a relevant body of law, and in doing so to provide guidance to parties pursuing settlement."  *MTBE Prods. Liab. Litig.*, 2010 WL 1328249, at *4.  "Obtaining appellate decisions as to the issues that have arisen in preparation for and during … trial is essential to achieving this intended purpose."  *Id.*; *accord In re Depakote*, 2017 WL 11438790, at *2 (characterizing appellate review of key "issues that have arisen in preparation for and during the trial" as "necessary to advance … mass action litigation" comprised of 617 cases); *Adams*, 2010 WL 1994191, at *2 (stating that an "appeal would resolve issues of critical importance to the remaining 110 plaintiffs"); *Corning*, 2023 WL 12007022, at *2 (certifying the judgment under Rule 54(b) "because certification will simplify the remaining issues and ultimately encourage the resolution of the matter").

Here, the Court developed a body of law through trial proceedings on several critical, contested legal questions, including the standard of proof, *Kashef v. BNP Paribas SA*, 2025 WL 2941595 (S.D.N.Y. Sept. 8, 2025), whether Article 50 is an independent basis of liability, *Kashef*, 2024 WL 1676355, at *1–4, whether the Government of Sudan could be held liable as a primary tortfeasor under Swiss law, Oct. 1 Trial Tr. 1074:11–1075:6, 1112:15–1113:18 (Rule 50 Mot. Hr'g), and how Plaintiffs may show causation under Swiss law, Sept. 3, 2025 Pretrial Conf. Tr. at 71:22–73:2.  At trial, the Court relied on these and related rulings in instructing the jury and in denying BNPP's Rule 50 motions.  *See* Oct. 10 Trial Tr. 1502:6–9 (Charge Conf.).  As a result, several questions central to the broader litigation are ripe for appeal.  Even if, in a second or third

bellwether trial, the jury finds BNPP not liable or the Court changes its rulings, these developments will not impact the finality or appealability of the judgment. There is no basis in equity to wait for additional bellwether trials to resolve these questions on appeal.

      **B.    An Immediate Appeal Will Preserve the Resources of this Court and the Parties.**

Certifying the Order for appeal preserves the resources of this Court and the parties because it eliminates the need for additional proceedings should BNPP prevail on appeal on one or more of the central legal questions. This Court has indicated that it will continue trying individual cases, which would take years to conclude. Meanwhile, legal questions that could obviate the need for *any* additional trials have been squarely presented in the first trial and are ripe for appeal *now*. Where the alternative to immediate appeal would be "countless trials involving 1000s upon 1000s of" plaintiffs, it is "hard to imagine a case where the interests of judicial administration and efficiency would be better served by entry of a final judgment in accordance with [Rule] 54(b)." *Cayuga*, 188 F. Supp. 2d at 240; *see also In re Depakote*, 2017 WL 11438790, at *2 (certifying under Rule 54(b) in recognition that, where the initial trial took "over two weeks," "[p]reparing and trying the remaining six hundred and seventeen cases on this Court's docket will likely take many more years").

Expending resources on additional trials is unnecessary, as numerous courts have recognized. If BNPP prevails on appeal, "this [C]ourt may only have to retry the case between [the three individual Plaintiffs and BNPP], as opposed to retrial of all the cases should appeal await the end of those trials." *Loral Fairchild Corp. v. Victor Co. of Japan*, 931 F. Supp. 1044, 1048 (E.D.N.Y. 1996). "Thus, immediate appeal serves to save both valuable time and judicial resources as well as expense." *Id.*; *accord MTBE Prods. Liab. Litig.*, 2010 WL 1328249, at *5 ("Rulings …

on appeal … could obviate the need for further lengthy trials.  Without [appellate] review this Court could spend several more years trying the issues … only for the Circuit to later determine that the [plaintiff's] claims are barred.  This would be a significant waste of judicial resources."); *In re Asia Pulp & Paper Secs. Litig.*, 293 F. Supp. 2d 391, 397 (S.D.N.Y. 2003) ("[C]ostly and duplicative proceedings can be avoided by a Court of Appeals ruling on [one] issue prior to the completion of discovery and the trial with respect to the remaining defendants….  It follows that a Rule 54(b) certification will bring about a more expeditious and just result for both the parties and the Court." (citing *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir. 1974))).

The same reasoning supports certifying the Order here.  BNPP has argued that there can be no liability under Article 50 unless BNPP and the Government of Sudan have both been found liable under Article 41 in the first instance.  *E.g.*, ECF No, 998 (Mem. of Law in Supp. of BNPP's Rule 50(a) Mot.) at 10–12.  BNPP has further argued that it cannot be held secondarily liable under Article 50 unless there is an actionable claim against the Government of Sudan as a primary tortfeasor under Article 41.  *E.g.*, *id.*  There is no such actionable claim for two reasons: first, because Swiss tort law does not apply extraterritorially to conduct without any connection to Switzerland; and second, because Swiss tort law does not apply to the conduct of a foreign sovereign state, like the Government of Sudan.  *See, e.g.*, *id.* at 16–24.  BNPP has also vigorously objected, orally and in written submissions, to the Court's charging instructions on all three elements of Article 50(1) and on the applicable Swiss law burden of proof.  *See generally, e.g.*, *id.*; Oct. 10 Trial Tr. (Charge Conf.).  An appellate decision in BNPP's favor on even *one* of these points would require reversal, not just of the bellwether trial itself, but of any trial governed by the same rulings.  Immediate appeal will safeguard judicial economy and protect the parties from

undue hardship by ensuring that any future trials benefit, at the outset, from the guidance of the Court of Appeals.

### C.     An Immediate Appeal Will Preserve the Resources of the Court of Appeals.

The resources of the Court of Appeals will likewise be preserved by certifying the Order for immediate appeal.  Certification ensures that the Court of Appeals will be well positioned to settle all squarely presented legal questions upon reviewing a single record (that is, the record of this case's first bellwether trial).  Waiting until additional bellwether trials have been litigated will require review of multiple records and would complicate the issues decided in separate trials in the absence of Circuit precedent.

Furthermore, any contention that developments at the district court level might moot an appellate judgment, or that the risk of piecemeal appeals justifies further delay, is misplaced.  First, the litigation with respect to the three Plaintiffs has concluded; as described above, the verdict, incorporating findings on liability and damages, is a final decision pending resolution of the post-trial motions.  *See Corning*, 2023 WL 12007022, at *2 ("[T]he need for review will not be mooted in the future because the claims reached a verdict and the Court denied the Plaintiffs' motion for a new trial.").  The three Plaintiffs' claims are, furthermore, clearly separable from the claims of the other Plaintiffs: they relate to distinct injuries, suffered at distinct times and under distinct circumstances.  *See Cullen*, 811 F.2d at 711 ("Claims are normally regarded as separable if they involve at least some different questions of fact and law and could be separately enforced, … even if they have arisen out of the same transaction or occurrence.").  There is therefore no possibility that future proceedings could moot the appeal of the verdict that the jury returned with respect to the three Plaintiffs.

Second, the potential costs of piecemeal appeal in the present case are low, compared to the benefits of immediate appeal. Piecemeal appeal is ordinarily disfavored because it imposes unnecessary costs on the appellate court, such as by requiring different appellate panels to familiarize themselves with the facts of the same case. *See MTBE Prods. Liab. Litig.*, 2010 WL 1328249, at *5. Nonetheless, the possibility of piecemeal appeal, which exists in any case involving multiple claims or parties, should not prevent certification of an otherwise warranted final judgment. *See id.* (certifying a bellwether judgment under Rule 54(b) despite the "degree of inefficiency in permitting a piecemeal appeal"); *Ginett*, 962 F.2d at 1095–96 (stating that the "interrelatedness" of claims that might produce piecemeal appeals should not "in itself … preclude appellate review; otherwise, every multiparty case (and virtually every multiclaim case) would elude the entry of a rule 54(b) judgment, and rule 54(b) would be meaningless"); *cf. In re Depakote*, 2017 WL 11438790, at *2 ("While the Court previously found certain cases sufficiently similar to warrant joint trials, entering judgment on an individual Plaintiff's claim would not trigger the type of 'piecemeal appeal' the Supreme Court cautioned against…."). Rather, where the possibility of piecemeal appeal is inevitable, and the case is "unusual[ly] large and complex," any "potential for inefficiency at the appellate level is heavily outweighed by harm that would be caused by preventing the parties in this [bellwether trial] from receiving appellate review until the remaining state and federal claims are either tried or settled." *MTBE Prods. Liab. Litig.*, 2010 WL 1328249, at *5.

### D.    The Balance of the Equities Supports an Immediate Appeal.

The balance of the equities weighs overwhelmingly in favor of certifying the judgment now. Until the judgment is certified, the three Plaintiffs may not seek any of the damages awarded by the jury. *See supra* § II (discussing *L.B. Foster Co.*, 138 F.3d at 87; *Mitchell*,

727 F. Supp. 2d at 120; *Cabrera*, 2022 WL 21769425, at *1).  Determining whether they are, in fact, entitled to those damages and, if so, allowing the three Plaintiffs to collect them in a timely matter favors immediate certification of the judgment.  *See id.*

As to BNPP, without prompt certification, it will suffer the hardship of litigating bellwether trial after bellwether trial under an interpretation of Swiss law that it believes is both fundamentally flawed and highly prejudicial.  Litigating one highly complex, costly bellwether trial after another, indefinitely, without the prospect of appellate guidance or review, would serve no practical purpose.  *Cf. Cayuga*, 188 F. Supp. 2d at 240; *In re Depakote*, 2017 WL 11438790, at *2.  Furthermore, the three Plaintiffs have moved for an award of interest on the judgment, ECF No. 1012, which, if granted (and BNPP contends that it should not be), would represent a meaningful hardship to BNPP and weigh in favor of certifying the judgment for appeal now.  *See Cayuga*, 188 F. Supp. 2d at 240 (identifying the "considerable amount of prejudgment interest" as "further justification for an immediate appeal" (citing *Hudson River Sloop Clearwater v. Dep't of Navy*, 891 F.2d 414, 419 (2d Cir. 1989))).

Moreover, the equities favoring appeal are not limited to the parties.  This Court's legal rulings relating to, for example, the extraterritorial reach of foreign tort law or its applicability to state sovereigns, have implications for the liability to which foreign nations, as well as foreign and domestic corporations, may be exposed in United States courts.  Accordingly, an appeal is warranted to decide these important issues now, rather than waiting years for final resolution of this case.  *See id.* (identifying the "substantial public import of the issues which the … litigation raises" as "further justification for an immediate appeal" (citing *Hudson River Sloop*, 891 F.2d at 419 )).  As the Swiss Government has explained, the Court's rulings raise significant questions about international comity and reciprocity.  ECF No. 937.  The views of the Swiss

Government leave no doubt that these issues are of such public importance that certification for decisive resolution on appeal is warranted.

## CONCLUSION

For the foregoing reasons, if the Court denies BNPP's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for a New Trial or to Amend the Judgment, then the Court should direct entry of final judgment under Rule 54(b) as to the October 22, 2025 Order. Pursuant to the Court's October 6 order granting judgment as a matter of law in favor of BNP Paribas US Wholesale Holdings, Corp., ECF No. 991, the Court should also enter final judgment as to that party.

Respectfully submitted,

Dated: New York, New York
      November 14, 2025

*/s/ Barry H. Berke*
Barry H. Berke
Dani R. James
Michael Martinez
Matt Benjamin
David P. Salant

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
bberke@gibsondunn.com
djames@gibsondunn.com
mmartinez2@gibsondunn.com
mbenjamin@gibsondunn.com
dsalant@gibsondunn.com

*/s/ Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Abena Mainoo

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: (212) 225-2000
cboccuzzi@cgsh.com
amainoo@cgsh.com

*Counsel for Defendant BNP Paribas S.A.*

15