UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF, et al., | |
| *Plaintiffs*, | |
| -against - | No. 1:16-cv-03228-AKH-JW |
| BNP PARIBAS S.A., | Hon. Alvin K. Hellerstein |
| *Defendant*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
PREJUDGMENT INTEREST AND CORRECTION OF CLERICAL ERROR**

**INTRODUCTION**

BNPP's belated choice-of-law arguments and vague allusions to "present-day value" do not undercut Plaintiffs' legal right under Swiss law to mandatory prejudgment interest.

Swiss law governs this case. BNPP has long since waived any argument against its application by failing to object until after trial, despite Plaintiffs' repeated assertion since 2021 of their entitlement to prejudgment interest under Swiss law. BNPP even agrees that Swiss law provides prejudgment interest but protests its application here. It advocates instead for Sudanese law—the law of the country whose life-altering harm effectively expelled the Plaintiffs and the other Class members and left them for dead. Regardless, controlling Second Circuit precedent makes clear that where the defendant consents to the application of jurisdiction's law on liability, that same law also governs prejudgment interest.

Under Swiss law, prejudgment interest is not a "windfall" or "double recovery." Opp. at 1. Nor is prejudgment interest a question for the jury; it is a mandatory and automatic statutory add-on that is calculated from the time of injury to compensate for the loss of use of the capital withheld between the date of the injury and date of the judgment. It is well-established that "where there is an entitlement to prejudgment interest as a matter of law"—as there is under Swiss law—"its award may properly be determined by the court *even after a jury verdict* on damages." *Foresco Co. v. Oh*, 337 F. Supp. 3d 304, 306 (S.D.N.Y. 2018) (*quoting Thomas v. City of Mount Vernon*, 1992 WL 84560, at *2 (S.D.N.Y. Apr. 10, 1992) (emphasis added)). The result is the same even if the Court entertains prejudgment interest choice of law rules anew.

Finally, cherry-picked references of "present-day value" from Plaintiffs' testimony do not undermine Plaintiffs' legal right under Swiss law to obligatory prejudgment interest. The jury was not instructed to include prejudgment interest for loss of use in its award—nor was such an

1

instruction required. Any compensation for lost property was based on subjective valuation, not present market value or replacement costs, reinforced by the fact that the court specifically omitted from the jury charge statements previously considered concerning present replacement cost damages. The trial record overwhelmingly reflects losses occurring not at the time of verdict but *at the time of Plaintiffs' injuries*—i.e., at the moment their homes were burned; when they were beaten, tortured, and raped; and their contemporaneous feeling of deep personal loss at the moment they were forced from Sudan—and supports now applying prejudgment interest to the judgment amount to make them whole.[1]

Denying prejudgment interest results in a reverse windfall; the benefit instead flows directly to BNPP, a bank complicit in atrocity crimes, because it will be excused from having to pay for its attenuation of the Plaintiffs' judgment from the date of their injuries. Accordingly, Plaintiffs' motion should be granted.

## **ARGUMENT**

Plaintiffs are entitled to recover prejudgment interest under Swiss law as a matter of right in this case.

### I.     **Swiss Law Governs Prejudgment Interest**

Swiss law governs application of prejudgment interest. BNPP waived any objections it may have to the application of Swiss prejudgment interest law by failing to previously raise the laws of other jurisdictions. *See Caruolo v. John Crane, Inc.*, 226 F.3d 46, 59 (2d. Cir. 2000) (the law of the jurisdiction that determines liability applied to the question of prejudgment interest where defendants "waive[d]" by failing to bring to the attention of the court, potential applicability

---

[1] BNPP concedes, by failing to oppose, that Plaintiffs are entitled to post-judgment interest under 28 U.S.C. §1961(a), at a compounding annual rate of 3.54%, and further does not object to the correction of the typographical error in Ms. Kashef's judgment amount.

2

of another jurisdiction's law) (analyzing *Schwimmer v. Allstate Insurance Co.*, 176 F.3d 648 (2d Cir. 1999)).

BNPP has been on notice since the Complaint was filed that Plaintiffs seek prejudgment interest. *See* Compl. dated Apr. 29, 2016, at 51, ECF No. 1 (demanding pre-judgment and post-judgment interest in prayer for relief). It has known since 2021 that the prejudgment interest sought was pursuant to Swiss law. *See* Plfs' Initial Discl. dated May 10, 2021, ECF No. 528-140 (including in computations of damages, pre-judgment interest under Article 73 of the Swiss Code of Obligations); Decl. of Franz Werro dated Mar. 2, 2023 ("Werro Decl.") at ¶ 184, ECF No. 923-3 (describing Plaintiffs' entitlement to prejudgment interest as part of the economic harm recoverable from a defendant under Swiss law); Pls' Mtn for Order Reg. Evid. Burdens and Making Findings on Swiss Law ("Plaintiffs' Motion for Order on Evidentiary Burdens") dated May 22, 2025 at 36, ECF No. 709 (describing entitlement to prejudgment interest under Swiss law). The totality of BNPP's response up to now has been not to object that Swiss law applies to prejudgment interest, but only to respond that "the Court especially need not reach issues relating to prejudgment interest . . . ." ECF No. 740 at 21 n.11. BNPP's objection to Swiss law is too late.

However, even if BNPP's delay is not waiver, under New York choice-of-law principles "the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (quoting *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131 (2d Cir. 1984)). Swiss law, not Sudanese law, would apply. While the New York Court of Appeals has held that prejudgment interest in tort cases is typically loss-allocating, *see Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679 (N.Y. 1985), the Second Circuit holds that *Entron* (and Second Circuit law relying on *Entron*) is not to the contrary because it applies "where the defendant had 'consented to the application of

[that jurisdiction's] law to the determination of liability.'". *Granite Ridge Energy, LLC v. Allianz Glob. Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 393 (S.D.N.Y. 2013) (quoting *Caruolo*, 226 F.3d at 59 (2d Cir. 2000)).

Here, BNPP's advocacy for and assent to application of Swiss liability law is *consent*, and, under Second Circuit precedent, Swiss law should equally apply to prejudgment interest. *See* Op'n & Order dated Mar. 3, 2020 at 1, ECF No. 151 ("The Court concludes that Switzerland has the greatest interest in this litigation and Swiss law therefore governs Plaintiffs' claims."). BNPP has even specifically consented to the application of Switzerland's loss-allocating rules such as joint and several liability in asserting that Article 50(1) of the Swiss Code of Obligations applies to this case and establishes joint and several liability. *See, e.g.*, Mem. ISO BNPP's Rule 50(a) Motion dated Oct. 15, 2025 at 15, ECF No. 998.

In any event, even under New York's loss-allocation choice of law framework, application of the third *Neumeier* rule, "where the parties reside in different jurisdictions and the allegedly tortious conduct occurs in a third jurisdiction," and which directs "a court to apply the law of the jurisdiction where the injury occurred unless it can 'be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants,'" yields Swiss law. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) (quoting *Neumeier v. Kuehner*, 286 N.E.2d 454, 458 (N.Y. 1972)) (emphasis added).

This case unequivocally calls for displacement of the law of the jurisdiction of the injury. BNPP callously urges application of Sudanese law—the law of the country that targeted and effectively expelled Plaintiffs and the Class by destroying their homes, killing their families and torturing them within inches of life. Sudan clearly has no interest in the resolution of whether

4

Plaintiffs are entitled to prejudgment interest for their losses.[2] *See e.g.*, *Gilbert*, 332 F.3d at 109-10 (citing *Schultz*, 65 N.Y.2d at 201) ("[T]he New York Court of Appeals has made it reasonably clear that the state in which the injury occurs has little interest in seeing its own loss allocation rules applied."). Nor does New York, a state where BNPP is legally domiciled but not headquartered and where none of the Plaintiffs (and a small percentage of Class members) live. Thus, Switzerland's prejudgment interest law should apply.

## II.     Swiss Law Prejudgment Interest Is Mandatory And Automatic

BNPP concedes that Swiss law applies prejudgment interest, Opp. at 3, but then manufactures the conclusion that interest does not apply in *this* case because it would amount to a "windfall" and Plaintiffs are "presumed" to have been made whole. Opp. at 1. But no such presumption exists. Under Swiss law, prejudgment interest is mandatory, automatic, and not punitive: "interest on damages running from the injurious event (moral damages interest) *must* be awarded as moral damages for the withheld use of the capital between the date of the injury and date of the judgment." *Gunshot Case*, Swiss Sup. Ct. 132 II 117 at § 3.3.2, p. 126 (2006), ECF No. 708-21 (emphasis added).[3]

BNPP balks at the amount of prejudgment interest as a "windfall." But it is BNPP and not Plaintiffs who have delayed the case. The Bank hid its crimes for years, refused to provide any

---

[2] Moreover, BNPP's reliance on a bare provision of a Sudanese Code of Civil Procedure attached to an attorney declaration is an inadequate mode of raising a Fed. R. Civ. P. 44.1 matter of foreign law. *See* ECF No. 1027, Exhibit A. "Where research provided by counsel is deemed inadequate, a court can demand a more 'complete presentation by counsel.'" *In re: Lyondell Chem. Co.,* 543 B.R. 428, 443 (Bankr. S.D.N.Y. 2016); *Universe Sales Co., Ltd., v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999) ("[E]xpert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law.").

[3] U.S. law endorses the same time-value of money rationale for application of prejudgment interest and recognizes that failure to add the interest provides defendant, not plaintiffs a windfall. *See, e.g.*, *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54 (2d Cir. 2009) ("[A]n award of prejudgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing.").

5

compensation to its many victims, and then needlessly prolonged this litigation. As this Court has stated: "[t]his case has been ongoing for six years now, with Defendants making every effort to avoid actually litigating and resolving the dispute." Op'n Denying Forum Non Conveniens dated May 3, 2022 at 9, ECF No. 338. That was three years ago. There is a price to delaying justice. Fairness dictates that the liable party—who held out for so long—must pay it.

Under Swiss law, the specificity of the evaluation of moral harm lies in the fact that, at the time of the injury, the victim suffers their pain regardless of the moment of its evaluation. The Plaintiffs as victims should suffer no disadvantage from the fact that the evaluation takes place (long) after the injury occurred. The prejudgment interest should "place the claimant in the same position as if he had been satisfied for his claim on the day of the tort or for its economic effects upon its occurrence." Werro Decl. ¶ 184 (quoting Swiss Sup. Ct. 131 III 12 at § 9.1, p. 22).

BNPP's Swiss law cases do not counsel against application of prejudgment interest here. In *ATF*, 78 I 86, p. 90, *see* ECF No. 1027-6, the Court lowered the rate of prejudgment interest from the default rate because the case had been brought by the Swiss Confederation and did not involve private law. Furthermore, in *ATF*, 143 II 37, p.52, *see* ECF No. 1027-5, the absence of a legal basis for the interest differed from the mandatory context here under tort law.

Swiss law's post-verdict application of prejudgment interest aligns with U.S. jurisdictions with statutory (*i.e.*, mandatory) interest frameworks as well as the *Restatement*. *See, e.g.*, *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250 (D. Colo. 1999) (in defamation action under Colorado law, judge held, "it is my duty to apply this statutory prejudgment interest . . . . '[w]hen such interest is so claimed, it is the duty of the court in entering judgment . . . to add to the amount of damages assessed by the verdict of the jury.'") (quoting C.R.S. § 13–21–101(1)); *Adkins v. Sogliuzzo*, 820 Fed. App'x 146, 150-51 (3d Cir. 2020) (no error in awarding prejudgment interest

pursuant to New Jersey Court Rule 4:42-11(b) which provides "the court shall, in tort actions . . . include in the judgment simple interest, from the date of the institution of the action or from a date 6 months after the date the cause of action arises . . ." because it advances goals, including "to compensate plaintiff for the loss of income that would have been earned on the judgement had it been paid earlier" and "to encourage settlement"); *see also* Restatement (Third) of Torts: Remedies (A.L.I. Tentative Draft No. 2 (Apr. 2023)), § 14(a) ("[A] plaintiff who establishes a defendant's liability in tort is entitled to prejudgment interest at a reasonable market rate, on the damages found by the factfinder, from the date or dates that damage was incurred (or a reasonable approximation thereof) to the date of the judgment).

BNPP's own U.S.-law cases provide little help. They are either inapposite, because they are from jurisdictions where prejudgment interest is not obligatory, or actually support application of prejudgment interest. Unlike here, in *Gillam v. Allen*, 62 F.4th 829, 850 (4th Cir. 2023), the plaintiff did not request prejudgment interest in the complaint. In *Moore-McCormack Lines v. Richardson*, 295 F.2d 583, 595 (2d Cir. 1961), prejudgment interest was ordered, albeit at a rate lower than requested.

Thus, mandatory prejudgment interest is not "impermissible double recovery," Opp. at 3; it is Plaintiffs' right and is essential for making Plaintiffs whole under Swiss law.

### III. The Jury Did Not Account For Present Value of Damages

The jury was not instructed to apply prejudgment interest, and its damages award should not be interpreted *post hoc* to have included such interest. The *Restatement (Third) of Torts: Remedies* makes clear that "[i]t is probably more accurate to take juries at their word, and to assume that they are not awarding interest unless they have been instructed to do so." *Id.* (A.L.I. Tentative Draft No. 2 (Apr. 2023)), § 14, Reporter's Comments (e).

7

That presumption is overcome only if the jury is specifically instructed to take into account the passage of time between the date of injury and the date of the verdict when assessing the damages. In *E.J. Brooks Co. v. Cambridge Sec. Seals*, cited by BNPP, the jury was explicitly instructed that "[d]amages are assessed from the date of the misappropriation and/or unfair use through the date on which the verdict is given." 858 F.3d 744, 748 (2d Cir. 2017). By contrast, the jury's award here followed neutral instructions regarding the timing of damages calculation. As to whether "there [is] an established formula for calculating an amount for compensatory damages and pain and suffering," the court clarified, "[t]he short answer, members of the jury, is that there is no formula." Trial Tr. at 1659:13-17.

Any award that the jury might have given for lost or destroyed property was not based on present value replacement costs. Tellingly, specific language in the court's *draft* jury charge regarding pecuniary damages for lost or destroyed property, that "damages are equal to the replacement cost, assessed as of the date of judgment"—was *never read by the court to the jury*. Declaration of Kathryn Lee Boyd in Support of Reply, Exhibit A at 11. There is no basis to conclude that the jury accounted for present value.

Moreover, the jury did not adjust any pain and suffering awards to account for present value because they received no evidence on present value. There is no "present value" for atrocities. The overwhelming majority of Plaintiffs' testimony corresponded to their pecuniary, personal, and family harm *on the dates of the injuries in Sudan*. Ms. Kashef testified to pain and suffering experienced on the dates of the injuries, such as "being bombed from above," which "was hell" and felt like it "was [the] end of the world at that time." Trial Tr. at 967:4-10. When she was being tortured in Khartoum, she described how Government police officers "put[] out

8

cigarettes on [her] body," how they "tie[d her] by the legs and hoist[ed her] upside down," as well as the horror of being gang-raped multiple times a day. *Id.* at 993:12-17, 992:1-3.

Mr. Turjuman similarly testified that he was detained by Government military intelligence and was "beaten" with whips, "tortur[ed]", treated "like an animal." Trial Tr. at 664:10-12, 669:2-8. At the moment he was forced to leave Sudan he was "crying" and "felt like [he was] le[aving his] life behind;" and "everything was taken." *Id.* at 695:2-7.

Mr. Abdalla witnessed Government Antonovs dropping bombs and "breaking the houses and trees." Trial Tr. at 921:18-25. He was beaten so "mercilessly" "with a butt end of the rifle," and whips by unnumerable Janjaweed, while being cussed at and told "you are a slave," to the point he lost consciousness. *Id.* at 931:1-19. When he was forced to leave Sudan, he reflected that "[a]ll I had was ruined." *Id.* at 943:15-21.

These inherently subjective non-economic damages cannot be discounted to present value and BNPP cites no authority to the contrary. Under Swiss law, each of the Plaintiffs were entitled to their money judgment on the date of their last injury—more than 20 years ago. *See* Werro Decl. ¶ 184 (describing that the interest should put claimant "in the same position as if he had been satisfied for his claim on the day of the tort or for its economic effects upon its occurrence."). U.S. law instructs the same. *See Snyder v. Town Insulation, Inc.*, 615 N.E.2d 999, 1000 (N.Y. 1993) ("[P]laintiffs' [tort] causes of action accrued on the date they were first injured").

BNPP's curation of a few quotations reflecting Plaintiffs' present symptoms from injuries, and estimations of value of select property, Opp. at 5-6, fails to support its illogical leap that the jury's award already reflects the "present-day value" of their injuries. *Id.* Thus, not only would awarding prejudgment interest not be impermissibly duplicative here, but to preclude Plaintiffs

9

from their prejudgment interest entitlement would be to affirmatively diminish the value of the jury's award, as well as contravene both U.S. and Swiss law.

## CONCLUSION

Accordingly, the Court should grant Plaintiffs' motion and order prejudgment and post judgment interest, in the amounts stated in the motion, ECF No. 1012 at 3-4, and correct the typographical error in the judgment amount for Ms. Kashef.

Dated: November 17, 2025

| | |
|---|---|
| */s/ Kathryn Lee Boyd* | */s/ Michael D. Hausfeld* |
| Kathryn Lee Boyd | Michael D. Hausfeld |
| David L. Hecht | Scott A. Gilmore |
| Maxim Price | Amanda E. Lee-DasGupta |
| Michael Eggenberger | Claire A. Rosset |
| HECHT PARTNERS LLP | Mary S. Van Houten Harper |
| 125 Park Avenue, 25th Floor | Percy Metcalfe |
| New York, NY 10017 | HAUSFELD LLP |
| (646) 502-9515 | 1200 17th Street, Suite 600 |
| lboyd@hechtpartners.com | Washington, DC 20036 |
| dhecht@hechtpartners.com | (202) 540-7200 |
| mprice@hechtpartners.com | mhausfeld@hausfeld.com |
| meggenberger@hechtpartners.com | sgilmore@hausfeld.com |
| | alee@hausfeld.com |
| Kristen Nelson | crosset@hausfeld.com |
| HECHT PARTNERS LLP | mvanhouten@hausfeld.com |
| 2121 Avenue of the Stars | pmetcalfe@hausfeld.com |
| Los Angeles, CA 90067 | |
| (646) 490-2408 | James D. Gotz |
| knelson@hechtpartners.com | HAUSFELD LLP |
| | One Marina Park Dr., Suite 1410 |
| | Boston, MA 02210 |
| *Co-Counsel for Plaintiffs* | (617) 207-0660 |
| | jgotz@hausfeld.com |
| | |
| | Cyril V. Smith |
| | ZUCKERMAN SPAEDER LLP (Baltimore) |
| | 100 East Pratt Street, Suite 2440 |
| | Baltimore, MD 21202 |
| | (410) 332-0444 |
| | csmith@zuckerman.com |

Aitan D. Goelman
ZUCKERMAN SPAEDER LLP (DC)
1800 M Street, Suite 1000
Washington, DC 20036
(202) 778-1996
agoelman@zuckerman.com

11