**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ENTESAR OSMAN KASHEF, et al., *Plaintiffs*, -against- BNP PARIBAS S.A., *Defendants*. | No. 1:16-cv-03228-AKH-JW  Hon. Alvin K. Hellerstein |

**MEMORANDUM OF LAW IN OPPOSITION TO MICHAEL D. HAUSFELD'S MOTION TO APPOINT ADAM LEVITT AS THIRD CO-LEAD CLASS COUNSEL AND IN SUPPORT OF CROSS-MOTION OF PLAINTIFFS AND THE CLASS TO APPOINT KATHRYN LEE BOYD AND <u>HECHT PARTNERS LLP AS SOLE CLASS COUNSEL</u>**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | RELEVANT FACTS | | 2 |
| | A. | Mr. Levitt is Fully Aligned with Mr. Hausfeld to Sideline Co-Lead Boyd. | 2 |
| | B. | Neither the Class Representatives Nor Co-Lead Class Counsel Consented to the Hausfeld Motion. | 3 |
| | C. | A Tri-Lead Majority Rule Was Twice Rejected. | 4 |
| | D. | Mr. Hausfeld, Brought into the Case by Ms. Boyd, "Cannot Stay." | 5 |
| III. | LEGAL STANDARD | | 6 |
| IV. | ARGUMENT | | 6 |
| | A. | The Trial Was Overseen by Ms. Boyd Who Cooperated with All Counsel Because it Was in the Best Interest of the Class | 8 |
| | B. | Ms. Boyd Should Remain Class Counsel Pursuant to Rule 23(g) | 9 |
| | | 1. Ms. Boyd Easily Satisfies Rule 23(g) | 9 |
| | | 2. Ms. Boyd Should Be the Sole Class Counsel | 10 |
| | |    a. Ms. Boyd Has Repeatedly Been and Continues to Be the Choice as Counsel | 11 |
| | |    b. Hecht Partners is the Only New York-Based Team | 12 |
| | |    c. Additional Experienced Counsel Have Joined Hecht Partners | 12 |
| V. | CONCLUSION | | 12 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) .................................................................................................................. 6

*In re Agent Orange Prod. Liab. Litig.*,
   996 F.2d 1425 (2d Cir. 1993) .................................................................................................... 6

*In re: Vitamins Antitrust Litig.*,
   398 F. Supp. 2d 209 (D.D.C. 2005) ........................................................................................... 6

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) ...................................................................................................... 6

Rules

Fed. R. Civ. P. 23(g) ................................................................................................................. 6, 9

Plaintiffs, including **all** previously appointed representatives of the certified class (the "Class Representatives") and Co-Lead Class Counsel Kathryn Lee Boyd ("Ms. Boyd"), respectfully submit this memorandum of law in opposition to the Motion of Co-Lead Class Counsel Michael D. Hausfeld to Appoint Adam Levitt as Third Co-Lead Class Counsel (ECF No. 1039, the "Hausfeld Motion") and in support of the Cross-Motion of the Certified Class to Appoint Kathryn Lee Boyd and Hecht Partners LLP ("Hecht Partners") as Class Counsel (the "Plaintiffs' Cross-Motion") as reflected in the Proposed Order, and states as follows:

## I.     INTRODUCTION

The Class Representatives and Ms. Boyd hereby respectfully propose a workable leadership structure delineating the roles of all counsel as set forth in the Proposed Order and described below (the "Clients' Proposed Structure"). The structure, approved by the class representative clients, calls for Ms. Boyd, supported by her recently bolstered New York-based class action team at Hecht Partners, to be Class Counsel. Class Counsel will continue to utilize the resources of the Hausfeld LLP ("Hausfeld"), Zuckerman Spaeder ("ZS"), and DiCello Levitt ("DL") firms, but these three firms will not serve in a formal leadership capacity. All counsel will be subject to the restoration of regularly scheduled meetings and the assistance of Special Master Daniel J. Capra and/or the Court, if required. Movants submit that this proposal is the most practical solution at this juncture.

Specifically, the Client's Proposed Structure is as follows: Ms. Boyd shall serve as Class Counsel. The Hausfeld, ZS, and DL firms will each serve as Special Counsel. Special Counsel shall serve under the direction and supervision of Class Counsel on projects assigned to them. DL's Special Counsel role shall be Co-Trial Counsel, along with Class Counsel, with approval

1

from the individual bellwether plaintiffs. Clients' Proposed Structure ensures that Hausfeld, DL, and ZS continue to have visibility into the case.

The Court should decline the Hausfeld Motion's proposed structure because it will not resolve the existing leadership issues in a manner that addresses the Court's previously articulated concerns and is not in the best interests of the class for the following reasons:

(a) Mr. Levitt, whose firm was hired as trial counsel by Hecht Partners, is fully aligned with Mr. Hausfeld and has admitted he wants to completely exclude the Class Representatives' repeatedly reiterated choice of counsel, Ms. Boyd, from all future trials and settlement;

(b) neither the clients nor Ms. Boyd consent;

(c); majority rule by a tri-lead was twice proposed and rejected by the Court as unworkable; and

(d) Mr. Hausfeld, brought into the case by Ms. Boyd, clearly should withdraw, as the Court recognized, but Mr. Hausfeld continues to refuse, without explaining how his refusal to follow the Court's mandate is in the best interests of the class.

## II.     RELEVANT FACTS

### A.     Mr. Levitt is Fully Aligned with Mr. Hausfeld to Sideline Co-Lead Boyd.

Mr. Levitt and his firm have pledged full allegiance to Mr. Hausfeld—the very reason why Mr. Hausfeld has now proposed a triumvirate, in which he would effectively direct two-thirds of the decision-making power. A DiCello Levitt partner admitted that in order to secure a deal with Hausfeld, "[A]dam [Levitt] called in every favor and **[DiCello Levitt] will have to pay back Hausfeld for years to come by cutting him into our cases**." Declaration of David L. Hecht ("Hecht Decl.") ¶ 10.

2

As recently as October 31, despite having no substantive involvement in the case thus far, Mr. Levitt stated to Mr. Hecht and Mr. Price that "we're not comfortable agreeing to a situation where Lee [Boyd] has an active role in the next trial, nor are we comfortable having a situation where Lee is involved in settlement." *Id.* ¶ 12; *see also* Declaration of Maxim Price ("Price Decl.") ¶ 7. Then, on November 2, 2025, Mr. Levitt joined Mr. Hausfeld in attempting to **remove** Ms. Boyd from this case, invoking unspecified breaches of an agreement but refusing to specify in writing what those alleged breaches were. *Id.* ¶ 13. Elevating Mr. Levitt to a leadership position as Co-Lead Counsel would hand Mr. Hausfeld the majority control he has sought over and over again and would produce exactly the outcome the clients do not want—constructively terminating Ms. Boyd from her co-lead role, the class representatives' and the class's genuine advocate and voice in this litigation. Declaration of Turjuman Turjuman ("Turjuman Decl.") ¶¶ 2-3, 10.

### B. Neither the Class Representatives Nor Co-Lead Class Counsel Consented to the Hausfeld Motion.

Importantly, the Class Representatives **did not consent** to the leadership structure proposed in the Hausfeld Motion. Neither Mr. Hausfeld nor Mr. Levitt consulted with any of the Class Representatives before filing their motion; and when Ms. Boyd received last-second notice of their intent to file such a motion, she expressly opposed it, including on behalf of the Class Representatives. Declaration of Kathryn Lee Boyd ("Boyd Decl.") ¶ 16; Hecht Decl. ¶ 14, Ex. A. Mr. Hausfeld then declined her request for a meet and confer to answer specific questions about the arrangement. *Id.* Mr. Levitt and his firm also have no relationship with the Class Representatives, or the class, having never even signed an engagement agreement with any of them (*see id.* ¶ 7), and the Class Representatives **do not approve** of Mr. Levitt being thrusted

3

into a Co-Lead Class Counsel role, which will result in again Co-Lead Boyd being sidelined, as Mr. Levitt himself has openly admitted.

### C. A Tri-Lead Majority Rule Was Twice Rejected.

The leadership structure proposed in the Hausfeld Motion is effectively the same structure *already* presented to—and rejected by—the Court on September 3, 2025, before the successful trial led by Ms. Boyd, a Harvard Law–educated, former prosecutor, trial lawyer, and tenured professor, and financed by her firm, Hecht Partners. *See* Sept. 3 Tr. at 7:25-8:3 ("We're not going to work with the majority."), 9:4-12 ("It's not going to work that way…The DiCello firm and Zuckerman Spaeder firm are counsel – that would be of counsel assisting Ms. Boyd and Mr. Hausfeld in whatever directions they want: Trial strategy, trial tactics, settlement strategy, settlement tactics, and they're in control."). The outcome of that trial only strengthens Ms. Boyd's position.

Although the attorneys from DL certainly contributed to the trial, they did so at Ms. Boyd's discretion, and with her assistance and input during trial preparation and at trial. In July 2025, when the trial was severed due to issues purposefully introduced by Mr. Hausfeld severing any relationship with his co-lead, Hecht Partners engaged DL to do just that: to serve as special trial counsel under Ms. Boyd's direction. To be clear, Ms. Boyd never ceded control of the trial to DL, who came into the decade-long case with only 8 weeks to prepare; rather, Ms. Boyd worked hand-in-hand with and directed DL as class counsel, consistent with Plaintiffs' Clients' Proposed Structure herein.

At the November 12 hearing, the Court explicitly rejected the idea "of appointing a third person to a tie-breaker." Nov. 12 Tr. at 39:3-5. But that is precisely the proposal that Mr. Hausfeld has now made yet again, albeit with a ***non-neutral*** third party, demanding the ouster of

4

Ms. Boyd. *See* Hecht Decl. ¶ 12. That proposed triumvirate will not resolve the issues before the Court.

Although the *Manual for Complex Litigation* recognizes that co-lead counsel may be appropriate in certain circumstances, this Court has expressly noted its preference for avoiding co-leadership arrangements. Nov. 12 Tr. at 39:7-9 ("I have never liked the idea of co-counsel to begin with. It wasn't my idea, when [I] came into the case you were already there.").[1] That preference is well-founded: co-lead structures can foster exactly the kinds of disputes that Mr. Hausfeld has repeatedly generated throughout this past year.[2]

### D. Mr. Hausfeld, Brought into the Case by Ms. Boyd, "Cannot Stay."

On November 12, 2025, the Court clearly articulated its desire for Mr. Hausfeld to withdraw: "You can't stay in the case, Mr. Hausfeld. That's clear." Nov. 12 Tr. at 36:18-22. Yet rather than accept that *tachlis*, Mr. Hausfeld continues campaign to take over this case; only now, he is attempting to install his ally, Mr. Levitt, in order to shift the balance of power in his favor and accomplish directly what the Court has already refused. The Hausfeld Motion also fails to acknowledge, let alone grapple with, the fact that DL has been terminated by the clients (a situation for which Ms. Boyd and the Class Representatives propose a solution herein). Nor does it address Mr. Hausfeld's repeated refusals to work cooperatively – or even engage – with Ms. Boyd despite her Co-Lead role, his ongoing efforts to sideline her. *See e.g.* Hecht Decl. ¶ 14; ECF No. 1035.

---

[1] The Court made clear that if Mr. Levitt wished to participate in this case, he was required to "work[] for" Class Counsel, not be class counsel: "If you want to be in the case, that's what you have to do." Sept. 3 Tr. at 10:7-8.

[2] In fact, when this case was transferred, Mr. Landau was still Co-Lead Class Counsel. *See* ECF 153-154, 168. Mr. Hausfeld was thrust into the position only recently, in January 2024, by substitution. *See* ECF 486-487.

### III. LEGAL STANDARD

Rule 23(g) requires courts to appoint class counsel who will fairly and adequately represent the interests of the class. The Court must consider: (1) the work counsel has done in investigating and prosecuting the claims; (2) counsel's experience in class actions and similar complex litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The Court also has the inherent duty to protect the interests of absent class members and to select leadership that promotes efficiency, cohesion, and fidelity to the class. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *In re Agent Orange Prod. Liab. Litig.*, 996 F.2d 1425, 1438 (2d Cir. 1993); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).

### IV. ARGUMENT

Mr. Hausfeld's proposed tripartite leadership structure is ignores the Court's prior pronouncements regarding its refusal to approve such a structure and is impractical. As the Court has already recognized, Mr. Hausfeld irreparably damaged his relationship with Ms. Boyd when he "express[ed] what [he] did against [Ms.] Boyd," (Nov. 12 Tr. at 36:2-3) through opportunistic maneuvering and false ethical allegations—conduct that ultimately harmed the Class.[3] *Compare*

---

[3] Over the years, Mr. Hausfeld has been found by federal courts to have acted "in bad faith" in situations eerily similar to this case, including having failed to act with candor towards a federal court overseeing a class settlement process, to have improperly retaliated against co-class counsel, and having engaged in a litany of increasingly troubling conduct in recent years. *See e.g. In re: Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 237 (D.D.C. 2005) (**[**the Court will not be**]** condoning what I consider to be unacceptable behavior by lead counsel . . . [or] fundamental deviations from what this court can reasonably expect when it delegates the responsibility to lead counsel."). Since he took over for Mr. Landau and joined this case just under two years ago, Mr. Hausfeld has personally contributed almost nothing to the case other than his unrelenting repeated attempts to wrest control from Ms. Boyd's hands.

6

ECF No. 784 at 2 ("Hausfeld and Zuckerman Spaeder cannot ethically continue to work with Ms. Boyd as co-Class Counsel") *with* ECF No. 939 (indicating Hausfeld will withdraw the pending motion as "moot" without explanation); *see also* Turjuman Decl. ¶¶ 8-9 ("Mr. Hausfeld should withdraw from his position or be removed from it; **we do not want him representing us**.") (emphasis added).

Nor do the clients want Mr. Levitt—whom they do not know (but who is purported to have spoken for them, without their permission)—to assume a leadership position, a fact that became even clearer when Mr. Hausfeld and Mr. Levitt did not even seek the Class's or Plaintiffs' input at all before filing the Hausfeld Motion. *E.g.*, Turjuman Decl. ¶ 10.

Over the past year, Mr. Hausfeld has repeatedly attempted to unilaterally impose an additional "vote" within the leadership of this class—going so far as to retain Cy Smith of ZS as trial "lead" over Ms. Boyd's objection and cutting a deal with DL before trial during which they worked together against Ms. Boyd having a voice in strategy or in front of the jury—and repeatedly demanding that Ms. Boyd sign over full control to Mr. Smith. Hecht Decl. ¶¶ 10-11. His tactics have included behind-the-scenes, siloed discussions with co-counsel excluding Ms. Boyd, strong-arming,[4] filing baseless papers with vague salacious and false allegations (*see* ECF No. 1028) and now urging the Court to formalize his strategy by appointing his newly recruited ally.

This proposed leadership structure also runs directly counter to the "winning formula" that prevailed at trial, where Ms. Boyd led the effort, both in terms of preparation and in terms of

---

[4] For example, the final question posed on direct examination to Ms. Nima Elbagir—which was objected to and stricken, and which later became the basis for BNP's mistrial motion—was included at the repeated insistence of Hausfeld and DL. On the morning of the examination, they informed Ms. Boyd that they had decided to remove her from the direct because they believed she would refuse to ask that very question. Boyd Decl. ¶ 14.

7

implementation. By contrast, Mr. Hausfeld and Mr. Levitt—whom the Hausfeld Motion proposes should be elevated— played no role at trial, were never in any of the war rooms, and almost never participated in substantive trial preparations or discussions. Boyd Decl. ¶¶ 10-13; Declaration of Michael K. Eggenberger ("Eggenberger Decl.") ¶¶ 8-10. The trial further demonstrated that, for the good of the case, Ms. Boyd was fully capable of setting aside the ill-will caused by Mr. Hausfeld's baseless character assassination.

Although DL is far from impartial, having aligned closely with Mr. Hausfeld, the Clients' Proposed Structure nonetheless suggests that they can remain as buffer between Mr. Hausfeld and Ms. Boyd, as Special Counsel and, at the next trial, as Co-Trial Counsel, under terms acceptable to the clients, so long as Ms. Boyd maintains oversight. Accordingly, Hecht Partners' and the Clients' Proposed Structure reflects what actually occurred—while eliminating the potential for further behind-the-scenes disruptions. Boyd Decl. ¶¶ 7-9.

### A. The Trial Was Overseen by Ms. Boyd Who Cooperated with All Counsel Because it Was in the Best Interest of the Class

Ms. Boyd was responsible for overseeing and participating at a granular level in virtually every aspect of the trial. *See* July 10 Tr. at 30:16-31:4 (Ms. Boyd is "the trial lawyer" and other class counsel "have no role"). Indeed, Ms. Boyd, through her firm, Hecht Partners, retained DL in a limited capacity, ***at Hecht Partner's sole expense***, and Ms. Boyd was responsible for quickly educating them on the case and its issues and then participating in and overseeing all substantive aspects of the trial. Boyd Decl. ¶¶ 7-9; Eggenberger Decl. ¶¶ 7-12; Hecht Decl. ¶¶ 9, 15. Hausfeld and ZS were entirety absent for all pre-trial work. *Id.*

After the September 3 hearing, after the Court re-coupled the bellwether plaintiffs with the class, Ms. Boyd set aside the defamatory character attacks launched by both Hausfeld and Zuckerman and integrated those firms into the trial for the good of the class and the case, even

8

relegating her own roles because she was "out-voted".[5] They did not return the favor after trial was over.

### B.    Ms. Boyd Should Remain Class Counsel Pursuant to Rule 23(g)

This Cross-Motion proposes a workable solution: Ms. Boyd continue to serve as Class Counsel under Rule 23(g) while the most meaningful contributions of the DL and Hausfeld firms can continue to be fully and efficiently utilized by Ms. Boyd and Hecht Partners in advancing the interests of the Class. This requires a simplified leadership structure—one that clearly defines each firm's role and eliminates incentives for self-dealing.

As the Court put it on September 3, 2025, "Someone has to be in charge." Sept. 3 Tr. at 6:11-14. That someone should be the same person who was in charge of filing this case and peacefully co-in-charge with Brent Landau for years before Mr. Hausfeld replaced him by default in 2024 when Mr. Landau left the Hausfeld firm.

#### 1.    Ms. Boyd Easily Satisfies Rule 23(g)

First, there can be no genuine dispute that Ms. Boyd continues to satisfy all four criteria set forth in Rule 23(g): (1) the work counsel has done in investigating, architecting, and prosecuting the claims; (2) counsel's experience in class actions and similar complex litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel has and will commit to representing the class.

1. Ms. Boyd investigated and brought the case in the first instance, which case remains virtually intact as first filed, successfully shepherded it through dismissal, appeal and reinstatement, fact discovery (preparing and defending all 19 during depositions), expert discovery (including taking key depositions), class certification (including appeal), summary judgment, and trial. *See* ECF No. 419 ¶¶ 29-36. **No other attorney has been involved with every aspect of the case.**

---

[5] For example, although the clients hoped Ms. Boyd would take the closing argument – and she prepared rebuttal, over the vehement protest of all firms, she bowed out to keep the peace. Hecht Decl. ¶ 11; Turjuman Decl. ¶¶ 6-8.

9

2. Ms. Boyd has the requisite experience and expertise in class actions and other complex litigation, specifically human rights litigation including Holocaust-era litigation. *See* ECF No. 419 ¶¶ 4-5. She has participated in approximately 30 trials, prepared countless witnesses for trial and deposition, and conducted numerus appeals including *en banc* at the Ninth Circuit, where she received written accolades from the panel deciding a Holocaust-era class action appeal.

3. Ms. Boyd and her team have extensive knowledge of the applicable law, including Swiss, New York, and federal rule and laws. Boyd Decl. ¶¶ 3-5, 7-11; Eggenberger Decl. ¶¶ 3-7, 12; Price Decl. ¶¶ 3-4. Moreover, the Clients' Proposed Structure uses the subject matter expertise of the entire team.

4. Ms. Boyd and her team have brought significant resources to bear on this litigation already. *See, e.g.*, ECF No. 419 ¶¶ 29-36. Indeed, beyond the costs they already advanced, Hecht Partners paid for **virtually** all of the trial costs and expenses despite agreements to split costs and the fact that the trial was "unsevered" and became the first bellwether trial for the class. Hecht Decl. ¶ 15.

The Court had no hesitation appointing Ms. Boyd as Co-Lead Class Counsel previously, alongside Mr. Landau. Since Mr. Landau has left the Hausfeld firm for public interest, Mr. Hausfeld has not, in this matter, demonstrated the practical ability to fill Mr. Landau's role. *See e.g.*, May 7, 2025 Hr'g Tr. at 49:15-18, 56:4-10 (Ms. Boyd's successful argument on class following Mr. Hausfeld being unable to convince the Court regarding causation as a class issue). While Hecht Partners acknowledges Mr. Hausfeld's past career achievements, his decisions in this case, for whatever reason, have unfortunately been detrimental to the success of the class.

Ms. Boyd, by contrast, has repeatedly demonstrated that she can withstand vicious personal attacks never before made in her 34 years of practice, marshal the resources required to lead a successful trial, and continue doing what she has done for more than a decade: pursue justice on behalf of the victims of the Bank's conspiracy with a genocidal regime.

### 2. Ms. Boyd Should Be the Sole Class Counsel

As this Court recognized, "the mix [of attorneys working on the case] is not really as important as the decision-makers." Sept. 3 Tr. at 5:13-14. After ten years of litigation initiated

and shepherded by Ms. Boyd—and the recent trial led by her—it is evident that she is the appropriate decision-maker.

Consistent with her approach throughout the case and at trial, Ms. Boyd will continue to draw upon other attorneys—from her firm and elsewhere—as part of the "mix" of counsel needed to achieve justice for the Class under the Clients' Proposed Structure. The Clients' Proposed Structure preserves the strongest elements of the Hausfeld and DL teams, including the attorneys who actually contributed to the trial victory under Ms. Boyd's supervision.

In essence, the proposed structure maintains the best parts of the model that has successfully guided this case through a decade of difficult litigation while addressing and resolving the disputes the Court rightfully desires to resolve once and for all.

### a. Ms. Boyd Has Repeatedly Been and Continues to Be the Clients' Choice as Counsel

Ms. Boyd is the clear choice of the Class Representatives and of the class members more broadly. *See, e.g.*, July 10 Tr. at 24:13-21 (Ms. Kashef stating that "[t]he only lawyer that I know is Ms. Lee Boyd . . . and I trust her"); *id.* at 26:12-13:27:3 (Mr. Turjuman asking the Court to give "all the class action to [Ms.] Boyd to represent us"); Turjuman Decl. ¶¶ 2-3, 10. The Court recognized this reality at the November 12 hearing: "I questioned the plaintiffs if they wanted Ms. Boyd, if they trusted Ms. Boyd, so I believe that their clients are entitled to their choice of attorney…" Nov. 12 Tr. at 36:3-6.

Moreover, this is not the typical case in which attorneys vie for class leadership while each represents one or more named plaintiffs who could competently serve as class representatives. This case is fundamentally different: it is a class action initiated by Ms. Boyd on behalf of a community of more than 23,000 Sudanese-American victims—individuals forced to flee their homeland due to persecution that BNP helped facilitate. Ms. Boyd's relationship

11

extends far beyond the three Plaintiffs in the first bellwether trial, and beyond the nineteen named Plaintiffs. She has spoken personally with thousands of Sudanese-Americans about their experiences and about this litigation. *See* Boyd Decl. ¶ 3.

As Mr. Turjuman made unmistakably clear: "We trust only [Ms.] Lee Boyd." July 10 Tr. at 26:12-13:27:3.

### b. Hecht Partners is the Only New York-Based Team

Moreover, Ms. Boyd's team is based in New York, rather than Washington, D.C. (Mr. Hausfeld) or Chicago (Mr. Levitt). This proximity makes it both easier and less costly—for the Class—for her team to prepare for and attend trial and hearings in New York.

### c. Additional Experienced Counsel Have Joined Hecht Partners

In the next phase of this case, Ms. Boyd will also be supported by experienced class counsel that have joined Hecht Partners as Of Counsel: Lori G. Feldman, Michael Liskow, and Rebecca Peterson. Their biographies appear as **Exhibit B** to the Hecht Declaration. They have recently appeared alongside the five other Hecht Partners attorneys who have litigated this case for years. Together, these attorneys constitute the largest active contingent of any of firm that has appeared on behalf of Plaintiffs in this matter.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Hausfeld Motion be denied and the Cross-Motion be granted.

Dated: November 18, 2025                                Respectfully submitted,

                                                                    */s/ Kathryn Lee Boyd*
Kathryn Lee Boyd
David L. Hecht
Maxim Price
Michael Eggenberger
Lori Feldman
Michael Liskow
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(646) 502-9515
lboyd@hechtpartners.com
dhecht@hechtpartners.com
mprice@hechtpartners.com
meggenberger@hechtpartners.com
lfeldman@hechtpartners.com
mliskow@hechtpartners.com

Kristen Nelson
HECHT PARTNERS LLP
2121 Avenue of the Stars
Los Angeles, CA 90067
(646) 490-2408
knelson@hechtpartners.com

3

**CERTIFICATE OF SERVICE**

This will certify that a true and accurate copy of the foregoing has been served via ECF, on this **18th day of November 2025,** to all parties of record.

*/s/ Kathryn Lee Boyd*
Kathryn Lee Boyd
