UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENTESAR OSMAN KASHEF, et al.,

    *Plaintiffs*,

- against -

BNP PARIBAS, S.A.,

    *Defendant*.

No. 1:16-cv-03228-AKH-JW

Hon. Alvin K. Hellerstein

**CO-LEAD CLASS COUNSEL MICHAEL HAUSFELD'S OPPOSITION
TO THE CROSS-MOTION TO APPOINT KATHRYN L. BOYD AS
SOLE CLASS COUNSEL AND REPLY IN SUPPORT OF MOTION
TO APPOINT ADAM LEVITT AS CO-LEAD CLASS COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF FACTS ............................................................................................................... 3

ARGUMENT .................................................................................................................................... 7

    I.    Ms. Boyd and Hecht Partners are not adequate to serve as sole Class Counsel under Rules 23(a)(4) and 23(g). .................................................................................................................. 7

        A.    The Court, not the client, decides whom to appoint as class counsel and how to protect the Class from conflicts of interest. ...................................................................................... 7

        B.    Hecht Partners' back-up plan to opt out half of the Class and abandon the rest raises disturbing questions as to the adequacy of Ms. Boyd as sole class counsel. .......................... 8

    II.    The Court should adopt the tripartite leadership structure ................................................ 11

CONCLUSION ............................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banyai v. Mazur*,
  2004 WL 1948755 (S.D.N.Y. Sept. 1, 2004) .................................................................................. 8

*Foe v. Cuomo*,
  892 F.2d 196 (2d Cir. 1989) ........................................................................................................ 1

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
  270 F.R.D. 150 (S.D.N.Y. 2010) ................................................................................................. 8

*In re Agent Orange Prod. Liab. Litig.*,
  800 F.2d 14 (2d Cir. 1986) ..................................................................................................... 2, 10

*In re "Agent Orange" Product Liability Litigation*,
  996 F.2d 1425 (2d Cir. 1993) ...................................................................................................... 8

*Kahree v. W. Elec. Co.*,
  82 F.R.D. 196 (D.N.J. 1979) ................................................................................................. 8, 12

*Kramer v. Sci. Control Corp.*,
  534 F.2d 1085 (3d Cir. 1976) ...................................................................................................... 9

*Lowenschuss v. C. G. Bluhdorn*,
  78 F.R.D. 675 (S.D.N.Y. 1978) ................................................................................................... 9

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) .................................................................................................... 1, 7

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) ................................................................................................... 10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................................................... 9

**Rules**

Federal Rules of Civil Procedure 23 ............................................................................... *passim*

**INTRODUCTION**

Under Rules 23(g) and 23(a)(4) of the Federal Rules of Civil Procedure, this Court has an ongoing "obligation to insure that the plaintiff class is adequately represented throughout the litigation." *Foe v. Cuomo*, 892 F.2d 196, 198 (2d Cir. 1989). "[W]here there is a dispute between class counsel and the class representatives as to the course to be followed, the decision cannot rest entirely with either the named plaintiffs or with class counsel." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).[1] When deciding whom to appoint as lead class counsel, the Court must exercise its own independent judgment.

Mr. Hausfeld has proposed a leadership structure that preserves the winning trial team, while allowing the class representatives to still work with Ms. Boyd. The proposed tripartite co-lead structure removes the risk of vetoes and impasses. And it ensures that there will be checks and balances to protect the best interests of the Class and guard against poor judgment or potential conflicts. Other solutions could work as well. As explained below, the Court could simply enforce the September 2, 2025, Agreement in which Ms. Boyd contractually delegated her authority to Mr. Levitt. The tripartite structure formalizes that contract and would allow, as the Court observed, "the presence of" DiCello Levitt to continue to serve as "a moderating influence." Hr'g Tr. at 43:11-13 (Nov. 12, 2025). Under this solution, Mr. Hausfeld and co-counsel can resolve differences and work together with Ms. Boyd in the best interest of the Class.

One solution, however, does not appear permissible under Rules 23(a)(4) and 23(g): Ms. Boyd's suggestion that she serve as sole class counsel. Oversight of this class action cannot be vested in the person in whom the Court just announced: "I don't have total confidence." Hr'g Tr.

---

[1] Unless otherwise noted, all internal quotation marks or citations have been omitted from citations in this brief.

at 33:17-20 (Nov. 12, 2025). Although Mr. Hausfeld and co-counsel dispute Ms. Boyd's factual allegations and mischaracterization of her role at trial, there is no need for point-by-point rebuttal. It was obvious to the Court that the DiCello Levitt team, led by Bobby DiCello, "carried the trial." *Id.* at 33:8-12. If the matter or decision before the court involved only three Co-Leads' suggestions, the matter could rest there.

However, on November 18, 2025, Mr. Hausfeld learned of a back-up plan by David Hecht and Kathryn L. Boyd to represent 10,000 putative opt-outs on a mass tort basis, effectively dissolving the class and abandoning the forced displacement claims of some 13,000 class members to whom Ms. Boyd owes a fiduciary obligation. This back-up plan raises serious implications in Ms. Boyd's suggestion that the court appoint her as sole class counsel. *See In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18 (2d Cir. 1986) ("[T]he attorney's duty to the class requires him to point out conflicts to the court so that the court may take appropriate steps to protect the interests of absentee class members.").

This strategy (the "Hecht Plan") is outlined in a June 18, 2025, email written by Mr. Hecht, where he boasts that he and Ms. Boyd can extract a higher contingency fee by proceeding on an individual mass tort basis, cutting out co-counsel, and reneging on their fee sharing agreement with Hausfeld. To achieve this, Ms. Boyd secretly secured powers of attorney ("POAs") from all class representatives—despite their signed retainer agreements with Hausfeld LLP—delegating decision-making authority to Ms. Boyd.

In September 2025, DiCello Levitt successfully steered Hecht Partners away from this plan and brokered a binding co-counsel contract (the "September 2 Agreement"), under which Ms. Boyd agreed to delegate her authority to Mr. Levitt. But, both during and after trial, Ms. Boyd

2

repudiated this Agreement, and she appears to be exercising her powers of attorney to sideline all other class counsel and support a play for total unilateral control of the litigation.

Developing a plan to dissolve the Class, walk away with 10,000 Class members and abandon the remaining 13,000—while putting herself forward as sole class counsel—creates a clear conflict of interest. As does attempting to subordinate the independence of the class representatives to the wishes of Ms. Boyd through POAs, despite having a joint client relationship with Hausfeld. This self-interested back-up plan raises serious doubts as to the adequacy of Ms. Boyd to serve as sole class counsel.

For the sake of all absent class members, Hausfeld, DiCello Levitt, and Zuckerman Spaeder are committed to cooperate with Ms. Boyd for the best interests of the Class, so long as she wields no veto and fiduciary safeguards are in place. The Hausfeld proposal accomplishes that.

## STATEMENT OF FACTS

Unbeknownst to Mr. Hausfeld, in a June 18, 2025, email, David Hecht revealed to DiCello Levitt that he and Ms. Boyd were considering opting out 10,000 Class members from this class action. *See* Decl. of Greg Gutzler ("Gutzler Decl."), Ex. 1, June 18, 2025 Hecht Email. That plan would effectively split the Class, depriving some 13,000 Class members of, at a minimum, their forced displacement damages. Instead, Hecht Partners planned to walk away with as many clients as they could grab and pursue those cases as a mass tort, abandoning the certified Class. The goal, according to Mr. Hecht, was financial gain: Hecht Partners would collect a "1/3" contingency fee from 10,000 class members. *Id.* The Hecht Plan would all but negate the Court's ability to regulate attorney's fees under Rule 23. As part of the plan, Hecht Partners would renege on the 50/50 fee sharing agreement with Hausfeld by declaring a breach of their agreement that they believed "the old man [Hausfeld] has not, and will not, take any steps to cure . . .". *Id.* Mr. Hecht explained that

3

he and Ms. Boyd would also "sideline Danya's firm" (*i.e.*, court-appointed class counsel Perry Law). *Id.*

> **From:** David Hecht <dhecht@hechtpartners.com>
> **Sent:** Wednesday, June 18, 2025 8:24 AM
> **To:** Mark DiCello <madicello@dicellolevitt.com>; Greg Gutzler <ggutzler@dicellolevitt.com>
> **Cc:** Lee Boyd <lboyd@hechtpartners.com>; Maxim Price <mprice@hechtpartners.com>
> **Subject:** DL/HP - Next steps
>
> Mark, Greg, thanks for the call yesterday. Lee and I are excited, and we'd like to proceed with some focus groups with you.
>
> As I mentioned to Greg, the Court has made clear the upcoming trial is NOT a class trial:
>
> THE COURT: This is not a class action trial; this is
> a trial of three individuals. And I'm going to determine, with
> the jury, the rights of these three individuals. And then how
> that affects others will be a subject of later discussion.
>
> The transcript is attached. We see this as a potential opening for your inclusion (we've also used the narrowing as the rationale to sideline Danya's firm, given their great up-front expense).
>
> If this case is settled as a partial class / partial mass tort (on the ~10k opt-ins for non-class enhanced damages), we'd be entitled our share 1/3 of the mass tort component according to our engagement agreements. We were supposed to split that amount with Hausfeld under a co-counsel agreement, but we've recently declared a breach of the agreement and the old man has not, and will not, take any steps to cure the breach.
>
> We also have POAs for all the representatives, including the three plaintiffs. Notwithstanding the POAs, the plaintiffs have explicitly stated that they want Lee to represent them. This is now their case.
>
> We also welcome your thoughts about how the refocus of trial to the three plaintiffs opens the door to your involvement, and how we might structure it.
>
> David L. Hecht
> Hecht Partners LLP
>
> 125 Park Ave. 25th Floor
> New York, NY 10017
> E: dhecht@hechtpartners.com
> P: (212) 851-6821
> C: (646) 266-8753

*Figure 1: Screenshot of June 18, 2025 Hecht Email*

Ms. Boyd and Mr. Hecht apparently had all nineteen class representatives execute POAs delegating decision-making authority to Ms. Boyd. *See id.* Ms. Boyd did so secretly, without informing Mr. Hausfeld, despite the fact that Hausfeld has signed retainer agreements with all nineteen class representatives. During the trial, Ms. Boyd confirmed to Lead Trial Counsel, Robert "Bobby" DiCello, that she purposefully isolated the clients from their retained co-counsel. Decl. of Robert F. "Bobby" DiCello ¶ 4 ("DiCello Decl."). Mr. DiCello confronted her, saying "You

4

have used the clients as leverage against us in the trying of the case." She confirmed: "I had to. Thank God I have. I would have literally nothing. I wouldn't even be here if it weren't for the clients."

After joining the case for the then-severed September 2025 trial, DiCello Levitt attempted to steer Hecht Partners away from this plan and worked to broker a new co-counsel agreement to unify the four plaintiffs' law firms and implement a meaningful plan that would best protect the interests of all Class members going forward, enabling trial success and, ultimately, a successful resolution of this litigation. *See* Decl. of Adam Levitt ¶ 6 ("Levitt Decl.").

On September 2, 2025, Ms. Boyd, Mr. Hecht, Mr. Hausfeld, Mr. Levitt, and Cy Smith of Zuckerman Spaeder LLP executed a binding and enforceable co-counsel agreement, which enabled the team to reunify for trial. Under that agreement, attached as Levitt Decl., Ex. 1, Ms. Boyd agreed to remain Co-Lead Class Counsel, while contracting, among other things:

- to delegate her settlement authority to attorney Adam Levitt, ¶¶ 6-7[2];
- to delegate her "voting authority on any aspect of settlement or trial of any case subject to this Agreement" to DiCello Levitt LLP, ¶ 11;
- not to participate in settlement efforts, ¶ 6;
- not to participate in the trial of any *Kashef* litigation after the conclusion of the September 8, 2025, trial, ¶ 10;
- not to "denigrate any other plaintiffs' lawyer or law firm in this litigation, to the Court, or to any of the named plaintiffs or other class members," ¶ 2; and

---

[2] This is the second time that Hecht Partners had delegated its settlement authority in this litigation to Mr. Levitt, the first being three days earlier, in the Memorandum of Understanding that DiCello Levitt and Hecht Partners entered into on August 29, 2025, governing the financial relationship between those firms. *Id*. at ¶ 2.

5

- that "Hausfeld, Zuckerman Spaeder, and DiCello Levitt . . . shall be trial counsel for all *Kashef* litigation on a going-forward basis after conclusion of the severed three-plaintiff September 8, 2025, trial," ¶ 10.

Although Ms. Boyd claims she was "sidelined" in trial and settlement efforts by co-counsel, the reality is that Ms. Boyd contractually accepted this limited role. Paragraph 11—to which she freely consented—is titled "Limiting Authority of Co-Lead Counsel Kathryn Lee Boyd."

As Mr. Levitt explains, on August 29, 2025, Hecht Partners "contractually delegated to [him] the role of Settlement Counsel on their behalf." Levitt Decl. ¶ 2. As for trial, Ms. Boyd's role "which was limited to direct examinations of the three named plaintiffs and one additional fact witness, reflected the explicit terms of the September 2 Agreement, as agreed upon by her and her partners David Hecht and Max Price." *Id.* ¶ 8.[3]

Lest there be any dispute that the contract was freely entered into and is enforceable, on September 3, 2025, during the Final Pretrial Conference, Max Price separately texted Mr. Levitt, "reiterating that Hecht Partners would abide by the Agreement." *Id.* ¶ 7.b. On September 6, 2025, David Hecht also texted Mr. Levitt, "declaring his appreciation for [Levitt's] efforts in getting this agreement done and confirming Hecht Partners' delegation of its settlement authority to me, referring, in a text message, to 'Lee's delegation' . . ." *Id.* ¶ 7.a.

However, after securing the services of DiCello Levitt, Hausfeld, and Zuckerman Spaeder at trial, and agreeing to a comprehensive team framework for the remainder of this litigation, Ms. Boyd and Mr. Hecht repudiated the September 2 Agreement, potentially putting the Hecht Plan

---

[3] In other words, it was Hecht Partners, through the September 2 Agreement that affirmatively agreed to "sideline" Ms. Boyd, and no one else.

6

back into play. Apparently exercising her power of attorney from the class representatives, and without consulting Mr. Hausfeld, Ms. Boyd unilaterally attempted to terminate DiCello Levitt without good cause. She did so despite Mr. Hecht effusively praising DiCello Levitt's trial performance in an October 17, 2025, email, *see* Gutzler Decl. ¶ 8, and despite—or perhaps because of—Mr. Turjuman praising Bobby DiCello as his "hero," DiCello Decl. ¶ 8. It is evident from Mr. Turjuman's limited understanding of the team dynamics at trial that Ms. Boyd never disclosed to the class representatives the terms of the September 2, 2025 Agreement and never informed them that she had decided to delegate her authority to Mr. Levitt and agreed to step back from all trial and settlement roles. Communicating this was Ms. Boyd's responsibility under her January 20, 2020, co-counsel agreement with Hausfeld LLP, which stipulated: "The Law Firms shall jointly be responsible for and control all aspects of this case. Lee Boyd, as the counsel with the client relationships, will be the principal point of contact with the clients."

Now the other shoe has dropped, and Ms. Boyd seeks to throw off the fetters of two of the most experienced class action litigators in the United States and seize full control of this litigation.

## ARGUMENT

### I. Ms. Boyd and Hecht Partners are not adequate to serve as sole Class Counsel under Rules 23(a)(4) and 23(g).

#### A. The Court, not the client, decides whom to appoint as class counsel and how to protect the Class from conflicts of interest.

Under Federal Rules of Civil Procedure 23(a)(4) and 23(g), it is the responsibility of this Court—and not the class representatives—to ensure that the class is adequately represented by counsel. As the Second Circuit holds, the district court has the "ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel . . . ." *Maywalt*, 67 F.3d at 1078. "A judge in a class action is obligated to protect the interests of absent class members" from decisions of class representatives

7

or class counsel that may be prejudicial to the class. *In re "Agent Orange" Product Liability Litigation,* 996 F.2d 1425, 1438 (2d Cir. 1993).

The Court should, of course, hear the views of class representatives. But Rule 23(g) does not permit class representatives to "bind the class to their choice of counsel" when, in the Court's assessment, "independently selected" counsel are "necessary to protect the interests of the class." *Kahree v. W. Elec. Co.*, 82 F.R.D. 196, 199–200 (D.N.J. 1979). "[T]he authority to appoint or to discharge Class Counsel rests with this Court, not with the named representative plaintiffs." *Banyai v. Mazur*, No. 00 CIV. 9806 (SHS), 2004 WL 1948755, at *2 (S.D.N.Y. Sept. 1, 2004).

### B. Hecht Partners' back-up plan to opt out half of the Class and abandon the rest raises disturbing questions as to the adequacy of Ms. Boyd as sole class counsel.

"[I]n considering whether the proposed class counsels are adequate, the Court may consider the honesty and integrity of the putative class counsels, as they will stand in a fiduciary relationship with the class." *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010). If there was ever doubt that Ms. Boyd is not adequate to lead this case as sole class counsel, the June 18 Hecht Email, the secret POAs, and the self-interested opt-out back up plan make it certain.

Hecht Partners' apparent plan to try to opt out half of the Class, while continuing to serve as co-lead class counsel, shows the stark contrast between Ms. Boyd and Mr. Hausfeld. Mr. Hausfeld has always advocated for the interests equally for all members of the Class and sought to resolve the claims of *all* 23,000 class members through the questionnaire process, and the mediation overseen by Special Master Capra, including 13,000 or so class members who might only be seeking forced displacement damages. In contrast, if unable to wrest sole control of this litigation from demonstrably more qualified counsel, Ms. Boyd and Mr. Hecht have concocted a scheme which, if implemented, would effectively undo the Class and fund Hecht Partners cashing

8

in on the opportunity to represent approximately 10,000 Class members who submitted questionnaires on an individual, mass tort basis, likely depriving the remaining 13,000 of Class resolution of their forced displacement damages.

Regardless of whether Hecht Partners elects to implement this self-interested scheme, the Hecht Plan creates a conflict of interest or the appearance of one. This arrangement prioritizes the financial interests of Hecht Partners over their fiduciary duty to the Class as a whole, as their firm stands to gain higher attorney's fees from individual cases than from a class settlement, according to Hecht's email. This type of direct conflict between the financial interests of class counsel and of absent class members counsels against Ms. Boyd playing a sole leadership role. *See Lowenschuss v. C. G. Bluhdorn*, 78 F.R.D. 675, 677–78 (S.D.N.Y. 1978). Like Hecht Partners, the class counsel in *Lowenschuss* was motivated by a "preoccupation with assuring a large attorney's fee." *Id.* And as with Hecht Partners, that "obsession with his attorney's fee was one factor contributing to . . . negotiations' breakdown." *Id.*

The Hecht Plan also creates, at a minimum, the appearance of Ms. Boyd's and the Hecht Firm's divided loyalties between those Class members who opted in to seek damages for additional injuries (and whom Ms. Boyd believes she can lucratively peel away as opt outs) and those Class members who simply declined to opt out and trusted Class Counsel to pursue their claims for forced displacement damages. Courts have consistently held that Class Counsel must avoid even the appearance of divided loyalties and must disclose any potential conflicts to the Court to protect the interests of absent class members. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009) (noting that undisclosed improper incentive agreements created appearance of divided loyalties for class counsel); *Kramer v. Sci. Control Corp.*, 534 F.2d 1085, 1089 (3d Cir.

9

1976) ("(A) court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.").

Ms. Boyd's failure to disclose this plan and its obvious conflict to the Court likely breached her fiduciary duties to the Class under Rule 23(g). *See In re Agent Orange*, 800 F.2d at 18 ("[T]he attorney's duty to the class requires him to point out conflicts to the court so that the court may take appropriate steps to protect the interests of absentee class members."). The fact that Ms. Boyd and Hecht Partners hid this plan and the powers of attorney from her Co-Lead Class Counsel—as well as from the Court—is troublesome.[4]

Worse still, the Hecht Plan was not merely hypothetical. Ms. Boyd took overt steps in furtherance of that plan by secretly having the class representatives assign her power of attorney, vesting her with the authority to opt out and make other decisions that could impact the class. This arrangement is clearly improper. The delegation of decision-making authority to class counsel through a power of attorney risks eroding the independence of class representatives. As the Fifth Circuit observed: "An attorney who prosecutes a class action with unfettered discretion becomes, in fact, the representative of the class. This is an unacceptable situation because of the possible conflicts of interest involved." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1177 (5th Cir. 1978).

A court has the right to know whether there are conflicts between Class Counsel and the Class in order to assure full protection to the best interests of the Class. *In re Agent Orange*, 800 F.2d at 18. The risk here is serious. The Court must take measures to protect the class from Ms.

---

[4] As previously noted, Mr. Levitt, to his credit, worked to steer Hecht Partners away from this plan and to secure the September 2, 2025, agreement for Ms. Boyd to take a step back from leadership functions in the best interests of the Class. It appeared that the problem had been solved and the conflict averted, until Ms. Boyd's recent decision to repudiate the agreement and seek sole control of the class action.

Boyd's effort to isolate the class representatives and to develop a back-up plan that would undermine the interests of thousands of class members. The Court should deny Ms. Boyd's suggestion that she have sole control and should instead cabin Ms. Boyd's ability to act unilaterally.[5]

## II. The Court should adopt the tripartite leadership structure.

Mr. Hausfeld, Mr. Levitt, and Mr. Smith are committed to working with Hecht Partners, as long as there is a change of leadership structure that denies Ms. Boyd veto power and enables co-counsel to impose fiduciary guardrails on her conduct. The latest revelations of Ms. Boyd's apparently self-interested actions underscore the need for such checks and balances. This approach enables the class representatives to continue to work with Ms. Boyd and enables the rest of the class to benefit from the unified trial team that secured a landmark verdict for the first bellwether plaintiffs.

Ms. Boyd can hardly object to vesting leadership in Mr. Levitt: *she already agreed to delegate her authority to him in the September 2, 2025 Agreement*. *See* Levitt Decl. ¶ 6, Ex. 1. Nor can she argue that the best interests of the class require her exercising sole control: she conceded in the September 2 Agreement that delegating her authority to Mr. Levitt was done "to advance and protect the best interests of the plaintiffs in the *Kashef* Litigation, subject to Rule 23. . . ." September 2 Agreement, Recitals.

---

[5] Ms. Boyd apparently believes that she can shore up her lack of class action experience by adding Ms. Feldman and Mr. Liskow. Not only did Ms. Boyd waste substantial class resources hiring Perry Law and getting them up to speed, only to fire them. But then she did this again with DiCello Levitt. Now she wants to replace Messrs. Hausfeld and Levitt—two of the most experienced class action practitioners in the United States—with these new attorneys who have no knowledge of the facts or law in this case, presumably so that they will be entirely dependent on her for information. If the pattern holds, as soon as they exercise independent professional judgment, they too will be on Ms. Boyd's chopping block.

11

Given that Ms. Boyd has already agreed to "Limiting [the] Authority of Co-Lead Counsel Kathryn Lee Boyd," Mr. Hausfeld's proposed leadership restructuring is completely consistent with settled contractual expectations. *Id.* ¶ 11.

The proposed tripartite leadership structure essentially formalizes what Ms. Boyd has already consented to in a binding contract. Indeed, one solution to the current leadership crisis is for the Court to simply enforce the September 2 Agreement and compel Ms. Boyd to accept her contractually limited roles. Ms. Boyd specifically agreed that the Agreement may be enforced by a "motion directed to the Court." *Id.* ¶ 12.

Alternatively, if the Court believes that Ms. Boyd can no longer co-lead this litigation, the Court may modify the titles and roles of class counsel as the Court deems necessary.

The Hausfeld proposal, if adopted, would thus save the winning trial team and preserve this Class: "The named plaintiffs will still have counsel of their choice, while the class will have counsel independently selected and therefore free to take any action he may deem necessary to protect the interests of the class." *Kahree,* 82 F.R.D. at 200.

## CONCLUSION

For the foregoing reasons, Co-Lead Class Counsel Michael Hausfeld respectfully requests that the Court deny Ms. Boyd's motion and instead adopt the proposals for restructuring class counsel leadership set forth above.

Dated: November 20, 2025                    Respectfully submitted,

                                                        */s/ Michael D. Hausfeld*
                                                       Michael D. Hausfeld
                                                       Scott A. Gilmore
                                                       Amanda E. Lee-DasGupta
                                                       Claire A. Rosset

        Mary S. Van Houten Harper
        Percy Metcalfe
        HAUSFELD LLP
        1200 17th Street, Suite 600
        Washington, DC 20036
        (202) 540-7200
        mhausfeld@hausfeld.com
        sgilmore@hausfeld.com
        alee@hausfeld.com
        crosset@hausfeld.com
        mvanhouten@hausfeld.com
        pmetcalfe@hausfeld.com

        James D. Gotz
        HAUSFELD LLP
        One Marina Park Drive, Suite 1410
        Boston, MA 02210
        (617) 207-0660
        jgotz@hausfeld.com

        ***Plaintiffs' Co-Lead Counsel***

## **CERTIFICATE OF SERVICE**

I certify that on November 20, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record.

*/s/ Michael D. Hausfeld*
Michael D. Hausfeld
