UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENTESAR OSMAN KASHEF *et al.*, <br><br>                    Plaintiffs, <br><br>         -against- <br><br> BNP PARIBAS S.A., <br><br>                    Defendant. | No. 16 Civ. 3228 (AKH) <br><br> Hon. Alvin K. Hellerstein |

**DEFENDANT BNP PARIBAS S.A.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF FINAL JUDGMENT UNDER RULE 54(b)**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
T: (212) 351-4000

CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T: (212) 225-2000

*Counsel for Defendant BNP Paribas S.A.*

**PRELIMINARY STATEMENT**

As this Court stated at the December 4 hearing, if BNPP's post-trial motions for judgment or new trial are denied, then "there is no reason not to enter judgment." Dec. 4, 2025 Hr'g Tr. 8:11–15. The trial verdict would become a "final judgment," and "it would be in the interest of both parties to get court of appeals resolution." *Id.* at 8:11–15, 9:4–7. Plaintiffs' Opposition provides no basis to second-guess the Court's views.

There is no just reason to delay appeal of the judgment entered by this Court. The Court chose to try the claims of the three individual Plaintiffs as "the bellwether cases of the class" rather than hold a classwide trial. Sept. 3, 2025 Pretrial Conf. Hr'g Tr. 5:22–24; *id.* at 77:25–78:1 ("It's a bellwether case."). An immediate appeal after the first bellwether trial is typical in complex, multi-plaintiff litigation such as this. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 2010 WL 1328249 (S.D.N.Y. Apr. 5, 2010); *Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223 (N.D.N.Y. 2002); *In re Depakote*, 2017 WL 11438790 (S.D. Ill. June 13, 2017). That is because immediate appeal furthers the purpose of bellwether proceedings by providing definitive answers to potentially dispositive legal questions, thereby expediting future trials or obviating the need for them altogether. As a matter of judicial economy and fairness to the parties, it makes common sense to obtain the Second Circuit's guidance on controlling legal questions before trying an additional 20,000 individual claims.

Plaintiffs do not contest many of these essential points in their Opposition. Instead, they conjure obstacles to allowing an appeal that are plainly incorrect and disconnected from the realities of this case. Specifically, Plaintiffs ask the Court to withhold entry of final judgment because they say: (1) BNPP purportedly plans to file seriatim appeals after every trial, even though BNPP has never said that and even though BNPP would need to obtain the Court's

1

permission to appeal; (2) the verdict was supposedly a class decision rather than a bellwether case, even though this Court has repeatedly held otherwise; and (3) the outcome on appeal is purportedly preordained because the Second Circuit will defer to Judge Nathan's determination on expert credibility, even though questions of foreign law are decided *de novo*.

Plaintiffs offer an untenable, illogical, and wasteful alternative: delaying appeal indefinitely, until hundreds—if not thousands—of trials have been litigated. If BNPP is ultimately successful on appeal, those trials, and the corresponding expenditure of resources by this Court and the parties, will have been entirely unnecessary. Plaintiffs' only response is that collateral estoppel may expedite future trials. But that response gets it backward: even if collateral estoppel could apply, that possibility only further demonstrates why immediate appeal of the first judgment is so important, as collateral estoppel would merely double down on aspects of a judgment that BNPP contends is legally erroneous.

The caselaw, common sense, and this Court's reasoning all point towards one outcome: if the Court does not grant judgment in BNPP's favor or a new trial, then the Court is correct that there is "no reason not to enter judgment" by granting BNPP's Rule 54(b) motion.

## ARGUMENT

**I.    Plaintiffs Concede That the Three Individual Plaintiffs' Claims Have Been Finally Decided.**

Plaintiffs do not dispute that the bellwether trial has fully adjudicated all the claims of the three Plaintiffs, both as to liability and as to damages. Nor could they. As this Court explained at the December 4 hearing, if the Court were to deny BNPP's Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for a New Trial or To Amend the Judgment, ECF No. 1041, the judgment as to the three bellwether Plaintiffs "becomes a final judgment." Dec. 4,

2025 Hr'g Tr. 8:11–15.  With respect to those three Plaintiffs, there would be nothing left for this Court to decide, except whether to certify the verdict.

## II.     There Is No Just Reason for the Court to Delay in Directing Final Judgment as to the Claims of the Three Individual Plaintiffs.

Courts typically design bellwether proceedings to "assess the values of the claims at issue, develop a relevant body of law" and thereby "provide guidance to parties pursuing settlement."  *MTBE*, 2010 WL 1328249, at *4.  An appeal of an initial bellwether proceeding "is essential to achieving this intended purpose."  *Id.*  This Court has recognized as much, correctly explaining that "if [it] decide[s] the [post-trial motions] in [Plaintiffs'] favor, I would enter judgment.  I would enter judgment in such a way as to be final and appealable.  *I think it's in the interest of both sides to do that.*"  Dec. 4, 2025 Hr'g Tr. 26:5–8 (emphasis added); *id.* at 9:4–7 ("[R]egardless of the rule . . . it would be in the interest of both parties to get court of appeals resolution.").

Plaintiffs' Opposition does not deny that a decision by the Second Circuit would definitively resolve numerous disputed issues in this litigation, including important issues of Swiss law, or that resolution of these legal issues in advance of additional trials would expedite the litigation and potentially even avoid the expenditure of further party and judicial resources if the Second Circuit rules in BNPP's favor on dispositive grounds.  Nor do Plaintiffs deny that litigating additional bellwethers before appeal would needlessly consume judicial resources by requiring the Second Circuit to review and master multiple records when the legal issues are ripe for appeal and squarely presented here.  Nor do Plaintiffs dispute that immediate appeal is supported by principles of international comity, as previously explained by the Government of Switzerland.  Instead, Plaintiffs distort BNPP's arguments and the nature of these proceedings to suggest that an appeal would be a waste of judicial resources.

*First*, Plaintiffs insinuate that BNPP's "stated intent" is to pursue frequent, seriatim appeals if this Court enters judgment and the Second Circuit affirms. Pls' Opp'n to Def's Rule 54(b) Mot. 6, ECF No. 1080 ("Opp."). That is precisely backwards, and of course, BNPP has suggested nothing of the sort.[1] It has instead argued that an appeal is warranted now, after the first bellwether trial, to provide go-forward guidance to this Court and the parties on the disputed legal issues and avoid the potentially unnecessary expenditure of judicial and party resources that would otherwise be required by years of future proceedings. Furthermore, Rule 54(b) expressly grants this Court the power to deny motions for unwarranted, seriatim appeals. That the Court may be presented with such a motion in the future is, therefore, no basis for denying the present motion.[2] The choice Plaintiffs pose, between seriatim appeals after every judgment or forestalling appeal for years of additional trials, is a false one.

*Second*, Plaintiffs misleadingly assert that the bellwether cases cited by BNPP are "inapposite" because "this is a class action." Opp. 1, 6. While this Court previously certified a class, Plaintiffs ignore that this Court subsequently decided that the three Plaintiffs' cases would be tried as bellwethers, without regard to other class members or their claims. *See, e.g.*, Sept. 3, 2025 Pretrial Conf. Tr. 77:22–78:4 ("The fact of the matter is there are three individuals who are

---

[1] Plaintiffs base this purported intent on BNPP's explanation that the possibility of piecemeal appeal "should not prevent certification of an otherwise warranted final judgment." ECF No. 1044 at 12.

[2] Plaintiffs cite *Novick v. AXA Network, LLC* for the proposition that "[i]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues." 642 F.3d 304, 311 (2d Cir. 2011). As the reference to "interrelated issues" makes clear, however, the holding in *Novick* was based on a finding that the claims at issue were not separable. BNPP, however, showed in its opening brief that the claims of the three individual Plaintiffs are separable from the claims of all other potential bellwether Plaintiffs, a showing never contested by Plaintiffs in their Opposition.

going to have their case tried without reference to a class."); Oct. 10, 2025 Charge Conf. Tr. 1496:5–8 ("I'm not handling this case as a class case. I'm handling the three plaintiffs that they can resemble others, but I'm not looking at the class."). Instead, as this Court explained, the claims of the three Plaintiffs would be tried as "the bellwether cases of the class." Sept. 3, 2025 Pretrial Conf. Tr. 5:22–24; *id.* at 77:25–78:1 ("It's a bellwether case."). Plaintiffs give this Court no reason to ignore bellwether precedent in a bellwether case.[3]

*Third*, Plaintiffs argue that an appeal would waste resources because BNPP is unlikely to succeed before the Second Circuit. Opp. 4–5 (quoting *Parker v. Ahmsi Ins. Agency Inc.*, 2021 WL 8565968, at *5 (S.D. Fla. Jul. 8, 2021)). But that simply assumes the conclusion, and in Plaintiffs' favor. Likelihood of success is not a relevant consideration under Rule 54(b); in fact, even an unsuccessful appeal will yield a judgment that would help expedite future proceedings. *Cf. MTBE*, 2010 WL 1328249, at *4 (considering whether appeal was essential to "develop[ing] a relevant body of law"); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 419 (2d Cir. 1989) (considering whether "the issues on appeal are unique and that their resolution is of public import"); *Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085 (2d Cir. 1992) (not considering likelihood of success on appeal); *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343 (S.D.N.Y. 2013) (same).

Besides, Plaintiffs' premature declaration of victory on appeal is unsupported by the law and the facts. Appellate courts review lower courts' interpretation of foreign law *de novo*. *See* Fed. R. Civ. P. 44.1; *see also Norwest Fin., Inc. v. Fernández*, 225 F.3d 646 (2d Cir. 2000). On

---

[3] At the December 4, 2025 Hearing, this Court corrected Plaintiffs on this very point. Dec. 4, 2025 Hr'g Tr. 8:16–21 ("MR. SMITH: Your Honor, we don't actually agree with that, and the reason is that Rule 54 says that the Court in a situation where fewer than all claims, fewer than all parties have been adjudicated, and here only three of the 23,000 class members have had claims adjudicated. THE COURT: Except I severed those claims.").

5

appeal, BNPP will have many substantial arguments to present on the law, including arguments about the statutory basis of liability, the standards for determining causation, and the standard of proof—arguments that have been endorsed by the Government of Switzerland.[4] These arguments relate to rulings made both before and during trial. They cannot be preemptively dismissed on the basis of credibility determinations made years before bellwether proceedings were even contemplated.

While BNPP respectfully acknowledges this Court's prior rulings, those rulings are not binding on the Second Circuit and raise substantial, novel questions of law that necessitate appellate review. In the absence of appeal, the parties and this Court will march blindly into future bellwether trials with no ability to meaningfully value the claims—an outcome antithetical to this Court's design of the bellwether trial and of these proceedings. Allowing an appeal will allow the parties to resolve outstanding disputes over Swiss law now and avoid litigating individual trials indefinitely. However the Second Circuit rules, the certainty of its decision will preserve judicial and litigant resources and provide the most efficient path toward an ultimate resolution.

### III. The Balance of the Equities Supports an Immediate Appeal.

Plaintiffs do not dispute that this case presents important dispositive issues of Swiss law that, as the Swiss Government explained, implicate concerns about international comity. Concerns about international comity, and the significant public issues at stake in this case, provide additional reasons why an immediate appeal is warranted. *See Cayuga*, 188 F. Supp. 2d at 240.

---

[4] Many questions that are ripe for appeal are legal questions about how to interpret Swiss law, not findings of fact or applications of law to fact.

Plaintiffs cannot credibly say that entering final judgment would impose unusual hardship on the parties and the Court. Indeed, this Court has remarked that "I can't try 23,000 cases, you know." Nov. 12, 2025 Hr'g Tr. 42:22. Yet Plaintiffs suggest no alternative procedure that would eliminate the burden of an untold number of individual trials. They mention only the possibility that, if this Court were to apply collateral estoppel as to certain issues, further bellwether trials would be somewhat simplified (albeit still required).

Plaintiffs' speculation does not eliminate the hardship posed by future proceedings in the absence of appeal. BNPP would vigorously oppose the application of collateral estoppel, so it is highly speculative to assume that it would apply. Nor would it "simpl[ify]" proceedings to double down on decisions that are part of the initial verdict when those decisions may be overturned, such that new trials would ultimately be required. Opp. 9.

Further, even "simpl[ified]" trials would require years of additional, costly litigation. At a minimum, every individual plaintiff in the class of approximately 20,000 members will require a trial on damages, which, as the prior trial demonstrates, includes highly detailed, individualized testimony and findings. Litigating even a tenth of these trials would consume an inordinate amount of time and resources of the parties and the Court. All this effort would be wasted if the appellate court ultimately reversed.

Plaintiffs' counsel has already recognized the burdens imposed by continued litigation. At the December 4, 2025 hearing, Plaintiffs' Co-Lead Class Counsel Ms. Boyd stated that, in view of "the outlay of expenses for a trial that could be remanded at the appeal of the first trial," potentially resulting in "two remands," she would prefer to wait for an appellate decision before litigating a second bellwether trial. Dec. 4, 2025 Hr'g Tr. 26:11–20. It is therefore surprising

7

that Plaintiffs now argue that "[s]taying this Court's proceedings pending a lengthy appeal would be wholly inappropriate." Opp. 7.

In any event, concerns about the timing of a second bellwether trial do not support denying the present motion. Whether or not this Court should delay additional bellwether proceedings during the pendency of an appeal can be briefed separately. But the mere specter of delay is too insubstantial a ground on which to decline to enter final judgment.

## CONCLUSION

For these and the foregoing reasons, this Court should grant BNPP's motion for entry of final judgment under Rule 54(b).

Respectfully submitted,

Dated: New York, New York
       December 22, 2025

/s/ Barry H. Berke
Barry H. Berke
Dani R. James
Michael Martinez
Matt Benjamin
David P. Salant

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
bberke@gibsondunn.com
djames@gibsondunn.com
mmartinez2@gibsondunn.com
mbenjamin@gibsondunn.com
dsalant@gibsondunn.com

/s/ Carmine D. Boccuzzi, Jr.
Carmine D. Boccuzzi, Jr.
Abena Mainoo

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: (212) 225-2000
cboccuzzi@cgsh.com
amainoo@cgsh.com

*Counsel for Defendant BNP Paribas S.A.*